## IN THE UNITED STATES DISTRICT COURT
## FOR THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,** *ex rel.*
**State Engineer**

   Plaintiff,

   v.

**RAMON ARAGON,** *et al.*,

   Defendants.

01 AUG 17 PM 3: 37

69cv07941 JEC-ACE

RIO CHAMA STREAM SYSTEM
Rio Gallina, Section 5

### RESPONSE OF STATE OF NEW MEXICO
### TO CORDOVA-MARTINEZ DITCH'S MOTION TO INTERVENE

The State of New Mexico, *ex rel.* State Engineer ("State") respectfully requests the Court to deny the Motion by Cordova-Martinez Ditch ("Ditch") to Intervene in the disputed subfile proceedings between the State and the claimants described in the procedural order entered April 2, 2001 (Docket No. 6217). The State asserts that the Ditch lacks the direct, substantial and legally protectable interest in the subject of these subfile proceedings that would justify intervene as of right under Rule 24(a)(2). Further, the State asserts that the Ditch cannot demonstrate that the disposition of these subfile proceedings may, as a practical matter, impair or impede the Ditch's ability to protect any interest the Ditch asserts. In addition, the State objects to the participation of the Ditch in hearings on disputed subfiles when it can be anticipated that the attorney for the Ditch will function simply as a de facto attorney for individual claimants without an entry of appearance on behalf of those individuals that would officially recognize that relationship.

   I.   **THE INTERESTS ASSERTED BY THE DITCH IN THE SUBJECT OF DISPUTED SUBFILE PROCEEDINGS DO NOT SATISFY THE REQUIREMENTS OF FED.R.CIV.P. 24(A)(2).**

6326

> Under Rule 24(a)(2), a party may intervene as a matter of right:
>
> when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

To intervene as a matter of right the Ditch's interest must be "direct, substantial, and legally protectable." *City of Stilwell v. Ozarks Rural Elec. Coop. Corp.*, 79 F.3d 1038, 1042 (10th Cir. 1996). The matters to be determined in the disputed subfile proceedings at issue are the amounts and location of irrigated acreage of certain persons claiming irrigation water rights under the Cordova-Martinez Ditch.[1] The particular interest the Ditch claims may be impaired as a result of these proceedings is an interest in ditch management -- which "extends to elections of officers, schedules for distribution of water, and other functions of the ditch." *See* Cordova-Martinez Ditch's Motion to Intervene at 4

Essentially, the Ditch claims a non-property interest in the determination of individual subfile proceedings. As a general rule, non-property interests do not satisfy the interest requirement of Rule 24(a)(2). MOORE'S FEDERAL PRACTICE 3D § 24.30[b]. More importantly, the claimed interest in ditch management, distribution of water, or elections fails to meet the standards set out in *City of Stilwell v. Ozarcks Rural Elec. Coop. Corp.* that require a "direct, substantial, and legally protectable interest" in the subject of the action.

At most, the matters cited by the Ditch are merely contingent, or dependent, upon the amount

---

[1] The water rights of Henry L. Jacquez (Subfile CHGA-02-0006A) will also the subject of a disputed subfile hearing. *See* Order entered April 2, 2001 (Docket No. 6217). These water rights are under the Gonzales-Gurule Ditch. Intervention in this matter has not been requested.

2

of irrigated acreage of individual ditch members. They do not amount to legally protectable or cognizable substantive interests. As the court in *Stilwell* recognized, an interest that is collateral to the action or contingent on a future sequence of events is insufficient. *Id.* at 1041 (denying intervention on grounds that intervenor could not satisfy Rule 24(a)(2) by claiming a property interest in litigation by virtue of its financial ties to defendant).

It is important to note that the Ditch can claim no property interest in the water rights that are the subject of these subfile proceedings, and that the Ditch does not attempt to do so. It is well established that water rights under a community ditch are the property of the individual ditch members. *Snow v. Abalos*, 18 N.M. 681, 695-96 (1914). Similarly, the ditch structure itself is owned in common by the individual persons who constructed it -- the water users. *Id.* at 695. As the Supreme Court explained in *Abalos*, the organization of community acequias as corporate entities under the laws of 1895 (now NMSA 1978 § 73-2-11) did not take away or diminish the property rights of individual irrigators. *Abalos*, 18 N.M. at 698. The involuntary organization of community acequias as corporate entities was for administrative purposes only, and "for convenience gave legal status to such organizations, in order to facilitate the distribution of water and the maintenance of the ditches and laterals." *Id.* at 699.

As stated above, the interest the Ditch asserts in order to justify intervention is in the administration or distribution of water. As the Court's decision in *Abalos* shows this is not an independent interest. In diverting the water from the public stream the officers of the Ditch "act only as the agents of the appropriator." *Id.* at 695-96. Thus any right the Ditch may have to divert water for its members is merely dependent or contingent upon the amount of irrigated acreage of those same members.

Even if it is assumed that the Ditch can establish a sufficient interest in the subject of these disputed subfile proceedings, the Ditch cannot show that the disposition of those proceedings may, as a practical matter, impair or impede its ability to protect that interest. Although the Ditch dismisses the bifurcated nature of the adjudication proceedings as a mere a theoretical opportunity to challenge the adjudication of water rights between the State and individual ditch members, the eventual *inter se* phase of these proceedings is far more than "theory." All orders entered during this phase of the proceedings are "subject to the right of other claimants to file objections to individual adjudication orders, and to the entry of a final decree." *See, e.g.,* Consent Order filed January 10, 2001 (Docket No. 6115) (CHGA-01-0001). Any order entered as a result of a hearing before the Special Master will have no greater effect. Thus, as a practical matter, all parties to this action will have the opportunity to protect any claimed legal interest, and the ability to protect that interest will in no way be impaired by a decision made in an individual disputed subfile hearing between the State and individual claimants.

For the above reasons stated above, the Ditch's Motion to Intervene as of right under Rule 24(a)(2) should be denied. The alternative request of the Ditch for permissive intervention should likewise be denied. While it may be assumed that common questions of law or fact may exist in the individual adjudication of water rights and eventual *inter se* proceedings, it cannot be assumed that allowing the Ditch to intervene will increase the efficiency or consistency of these proceedings, or avoid relitigation of the same or similar issues later on.

Any participation by the Ditch in disputed subfile proceedings will not operate to bar protests by individual ditch members during *inter se*. Rather than reduce the multiplicity of claims, allowing the Ditch to intervene in individual subfile proceedings may have the opposite effect, and thereby

4

serve to only prolong and complicate these proceedings without any benefit to the Court or the parties. This is especially true in view of the Ditch's right to appeal any decision of the Special Master if intervention is granted. The potential that permissive intervention will unnecessarily prolong this litigation weighs against granting the Ditch's motion. *See, e.g., United States v. 36.96 Acres of Land*, 754 F.2d 855 (7th Cir. 1985) (denial of intervention by public interest group in condemnation proceedings properly denied to avoid prolonging already lengthy lawsuit).

2. <u>COUNSEL FOR THE DITCH SHOULD BE REQUIRED TO ENTER HER APPEARANCE ON BEHALF OF INDIVIDUAL MEMBERS INVOLVED IN DISPUTED SUBFILE HEARINGS RATHER THAN FUNCTION AS THEIR DE FACTO ATTORNEY IN THOSE HEARINGS.</u>

The State also objects to the participation of the Ditch in disputed subfile hearings because it appears that counsel for the Ditch will simply function as the de facto attorney for the claimants at those hearings. Unless the counsel for the Ditch enters her appearance on behalf of the claimants, this puts the State in an awkward position. While it may be apparent to the State that counsel for the Ditch may be acting as an advocate and de facto attorney for the individual members, technically the claimants will be appearing *pro se* (assuming they do not retain independent counsel). The State would strongly prefer that counsel for the Ditch simply enter her appearance on behalf of any claimants that she intends to assist. This avoids the potential inconsistency of the Court providing the special leniency afforded self-represented parties with the fact that those individuals actually have been guided and assisted by counsel. The confusion and unfairness in this type of situation has been recently described in *Duran v.Carris*, 238 F.3d 1268, 1271-71 (10th Cir. 2001) (attorney darfting pleadings without entering appearance not only affords unrepresented party benefit of court's liberal construction of *pro se* pleadings, but inappropriately shields attorney from

5

responsibility and accountability for attorney's actions and counsel ). *See also Barnett v. LeMaster*, 2001 WL 433413 (10th Cir. (N.M.)).

The State's concerns in this regard are well founded. The State recently received discovery interrogatories from all of the individual claimants under the Cordva-Martinez Ditch for which the Ditch seeks to intervene. The interrogatories (which are essentially identical) appear to have been drafted by an attorney. In the case of Luis and Genevieve Velasquez, the interrogatories appear to have been faxed to them for signature, and Ms. Humphrey's name and phone number appear at the top of each page. *See* Luis Toby Velasquez and Genevieve M. Velasquez's Interrogatories to Plaintiff State of New Mexico, attached hereto as Exhibit A.

It is apparent that Ms. Humphrey has ghostwritten these documents and that she is guiding these claimants in this litigation. The State believes that she should enter her appearance on their behalf if she intends to continue in this role, and if she intends to assist them in a hearing concerning their individually owned water rights.

DATED: August 17, 2001

Respectfully submitted,

*/s/ Ed Newville*

EDWARD G. NEWVILLE
Special Assistant Attorney General
Office of the State Engineer
P.O. Box 25102
Santa Fe, NM 87504-5102
(505) 827-6150

## CERTIFICATE OF SERVICE

I certify that a copy of the Response of State of New Mexico to Cordova-Martinez Ditch's Motion to Intervene was mailed to the following persons on August ___17___, 2001.

_____
Edward G. Newville

Special Master Vickie L. Gabin
USDC-DCNM
P.O. Box 2384
Santa Fe, NM 87504-2384

Darcy S. Bushnell, Esq.
Adjudication Staff Attorney
USDC-DCNM
333 Lomas Blvd. NW, Box 610
Albuquerque, NM 87102-2272

Karla McCall, Data Manager.
4 Darrah Rd.
Las Lunas, NM 87031

Bradley S. Bridgewater, Esq.
David W. Gehlert, Esq.
USDOJ-ENRD
999 18th St., Suite 945
Denver, CO 80202

Mary E. Humphrey, Esq.
P.O. 1574
El Prado, N.M. 87529-1574

John W. Utton, Esq.
P.O. Box 271
Albuquerque, NM 87103-0271

Fred J. Waltz, Esq.
P.O. Box 6390
Taos, NM 87571

Ronald Boyd, Esq.

7

208 Griffin Street
Santa Fe, NM 87501

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO on the )
relation of the State Engineer, )
and THE UNITED STATES OF )
AMERICA, )
 )
 Plaintiffs, )
 )
v. ) No. CIV 7941-JC
 ) RIO CHAMA STREAM SYSTEM
RAMON ARAGON et al. )
 ) Section 5  Rio Gallina
 Defendants ) Subfile No. 02-0027A
 )
 )

## LUIS TOBY VELASQUEZ AND GENEVIEVE M. VELASQUEZ'S INTERROGATORIES TO PLAINTIFF STATE OF NEW MEXICO

To:  State of New Mexico
 c/o Office of State Engineer
 Ed Newville, Esq.
 P. O. Box 25102
 Santa Fe, NM  87504-5120

Plaintiff, State of New Mexico ["State"] is hereby notified that it is required, pursuant to Rule 33 of the Federal Rules of Civil Procedure, to answer under oath the following interrogatories within thirty (30) days. The interrogatories shall be answered separately and in writing and under oath, and the answers shall contain the complete knowledge of Plaintiff, including that which is available to it personally or through it's agents or attorneys. These interrogatories shall be deemed continuing, and if Plaintiff obtains additional information pertaining to the interrogatories, it is required to furnish this information to Defendant until the date of trial.

## INSTRUCTIONS

1. In answering each Interrogatory:

1



STATE'S EXHIBIT A

  a. identify by date, sender, recipient, location and custodian, each document relied upon or which forms a basis for the answer given;

  b. state whether the information furnished is within the personal knowledge of the person answering and, if not, the name, if known, of each person to whom the information is a matter of personal knowledge;

  c. identify each person who assisted or participated in preparing or supplying any of the information given in answer to or relied upon in preparing answers to these Interrogatories.

  2. These interrogatories are of a continuing and ongoing nature, and should you or your agents or attorneys acquire additional, responsive information or documents you are hereby requested to supplement your answers and responses to provide the additional information or documents.

  3. Prior to answering and responding to these interrogatories, you must make a thorough, diligent search of all your books, records, files and other documents in an effort to obtain and elicit all possible information and documents.

  4. You may attach documents in lieu of listing information contained in the documents, but please attempt to do so in an organized manner.

  5. If the Interrogatory cannot be answered in full, then answer to the extent possible and specify the reasons for your inability to fully answer. If a privilege not to answer is claimed, then identify each document or communication as to which the privilege is claimed, the nature of the privilege and the legal and factual basis for each such claim of privilege.

  6. If a refusal to answer an Interrogatory is stated on the grounds of burdensomeness or expense, identify the number, nature and location of documents needed to be

2

searched, the location of the persons needed to be examined and the number of person hours and cost required to conduct the search or examination.

## INTERROGATORIES

**INTERROGATORY NO. 1:** For each of the following interrogatories, identify each and every person whom answered or assisted in answering the interrogatory, whether in whole or in part, specifically identifying the interrogatory the person assisted and describing the portion assisted in answering.

**ANSWER:**

**INTERROGATORY NO. 2:** For each Office of State Engineer employee identified as being likely to have discoverable information, state the following:

    a.    length of tenure with Office of State Engineer;

    b.    positions held, including tenure in each position;

    c.    duties and responsibilities particular to each position;

    d.    any specialized training received outside of each person's tenure with the Office of State Engineer utilized by that person in connection with field investigations of subfile CHGA-02-0027A.

    e.    any specialized training received during each person's tenure with the Office of State Engineer.

    e.    college and post graduation degrees, if any.

**ANSWER:**

3

**INTERROGATORY NO. 3:** For each Office of State Engineer employee identified as being likely to have discoverable information, state the dates of each site visit or field investigation pertaining to the tract identified as subfile CHGA-02-0027A.

**ANSWER:**

**INTERROGATORY NO. 4:** Identify each Office of State Engineer employee, other than James Aguirre, Ray Rivera, Chris Rodriquez and Lorenzo Romero, who has participated in the hydrographic surveys of the Rio Gallina and the Rio Capulin since the inception of the hydrographic survey process in 1958.

**ANSWER:**

**INTERROGATORY NO. 5:** Identify each Office of State Engineer employee, other than James Aguirre, Ray Rivera, Chris Rodriquez and Lorenzo Romero, who has made a field investigation or site visit to the tract identified as subfile CHGA 02-0027A since 1958.

**ANSWER:**

4

**INTERROGATORY NO. 6**: For each Office of State Engineer employee identified in Interrogatory No. 5, state the following:

a. length of tenure with Office of State Engineer;

b. positions held, including tenure in each position;

c. duties and responsibilities particular to each position;

d. any specialized training received outside of each person's tenure with the Office of State Engineer utilized by that person in connection with field investigations of subfile CHGA-02-0027A.

e. any specialized training received during each person's tenure with the Office of State Engineer.

e. college and post graduation degrees, if any.

**ANSWER:**



Dated: August 7, 2001

                                              **TOBY VELASQUEZ** for
CHGA 2-0027A Defendants
*Pro se*
5505 Sicily Rd N.W.
Albuquerque, NM 87114

5