IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF NEW MEXICO

STATE OF NEW MEXICO, *ex rel.*
State Engineer

    Plaintiff,

v.

RAMON ARAGON, *et al.*,

    Defendants.

69cv07941-JEC-ACE

RIO CHAMA STREAM SYSTEM
Rio Gallina, Section 5

## SPECIAL MASTER'S REPORT AND RECOMMENDATIONS ON CORDOVA-MARTINEZ DITCH'S MOTION TO INTERVENE

To: The Honorable John Edwards Conway
    U.S. District Judge

From: Vickie L. Gabin
    Special Master

This Report recommends that the Court deny the Cordova-Martinez Ditch's Motion to Intervene in pending subfile proceedings.

THIS MATTER is before the Special Master on the Cordova-Martinez Ditch's Motion to Intervene, filed July 31, 2001 (Docket No. 6308), the August 17 Response of the State of New Mexico (No. 6326), and the September 5 Cordova-Martinez Ditch's Reply (No. 6344).

### I. BACKGROUND

Individual defendants' water rights claims in the Rio Gallina subsection of the Rio Chama stream system are being adjudicated. In this phase of the adjudication, six disputed subfiles are set for hearing on November 12. I entered a Prehearing Order April 2, 2001 (No. 6217), which provides in relevant part

> "(t)his is a limited subfile proceeding. Therefore, the State of New Mexico *ex rel.* State Engineer and the above named Defendants are the only parties to this action, and are the only parties that will be allowed to participate at a disputed subfile hearing."

The Gonzales-Gurule, Cordova-Martinez, and Vigiles Ditches and the Gallina-Capulin Acequia Association objected to the limitation on participation on April 19 (No. 6236). Only the Cordova-Martinez Ditch moved to intervene.

The ditches have been joined as parties in the Gallina Section. The rights associated with five of the six disputed subfiles are rights, which, if recognized, have been perfected by use and through membership in the Cordova-Martinez Ditch ("Ditch"). The individuals associated with the disputed subfiles are unrepresented by counsel, and are, presumably, *pro se* parties.

## II. ISSUES

The Ditch argues that it should be permitted to intervene in the disputed subfile hearings because it satisfies the criteria for Fed. R. Civ. P. 24(a)(2) intervention as of right or, in the alternative, Rule 24(b)(2) permissive intervention. The State of New Mexico *ex rel.* State Engineer ("State") asserts that the Ditch lacks any interest which would justify intervention as of right, that there are no grounds for permitting permissive intervention, and that participation by the Ditch would amount to *de facto* representation of the individual water rights claimants without the requisite entries of appearance.

## III. DISCUSSION

### A. Intervention as of right

Rule 24(a)(2) requires that intervention be permitted when, "upon timely application," the

2

applicant

>claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

An applicant must demonstrate that its interest in the proceedings is "direct, substantial, and legally protectable," that the existing parties cannot represent its interests adequately, and that disposition of the action without the applicant's presence will impair the applicant's ability to protect that interest. City of Stilwell, Oklahoma v. Ozarks Rural Electric Coop. Corp., 79 F.3d 1038, 1042 (10th Cir. 1996) (citations omitted). A proposed intervenor's interest must be direct and immediate, not remote or contingent. H.L. Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc., 797 F.2d 85 (2nd Cir. 1988). Whether sufficient interest exists is a "highly fact-specific determination," Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. DOI, 100 F.3d 837, 840 (10th 1996)(citation omitted). "[T]he interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." Id. (citations omitted).

In analyzing whether the parties represent an applicant's interests adequately, courts examine whether the parties' interests and objectives are identical to those of the applicant. Bottoms v. Dresser Indus., Inc., 797 F.2d 869, 872 (10th Cir. 1986). The applicant must make a "concrete showing of circumstances" demonstrating that representation is inadequate. *Id.*, at 872, quoting from 7A C.Wright & A. Miller, *Federal Practice and Procedure* § 1909 at 529 (1972). The burden of demonstrating inadequate representation, however, is minimal, Coalition of Arizona/New Mexico Counties for Stable Economic Growth, 100 F.3d at 844, as is the burden of showing a divergence of

3

interest, Forest Guardians v. Bureau of Land Management, 188 F.R.D. 389, 395 (D.N.M. 1999).

The question of impairment is related to the question of whether a cognizable interest exists. Natural Resources Defense Council, Inc. v. U.S. Nuclear Regulatory Commission, 578 F.2d 1341, 1345 (10th Cir. 1978). Impairment of the ability to protect that interest requires the applicant to show specific reasons which would explain why intervenor's representation would be superior to the parties' representation. Kiamichi Railroad Co., Inc. v. National Mediation Board, 986 F.2d 1341, 1345 (10th Cir. 1993).

1. Timeliness. The Ditch states that the Motion is timely because it has been an active participant in these proceedings, and that neither party will be disadvantaged by "formalizing its status at this early stage in the litigation." Motion at 3.

"Timeliness is to be determined from all the circumstances." NAACP v. New York, 413 U.S. 345, 365-66, 93 S.Ct. 2591, 2602-03 (1973). Among the considerations that bear on the question of timeliness are how far the litigation has progressed, the prospective intervenor's prior knowledge of the action, the reason for delay, and the likelihood of prejudice to the existing parties. Arrow v. Gambler's Sup. Inc., 55 F.3d 407, 409 (8th 1995). In this case, the litigation has progressed relatively far: the April 2 Prehearing Order states that discovery is to be completed by September 21, dispositive motions or written objections must be filed by October 3, and trial is set for the week of November 12. The Cordova-Martinez Ditch, among others, filed an Objection to Prehearing Order for Litigation of Water Rights Claims in Certain Disputed Subfiles on April 19 (No. 6236). On May 31 I wrote to counsel regarding the timing of a potential intervention motion, citing concerns with delays and the trial schedule. Attachment A. Ms. Humphrey responded, citing circumstances which led her to decide to delay filing for intervention. One was the State's agreement that the acequias participate in

negotiations and certain discovery. Attachment B. The Ditch's Motion was filed July 31; responsive pleadings ended September 5.

The State does not assert this Motion is untimely; therefore, I will assume there will be no prejudice or delay in allowing the Ditch to intervene.

2. Interest. The Ditch asserts that its interest relates to the subject of the action: the amounts of water rights adjudicated to its members. "[A]ny disturbance in the quantities recognized will disturb the interests of the ditch." Motion at 3, 4. The State disagrees that the interest alleged rises to the level of the interest recognized in City of Stilwell, Oklahoma, supra - "direct, substantial, and legally protectable," chiefly because the Ditch is only an administrator, with no independent or direct interest in the water rights. Response at 2,3. The Ditch admits that while it may not have a property or economic interest in the water rights adjudicated to its members, it has a direct and substantial interest in the *adjudication* of those rights. Reply at 3.

Under New Mexico law, ditch ownership and water rights are distinct interests, are derived from difference sources, and are governed by different rules of law. Olson v. H. & B. Properties, 118 N.M. 495, 539 (1994). Water rights are the property of the individuals who have applied water to beneficial use, and ditches are owned by these individuals as tenants in common in order to provide a conveyance for the water. Snow v. Abalos, 18 N.M. 681, 140 P. 1044 (1914). Essentially, the ditch, as a community entity, provides the management and administrative scheme. The physical structure of the ditch provides the conveyance for the water. "These interests and the ditch management scheme are directly tied to the quantity of water rights held by any one water user; therefore, any disturbance in the quantities recognized will disturb the interests of the ditch." Motion at 4.

5

While the Ditch may not have a property interest in the waters adjudicated (or not) to its members, I agree that its interest is direct. In practical terms, as the amount of irrigated land served by a ditch diminishes for whatever reason (transfer of water rights out of the ditch, loss of rights through non-use, etc.), the ditch as a management entity weakens. Fewer members share the maintenance tasks and expenses, and less water may be diverted by the ditch overall, which may result in an inadequate or inefficient delivery mechanism. Motion at 4.

Whether the Ditch's interest in these disputed subfiles is substantial, is another question. Apparently, the State proffered "no right" offers to the defendants. See Cordova-Martinez's Ditch [sic] Answer in Intervention, attached to the Motion. Because the Ditch has not come forward with even a percentage estimate of what the Ditch stands to lose if defendants are ultimately adjudicated no water rights, it is impossible to determine whether its interest in this action is substantial.

3. Adequate representation. With respect to this criterion, the Ditch states that the individual water rights owners do not adequately represent its interest, and raises the possibility that a subfile defendant's claims might surpass those rights recognized by and managed through the Ditch. The Ditch concludes that only "the corporate body of the ditch itself can defend its unique interests in this case." Motion at 6. The State does not refute this statement directly; rather, both parties shift their attention to the State's contention that Ms. Humphrey wishes to participate as *de facto* counsel for the unrepresented defendants. Response at 5-6, Reply at 4-5.

Both parties avoid articulating what may be the reason for the Ditch's proposed intervention at this time - the belief that the defendants currently appearing *pro se* may not adequately represent the common interest. While the burden of demonstrating inadequate representation is minimal, Coalition of Arizona/New Mexico Counties for Stable Economic Growth, 100 F.3d at 844, the Ditch

6

has alleged nothing to indicate that these defendants will not represent their own interests in obtaining more water rights than the State is prepared to offer. See, e.g., Bottoms, 797 F.2d at 873 (existing party is well motivated to "get as much as possible" from the adverse party). There is nothing in the pleadings which demonstrates what defendants' cases will include, or will not include, or why the case would not adequately defend the Ditch's interest in increasing the amounts of adjudicated water rights. In short, there is nothing to indicate why intervenor's representation would be superior to the defendants' representation. Kiamichi Railroad Co., Inc., 986 F.2d at 1345.

With respect to the question of existing representation, courts also look at whether a proposed intervenor would make a significant and useful contribution to the development of the issues, or whether the intervention would be counterproductive. League of United Latin Am. Citizens v. Clements, 884 F.2d 185, 189 (5th Cir. 1989). A potential intervenor should be able to make a unique contribution which will assist the court in making a just and accurate decision. Moore's Federal Practice 3d (1997) § 24(10)[2][b]. The Ditch has neither demonstrated that it has evidence unavailable to individual defendants, or that it is prepared to raise related issues which should be litigated in the subfile proceedings for efficiency's sake. Without knowing more about the defendants' cases, or the Ditch's proposed case, I cannot recommend to the Court that the Ditch's intervention at this point would be useful to the decision maker. (That said, I note for the Court that Counsel's knowledge of the action is substantial. Ms. Humphrey has participated in negotiations and on-site investigations with the State, and has worked on ownership problems and other relevant matters throughout the adjudication of the Gallina subsection. Attachment B; Motion at 2.)

4. Impairment of ability to protect interest. The Ditch argues that if it is not permitted to intervene now, its interests could be harmed significantly between the time the subfile is adjudicated

and the time for *inter se* challenges. Any damage or disturbance to ditch management may be irrevokable or the subject of subsequent litigation. Reply at 3. "An *inter se* challenge will probably not be possible for several years, if not decades." Motion at 5. Moreover, because the Ditch's source of funding is ephemeral, the Ditch may be financially unable to mount an *inter se* challenge, should the defendants receive either more or less water than the Ditch believes is appropriate.

The State does not directly contradict the Ditch's fear that as a practical matter, its opportunity to challenge the adjudicated subfile amount may come too late for meaningful relief. I fully understand that apprehension; the track record of New Mexico's adjudications hold no promise of a quick remedy for any actual harm to the Ditch's interests. But it seems to me that at this point, given the factual vacuum in which I am expected to resolve this issue, the possibilities of harm are too speculative. There is no reason why, upon the proper showing of harm resulting from a decision it finds adverse to its interests, the Ditch should not be able to request an expedited *inter se*, or a similar form of relief.

B. Permissive intervention

Rule 24(b) permits intervention, upon timely application, when the applicant's claim or defense and the main action have a question of law or fact in common. The decision to permit intervention is discretionary, City of Stilwell, Oklahoma, 79 F.3d at 1042, and in exercising its discretion, the Court must consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. "The most obvious benefits of intervention in general are efficiency and consistency resulting from resolving related issues in a single proceeding." Moore's Federal Practice 3d (1997) § 24.03[5][b][I].

The Ditch states simply that its defense includes questions of law and fact in common with each of the defendants, and that intervention at this time will not delay or prejudice this adjudication.

8

Motion at 7. As discussed above, notwithstanding the legal and practical distinctions between the types of interests in water enjoyed by the individuals and the Ditch, the Ditch's interest here is the amount of water adjudicated to each defendant. Thus, at the least, a common question of fact exists. The State acknowledges that common questions of fact and law may exist, but is unwilling to assume that allowing the Ditch to intervene now would increase the efficiency or consistency of these proceedings. The State contemplates that intervention at this time, particularly because the Ditch will be able to object to decisions, may serve only to prolong and complicate the proceedings, and cites United States v. 36.96 Acres of Land, 754 F.2d 855 (7th Cir. 1985) in support of its position (denial of intervention by public interest group in condemnation proceedings properly denied to avoid prolonging already lengthy lawsuit). Response at 4-5.

I am not sure whether allowing the Ditch to intervene now would prolong the proceedings any more than permitting it to apply for an expedited *inter se* at the end; in any case, it does not appear that the State fears prejudice to its ability to present its case. The State is also concerned that allowing the ditch to intervene in subfile proceedings may increase, rather than decrease, the multiplicity of *inter se* objections. Response at 4. I don't understand this statement.

Besides the question of whether the proposed intervenor's objective is identical to that of a party, Bottoms, 797 F.2d at 872, whether an applicant's interests are adequately represented by existing parties is also a relevant factor in the denial of permissive intervention. Arney v. Finney, 967 F.2d 418, 421-22 (10th Cir. 1992) ; New Orleans Pub. Serv. Inc. v. United Pipe Line Co., 732 F.2d 452, 472 (5th Cir. 1984). As noted above, the Ditch has failed to allege any specifics which would allow me to find that its interests are not being served by the defendants.

That the Ditch has a significant interest in the amount of water rights recognized for individual

9

subfiles cannot be denied. Further, I assume that intervention at this time will cause no delay in the proceedings, nor will it prejudice the State's presentation. Notwithstanding these factors, however, I believe that in this case, under the facts and circumstances as now represented, the Ditch has failed to show that allowing intervention would be productive to the progress of the case or that intervention would benefit the Court in its decision-making process. Further, as a practical matter, the Ditch should be able to seek quick relief in the form of an expedited *inter se* proceeding.

C. Representation of individuals

The State raises a collateral issue having to do with what the State believes is Ms. Humphrey's role as a *de facto* attorney for the individual claimants in this matter. Response at 5. Ms. Humphrey replies that she has merely furnished sample forms to the defendants. Reply at 4. I do not reach this issue in light of my recommendation, below. Should the Court disagree and grant the Ditch intervenor status, I would recommend that the parties work out a plan for clarifying the respective roles and presentations of the defendants and the Ditch.

IV. RECOMMENDATION

I recommend that the Court deny intervention under both Rule 24(a) and (b) for the reasons set forth above.

Respectfully submitted,

*Vickie L. Gabin*
_____
SPECIAL MASTER

10

*Vickie L. Gabin, Special Master*
United States District Court
P.O. Box 2384
Santa Fe, NM 87504-2384
Tel. (505) 955-0678 // Fax (505) 988-6473

May 31, 2001

Mary E. Humphrey, Esq.
P.O. Box 1574
El Prado, NM 87529-1574

      Re:   State v. Aragon, No. CV-7941 JC, Rio Chama Stream System
             Section 5, Objection to Prehearing Order

Dear Ms. Humphrey:

    On April 19 you filed an Objection to Prehearing Order for Litigation of Water Rights Claims in Certain Disputed Subfiles (No. 6236), and indicated that the objectors would move to intervene "in a timely manner." What do you consider "a timely manner" under the circumstances?

    If the objectors and the State are able to resolve their differences, the objection becomes moot. Understandably, at this time you don't want to expend resources on motion practice which may become unnecessary. On the other hand, the current Prehearing Order entered April 2, 2001 (No. 6217) does not include a cut-off date for negotiations (nor should it), and the hearings are set for November 12. I am concerned that we will run into a timing problem if you wait until you are certain that disputed subfiles will go to hearing - insufficient time for motions and possible objections to my report, and the consequences which might flow from my recommendations (additional discovery, for example, should the motion be granted).

    Have you discussed this matter with Mr. Newville? Please advise.

                                         Very truly yours,

                                         Vickie L. Gabin/ag
                                         Vickie L. Gabin

xc: Ed Newville, Esq.
     Darcy Bushnell

ATTACHMENT A

# Mary E. Humphrey
## Attorney at Law

P.O. Box 1574
El Prado, NM 87529

505-758-2203

SENT VIA FACSIMILE TO (505) 988-6473 AND FIRST CLASS MAIL

June 4, 2001

Special Master Vickie L. Gabin
United States District Court
P. O. Box 2384
Santa Fe, NM 87504-2384

Re:   State of New Mexico v. Aragon, No. CV-7941 JC, Section 5
      Motion to Intervene

Dear Special Master Gabin:

This letter is in response to your May 31, 2001 letter regarding certain acequias' proposed Motion to Intervene. It was my intention to file such a motion this week. However, I have just finished a telephone conference with Mr. Newville on the matter, and will postpone filing the motion pending further communication with my clients this week. The state agrees that the acequias may participate in negotiations and certain elements of discovery leading to hearing. The main point of contention concerns acequia participation at any hearing on disputed subfiles. I will continue to have discussions with Mr. Newville on this matter. If it becomes necessary to file a motion, then I will do so sooner rather than later (sometime in June, rather than in July). I do not want to run into a timing problem.

I hope this answers your concerns. Please let me know if you have any questions.

Sincerely,

Mary E. Humphrey

xc:   Ed Newville

ATTACHMENT B

## SPECIAL DISTRIBUTION LIST
### State of New Mexico ex rel. State Engineer v. Aragon, 69 CV 7941 - JC
### Rio Chama Adjudication - Section 5: Rio Gallina

Special Master Vickie L. Gabin
United States District Court
P.O. Box 2384
Santa Fe, NM 87504-2384

Darcy S. Bushnell, Esq.
Adjudication Staff Attorney
USDC-DCNM
333 Lomas Blvd. NW, Box 610
Albuquerque, NM 87102-2272

Karla McCall, Data Manager
AquaTek
1315 Sagebrush Dr. SW
Los Lunas, NM 87031

Ronald Boyd, Esq.
208 Griffin Street
Santa Fe, NM 87501

Bradley S. Bridgewater, Esq.
David W. Gehlert, Esq.
USDOJ-ENRD
999 Eighteenth St., Suite 945
Denver, CO 80202

Mary Humphrey, Esq.
P.O Box 1574
El Prado, NM 87529

Edward G. Newville, Esq.
Office of the State Engineer
P.O. Box 25102
Santa Fe, NM 87504-5102

John W. Utton, Esq.
P.O. Box 271
Albuquerque, NM 87103-0271

Fred J. Waltz, Esq.
Box 6390
Taos, NM 87571

Paula Garcia
NM Acequia Association
P.O. Box 1229
Santa Cruz, NM 87567

Wilfred Gutierrez, Chairman
NM Acequia Commission
P.O. Box 190
Velarde, NM 87582

Wilfred Rael
P.O. Box 603
Questa, NM 87556

Jose P. Chavez
Piedad Chavez
506 Old Hospital Road
Española, NM 87532

Juan C. Chavez
Patsy L. Chavez
P.O. Box 152
Gallina, NM 87017

Henry L. Jacquez
1110 Maez Rd.
Santa Fe, NM 87505

Marino Jacquez
P.O. Box 614
Cuba, NM 87013

Gabriel Maestas
Mary Ann Maestas
P.O. Box 5
Gallina, NM 87017

Luis Toby Velasquez
Genevieve M. Velasquez
5505 Sicily Rd. NW
Albuquerque, NM 87114

Julian Vigil
Mary Vigil
P.O. Box 110
Gallina, NM 87017

Robert M. Vigil
P.O. Box 108
Gallina, NM 87017

DISTRIBUTION LIST FOR SPECIAL MASTER'S REPORT AND RECOMMENDATIONS ON CORDOVA-MARTINEZ DITCH'S MOTION TO INTERVENE Filed September 18, 2001