IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| STATE OF NEW MEXICO ex rel. State Engineer, | ) ) ) | |
| Plaintiff, | ) ) | No. CV 7941 SC |
| v. | ) ) | RIO CHAMA Stream System |
| ROMAN ARAGON, et al., | ) ) | Sect. 1 Main Stem Section |
| Defendants. | ) ) ) | |

01 DEC -7 PM 1:12

**THE UNITED STATES' THIRD NOTICE OF SUPPLEMENTAL AUTHORITY**

In August of 1998 and November of 2000, the United States filed Notices of

Supplemental Authority bringing to the Court's attention decisions by Idaho's Snake River Basin

Adjudication Court ("SRBA Court") and the Idaho Supreme Court which addressed issues

presented by the Motions for Summary Judgement on the United States' Wild and Scenic Rivers

Act claims currently pending before this Court.

On July 16, 2001, Maurice L. Russell, II, Administrative Law Judge for the

Klamath Basin Adjudication in Oregon, issued a ruling addressing many of the same issues.

Like the SRBA Court and the Idaho Supreme Court, Judge Russell determined that the Wild and

Scenic Rivers Act expressly reserved water. Decision at 9. A copy of Judge Russell's decision

is attached.

6436

Dated this 3rd day of December, 2001.

Respectfully submitted,

THOMAS SANSONETTI
Assistant Attorney General

DAVID W. GEHLERT, Attorney
U.S. Department of Justice
Environment and Natural Resources
        Division
General Litigation Section
999 18th St., Suite 945
Denver, CO  80202
(303) 312-7352

BEFORE THE HEARING OFFICER PANEL
FOR THE STATE OF OREGON
WATER RESOURCES DEPARTMENT

In the Matter of the Determination of the Relative Rights of the Waters of the Klamath River
a Tributary of the Pacific Ocean

| | |
|---|---|
| Waterwatch; William J. Rust and Ethel J Rust; Leonard Baio; Gary Strong; Flynn Brothers; Robert Bartell; Margaret Jacobs; Carolyn Obenchain; Rodney Z. James; Newman Enterprise, Douglas Newman; Francis Loving Trust, Hilda Francis, Trustee; John Briggs; Peter M. Bourdet; Vincent Lee Briggs; Thomas William Mallams; Thomas H. Bentley; Thomas E. Stephens; J.R. Simplot, Trustee of the J.R. Simplot Self Declaration of Revocable Trust; The Nature Conservancy<br><br>vs<br><br>United States of America, National Forest Service | **ORDER ON MOTIONS FOR RULING ON LEGAL ISSUES, AND FOR SUMMARY DISPOSITION**<br><br>Claim No.  500, 501, 502<br><br>Contests   00169, 00170, 00171, 00404, 00405, 00406,00639, 00640, 00641, 00874, 00875, 00876 01109, 01110, 01111, 01344, 01345, 01346, 01578, 01579, 01580, 01927, 01928, 01929, 02379, 02380, 02381, 02616, 02617, 02618, 02770, 02771, 02803, 02929, 02930, 02931, 04302, 04366, 04367, 04368, 04601, 04603, 04834, 04835, 04836, 05077, 05078, 05079, 05310, 05311, 05312, 05543, 05544, 05545 |

On Motion for Summary Disposition by the United States Department of Agriculture, Forest Service, and cross-motion for a Ruling on Legal Issues by Contestants Leonard Baio, et al., after extensive briefing by interested parties, this matter came on for Oral Argument on July 10, 2001 at 9:00 a.m. in the Hearing Officer Panel office at 3240 Cherry Ave. NE, Salem, Oregon. David Gehlert and Holly McLean appeared in person and Michael Gheleta appeared by telephone for Claimant, the United States Department of Agriculture, Forest Service. Robert G. Hunter for Contestant WaterWatch of Oregon, appeared by telephone. Walter Perry and Justin Wirth, of the Oregon Department of Justice, appeared on behalf of the Oregon Water Resources Department. Also present for the Oregon Water Resources Department was Renee Moulun. Maurice L. Russell, II, of the Hearing Officer Panel, presided as Administrative Law Judge.

## 1. FACTS:

The United States Department of Agriculture, Forest Service (hereafter, "USFS") has filed a Motion for Summary Disposition. Contestants Leonard Baio, et al. (Hereafter "moving contestants") have filed a Motion for Ruling on Legal Issues. Contestants Waterwatch of Oregon

BEFORE THE HEARING OFFICER PANEL
FOR THE STATE OF OREGON
WATER RESOURCES DEPARTMENT

In the Matter of the Determination of the Relative Rights of the Waters of the Klamath River
a Tributary of the Pacific Ocean

| | |
|---|---|
| Waterwatch; William J. Rust and Ethel J Rust; Leonard Baio; Gary Strong; Flynn Brothers; Robert Bartell; Margaret Jacobs; Carolyn Obenchain; Rodney Z. James; Newman Enterprise, Douglas Newman; Francis Loving Trust, Hilda Francis, Trustee; John Briggs; Peter M. Bourdet; Vincent Lee Briggs; Thomas William Mallams; Thomas H. Bentley; Thomas E. Stephens; J.R. Simplot, Trustee of the J.R. Simplot Self Declaration of Revocable Trust; The Nature Conservancy<br><br>vs<br><br>United States of America, National Forest Service | **ORDER ON MOTIONS FOR RULING ON LEGAL ISSUES, AND FOR SUMMARY DISPOSITION**<br><br>Claim No.   500, 501, 502<br><br>Contests   00169, 00170, 00171, 00404, 00405, 00406, 00639, 00640, 00641, 00874, 00875, 00876 01109, 01110, 01111, 01344, 01345, 01346, 01578, 01579, 01580, 01927, 01928, 01929, 02379, 02380, 02381, 02616, 02617, 02618, 02770, 02771, 02803, 02929, 02930, 02931, 04302, 04366, 04367, 04368, 04601, 04603, 04834, 04835, 04836, 05077, 05078, 05079, 05310, 05311, 05312, 05543, 05544, 05545 |

On Motion for Summary Disposition by the United States Department of Agriculture, Forest Service, and cross-motion for a Ruling on Legal Issues by Contestants Leonard Baio, et al., after extensive briefing by interested parties, this matter came on for Oral Argument on July 10, 2001 at 9:00 a.m. in the Hearing Officer Panel office at 3240 Cherry Ave. NE, Salem, Oregon. David Gehlert and Holly McLean appeared in person and Michael Gheleta appeared by telephone for Claimant, the United States Department of Agriculture, Forest Service. Robert G. Hunter for Contestant WaterWatch of Oregon, appeared by telephone. Walter Perry and Justin Wirth, of the Oregon Department of Justice, appeared on behalf of the Oregon Water Resources Department. Also present for the Oregon Water Resources Department was Renee Moulun. Maurice L. Russell, II, of the Hearing Officer Panel, presided as Administrative Law Judge.

## 1. FACTS:

The United States Department of Agriculture, Forest Service (hereafter, "USFS") has filed a Motion for Summary Disposition. Contestants Leonard Baio, et al. (Hereafter "moving contestants") have filed a Motion for Ruling on Legal Issues. Contestants Waterwatch of Oregon

and The Nature Conservancy have also filed responsive briefs. Both motions are governed by
OAR 137-003-0580, which provides the standards for evaluating the motion in subsection 4, as
follows:

>    (4)     The hearing officer shall grant the motion if:
>
>        (a)     the pleadings, affidavits, supporting documents and the record in the
>                contested case show that there is no genuine issue as to any material fact
>                that is relevant to resolution of the legal issue as to which a decision is
>                sought, and
>
>        (b)     the agency or party filing the motion is entitled to a favorable ruling as a
>                matter of law.

The following facts are undisputed:

1)      This case involves three claims for instream water rights, filed by claimant, USFS on two
        reaches of the Sycan River, (claims 501 and 502) and one reach on the North Fork of the
        Sprague River (claim 500). Contestants assert rights to water in either or both rivers as a
        basis for standing, and raise a number of objections to the existence or scope of the
        claims. The standing of either claimant or any contestants to participate in these
        proceedings is not at issue.

2)      Both rivers adjoin or flow through land under control of the USFS for a large portion of
        each reach. Some other private appropriations have occurred which are, or may be, senior
        to the claims of the USFS. Private rights in the Sprague River were adjudicated under a
        decree issued in 1930. The United States was not made a party to that proceeding.

3)      In 1952, the United States Congress enacted the "McCarren Amendment" 43 USC 666
        which, *inter alia* waived federal sovereign immunity with respect to comprehensive
        adjudication of water rights in a river basin. In 1968 the United States Congress enacted
        the Wild and Scenic Rivers Act, 16 USC  1271 et seq. (hereafter the WSRA). In 1988
        Congress enacted the Omnibus Oregon Wild and Scenic Rivers Act Pub. L. No. 100-557,
        102 Stat. 2782. (hereafter OOWSRA). The OOWSRA expressly included the three
        reaches subject to the claims in this case within the Wild and Scenic Rivers System
        established under the WSRA. The WSRA provided for three classes of designation
        within the Wild and Scenic River System; a) Wild river areas- where the river or section
        of the river is free of impoundments, generally inaccessible except by trail, and
        surrounded by essentially primitive, unpolluted watershed, b) Scenic river areas,
        similarly primitive and free of impoundments, but accessible in some places by road, and
        c) Recreational river areas, readily accessible by road or rail, with some development and
        some impoundment in the past. The three reaches subject to the claims in this case were
        all designated Scenic River areas in the OOWSRA.

4)      The USFS has performed resource assessments of all three reaches to determine the

"Outstandingly Remarkable Values" of each reach.  As a result of these resource assessments, the reach of the North Fork, Sprague River that is the subject of Claim 500 was found to have outstandingly remarkable scenic and geologic values, the reach of the Sycan river that is the subject of claim 501was found to have outstandingly remarkable scenic and fisheries values and the reach of the Sycan river that is the subject of claim 502 was found to have outstandingly remarkable scenic, geologic and fisheries values.

## 2. THE WILD AND SCENIC RIVERS ACT EXPRESSLY RESERVED A WATER RIGHT.

Contestants  move for a ruling on legal issues on the question whether claimant, the USFS, has reserved the water right claimed in any fashion.  Specifically, the contestants argue that Congress in the Wild and Scenic Rivers Act did not expressly reserve a water right.  Contestants also argue that the claim does not qualify as an implied reservation because the reservation of the land on which the water right would depend was not reserved from the "Public Domain" but from an earlier reservation as a National Forest.

Claimant responds that, albeit awkwardly, the Wild and Scenic Rivers Act did expressly reserve a water right, and that even if it did not, an implied reservation exists to the same extent.

Although other tribunals have considered whether the Wild and Scenic Rivers Act expressly reserved a water right, and have found that it did so, none of those cases are from jurisdictions whose decisions are controlling in these proceedings.  *Potlatch Corp. v. United States* 134 Idaho 912 (Idaho, 2000). The language of the Act, itself, is somewhat ambiguous on the question.  In construing federal statutes, however, unlike the rule in Oregon, recourse to the legislative history is much more common.  In this case, that history, while not entirely satisfactory, does appear to favor an express reservation.  Moreover, like other commentators, (cf. *Potlatch, ibid.*) I find it peculiar that Congress would enact a statute for the purpose of protecting the wild and scenic character of a river without expressly reserving enough water to fulfill that purpose.  Indeed, interpreting the statute as not providing an express reservation would have an absurd result; a result which, under the federal principles of statutory construction, is to be avoided.  *Chapman v. US* 500 U.S. 453 (1991).

Finally, I note the opinion of Oregon Attorney General David Frohnmayer, which was incorporated into the Congressional Record by Senator Hatfield during discussion over the OOWSRA in 1988. 134 Cong. Rec. S15245, (1988) AG OP-6268.  That opinion, in turn, relies in part on opinions of the Solicitor for the United States Department of Interior.  It is clear from this opinion that at the time the OOWSR was passed, thereby including the reaches at issue within the Wild and Scenic River System, Congress was aware that it was the opinion of both the Oregon Attorney General and the Solicitor for the United States Department of Interior that the WSRA included an express reserved water right.  It is also apparent that such an express reservation was treated as part of the context for the OOWSRA, and that at least when Congress added the reaches in question to the Wild and Scenic River system Congress believed that there was an express reservation.

Based upon the foregoing, I am persuaded that Congress intended an express reservation of water in the WSRA.

Because I find that the water right in question exists and is based upon an express federal reservation, I do not reach the portions of the contestants' argument that are based upon either an implied reservation, or argue for no reservation at all.

### 3. THE STATE ADJUDICATION UNDER ORS CHAPTER 539 IS THE CORRECT PROCESS FOR ESTABLISHING A FEDERAL RESERVED WATER RIGHT.

Contestants also argue that federal reservations of water rights are not effective after the promulgation of the state water right registration system in 1909, and that an earlier adjudication of a portion of the reach on the North Fork of the Sprague River controls. Consequently, it is argued, the state adjudication under ORS Chapter 539 is not the proper process for determining whether, and to what extent, the United States hold a water right. These arguments are not convincing.

Being sovereign, the United States is generally immune from state process. This immunity may be waived, however. In 1952, Congress enacted the MaCarren Amendment, 43 USC Section 666, which, among other things, provided a limited waiver of Sovereign Immunity for state water rights adjudications, permitting the state adjudication process to decide issues related to the existence and scope of federal rights. Until 1952, however, the federal government was not amenable to any state process relating to water rights, including the earlier adjudication, which, according to the undisputed record, occurred prior to 1952. It is clearly possible that federal reservations occurred in the interval between 1909 and 1952, giving rise to federal express or implied reservations of water. Such implied reservations would clearly be effective, even though not included in an adjudication or registered under the state system, since until 1952 the federal government had not waived its immunity from state process, and therefore could not be compelled to use the state system, or to participate in state adjudications. (cf. *Cappaert v. United States*, 426 U.S. 128 (1976), where the federal reservation occurred in January, 1952, and was allowed, though limited, by the Supreme Court despite a contrary finding under the Nevada state regulation process).

Moreover, under the McCarren Amendment Congress only consented to joinder of the Federal Government in "comprehensive adjudications" of a watershed. The federal government has not consented to any state court requirements for determination of particularized water-rights outside such an adjudication. In other words, the federal government consented to being compelled to have its water rights determined in the Klamath Adjudication [*United States v. Oregon*, 44 F.3d 758 (9th Cir. 1994)]. It did not consent to being compelled to register its water rights with the State of Oregon under any other process. Thus, while the United States may have registered water rights claims, or acquired registered water rights claims from others, it has done so without compulsion under state law.

The current adjudication under ORS Section 539 is the appropriate process for determining the

existence and scope of the federal right.

### 4. THE PURPOSE OF THE WILD AND SCENIC RIVERS ACT.

Having determined that Congress intended an express reservation of water rights, and that adjudication of such a right is appropriate in these proceedings, the next question presented is the basis for determining the amount of water reserved. The parties have divided this into two questions: a) what purposes of the reservation define the scope of the water right, and b) what standard is to be used to quantify that right. The purpose of the reservation is significant because Congress reserved sufficient water to achieve the purposes of the Wild and Scenic Rivers Act.

Congress defined the scope of that reservation in 16 USC 1284(c), where it provided, in part:

> Designation of any stream or portion thereof as a national wild, scenic or recreational river area shall not be construed as a reservation of the waters of such streams for purposes other than those specified in this Chapter, or in quantities greater than necessary to accomplish these purposes.

The contestants have argued, in connection with their argument that the reservation was, if anything, implicit rather than express, that only the primary purpose of the reservation is significant, because water may not be reserved for secondary purposes. This may be correct as to implied reservations. *Cappaert, ibid.* It is not so as to express reservations. *United States v. New Mexico* 468 U.S. 696 (1978). Because this is a case of express reservation the scope of that reservation was expressly defined.

Nonetheless, the parties are divided by their interpretation of the USFS' authority to define the purposes for the reservation, and thus the scope of the water right. Contestants stated that these purposes were defined by Congress in a list published in the Congressional Record. The USFS maintains that Congress was silent on this subject, which, therefore, was delegated to the agency for determination. Neither position is entirely correct.

It is true that the Congressional Record contains a list of outstandingly remarkable values for the rivers included in the OOWSRA, but that list is not contained within the bill itself. It is incorporated as supplemental material to Senator Hatfield's comments to the Senate during discussions leading to passage of the OOWSRA. 134 Cong. Rec at S15249 and S15250, (1988). Thus, while useful as a general guide to information before Congress when the OOWSRA was passed, this list does not have the binding effect of a statute. There is no evidence that Congress, as a whole, either endorsed or enacted such a list. It is, therefore, interesting and potentially persuasive, but does not have the force of law.

The USFS, on the other hand, is incorrect when it states that Congress was silent on the purposes of the Act. The WSRA, itself, contains an explicit statement of purpose. In general, those purposes were specified as the preservation of :

> Certain selected rivers of the Nation which, with their immediate environments, possess

outstandingly remarkable scenic, recreational, geologic, fish and wildlife, historic, cultural or other similar values,***in their free-flowing condition, and that they and their immediate environments shall be protected for the benefit and enjoyment of present and future generations. 16 USC 1271. (*see also, Potlatch v. US, ibid.* where the Idaho trial court found that the express water reservation was limited in basically these terms, and this determination was not appealed.).

Thus, the scope of the water right in this case is limited to the preservation "in their free-flowing condition" of specified rivers having "outstandingly remarkable values" and the protection of those rivers "and their immediate environments."

It is thus not entirely correct to say that the "outstandingly remarkable values" of the streams are the "purposes" defining the scope of the water right. Those values, as determined for the particular streams, merely condition the means that the various agencies must use to achieve the more general purpose with respect to each specific reach.

As stated in the Conference Committee Report:

> Enactment of the bill would reserve to the United States sufficient unappropriated water flowing through Federal lands involved to accomplish the purpose of the legislation. Specifically, only that amount of water reasonably necessary for the preservation and protection of those features for which a particular river is designated in accordance with the bill. 114 Cong. Rec. 28310, 28313(1968).

The first step in defining the scope of the reservation, then, is to establish what volume of water is necessary to preserve the reach in its "free-flowing condition." The next step is to establish the "features" for which the particular river was designated. The Contestants suggest that this process was completed by Congress, itself, but, as noted, the inclusion into the Congressional Record of a list of such values, without any evidence that such a list was endorsed by Congress as a whole, is hardly dispositive.

Within the bill, itself, there is no specification of the "features" that caused each river to be included within the Wild and Scenic River System. While the bill does designate each river as "Wild," "Scenic," or "Recreational," this does not constitute a statement of purpose, of the sort required, since those designations have to do with the degree of pre-existing development of the river. [PL 90-542, Section 2(b)].

Claimant argues that the determination of such values was delegated to the agencies. I conclude that the process was delegated to the agency, which has designated Outstandingly Remarkable Values for each reach.

As noted by the Oregon Water Resources Department, federal agencies' powers are delegated under a different standard that prevails in Oregon. The Supreme Court, in *Chevron USA Inc. v. Natural Resources Defense Council, Inc.* 467 US 837 (1984) and its progeny, has concluded that Congress is assumed to have delegated interpretive and implementation authority to the

responsible agency, in the absence of specific legislation to the contrary. Thus, where legislation is silent on a subject, Congress is considered to have delegated to the agency the power to fill in the gaps in a statute, so long as it does so in a fashion that involves a reasonable or plausible interpretation of the statute.

Here, Congress designated specific reaches to be included within the Wild and Scenic Rivers Act, and expressly reserved sufficient water to protect and preserve the outstanding features of the rivers so designated, without stating in the statute what those features were as to each specific river. Under *Chevron et seq.* this delegates to the agency the authority to determine what features Congress intended to protect as to each river. The Service has done so by defining "Outstandingly Remarkable Values" for each reach.

## 5. THE UNITED STATES HAS RESERVED THE AMOUNT OF WATER REASONABLY NECESSARY TO ACHIEVE THE PURPOSES OF THE WILD AND SCENIC RIVERS ACT.

The second part of the question concerning the process for quantification of the water right relates to the standard to be applied. Contestants argue that the reservation must be limited to the minimum amount necessary to accomplish the purposes of the Act. Contestants also define that "minimum amount" as "an amount below which the purposes of the WSRA would be entirely defeated." I am not convinced that this states the correct formula. Contestants' conclusion overstates the Supreme Court's pronouncement in *New Mexico, ibid.* which is cited for that proposition. *New Mexico* dealt with an implied reservation, not an express reservation. The Court required application of such a strict standard to the reservation involved in that case only because the reservation was implied, rather than express.

As the court said:

> Each time this Court has applied the "implied-reservation-of-water doctrine," it has carefully examined both the asserted water right and the specific purposes for which the land was reserved, and concluded that without the water the purposes of the reservation would be entirely defeated. This careful examination is required both because the reservation is implied, rather than expressed, and because of the history of congressional intent in the field of federal-state jurisdiction with respect to allocation of water.

It is, therefore, too much to say that *New Mexico* stated the standard under which the water right is to be quantified in this case, where an express reservation occurred.

Since this is an express reservation, my first reference is to the language of the statute itself. In the WSRA, Congress placed a limit on the reservation to quantities of no greater than necessary to accomplish the purposes of the Act. 16 USC Section 1284(c).

As noted above, the Conference Committee Report stated that the water right was limited to that amount "reasonably necessary" to the protection and preservation of the outstanding features of the river. This appears to be the correct formulation.

The formula proposed by the Contestants would appear to tolerate some degradation in the remarkable features of the rivers, by defining the amount of water at that level below which the purposes of the Act would be entirely defeated. That is, the Contestants appear to contemplate the possibility that the water right would be low enough to partially defeat Congress' purposes, so long as they are not "entirely" defeated. Stated in these terms, this is plainly too restrictive.

Whatever may be the case with implied reservations where the intent of Congress is unclear, as unexpressed, it is hardly likely that Congress, when it expressly reserves a water right to the United States, would intend the statute to be read in a way that would even partially defeat Congress' purposes. This is especially so when the stated purpose is to preserve and protect remarkable features of the federal reservation, itself. In other words, when Congress expressly reserves water for a specific purpose, it intends the scope of that reservation to be sufficient to achieve that purpose. Otherwise, Congress would state some lesser purpose for the reservation in the first place.

The scope of the reservation in each claim, therefore, is that amount of water reasonably necessary to assure that the free-flowing character of the reach, and the outstandingly remarkable values identified by the USFS will be preserved and protected.

## 6. THE QUESTION AS TO WHETHER THE WATER RESOURCES DEPARTMENT HAS FULFILLED ITS RESPONSIBILITY TO MEASURE STREAM FLOW IS NOT APPROPRIATE FOR SUMMARY DISPOSITION.

Contestants complain that the Oregon Water Resources Department (OWRD) was required to "measure" the flow of the streams at issue, and instead "estimated" those flows, in violation of its obligations under the controlling statute. OWRD counters that the meaning of the statutory requirement of "measurement" is inexact, and that, consequently, under *Springfield Education Assn. v. School Dist.* 290 Or 217, 621 P2d 547 (1980) and cases following, the interpretation of such an "inexact term" is left to the agency. Thus, according to OWRD, it is free to deem the methodology used in this case for determining stream-flow as "measurement."

At the same time, OWRD concedes that this methodology contains an element of estimation. Doubtless this is true, albeit perhaps to a lesser extent, of the method advocated by the Contestants, as is the converse. The problem presented at this stage in the proceedings is that there are insufficient undisputed facts in the record to allow an evaluation of the method chosen by the OWRD vis-à-vis any other alternative method, including whatever method is advocated by the Contestants. Without such an evaluation, it is impossible to determine whether the OWRD's interpretation of the term "measurement" is permissible, or whether the method proposed by the contestants is preferable, or even required. In sum, this is a mixed question of law and fact, and there is insufficient fact to allow me to apply the law.

## 7. CONCLUSION

The Motion for Summary Disposition by the USFS is granted in part, and denied in part, as follows:

The USFS acquired an expressly reserved water right in 1988 when the OOWSRA was enacted. This right is properly included within the adjudication process under ORS Chapter 539. The scope of this right is that amount of water reasonably necessary to preserve and protect the free-flowing character of the reaches at issue, and the Outstandingly Remarkable Values for those reaches identified by the USFS, subject to senior appropriations. The question of the OWRD's performance or failure to perform its duty to measure the flow of the streams is not ripe for decision, but is reserved for hearing.

The Motion for Summary Disposition by Moving Contestants is denied.

_Maurice F. Russell_

Dated: July 16, 2001

Maurice L. Russell, II, Administrative Law Judge,
Hearings Officer Panel.

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2001. I Mailed a true copy of the following: **ORDER ON MOTIONS FOR RULING ON LEGAL ISSUES AND FOR SUMMARY DISPOSITION**, by depositing the same in the U.S. Post Office, Salem, Oregon 97309, with first class postage prepaid thereon, and addressed to:

Jocelyn Somers
United States of America Forest Service
1220 SW 3rd., Room 1734
Portland, OR 97204

Holly McLean
United States of America Forest Service
1220 SW 3rd., Room 1734
Portland, OR 97204

David Gehlert and Michael Gheleta
U.S. Department of Justice
999 18th Street., Suite 945
Denver, CO 80202

David Moon
The Nature Conservancy
PO Box 82
Eugene, OR 97440

Robert Wigington
The Nature Conservancy
2060 Broadway., Suite 230
Boulder, CO 80302

Mark Stern
Klamath Basin Coordinator for;
The Nature Conservancy
821 SE 14th Ave.
Portland, OR 97214-2537

Robert G. Hunter
Waterwatch
27 North Ivy
Medford, OR 97501

Ronald S. Yockim
Attorney at Law
548 S.E. Jackson., Suite 7
PO Box 2456
Roseburg, OR 97470

Walter Perry III
Department of Justice
Assistant Attorney General
1162 Court St.
Salem, OR 97310

Renee Moulun
Klamath Basin Adjudication
Oregon Water Resources Dept
158 12th Street NE
Salem, OR 97301

Dick Bailey
Klamath Basin Adjudication
Oregon Water Resources Dept.
158 12th Street NE
Salem, OR 97301

Gerry Clark
Klamath Basin Adjudication
Oregon Water Resources Dept.
158 12th Street NE
Salem, OR 97301

Karen Snyder

## Certificate of Service

I hereby certify that the foregoing **UNITED STATES' THIRD NOTICE OF SUPPLEMENTAL AUTHORITY** has been served by placing true copies thereof in the United States mail, postage prepaid, to the attached service list, this ⁴ᵗʰ day of December, 2001.

David W. Gehlert

## CERTIFICATE OF SERVICE LIST FOR
### *STATE OF NEW MEXICO V. ARAGON*
### CV 7941 SC

Vickie L. Gabin, Esq.
Special Master
US District Court
US Courthouse
P.O. Box 2384
Santa Fe, NM 87504-2384

Karla McCall
Data Manager
Aqua Tech
1315 Sagebrush Drive, SW
Las Lunas, NM  87031

Edward G. Newville, Esq.
NM State Engineering Office
Legal Division
P.O. Box 25102
Santa Fe, NM  87504-5102

David Benavides, Esq.
Northern NM Legal Serv.
P.O. Box 5175
Santa Fe, NM  87502

Frank M. Bond, Esq.
The Simons Firm, LLP
P.O. Box 5333
Santa Fe, NM  87502-5333

Bradley S. Bridgewater, Esq.
USDOJ-ENRD
999 18th St., Suite 945
Denver, CO  80202

Annie Laurie Coogan, Esq.
1520 Paseo de Peralta
#E
Santa Fe, NM 87501

Jeffrey L. Fornaciari, Esq.
Hinkle, Cox, Eaton, Coffield & Hensley
P.O. Box 2068
Santa Fe, NM  87504-2068

Mary Ann Joca, Esq.
US Department of Agriculture
Office of General Counsel
517 Gold Ave., SW,
Rm 4017
Albuquerque, NM  87102

Steven L.  Bunch, Esq.
NM State Highway &
Transportation Dept.
P.O. Box 1149  -  Room 123
Santa Fe, NM  87504-1149

Benjamin Phillips, Esq.
John F. McCarthy Jr., Esq.
Paul L. Bloom, Esq .
White, Koch, Kelly & McCarthy
P.O. Box 787
Santa Fe, NM  87504-787

Peter B. Shoenfeld, Esq.
P.O. Box 2421
Santa Fe, NM  87504-2421

Lester K. Taylor, Esq.
Nordhaus, Haltom, Taylor, Taradash & Frye
500 Marquette Ave., NW
Suite 1050
Albuquerque, NM  87102

Susan G. Jordan, Esq.
Nordhaus, Haltom, Taylor, Taradash & Frye
200 West De Vargas Street
Suite 9
Santa Fe, NM 87501

John W. Utton, Esq.
Sheehan, Sheehan & Stelzer
P.O. Box 271
Albuquerque, NM 87103-0271

Fred Vigil, Pro Se
P.O. Box 687
Mendanales, NM  87548-687

Fred J. Waltz, Esq.
Box 6390
Taos, NM 87571-4014

C. Mott Woolley, Esq.
112 W. San Francisco, #312D
Santa Fe, NM  87501-2068

Randy Bramer, Esq.
USDA, Office of the General Counsel
P.O. Box 25005
Denver, CO  80225-0005

Joseph van R. Clarke, Esq.
Cuddy, Kennedy, Hetherington, Albetta &
Ives
P.O. Box 4160
Santa Fe, NM 87502-4160

John E. Farrow, Esq.
Fairfield, Farrow & Strotz
P.O. Box 35400
Albuquerque, NM 87176-5400

Randolph B. Felker, Esq.
Felker, Ish, Hatcher, Ritchie, Sullivan &
Geer
911 Old Pecos Trail
Santa Fe, NM 87501

Mary Humphrey, Esquire
P.O. Box 1574
El Prado, NM 87529

Randy E. Lovato
8100 Rancho Sueno Court, NW
Albuquerque, NM 87120-3488

Lucas O. Trujillo
P.O. Box 57
El Rito, NM 87530

Christopher D. Coppin, Esq.
NM Attorney General's Office
111 Lomas Blvd., NW
Suite #300
Albuquerque, NM 87102

Darcy S. Bushnell
Water Rights Attorney
USDC-DCNM
333 Lomas Blvd. NW
Albuquerque, NM  87102-2272

Charles T. DuMars, Esq.
Law & Resource Planning Associates
201 Third Street, NW
13th Floor, #1370
Albuquerque, NM  87102

Ronald Boyd, Esq.
208 Griffin St.
Santa Fe, NM  87501

Henry Jaquez
1110 Maez Rd.
Santa Fe, NM  87501

K. Janelle Haught, Esq.
P.O. Box 25944
Albuquerque, NM  87125