IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| STATE OF NEW MEXICO on the relation of the State Engineer, and THE UNITED STATES OF AMERICA,<br><br>　　Plaintiffs,<br><br>v.<br><br>RAMON ARAGON et al.<br><br>　　Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) No. CIV 7941-JC<br>) RIO CHAMA STREAM SYSTEM<br>)<br>) Section 5   Rio Gallina<br>) Subfile No. CHGA-003-0007 |

## DEFENDANTS
## JUAN AND PATSY CHAVEZ and JOSE AND PIEDAD CHAVEZ
## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

　　DEFENDANT Juan and Patsy Chavez and Jose and Piedad Chavez, by and through their attorney of record, respectfully submits the following proposed findings of fact and conclusions of law:

### Proposed Findings of Fact

Background

1. Juan and Patsy Chavez and Jose and Piedad Chavez are the current owners of Subfile No. 3-0007. *Tr. 2/7/03 at 6, 71, 92.*

2. Subfile No. 3-0007 encompasses 25.5 acres, separated into three tracts of 13.0 acres, 11.2 acres and 1.3 acres. *State Ex. 28.*

3. The tracts of land comprising Subfile No. 3-0007 are a portion of the United States patent granted to Leandro Chavez, Juan and Jose's great-grandfather.

7122

1

4. Leandro Chavez was the father of Apolonio Chavez, who in turn was the father of Tomas Chavez, Juan and Jose's father. *Tr. 2/7/03 at 7, 8, 10.*

5. Leandro Chavez, Juan and Jose Chavez's great grandfather, was granted 160 acres by the United States government pursuant to Homestead Patent No. 226769 in 1911. *State Ex. 33, 34.*

6. The government patent map shows that Patent No. 226769 is also the area claimed by Small Holding Claim 6028 ("SHC 6028"). *State Ex. 2.*

7. The land that constitutes Subfile No. 3-0007 is a portion of Patent No. 226769 and SHC 6028. *State Ex. 2.*

8. Apolonio Chavez, Leandro's son and Juan and Jose's grandfather, received homestead Patent No. 394477 1914. Apolonio Chavez's homestead patent is located immediately to the south of Leandro Chavez's homestead claim and patent. *State Ex. 2, 31, 32.*

9. Subfile No. 3-0006 contains a portion of Patent No. 394477 belonging to Apolonio Chavez. *State Ex. 2.*

10. Gavino Chavez was Leandro Chavez's brother. Gavino Chavez received homestead Patent No. 290943, which is located immediately north of that of Leandro Chavez. *Tr. 2/7/03 at 101, 124, 126, 169;. State Ex. 2.*

11. Until recent times and for at least four generations, the property belonging to Leandro Chavez, Apolonio Chavez and Gavino Chavez was irrigated and farmed as one ranch known as the Chavez Ranch.. *Tr. 2/7/03, Chavez at 7, 8, 10.*

12. In December 1915, Leandro and Ursulita Chavez conveyed their property, described as Small Holding Claim No. 6028, to Leandro Martinez and his wife. The

conveyance included "all improvements, corrals, houses, ponds, tanks and whatever other improvements." *State Ex. 35; Tr. 2/7/03 25, 106.*

13. Leandro Chavez conveyed the property to Leandro Martinez and his wife was made to secure a debt. *Tr. 2/7/03 at 25.*

14. Although Leandro Chavez and his family did not hold legal ownership to SHC 6028, the family lived on the property and continued to irrigate the land and harvest crops as before. *Tr. 2/7/03 at 39-41.*

15. On October 19, 1940, Leandro Martinez and Genoveva Martinez conveyed this same property to Apolonio Chavez (Leandro Chavez's son) and his wife, and the property was once again legally owned by the Chavez family. *State Ex. No. 35.*

16. The 1940 conveyance specified that the property came with both a derecho of water in the Rio Capulin, as well as a derecho of water from the Rio Gallina. *State No. 35; Tr. 2/7/03 at 110-111.*

Evidence of historic irrigation

17. The OSE has divided Subfile No. 3-0007 into three distinct tracts, which are 13.0 acres, 11.2 acres and 1.3 acres in size, none of which it recognizes as having water rights. *State Ex. 38.*

18. The State has recognized water rights for the lands underlying Subfile No. 3-0006, which lies immediately south of Subfile No. 3-0007. *State Ex. 29; State Ex. 42.*

19. The lands underlying both Subfile Nos. 3-0006 and 3-0007 were once owned by Apolonio Chavez and were irrigated together as part of one ranch. State Ex. 31, 32, 36; *Tr. 2/7/03 at 18, 19.*

20. The lands underlying Subfile Nos. 3-0006 and 3-0007 are indistinguishable in aerial photographs. *Tr. 2/7/03 at 63.*

21. Aerial photographic evidence indicates that all three tracts of Subfile No. 3-0007 and Subfile No. 3-0006 have been consistently irrigated during the period from before 1935 to 1996. *Def. No. 37 at 6.*

22. All three tracts of Subfile 3-0007 and Subfile 3-0006 were irrigated in 1935. All of the 11.2 tract and most of the 13.0 acre tract of Subfile 3-0007 and Subfile 3-0006 were irrigated in 1959. All three tracts of Subfile 3-0007 were irrigated in 1963, 1981 and 1995. *Def. Ex. 37 at 5; Tr. 2/7/03 at 54, 55, 162; State Ex. 42 at 1-2.*

23. All three tracts of Subfile 3-0007 do not appear irrigated in 1974. *Def. Ex. 37 at 5; Tr. 2/7/03, Cooper at 55; State Ex. 42 at 2.*

24. An analysis of climatic data available from the National Oceanic and Atmospheric Administration show that the years 1959 and 1974 were below average in precipitation at the Wolf Canyon weather station and in the Gallina region. The Wolf Canyon weather station is the closest weather station to the Gallina region and is the appropriate weather station to use when analyzing probable climatic conditions in the Gallina region. *Tr. 1/28/03 at 66, 76; Def. Ex. 1 at 3, 7.*

25. If the winter snowpack is below average, there will be less water available for irrigation in the spring. While summer rains may provide a supplement to irrigation, they don't generally result in increased ditch flows; often surface water from snowpack runoff is the only water available for irrigation in the runoff season. Def. Ex. 1 at 3; *Tr. 1/28/03 at 77, 78.*

4

26. Dry soil conditions make a difference in the amount of water that will be available for irrigation, as more water is needed. *Tr. 1/28/03,* Rodriguez at 80.

27. There was below normal precipitation in the months June-December 1973. Together with the dry baseline soil conditions from 1973 and below normal precipitation for the months February -April 1974, there were diminished surface water supplies for irrigation in 1974. *Def. Ex. 1 at 3.*

28. All three tracts of Subfile 3-0007 do not appear irrigated in 1989. *Def. Ex. 37 at 5; State Ex. 42 at 2.* However, there are ditches leading to the fields and the fields appear to have been irrigated in the recent past but not by June 5, 1989 when the photograph was taken. *State Ex. 42 at 2; Def. Ex. 37 at 5; Tr. 2/7/03 at 55.*

29. It is reasonable to assume that the lands underlying Subfiles Nos. 3-0006 and 3-0007 have been irrigated from the same source. Tr. 2/7/03 at 64-65.

30. The Office of the State Engineer has recognized a pre-1907 irrigation water right established by Apolonio Chavez for Subfile No. 3-0006. *State Ex. 41 at 2.*

31. According to family history, Subfile No. 3-0007 and Subfile No. 3-0006 have both always been irrigated with water delivered by a lateral to the Cordova-Martinez Ditch. *Tr. 2/7/03 at 14, 16, 23-24.*

32. It is not reasonable to assume that a second ditch would be constructed if there was water from an existing ditch. It is reasonable to assume that irrigators would use the water from the better source. *Tr. 2/7/03 at 66-67.*

33. Apolonio Chavez was recognized as having a full derecho of water on the Cordova-Martinez Ditch and the Chavez family has always irrigated their land with the Apolonio Chavez derecho off the Cordova-Martinez Ditch. *Tr. 2/7/03 at 35-36, 70.*

34. Juan Chavez served as *mayordomo* of the Cordova-Martinez Ditch for 12 years. *Tr. 2/7/03 at 12.*

35. Evidence of irrigation based on aerial photography is more objective than other kinds of evidence such as declarations. *Tr. 2/7/03 at 50-51.*

36. On January 12, 1922, three ditch commissioners executed a "Declaration of Owners of Water Rights" for the Cordova-Martinez Ditch ("Declaration"), including a two page narrative and a 2 sheet map. The typewritten narrative has added handwritten notations and was filed as Declaration # 0462 with the Office of State Engineer on June 11 1923. The map sheets were filed on May 25, 1923. *State Ex. 30.*

37. There are inconsistencies between the Declaration narrative and the Declaration map. The narrative recognizes water rights for 343 acres belonging to 15 owners while map sheet 1 lists water rights for 413 acres belonging to 18 owners. Although the Declaration narrative recognizes water rights for 10 acres for Apolonio Chavez and water rights for 75 acres for Gavino Chavez, it does not state the date of origin for all the water rights. *State Ex. 30; Tr. 2/7/03 at 115-116.*

38. Declarations concerning irrigation and declaration maps, especially those filed in the early part of the twentieth century, are not always accurate. *Tr. 2/7/03 at 51.*

39. There may be a difference between statements contained in a declaration and the acreage on the ground. *Tr. 2/7/03 at 112-113.*

40. Neither Leandro nor Apolonio Chavez were signatories to either the 1923 written declaration or the declaration map. *State Ex. 30; Tr. 2/7/03 at 91-92.*

41. The 1923 Declaration map was signed by Victor Suazo, Gavino Chavez and Juan Jaquez on January 12, 1922. Gavino Chavez had previously contradicted Leandro

Chavez in connection with the Small Holding Claim proof filed by Leandro Chavez in 1911. *State Ex. 33; Tr. 2/7/03 at 86.*

42. It is possible that a declaration filed with the State Engineer could be contrary to an individual water user's interest without that users knowledge or consent. *Tr. 2/7/03 at 93.*

43. The 1940 deed to Apolonio Chavez from Leandro Martinez confirmed that the land underlying the disputed subfile had a derecho of water right from the Rio Capulin.

44. It is reasonable to assume that the derecho of water from the Rio Capulin was from the Cordova-Martinez Ditch. *Tr. 2/7/03 at 111.*

45. Lawsuit No. 504 of County of Rio Arriba, Territory of New Mexico was filed in August 1893 by several persons who irrigated with water from the Rio Gallina against Gavino Chavez, Leandro Chavez, Enrique Jacquez and Carlos Jacquez to enjoin them from taking more water from the Rio Gallina than a quantity that had been previously agreed upon. *State Ex. 43 at 8-9; Def. Ex. 45.*

46. The litigation ended with a stipulation that allowed the Plaintiffs full use of the flow of the Gallina River for four days and the Defendants full use of the flow of the Gallina River for three days. *Def. Ex. 45; State Ex. 43 at 9.*

47. The location of the ditch at issue in Lawsuit 504 was not specified in either the complaint, answer or judgment. *Def. Ex. 45.* There is no evidence that the ditch in dispute in the lawsuit was the Los Chaves Ditch as it has been platted by the Office of the State Engineer on the hydrographic survey map. *State Ex. 28A.*

48. No point of diversion could be found for the Los Chavez Ditch, nor could the ditch be traced from Subfile 3-0006 to the Rio Gallina. *State Ex. 28A.* There is no

7

documentary evidence of where the diversion was located or even if it existed. *Tr. 2/7/03 at 122, 147, 154.*

49. There is no sign of any connecting laterals from the ditch labeled as the Los Chavez Ditch to any portion of Subfile 3-0007 or 3-0006. *State Ex. 28A; Tr. 2/7/03, Rodriguez at 147, 148, 155*

50. The USGS topographic map depicts a small drainage heading generally north across the western edge of both Subfiles 3-0006 and 3-0007. A small pond is located on the drainage at the near the southwest corner of subfile 3-0007. In order for the Los Chavez Ditch to have delivered water to either Subfile 3-0006 or 3-0007, the ditch would have had to cross this drainage and there is no evidence of this. *Def. Ex. 43; State Ex. 28A; Tr. 2/7/03 at 151, 154.*

51. If water from the Rio Gallina was ever delivered to the property by the ditch known as the Los Chavez Ditch, it was long ago as the ditch was not in use in Tomas Chavez's lifetime. *Tr. 2/7/03 41-42.*

52. It is unreasonable to assume that water delivered by the ditch identified by the Office of the State Engineer as the Los Chavez Ditch has been used to irrigate the lands under Subfile No. 3-0007 since 1907.

53. It is reasonable to believe that the ditch in question in Lawsuit 504 was a lateral of the Placitas Ditch known as the "Davis lateral," which historically diverted water from the Rio Gallina to the lands patented to Enrique Jacquez and Gavino Chavez. *State Ex. 2, 28A.*

54. Enrique Jacquez was the owner of a homestead patent 219878 that was situated in Sections 9 and 16 of Township 23 North Range 1 East, and that was located

8

immediately adjacent to that of Gavino Ghavez in Section 9 and adjacent to a portion of that of Leandro Chavez in Section 16. *State Ex. 2, 43; Tr. 2/7/03, Baxter at 101-102, 128.*

55. The point of diversion for the Davis lateral of the Placitas Ditch is located to the east of Subfile 3-0012A. *State Ex. 28A*, which subfile is located within the Patent No. 219006, *State Ex. 2*, which is the patent number for Antonio Jose Jacquez. *State Ex. 43 at 19, n.18.* Antonio Jose Jacquez was the brother of Enrique Jacquez, Tr. 2/7/03, Baxter at 128, and was the person who had invited Defendants Chavez and Jacquez to make "modest use" of the Gallina River. *Def. Ex. 45, State Ex. 43 at 8-9.*

56. Aerial photography evidence and statements contained in the Patent claims of Leandro Chavez and Apolonio Chavez indicate that irrigation has occurred continuously on the lands underlying Subfile No. 3-0007 since 1888.

57. Subfile No. 3-0006 lies up gradient from Subfile No. 3-0007. It is not reasonable to assume that Apolonio Chavez, the predecessor in interest to both Subfile Nos. 3-0006 and 3-0007 used a separate sources of water to irrigate the contiguous subfiles.

58. It is reasonable to assume that Subfile No. 3-0007 has been irrigated with water from the Cordova-Martinez Ditch since before 1907.

**Proposed Conclusions of Law**

1. Beneficial use is the basis, measure and limit of the right to use water. NM Const. Art. XVI, Sec. 4.

2. Water was first applied to beneficial use on the subject lands prior to 1907.

3. Water rights acquired pursuant to common-law appropriations by parties or their predecessors-in-interest prior to the enactment of the state's water code in 1907 are

9

not dependent upon the existence of an application to or a permit from the state engineer. May v. Torres, 86 N.M. 62, 519 R. 2d 298 (1974).

4. Beneficial use is the use of such water as may be necessary for some useful and beneficial purpose in connection with the land from which it is taken. Erickson v. McLean, 62 N.M. 264 308 P.2d 983 (1957).

5. Water has been diverted from the Rio Capulin and applied to beneficial use on the subject properties for irrigation of crops on a consistent basis, whenever water has been available to do so.

6. Growing of crops is a beneficial use of water. State ex rel.Martinez v. McDermett, 120 N.M.327, 901 P.2d 745 (1995).

7. Subfile No. 3-0007 has valid water rights.

Respectfully submitted,

_____
MARY E. HUMPHREY,
Attorney for Defendants
P. O. Box 1574
El Prado, NM 87529-1574
(505) 758-2203

## CERTIFICATE OF SERVICE

I certify that a copy of this pleading was mailed to the following persons on the 2nd day of May, 2003.

| Ed Newville, Esq. | Special Master Vickie Gabin | Darcy Bushnell, Esq. |
| P. O. Box 25102 | U.S.District Court | USDC/DNM |
| Santa Fe, NM 87504 | P. O. Box 2384 | 333 Lomas Blvd. NE |
| | Santa Fe, NM 87504-2384 | Albuquerque, NM 87102 |

_____
Mary E. Humphrey