IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF NEW MEXICO

| | |
|---|---|
| STATE OF NEW MEXICO, *ex rel.* State Engineer<br><br>    Plaintiff,<br><br>    v.<br><br>RAMON ARAGON, *et al.*,<br><br>    Defendants. | 69cv07941-JEC-ACE<br><br>RIO CHAMA STREAM SYSTEM<br>Rio Gallina, Section 5<br><br>Subfiles No. CHGA-004-0003;<br>  CHGA-004-0004 |

### NOTICE OF FILING OF SPECIAL MASTER'S REPORT
### AND RECOMMENDATIONS ON DISPUTED SUBFILES

To:  Counsel of Record and parties <u>pro se</u>, Section 5 Distribution List

    You are hereby notified of the filing of the Special Master's Report and Recommendations on Disputed Subfiles, a copy of which accompanies this notice. This notice is given in conformity with the provisions of Fed.R.Civ.P. 53(e)(1), by direction of the Special Master.

                                          ROBERT M. MARCH
                                          Clerk of the United States District Court

                                              /electronic signature/
                                          By Darcy S. Bushnell, Staff Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF NEW MEXICO

| | |
|---|---|
| STATE OF NEW MEXICO, *ex rel.* State Engineer | |
| Plaintiff, | 69cv07941-JEC-ACE |
| v. | RIO CHAMA STREAM SYSTEM Rio Gallina, Section 5 |
| RAMON ARAGON, *et al.*, | |
| Defendants. | Subfiles No.  CHGA-004-0003; and CHGA-004-0004 |

SPECIAL MASTER'S REPORT
AND RECOMMENDATIONS ON DISPUTED SUBFILES

To: The Honorable John Edwards Conway  From: Vickie L. Gabin
    United States District Judge                          Special Master

        This Report recommends that the Court grant the water rights claims associated with Subfiles No. CHGA-004-0003 and CHGA-004-0004.

THIS MATTER is before the Special Master on the May 2, 2003, State of New Mexico's Proposed Findings of Fact and Conclusions of Law (Docket No. 7121), and the May 5, 2003, Defendants Faye Davis's and Abram Cordova's Proposed Findings of Fact and Conclusions of Law (No. 7124).

The evidentiary hearings on disputed subfiles Subfiles No. CHGA-004-0003 and CHGA-004-0004 were held January 28, 29, and 30, 2003.  State's Exhibits are denoted "SE," Defendants', "DE."

**A.  ISSUE PRESENTED**

The Pretrial Order entered January 21, 2003 (No. 7023) states that the disputed issue for

these proceedings is whether the tracts of land associated with these subfiles are irrigated by natural subirrigation in the flood plane of the river rather than by diversions from the Rio Capulin. The State's position is that subirrigation occurs and there is no man-made distribution system on the subject tracts. Consequently, there is no diversion of water out of the natural channel of the river. Defendants claim that they have diverted and continue to divert water from the Rio Capulin to irrigate these tracts and produce forage; the soil moisture content is high for a variety of reasons. I recommend that these water rights claims be affirmed.

## B. RECOMMENDED FINDINGS OF FACT

1. The Court has jurisdiction over the parties and the subject matter herein.

2. For Subfile No. CHGA-004-0003,

a. This 6.1 acre tract is owned by Faye Davis, who purchased it from Abram Cordova Jr.'s family. Tr. 1/28 at 103, 141-142.

b. The tract is irrigated and harvested by Abram Cordova pursuant to a business arrangement with Ms. Davis. Tr. 1/28 at 103, 105, 142-143.

c. Prior to Ms. Davis's purchase, this tract was owned by Abram Cordova, Jr.'s uncle; and Mr. Cordova irrigated and harvested this tract for his uncle. Tr. 1/ 28 at 103 - 104, 142; Tr. 1 /29 at 175.

3. For Subfile No. CHGA-004-0004,

a. This 6.2 acre tract is owned by the Abram Cordova family. SE 5; Tr. 1/28 at 100.

b. Abram Cordova, Jr. irrigates and harvests this tract, and has been doing so since he was a child; prior to this time, it was irrigated by his father and grandfather. Tr. 1/28 at 101-102, 146-147.

4. Both tracts are irrigated from the Rio Capulin by Mr. Cordova, by the use of a man-made channel which runs between the two points of diversion, temporary diversions made from dirt clods and pieces of plywood, and small laterals. Tr. 1/28 at 106-113, 133-134, 145-150, 157-158; Tr. 1/29 at 178-180, 185-189; DE 38, 39.

5. In 2001, when Mr. Cordova irrigated both tracts, he was able to harvest about 2,000 bales of hay from the tracts. Tr. 1/28 at 116, 117.

6. There was insufficient water to irrigate in spring of 2002. Tr. 1/28 at 114-115.

7. Mr. Cordova harvests native grasses whenever possible, and has sown timothy grass. Tr. 1/28 at 104-105; DE 9 at 1-2; Tr. 1/29 at 138-140.

8. Both tracts are located within the flood plain of the Rio Capulin and are periodically flooded by its flows during the spring run-off season and during storm events in the late summer. Tr. 1/30 at 19; DE 8 at 1,2.

9. The condition of the tracts can change in an irrigation season, depending on the availability of surface water and the occurrence of rain. Tr. 1/28 at 126-127.

10. Each year, Mr. Cordova harvests both tracts in their entirety except in places where it is too wet for the machinery to operate. Those areas vary from year to year. Tr. 1/28 at 127-128, 138-139.

11. The area in the vicinity of the tracts (and including the tracts) is hydrogeologically complex, and is characterized by relatively flat terrain, clay soils, and poor surface drainage, and localized aquifers. Tr. 1/30 at 6-15; DE 8 at 1,3.

12. There may be an artesian upflow of groundwater from the Poleo sandstone unit to the Rio Capulin and its alluvium. Tr. 1/30 at 30-31.

13. The Baltic rush-redtop plant-type community on the tracts of land contains many grass species that are classified as faculative wetland species. These species are found in both wetland and non-wetland areas, including irrigated meadows. Tr. 1/29 at 137-148, 160-162; DE 9 at 3.

14. Periodic irrigation, combined with poor drainage and high clay content in the soil, creastes conditions which support faculative wetland species. The existence of that species does not support a conclusion that artesian water sources irrigate the tracts in question. Tr. 1/29 at 170; DE 9 at 3.

15. Although existing geohydrologic conditions could create the potential for artesian flows in the area of subfile tracts, there is no specific data or observable field conditions that support a hypothesis that vegetation on the subfile tracts is supported by artesian flows. Tr 1/29 at 75-76, Tr. 1/30 at 14-17, 31; DE 9 at 3.

## C.  RECOMMENDED CONCLUSION OF LAW

I recommend the Court find that the above-cited tracts of land have been irrigated from the surface waters of the Rio Capulin and, consequently, have appurtenant, valid water rights.

Every water rights claimant bears the burden of proof with respect to the elements of the water right claimed.  See, State v. Abeyta, et al., No. 69cv07896-JEC-ACE, Order re: New Mexico's Motion for Court Action on Special Master's Report, entered July 23, 2001 (Docket No. 2806), which adopted the Special Master's recommendations that under New Mexico law, defendants bear the burden of proving every element of their water right claim (No. 2806).

Cultivation of crops is a beneficial use of water.  State ex rel. Martinez v. McDermett, 120 N.M. 327, 901 P.2d 745  (Ct. App. 1995).  An appropriation of water is perfected by the taking or diversion of water from a natural stream or other source of water supply, with the intent to apply it

to some beneficial use. Harkey v. Smith, 31 N.M. 521, 247 P. 550 (1926). A man-made diversion is necessary to establish an intent to divert and beneficially use an agricultural water right. State ex rel. Reynolds v. Miranda, 83 N.M. 443, 493 P.2d 409 (1972). There was conflicting testimony regarding the existence of diversion structures. I accept Mr. Cordova's testimony that he did and does divert the waters of the Rio Capulin for irrigation. The State cites to no authority which states that a diversion must be permanent and conform to any standard, nor am I aware of any prohibition against make-shift and impermanent devices.

Experts proferred opinions regarding the sources and frequency of occurrence of subsurface irrigation. There was no testimony, however, which suggested that the existence of subsurface water would preclude the need for diversion of the waters of the Rio Capulin, nor has any authority been cited to support that proposition. I accept Mr. Cordova's testimony that he irrigated when water from the Rio Capulin was available and the land wasn't otherwise too wet from periodic flooding and seepage. Thus, I recommend the conclusion that valid water rights attach to the lands described by these subfiles.[1]

                Respectfully submitted,

                  /electronic signature/
                SPECIAL MASTER VICKIE L. GABIN

---

[1] That said, one question remains: how much water is diverted from the Rio Capulin? The calculation of water quantity, however, has been deferred until a second phase of the litigation, so that water rights element is not addressed in this Report.