IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED
03 SEP -4 AM 10: 40

| | |
|---|---|
| STATE OF NEW MEXICO on the relation of the State Engineer, and THE UNITED STATES OF AMERICA, <br><br> Plaintiffs, <br><br> v. <br><br> RAMON ARAGON et al. <br><br> Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

69-7941
No. CIV 7941-BB
RIO CHAMA STREAM SYSTEM

Section 5  Rio Gallina

Subfile Nos. CHGA 3-0003A, B, C, D,
3-0004A & B, 3-0005

## DEFENDANT FAYE DAVIS'S
## OBJECTIONS TO SPECIAL MASTER'S REPORT

TO THE HONORABLE BRUCE D. BLACK:

DEFENDANT FAYE DAVIS, by and through her attorney and pursuant to Fed. R. Civ. P. Rule 53(e)(2), files these objections to the Special Master's Report and Recommendations on Disputed Subfiles, hereinafter "Report," filed July 21, 2003 (Docket No. 7202). The Report recommends that the Court deny the water rights claims associated with Subfile Nos. CHGA-003-0003A, B, C, D; CHGA 003-0004A, B; and CHGA 003-0005. These objections are filed and served in accordance with the Order of this Court extending the time in which to serve objections until September 1, 2003 (Docket No. 7213).

An evidentiary hearing on the subfiles was held on January 30, 2003. The issue presented during the hearing was whether the water rights appurtenant to the tracts of land associated with the subfiles had been either abandoned or forfeited. After finding as a fact that:

7216

> Ms. Davis never intended to abandon irrigation on her tracts of land, and if she could get the flumes replaced and get the ditch in good order, she would begin irrigating;

Finding No. 15, the Special Master nevertheless concluded that "the 13-year period of non-use between 1990 and 2002 (the last irrigation season before trial) constitutes abandonment of the claimed water right." Report at 9. Ms. Davis asserts that this conclusion is not supported by the evidence, the Special Master's findings of fact or relevant law.

### Relevant law

An appropriator can lose a water right through either forfeiture or abandonment. Although the theories are similar, forfeiture is governed by statute, while common-law abandonment requires the element of intent to abandon the right. State of New Mexico ex rel. Reynolds v. South Springs, 80 N.M. 144, 452 P.2d 478 (1969).

Forfeiture is statutorily controlled by NMSA 1978 §72-5-28 (1907). Generally, a party's water rights may be subject to forfeiture if she has not applied water to beneficial use for a period of four years and she has no acceptable excuses for non-use. Since 1965, forfeiture can only occur if the failure to use water beneficially persists after notice and declaration of non-use by the State Engineer. NMSA 1978 §72-5-28(A) (1907). No such notice was served in this case.

Whether abandonment of a right has occurred depends upon the facts and circumstances of each case. State of New Mexico ex rel. Reynolds v. South Springs, 80 N.M. 144, 452 P.2d 478 (1969). "Abandonment of a right is present only when intentional relinquishment occurs." Id. at 147, 481. When the State Engineer claims abandonment (or forfeiture) of water rights, it bears the burden of proof on that issue. State of New Mexico ex rel. Martinez v. McDermett, 120 N.M. 327, 901 P.2d 745 (N.M.App.1995). "To prove abandonment, the State Engineer must show that the owner relinquished the water rights with the intention to forsake such rights." Id., 120 N.M.at

332, 901 P.2d at 750 (N.M.App.1995). New Mexico courts have indicated that, in cases of abandonment, the evidence must be clear that it was the intent of the owner to abandon the right. State ex rel Reynolds v. Mears, 86 N.M 510, 525 P.2d 870 (1974).

The Special Master finds that Ms. Davis never intended to abandon her water rights. Despite this, the Special Master also finds that actions taken by Ms. Davis to preserve her water rights insufficient to do so. The question before this Court is therefore whether the evidence supports a finding that the span of time of non-use by Ms. Davis was so unreasonable as to raise a presumption of an *implied* intent to abandon her water rights. If the evidence does give rise to such a presumption, the Court must then determine whether the evidence supports a conclusion that Defendant's actions were insufficient to rebut the implied presumption.

**I.     The evidence does not support a conclusion of non-use since 1990.**

"The failure to use a water right for an unreasonable time is evidence of the intention to abandon it." South Springs, *supra*, at 146, 479. Therefore the factual determination concerning the numbers of years of non-use is critical to the determination of whether that span is so unreasonable as to raise the presumption of abandonment. The evidence in the record does not support the Special Master's conclusion at p. 9 of the Report that the water rights in this case have not been used since 1990.

Defendant claims the right to irrigate 44.6 acres; this disputed acreage is spread over 12 separate tracts and separated into 3 separate subfiles. *State Ex. 11*. The State's two experts testified, and the Special Master finds in Finding No. 7.a. (1.3 acre tract), Finding No. 8. (9.6 acre tract and 16.7 acre tract) and Finding No.10.a. (1.4 acre tract), that 29 acres appear to be irrigated in 1989. *Tr. 160-164, 172-175; State Ex. 11*. The State two experts also testified that none of the tracts in question appeared to be irrigated in 1995.

3

In contrast, the State offered **no** evidence of non-use or non-irrigation on any of the tracts in question during any of the intervening years, 1990 through 1995. The burden is on the State to prove non-irrigation during those intervening years. The State's evidence is conclusive only that the first year of non-use is 1995; any determination of unreasonableness" must derive start from this point in time.

Ms. Davis testified that irrigation became impossible at some point in time due to washout of flumes bridging a deep arroyo. *Tr. 54, 63-65*. This is the point of departure from which to toll non-use. The evidence concerning the actual date of this event is inconclusive. The State offered no evidence on this issue; its evidence is limited to non-use in the year 1995.

Although Ms. Davis testified she thought the flumes could have been destroyed in the mid 1980's, late 1980's or early 1990's, *Tr. 55*, she also testified that she could not pinpoint exactly when the flumes were destroyed. *Tr. 56*. Her testimony was that irrigation occurred whenever there was sufficient available water. *Tr. 61*.

The Special Master finds that "[a]bandonment of a right is presumed if water is not used in 8-16 years." Report at 7, citing State v. Abousleman, No. 83cv01041-JEC, Memorandum Opinion filed Jan. 23, 1998. In this case, the evidence establishes non-use from 1995-2002 only, seven years.

**II.     Even if the time of non-use due to collapse of the flume is deemed unreasonable, Ms. Davis's actions were sufficient to rebut the presumption that she intended to relinquish her water rights.**

Even if seven years were deemed to be unreasonable, the question of whether Ms. Davis abandoned her water rights does not end. "After a long period of nonuse, the burden of proof shifts to the holder of the right to show the reasons for nonuse." South Springs, 80 N.M at 148. "Non-use alone in not sufficient to show intent to abandon." Id.

New Mexico law recognizes ". . . the unfairness in loss of a water right through nonuse

4

where conditions beyond the control of the owner of such right prevent use." Chavez v. Guiterrez, 54 N.M. 76, 81, 213 P.2d 597, 600 (1950). This includes "shortage of water or other cause beyond her or their control." Id. at 81.

In this case, the cause of non-use is the washout of flumes crossing an arroyo. *Tr. 54*. Certainly, this is an event that was initially "outside" Ms. Davis's control. Finding No.14.c. states that "At three points the flumes must be replaced. Heavy equipment would be required to do so." The testimony by witnesses for both the State and Ms. Davis establish that the physical location of the worst collapse is in steep terrain, that heavy equipment will be needed to repair the flume, and that repair of the flume will be difficult and costly. *Tr. 74-76, 98, 114-115*.

The Special Master's findings reflect that Ms. Davis took steps to accomplish this repair. These include purchasing pipe in 1995 or 1996 in anticipation of an agreement with a contractor to do the actual repair. Finding No. 17. After this agreement fell through, Ms. Davis applied to the local Soil and Water Conservation District in 1997 for funding, which application was denied in 1999. Finding No. 16. Despite an inability to obtain funding to accomplish the major repair, "[s]ince that time, Ms. Davis hired people to get some of the ditch operable." Finding No. 16.

The Special Master found these actions to be too few and far between to rebut a presumption of abandonment. Ms. Davis finds herself in a "Catch 22" situation. Her application with the Soil and Water Conservation District was denied because her land had not been irrigated in the last 3 to 5 years. *Def. Ex. 14*. The testimony of witnesses for both the State and Ms. Davis indicated that repair of the flume was the greatest obstacle in making the ditch operable. *Tr. 75-76, 95, 98*. Much of the remaining repair was removing silt or trash, or replacing culverts. Finding No. 14.a. The State's expert testified that it would be wasted effort to maintain or repair the remainder of the ditch until this flume was repaired. *Tr. 120*.

Ms. Davis has not stood idly by during the time of non-use. Ms. Davis's application for funding was denied in April 1999, barely one year before she received a proposed consent order in this adjudication proceeding, and less than three years before trial in January 2003. Although she could not effect the most significant repair, she has taken actions to effect some repair. *Tr. 69*, Finding No. 16.

Whether Ms. Davis's predecessors-in-interest attempted repair to the ditch is immaterial. Ms. Davis testified that she began acquiring land in 1977, Tr. 45; she and her husband began acquiring the final tracts five or six years before the transaction was finalized in 1997. *Tr. 50-54, 66-67*. It is unknown exactly when the flume was destroyed, only that it occurred after the irrigation season of 1989 and before the aerial photographs taken in 1995. During the intervening time, Ms. Davis testified that she and her husband had assumed responsibility for maintaining the ditch prior to achieving actual ownership of the associated water rights in 1997. *Tr. 53-54*. The State's own evidence shows irrigation in 1989, necessarily indicating that the ditch was operable at that time. Therefore, Finding No. 18 does not support any inference that the water rights in question had been abandoned prior to Ms. Davis's actual possession of those rights.

The State has not met its burden in this case. It did not present evidence that the time of non-use has been unreasonable and the Special Master's finding to that effect is unsupported by the evidence. The evidence shows that, although she has not been successful as of this date, Ms. Davis has been diligent in working to repair the ditch and has not abandoned her water rights.

WHEREFORE, for the reasons stated above, Defendant asks the Court to find that the evidence is not sufficient to show that the water rights in question have been abandoned, and that the Court affirm water rights associated with the subfiles in question.

6

Respectfully submitted,

_____
MARY E. HUMPHREY
Attorney for Defendants
P. O. Box 1574
El Prado, NM  87529-1574
(505) 758-2203

## CERTIFICATE OF SERVICE

I certify that I served a copy of this pleading via United States mail, first class, on the following persons on the 2nd day of September, 2003.

Ed Newville, Esq.  
New Mexico Office of State Engineer  
P. O. Box 25102  
Santa Fe, NM  87504

Special Master Vickie Gabin  
U.S. District Court  
P. O. Box 2384  
Santa Fe, NM  87504-2384

_____
Mary E. Humphrey

7