IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

03 SEP 22 PM 1:05

STATE OF NEW MEXICO on the )
relation of the State Engineer, )
and THE UNITED STATES OF )
AMERICA, )
                                         )
      Plaintiffs, )
                                         )
v. )          No. CV 69-7941 BB
            )          RIO CHAMA STREAM SYSTEM
RAMON ARAGON et al. )
            )          Section 5  Rio Gallina
      Defendants )
            )          Subfile Nos. CHGA 004-0003 and
            )                    CHGA 004-0004

---

**DEFENDANTS ABRAM CORDOVA'S AND FAYE DAVIS'S
AND INTERVENOR MAESTAS-SANCHEZ DITCH'S
RESPONSE TO STATE OF NEW MEXICO'S
OBJECTIONS TO SPECIAL MASTER'S REPORT**

TO THE HONORABLE BRUCE D. BLACK:

DEFENDANTS ABRAM CORDOVA and FAYE DAVIS and INTERVENOR

MAESTAS-SANCHEZ DITCH record respond to the State of New Mexico's Objections to

Special Master's Report and Recommendations on Disputed Subfiles ("Objections"), filed on

September 2, 2003 regarding subfile numbers CHGA-004-0003 and CHGA 004-0004. The

Special Master in the Special Master's Report and Recommendations on Disputed Subfiles

("Report"), filed July 21, 2003 (Docket No. 7202), recommended that the Court grant the water

rights claims associated with the subfiles.

An evidentiary hearing on the subfiles was held on January 28-30, 2003.  Evidence

during the hearing included expert testimony and documentary reports by hydrologists for both

the State and Defendants, expert testimony and a documentary report by a botanist on behalf of

Defendants, testimony by employees of the Hydrographic Survey Bureau of the Office of the

State Engineer on behalf of the State, as well as lay testimony by claimant Abram Cordova's son, Abram Cordova, Jr., who has been responsible for irrigation and harvesting of the tracts in question.

The State, in the Background to its Objections, essentially re-argues its position at trial, implicitly urging this Court to disregard the Special Master's findings. In a water rights dispute, a reviewing court does not retry a disputed issue to reach a different result if there is evidence supporting the decision of the trial court.   State of New Mexico *ex rel*. Martinez v. Lewis, 118 N.M. 446, 882 P.2d 37 (N.M. App.1994).  In this case, the Special Master's recommendations are supported by the evidence.

With one exception, the State does not take issue with specific findings of the Special Master.  Rather, the State objects, that because the Special Master's findings do not specifically state that "surface water was removed or diverted out of the natural channel of the Rio Capulin," Objections at 5, the findings are inadequate to support a conclusion of law that claimants have proved all the elements necessary for a water right under New Mexico law to prove appropriation of water rights appurtenant to the tracts in question.  The State's objections are not supported by either the evidence in the record or by New Mexico statutes or case law.

I.     **The State did not argue at the hearing that the disputed subfile tracts lay within the natural streambed of the Rio Capulin.**

The issue presented during the hearing was whether the tracts of land associated with these subfiles were irrigated by diversion of water from the Rio Capulin.  Report at 3.  The State's position at the hearings was that "the tracts are natural subirrigated wetlands in the flood plane of the river, and there is no diversion of water out of the natural channel of the river."  Objections at 7, citing Final Pretrial Order filed  January 21, 2003.  Therefore, the State's position at hearing was that the tracts were *within the river's flood plain*, not that the tracts themselves were an integral part of the natural channel of the river.

2

The State now claims the disputed tracts are "located within the natural channel of the Rio Capulin," and that the "channel of the river is delineated or defined by the toes of the slopes on the south and north borders of the wetland area, slopes leading to a plateau about 40 feet above the river." Objections at 6.

To support its new hypothesis, the State cites to the testimony of Mr. Mark Salazar, an employee of the Hydrographic Survey Bureau, who characterized the properties as being "down within what appears to be the riverbed." Vol. I, Tr. 1/28/03 at 172. Mr. Salazar admitted, however, that he was not qualified to make such characterizations, and he deferred questions concerning descriptions of the landmass to the State's expert hydrologist, Ms. Susan Hoines.[1] Vol. I, Tr. 1/28/03 at 188-189.

Ms. Hoines, however, did not testify or include in her written report a characterization of the tracts as being within the natural streambed of the Rio Capulin. In contrast, her testimony was that one of the tracts was "vegetated with grasses of various types. It had a *channel or stream* in the middle of it . . ." Vol. II, Tr. 1/29/03 at 84 (emphasis added). This corroborates Mr. Salazar's testimony that he observed a channel, about 2 to 2 ½ feet wide and from 2 to 2 ½ feet deep, that carried water across the tracts. The level of water was below that of the level of the surrounding land. Vol. I, Tr. 1/28/03 at 172-174. Both Mr. Salazar's and Ms. Hoines's testimony supports the Special Master's findings that the tracts were irrigated by diverting water from the channel traversing the floodplains.

The Special Master specifically found that both tracts are located within the flood plain of the Rio Capulin. Report, Finding No. 8, and that the tracts were irrigated by use of a man-made channel which runs between tow points of diversion across the flood plain. Report, Finding No.

---

[1] Mr. Salazar was qualified to testify concerning Global Information Systems ("GIS") mapping techniques; his educational credentials included an associate's degree in drafting. Vol. I, Tr. 1/28/03 at 90. Mr. Salazar's testimony

4. These findings are supported not only by testimony by Defendants' expert hydrologist, Vol. III, Tr. 1/30/03 at 7, 19 ("channel is the area of ground that is--that contains the flow of the Rio Capulin"), 22-23 and expert botanist/ecologist, Vol. II, Tr. 1/29/03 at 149, 157, but also by testimony by the State's own witnesses. Mr. Lorenzo Romero, an employee of the Hydrographic Survey Bureau, stated that he observed "an area that is irrigated, and it appear like a floodplain, I guess. That's what I would characterize it as." Vol. II, Tr. 1/29/03 at 14. Mr. Romero also characterized the channel running across the floodplain as the Rio Capulin. Vol. II, Tr. 1/29/03 at 23.

Despite all evidence to the contrary, the State now defines the boundaries of the Rio Capulin to include its floodplain. It argues, that since the water for irrigation is used solely within the floodplain, "there is not taking or diversion of water from the *watercourse*. . ." Objections at 7(emphasis added). The State cites to NMSA 1978, § 72-1-1(1907) to bolster its argument that "there is no diversion out of the natural channel of the Rio Capulin." Objections at 6-7. That statute defines a "watercourse" as "a river, creek, arroyo, canyon, draw or wash, *or any other channel having definite banks and bed with visible evidence of the occasional flow of water.*" NMSA 1978, § 72-1-1(1907)(emphasis added). The *watercourse* from which Defendants divert is that *channel* having definite banks and bed with visible evidence of the flow of water that all witnesses testified about.

The State would require beneficial use of water outside the floodplain boundaries of a stream. If this requirement was upheld, there would indeed be very few irrigation water rights in New Mexico, as it is the lands within the floodplains of rivers that provide the best agricultural lands. The State's position is not supported by either the facts or the law.

---

concerned mapping of specific locations within the tracts where Ms. Hoines collected plant samples. Vol. I, Tr. 1-28/03 at 167-217.

II.     **The New Mexico Constitution and Statutes do not require permanent diversion structures.**

The State argued below, and now continues its objections, that "man-made works are essential to legally establish a water right for agriculture." Objections at 6. However, the Special Master correctly concluded that there is no prohibition against make-shift and impermanent devices to accomplish "man-made" diversion of water.

Neither the New Mexico Constitution nor the water code requires a permanent diversion structure. The New Mexico State Constitution does not on its face require a diversion for a valid water appropriation; it provides only that "[b]eneficial use shall be the basis, the measure and the limit of the right to use water." N.M.Const. Art.XVI, §2. This is in contrast to other state constitutions adopting the doctrine of prior appropriation that expressly make reference to the "right to divert." See Idaho Const.Art. XV, §3; Colo. Const. Art. XVI, §6; Neb. Const. Art. XV, §6. Thus, it is beneficial use, rather than the diversion, of water that is the constitutional basis of a water right in New Mexico. NM Att'y Gen Op. No. 98-01.

New Mexico's statutes also do not expressly specify that a diversion structure is necessary for the appropriation of water. In contrast, the water code speaks about construction and completion of "works." See NMSA 1978, §§72-5-1, 72-5-6, 72-5-8, 72-5-9, 72-5-10, 72-5-13. While "works" is not defined in the statute, it is clear that the term includes "*canal*, acequia, reservoir or other works" NMSA 1978 §72-5-15 (emphasis added). In this case, the man-made channel easily fits into the statutory definition of works.

Neither the constitution nor the statute requires a permanent diversion structure. In fact, ditch owners are under no requirement to have a headgate unless requested to do so by the state engineer. NMSA 1978§72-5-20. In this case, the state engineer has never requested Defendants to install a headgate and thus one is not necessary.

III.    **New Mexico case law does not support the State's position.**

5

The State relies on State *ex rel*. Reynolds v. Miranda, 83 N.M. 443, 493 P.2d 409 (1972),

Harkey v. Smith, 31 N.M. 521, 247 P.550 (1926), and  NMSA 1978, §72-1-1 to support its

position that "an asserted diversion of water for agricultural activities within the natural channel

of a stream does not satisfy diversion requirements," Objections at 6, for an appropriative right

under New Mexico law.  The State's argument is misplaced, because the evidence shows that the

agricultural activities take place upon the floodplain, not within "the natural channel," of the Rio

Capulin.  Even if it did not, the cases relied upon by the State do not support its position.

The State appears to be taking aim at the Special Master's conclusion of law that  "[a]n

appropriation of water is perfected by the taking or diversion of water from a natural *stream or*

*other source of water supply*, with the intent to apply it to some beneficial use."  Report at 5-6

(emphasis added.)  The Special Master cites Harkey v. Smith for support.  The court in Harkey

said "the appropriation of water is accomplished by taking or diversion of it from a natural

*stream or other sources of water supply* . . ." Harkey v. Smith, 31 N.M. 521, 525, 247 P.550, 551

(1926)(emphasis added).

Harkey stands for the proposition that in a prior appropriation state, that "it is quite as

necessary to make use of the water as it is to divert it . . . The intent, diversion and use must

coincide." 31 N.M. at 525, 247 P. at 551.  In this case, the Special Master found that these three

elements, intent, diversion and use, did indeed coincide, and that the subject tracts should be

granted water rights.

The main issue in Harkey was whether defendants could gain a "primary" right to the use

of some portion of plaintiff's water in the winter season, because plaintiffs had failed to use

water for four consecutive winter seasons. A court decree had earlier established the respective

water rights of plaintiff and defendants. The New Mexico Supreme Court found  that defendants'

rights were at "all times subservient to the primary right of plaintiffs, and can only be exercised only after plaintiffs' needs have been supplied."

Relevant to the facts in this case, the Harkey court did find that the right to use water for agricultural purposes is a "the right to use water "at such times, for such crops, and in such a manner as experience may dictate as calculated to bring about the best results.  This must be necessarily so, because agriculture is not an exact science and must be varied from year to year according to the results obtained and the knowledge acquired from experience." 31 N.M. at 529, 247 P. at 553. However, the Harkey court mades no pronouncement concerning the location of the fields upon which agriculture occurs.

The state then relies upon State ex rel. Reynolds v. Miranda for the proposition that "man-made works are essential to legally establish a water right for agriculture." Objections at 6.  Miranda holds only that "man-made diversion, together with intent to apply water to beneficial use and actual application of the water to beneficial use" is necessary in order to appropriate water. State ex rel. Reynolds v. Miranda, 83 N.M. 443, 445, 493 P.2d 409, 411 (1972).  The state reads the non-existent word "works" into the court's holding in the case. The court in Miranda does not hold that "man-made diversion" must include some kind of permanent structure.

The holding in Miranda applies only to the facts present in that case;  the facts in this case are far different.  In Miranda, the source of water was a water course, within which, "[f]ollowing certain rains, water would flow intermittently through the wash, across defendants property, and into the Rio Grande River." 83 N.M. at 444, 493 P.2d at 409.  At some point in time, this water naturally was diverted from the wash into an arroyo, thus by-passing defendants' property.  Subsequent to this event, defendant and his predecessors in interest made no attempt to divert water from the arroyo back into the wash.  Therefore, not only was there no diversion of

7

water, there was also no evidence that defendants ever intended to appropriate the water by taking action to divert the water.

In this case, while the tracts are located within the floodplain of the Rio Capulin, the water is contained in a well-defined channel that was created by Defendants' agent, Abram Cordova, Jr. Mr. Cordova testified that, whenever the fields are in need of water for irrigation, he diverts water by blocking the water with the use of boards and each clods, thus backing up the water in the manmade channel, constructed for the purpose of directing the water. The Special Master correctly found that Defendants had made a man-made diversion of water from the channel.

**IV.    The Special Master's finding that the entire 6.1 acre Davis tract is irrigated by diversions from the man-made channel is not clearly erroneous.**

The State argues that Special Master's Finding No. 4 is not supported by the record to the extent that "the finding implies that the entirety of the two tracts can be irrigated from these diversions." Objections at 8. The State argues that the eastern portion of the Davis tract lie upstream of the diversion points, and thus cannot be irrigated. However, the record shows that the point of diversion for the Davis tract lies near the southeastern edge of the tract. The upstream portion lies *outside* of the tract. See Def. Ex. 38. The testimony regarding diversion from this point is inconclusive. Mr. Cordova testified that he blocked the channel at the orange dot on Defendants' Exhibit 38 and that doing so, caused the water to overflow the bank of the channel. Vol. I, Tr.1/28/03 at 105-107 ( 'It flows right--like the southeastern part of Faye's property, and then it cuts right across the middle of it." Tr. 1/29/03 at 107) However, the State's witness also testified that the tract in question is essentially flat, with no high points or low points. Vol. I., Tr. 1/28/03 at 186-189. The State concedes that this tract could be and is irrigated by flooding. Objections at 8. The State's expert agreed that flooding could be caused either by natural events or by man-made diversion. Vol. II, Tr. 1/29/03 at 108 . Therefore, if it

8

is possible to irrigate the Davis tract by natural flooding, as admitted by the State, it is also possible to irrigate the tract by creating a flood by backing up the river at the point of diversion noted on Defendants' Ex. 38.

The State did not offer any evidence concerning the physical impossibility of flooding the entirety of the Davis tract. To the contrary, its expert testified that the Davis tract is subject to periodic flooding. The Special Master's finding is not clearly erroneous and should be upheld.

**V.    The record supports the Special Master's findings and conclusions that Defendants had placed water to beneficial use.**

Finally, the State argues that Defendant failed to proved that they had placed water to beneficial use, implying that the Special Master's Findings No. 5 through 10, regarding Defendants' irrigation and harvesting practices, and her conclusion of law that "[c]ultivation of crops is a beneficial use of water" are erroneous.

The record shows while the subject tracts are prone to natural flooding at times, that additional irrigation water is applied as needed.   Both the State's expert, Ms. Hoines, and Defendants' expert, Mr. Dunmire, testified that water is essential for plant production. Vol. II, Tr. 1/29/03 at 109, 171. Mr. Cordova, Jr., the person responsible for irrigation and harvesting, testified that he diverted water as needed, and that diversion of water was necessary for the irrigation of and cultivation of the grass hay harvested from the tracts. Vol. II, Tr. 1/29/03 at 182-183.

The physical conditions existent at the tracts are both a blessing and a curse for Defendants.  While the flat topography and poor drainage conditions help the tracts to retain water once applied (either through flooding or irrigation), the timing of the application of the water is essential.  Report, Findings No. 9 & 10. As the <u>Harkey</u> court noted, "The farmer must have the water whenever, in pursuance of any reasonable plan, he requires it for his crops, or the preparation of his lands for planting; other wise his right will be too precarious to be of any

9

practical value." 31 N.M. at 530, 247 P. at 553.  The right to use water for agricultural purposes
is a "the right to use water "at such times, for such crops, and in such a manner as experience
may dictate as calculated to bring about the best results.  This must be necessarily so, because
agriculture is not an exact science and must be varied from year to year according to the results
obtained and the knowledge acquired from experience." 31 N.M. at 529, 247 P. at 553.

        In this case, Defendants' have proven that they use "water at such times, for such crops
and in such a manner as experience may dictate to bring about the best results." The Special
Master, after hearing testimony and reviewing the evidence, correctly found that Defendants'
diverted water for irrigation purposes and that such water was placed to beneficial use. Her
recommendations that the tracts be granted water rights for agricultural purposes should be
upheld.

**VI.    Conclusion**

        For the reasons stated above, Defendants and Intervenor respectfully ask this Court to act
upon the Recommendations made in the Special Master's Report, overrule the State's objections
and to grant the water rights claims associated with Subfile Nos. CHGA 004-0003 and CHGA
004-0004.

                        Respectfully submitted,


                        MARY E. HUMPHREY
                        Attorney for Defendants and Intervenor
                        P. O. Box 1574
                        El Prado, NM 87529-1574
                        (505) 758-2203

## CERTIFICATE OF SERVICE

I certify that I served a copy of this pleading via United States mail, first class, on the following persons on the 22nd day of September, 2003.

Ed Newville, Esq.
New Mexico Office of State Engineer
P. O. Box 25102
Santa Fe, NM  87504

Special Master Vickie Gabin
U.S. District Court
P. O. Box 2384
Santa Fe, NM  87504-2384

Mary E. Humphrey