IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| STATE OF NEW MEXICO, *ex rel.* State Engineer | |
| Plaintiff, | CV 69-7941 BB-ACE |
| vs. | RIO CHAMA STREAM SYSTEM Section 5: Rio Gallina |
| RAMON ARAGON, *et al.,* | |
| Defendants. | Subfile Nos.  CHGA-003-0003A<br>CHGA-003-0003B<br>CHGA-003-0003C<br>CHGA-003-0003D<br>CHGA-003-0004A<br>CHGA-003-0004B<br>CHGA-003-0005 |

**STATE OF NEW MEXICO'S RESPONSE
TO DEFENDANT FAYE DAVIS'S OBJECTIONS
TO SPECIAL MASTER'S REPORT**

Plaintiff State of New Mexico ("State") files this Response to Defendant Faye Davis's Objections to Special Master's Report (Docket No. 7216) filed September 4, 2003 ("Objections"). The State respectfully requests that this Court approve the Special Master's Report and Recommendations on Disputed Subfiles (Docket No. 7202) filed July 21, 2003 ("Special Master's Report" or "Report").

**I.  IN ORDER TO REBUT A PRESUMPTION OF ABANDONMENT, THE NONUSER MUST ESTABLISH FACTS OR CONDITIONS THAT EXCUSE THE PERIOD OF NONUSE–THE PRESUMPTION IS NOT OVERCOME BY STATEMENTS OF SUBJECTIVE INTENT.**

The objections of Defendant Davis to the Special Master's Report note the apparent inconsistency between Special Master's Finding No. 15 and the ultimate recommended legal

conclusion that a 13-year period of nonuse between 1990 and 2002 constitutes abandonment of the claimed water rights. In Finding No. 15, the Special Master found as a fact that "Ms. Davis never intended to abandon irrigation on her tracts of land, and if she could get the flumes replaced and get the ditch in good order, she would begin irrigating." Report, Finding No. 15. As will be discussed below, while the abandonment of water rights is present only when intentional relinquishment occurs, once a presumption of intent to abandon is established the nonuser must show some fact or condition excusing the period of nonuse to rebut the presumption. Thus the subjective intent of the nonuser and any finding concerning subjective intent is not determinative or even material. Decisions in New Mexico and other western states support this conclusion.

<u>Doctrine of Abandonment.</u>   Common law abandonment of the right to use water requires both nonuse and the intent by the owner to relinquish the right. *State ex rel. Reynolds v. South Springs Co.*, 80 N.M. 144, 146, 452 P.2d 478, 480 (1969). However, as stated in *South Springs*, the failure to use a water right for an unreasonable period of time is evidence of the intention to abandon it. *Id.* at 146, 452 P.2d at 480. Thus the requisite intent may be either express or implied, and may be inferred from acts or failures to act that are inconsistent with an intention to retain the water right. *Id.* at 147, 452 P.2d 478 (quoting *Green Valley Ditch Co. v. Frantz*, 54 Colo. 226, 228, 129 P. 1006, 1008 (1913). The failure to keep necessary irrigation works in repair, or other acts inconsistent with an intent to make use of water, is evidence of the intent to abandon. *South Springs*, 80 N.M. at 146, 452 P.2d at 480. Finally, proof of nonuse for an unreasonable period of time establishes a presumption of abandonment and shifts the burden to the owner to show reasons that would excuse the period of nonuse. *South Springs* at 148, 452 P.2d at 482; *see also State v. Abousleman*, No. 83cv01041-JEC, Memorandum Opinion and Order, February 7, 1994, at 3.

In connection with a nonuser's expressions of intent, the New Mexico Supreme Court in *South Springs* quoted with approval the following discussion by the Supreme Court of Colorado:

> We conclude that from these statements that while the burden of proof of intent to abandon is on him who asserts it, yet such intent may be proved by evidence of acts and failure to act as well as by mere words; that nonuse constitutes such failure to act; that proof of nonuse for an unreasonable period establishes a presumption of abandonment and is prima facie proof thereof; that nonuse for the period here proved is an unreasonable period; that to rebut the presumption of abandonment arising from such long period of nonuse, <u>there must be established not merely expressions of desire or hope or intent, but some fact or condition excusing such long nonuse</u>.

*South Springs*, 80 N.M. at 148, 452 P.2d at 482 (emphasis added) (quoting *Mason v. Hills Land & Cattle Co.*, 119 Colo. 404, 204 P.2d 153 (1949)).  Decisions in Colorado continue to follow the principles set out in *Mason* with regard to subjective intent.  For example, the Colorado Supreme Court in *Haystack Ranch, LLC v. Fazzio*, recently stated as follows:

> Once there is a presumption of intent to abandon, the burden of going forward shifts to the water right owner to introduce evidence rebutting the presumption. <u>Evidence sufficient to rebut the presumption of abandonment must consist of more than mere subjective declarations</u> that the owner did not intend to abandon the water right.  To rebut a presumption of abandonment, the owner must establish some fact or condition that excuses the nonuse or shows the owner's intent not to abandon the water right.

*Haystack Ranch, LLC v. Fazzio*, 997 P.2d 548, 552 (Colo. 2000) (emphasis added) (citations omitted); *see also Danielson v. City of Thornton*, 775 P.2d 11 (1989) (same); *Beaver Park Water, Inc. v. City of Victor*, 649 P.2d 300 (1982) (same).  Under decisions in both New Mexico and other western states such as Colorado, statements of subjective intent are legally insufficient to overcome a presumption of abandonment.  For the reasons explained below, a separate finding of intent to abandon is also unnecessary once the presumption has been established.

The New Mexico Supreme Court has addressed the use of evidentiary presumptions in a number of cases that do not involve water rights.  The reasoning of these decisions indicates that

under the substantive law of New Mexico it is unnecessary to make an additional finding of an intent to abandon water rights once the presumption of abandonment has been established. For example, in *Adoption of J.J.B. v. Bookert*, 119 N.M. 638, 894 P.2d 994 (1995), a case involving the termination of parental rights based upon abandonment, the Court explained that the ultimate fact of abandonment could be inferred from proof of the various conditions set forth by statute creating a rebuttable presumption of abandonment. *Id.* at 647, 894 P.2d at 1003. The Court pointed out that New Mexico had adopted an objective evidentiary definition of abandonment and had rejected a subjective intent standard. *Id.* at 648, 894 P.2d at 1004. The Court explained that a finding of intent to abandon was unnecessary to prove legal abandonment once the presumption was created. *Id.* n.8.

The State believes that the New Mexico Supreme Court would reach an analogous decision in this case. That is, once a presumption of the abandonment of water rights is shown by the nonuse of water for an unreasonable period of time, the ultimate fact of abandonment may be inferred from factors giving rise to the legal presumption, and a separate finding of intent is not required. In addition, as explained in *South Springs*, the presumption may be overcome only by showing facts or conditions that would excuse the period of nonuse.

Facts or conditions excusing nonuse. Once a rebuttable presumption of the abandonment of water rights is established, the water rights claimant has the burden to present evidence supporting a legally valid excuse for the nonuse of water. *South Springs*, 80 N.M. at 148, 452 P.2d at 482. Nonuse of water is excused if water is not available to the irrigator through no fault of his own and if he or she continues to be ready and willing to irrigate at any time. *See Chavez v. Gutierrez*, 54 N.M. 76, 79, 213 P.2d 597, 600 (evidence that periods of nonuse were caused by drought not sufficient to establish abandonment); *New Mexico Products Co. v. New Mexico Power Co.*, 42 N.M.

311, 318, 77 P.2d 634, 641 (1937) ( no abandonment when water fails to reach the point of diversion of the appropriator and he is at all times ready and willing to put the water to beneficial use). The facts in *Chavez* and *New Mexico Products Co.* should be compared with those in *South Springs*. In *South Springs* the Court upheld a finding of abandonment stating: "In the case before us, the ditches (if any) were not usable and the appellants made no effort to recover their water rights . . . showing a definite lack of diligence." *South Springs*, 80 N.M. at 148, 452 P.2d at 483. The facts in *South Springs* are similar to those in this case. Here, a 2 ¼ mile irrigation lateral that once supplied irrigation water to the defendant's tracts is now in a state of complete disrepair and is inoperable. *See* State's Exhibit No. 13; Transcript of Proceedings, Vol. III, January 30, 2002, pp. 88-103 (hereinafter "Tr."). The defendant, and her predecessor's in interest, had an obligation to repair the irrigation lateral in order to recover their rights and be "ready, willing and able" to put water from the Placitas ditch to beneficial use.

Unreasonably long period of nonuse. New Mexico decisions establish no specific standard for determining what is an unreasonable period of nonuse. In evaluating cases of abandonment, the Supreme Court has stated that the facts and circumstances of each case must be examined. *South Springs*, 80 N.M. at 146, 452 P.2d at 480. In several opinions stemming from the Jemez River adjudication, the United States District Court for the District of New Mexico addressed the question of what is an unreasonable period of nonuse and has established standards for use in that proceeding.

In an opinion filed February 7, 1994, the Court in *State v. Abousleman*, held that failure to use water for 16 years, without other evidence, may be sufficient to raise a rebuttable presumption of an intent to abandon a water right, thus shifting the burden to present sufficient evidence of excuse for nonuse to the water right claimant. *State v. Abousleman*, No. 83cv01041-JEC, Memorandum Opinion

and Order, February 7, 1994. The Court added that 8 years of nonuse, absent other evidence, is not a sufficient period to raise the presumption. *Id.* In a later opinion filed January 23, 1998, the Court made clear that "a period between 8 to 16 years may create a rebuttable presumption of abandonment, but one must look to other evidence." *State v. Abousleman*, No. 83cv01041-JEC, Memorandum Opinion and Order, January 23, 1998. The facts of this case fall into the latter category. The presumption of abandonment is based on a period of nonuse between 8 and 16 years and certain other objective facts, specifically, the failure to keep the irrigation system operational.

The Special Master cited the Court's decisions in *Abousleman* in her Report in this case, *see* Report at 6-7, and the State accepts these standards for use in this disputed subfile matter. The State agrees that a period of nonuse of 13 years coupled with an absence of evidence showing any real effort to keep the irrigation lateral in question operational creates a presumption of abandonment, a presumption that the defendant failed to overcome.

## II. THE EVIDENCE IN THIS CASE SUPPORTS A FINDING OF NONUSE SINCE 1990 ON ALL TRACTS.

Defendant Davis argues that the evidence does not support a finding of nonuse since 1990, and asserts that the State's evidence is conclusive only in showing nonuse since 1995. *See* Objections at 3-4. This is a new argument that was not included in the defendant's proposed findings of fact. *See* Defendant Faye Davis's Proposed Findings of Fact and Conclusions of Law filed May 5, 2003 (Docket No. 7123). Significantly, the argument ignores the testimony of Ms. Davis describing when the flumes on the irrigation lateral washed out and when the tracts were last irrigated from the Placitas ditch and its diversion from the Rio Gallina.

It should be pointed out that while the State's witnesses testified that while there appeared to be evidence of irrigation in aerial photographs taken in May 1989, this was the case for only three

tracts of land. *See* Report, Findings Nos. 7-13. The same photographic evidence indicated that other tracts had not been irrigated since 1959 or 1974. *Id.* A significant number of the tracts did not appear to be irrigated in any of the years in which the photographs were taken: 1935, 1959, 1974, 1989 or 1995. *Id.*

The evidence concerning the appearance of irrigation in aerial photographs on a very few tracts in 1989 was used by the Special Master only for the purpose of determining the approximate time when the flumes installed to carry water in the irrigation lateral may have collapsed. Ms. Davis herself was somewhat uncertain on this point. Tr. 56. She did, however, testify that to the best of her knowledge the ditch had not been operational since the mid-1980s. Tr. 66.[1] In reconciling this testimony, and in giving the benefit of the doubt to the claimant (as the Special Master acknowledged she did), the Special Master concluded that the last year the irrigation facilities could have been in place was 1989. Report at 7-8. This conclusion is supported by Ms. Davis's testimony and, giving the benefit of any doubt to the claimant, the State accepts that determination.[2]

---

[1] The Special Master's Report in Finding No. 14 states that the flumes washed out sometime in the "mid-1980's, late 1980's or early 1990's". Report, Finding No. 14. The finding with respect to early 1990's is clearly incorrect. The cited testimony of Ms. Davis with reference to this date was given in response to a question asking when she had walked the ditch. Tr. 55. She stated that she had done so in the "late '80s or early '90s when we were trying to establish how much work needed to be done." *Id.* In other testimony, however, she testified that to the best of her knowledge the ditch ceased to be operational sometime in the mid-1980s. Tr. 66. Her statement regarding the "late 80s or early 90s" did not establish when the flumes had washed out, only that she had walked the ditch during that time period to determine what worked needed to be done--the flumes had already collapsed.

[2] An appearance of limited irrigation in the 1989 photographs would, however, not necessarily be dependant upon diversion of water from the Rio Gallina into the long lateral in question. The reason for this is that there is a small reservoir located to the south of the defendant's tracts that holds irrigation water. The reservoir drains north onto the tracts across the highway showing evidence of irrigation in the 1989 photographs. The reservoir is filled from the long
(continued...)

The State's photographic evidence coupled with the testimony of Ms. Davis represents a sufficient basis to support the finding of the Special Master that the last year the irrigation facilities were in place was 1989. *See* Report at 7-8 (" I find that the last possible year the irrigation facilities could have been in place was 1989, and that the facilities washed out after that irrigation season"). The finding is not clearly erroneous. The State agrees that this 13-year period of nonuse of water from the ditch and the failure to keep the irrigation system operational was, under the standards established in *Abousleman*, sufficient to raise a rebuttable presumption of abandonment.

Finally, even if the Defendant's assertion is correct and the period of nonuse should be calculated only with reference to the failure to note signs of irrigation in photographs taken in 1995, the period of nonuse still meets the standards set out in *Abousleman*. Assuming that the last year of irrigation on any of the tracts occurred in 1994, and that the ditch has not been operational since, the period of time of nonuse would be 8 irrigation seasons or just over 8 years.[3] This period of nonuse is still within the standards set out by the district court in the Jemez River adjudication. *See State v. Abousleman*, No. 83cv01041-JEC, Memorandum Opinion and Order, January 23, 1998 ("a period

---

[2](...continued)
irrigation lateral from the Rio Gallina and collects runoff from the small drainage area located to the south of the reservoir. Tr. 177-78. Although there appears to be limited vegetative growth on some of the tracts in 1989 it does not necessarily follow that the ditch was still operational. Runoff collecting in the reservoir may have been transported to the tracts to the north and explain the appearance of those tracts in the photographs.

[3] Defendant Davis apparently miscalculates the asserted time of nonuse and reasons that the evidence established only 7 years of nonuse. *See* Objections at 4. The Defendant has failed to take into consideration that if there is no evidence of irrigation in 1995 then the last year of assumed irrigation would be in 1994. Thus the relevant time period is from 1994 to 2002, not 1995 to 2002 as stated in defendant's objections. *See id.* In addition, the defendant's argument, even if correct, would be applicable to only three of the tracts in question. *See* State's Exhibit No.12.

between 8 to 16 years may create a rebuttable presumption of abandonment, but one must look to other evidence."). Eight years of nonuse of water from the Placitas ditch coupled with the fact that the irrigation lateral from that ditch has not been maintained and is no longer operational is sufficient to raise a presumption of abandonment.

### III. THE ACTIONS TAKEN BY MS. DAVIS TO KEEP THE IRRIGATION WORKS OPERATIONAL WERE FACTUALLY AND LEGALLY INSUFFICIENT TO REBUT A PRESUMPTION OF ABANDONMENT.

In order to rebut a presumption of abandonment, defendant Davis argues that the cause of the nonuse of water for irrigation was the collapse of the various flumes in the irrigation lateral, and thus at least initially the failure to keep the irrigation system operational was out of her control. Objections at 4-5. She cites testimony said to show what steps she took to accomplish certain limited repairs, and asserts that the Special Master's conclusion that she failed to rebut a presumption of abandonment is unsupported by the evidence. The State asserts that the Special Master's conclusion is fully supported by the evidence, and that much of the evidence cited by the Defendant does not constitute a valid excuse for her failure to maintain the irrigation works. In addition, the State believes that the Special Master's determination, in part, represents a credibility determination which is entitled to deference by the Court.

Although there was testimony from Ms. Davis that she had hired persons to make certain small repair efforts such as removing silt from the ditch, testimony from the State's witnesses indicated that the entire 2 ¼ mile irrigation lateral was in serious disrepair, and that they had not been able to locate any area where someone had even started repair work. Tr. 103; *see also* Tr. 88-102; State's Exhibits 13. In areas where there were not silted-in culverts, trash, washouts or collapsed flumes, approximately 90% of the ditch is not in a condition to transport water. The silted-in ditch

-9-

was described as "more of a bench at this point." Tr. 119, 122-23.

Ms. Davis testified that within the last 3 years she hired persons to work on the ditch, and that they were able to get the water to flow to where the flumes had washed out. Tr. 69. This testimony conflicts other evidence and testimony. The location of the flumes to which Mr. Davis referred is 1 to 1 ¼ miles from the point at which the State testified the ditch is no longer operable. Tr. 98. When Mr. Salazar inspected and photographed this section of the ditch, he found no evidence of any recent repairs. Tr. 103; *see also* Report, Finding No. 14(b) ("no sign that repairs had been attempted"). Mr. Salazar didn't see any evidence of freshly dug soil or other efforts to remove the silt from the ditch in order to reestablish the line of flow. Tr. 103. The photographs taken by Mr. Salazar show only a series of collapsed or silted-in culverts, trash, wash-outs and undisturbed soil. *See* State's Exhibit 14. Ms. Davis stated that these repairs had taken place in the last 3 years, sometime since 1999 when her application for financial assistance to the Soil Conservation Service was denied. Tr. 69. This testimony is inconsistent with the observed present condition of the ditch.

The Special Master heard this testimony and was in a position to evaluate the credibility of the witnesses and resolve these conflicts. Thus her determination that the defendant's efforts to repair the ditch were "too few and far between" to rebut the State's evidence of abandonment is entitled to deference. The conclusion is based upon a contested issue (whether or not there had even been recent repairs to the ditch) as well as conflicting testimony. In this sense, this conclusion is a "credibility determination which is not lightly to be disturbed." *See Gottlieb v. Barry*, 43 F.3d 474, 487 (C.A.10th Cir. 1994) (special master's determination of attorney fees was entitled to deference when the assessment of circumstances surrounding fee issue was similar to credibility finding).

In addition, the failure of Ms. Davis to obtain funding from a governmental agency to pay for

the repair is not a legally valid excuse for making these repairs herself. The New Mexico Supreme Court has rejected the argument that financial inability will excuse a lack of diligence in putting water to beneficial use. *Rio Puerco Irrig. Co. V. Jastro*, 19 N.M. 149, 154, 141 P.2d 874, 879, (1914); *see also Carbon Canal Co. v. Sanpete Water Users Ass'n*, 19 Utah 2d 6, 12, 425 P.2d 405, 409 (1967) (lack of means with which to prosecute work is never ipso facto sufficient excuse for delay). This rule is particularly apt when the nonuser is seeking only to obtain money from a government agency to do what he or she is charged with doing himself. *Cf. Carbon Canal Co.*, 19 Utah at 12, 425 P.2d at 409.

An inability to obtain government funds to complete construction of irrigation works has been specifically rejected by the Supreme Court of at least one western State as an excuse for a long delay in putting water to beneficial use. Citing the New Mexico case of *Rio Puerco Irr. Co. v. Jastro*, 19 N.M. 149, 141 P. 874 (1914), the Supreme Court of Utah rejected this excuse and stated as follows:

> If an extension of time is based on hope for future handouts of money by a government agency to prove up a claim for water appropriation which the claimant himself is unable individually to finance, one could hold up indefinitely the development of water by saying I am trying to get someone else to finance something that I impliedly, at least, represented I could do myself. . . . [M]ere lack of means with which to prosecute the work is never ipso facto a sufficient excuse for delay.

*Carbon Canal Co. v. Sanpete Water Users Ass'n*, 19 Utah 5, 12-13, 425 P.2d 405, 409-10 (1967). The reasoning of the Utah Court is correct. Here Ms. Davis and her predecessors in interest had an obligation to make continued beneficial use of water and to keep any necessary irrigation works operational. A financial inability to make essential repairs, or the failure to obtain financial assistance from some governmental agency, does not excuse the long period of nonuse that gives rise to a presumption of abandonment.

Finally, the States points out that there was no testimony that Ms. Davis herself was unable

to pay for the required repairs. The estimates she received for the cost of the repairs were between $8,000 and $10,000. Tr. 61. At the same time Ms. Davis is applying to the Soil Conservation Service for financial assistance for the repairs she is also completing the purchase of multiple tracts of land from the heirs of the Jacquez Estate. Tr. 50-51, 66-68. This does not suggest any financial inability on her part, only a desire to shift the cost of the required repairs to other parties.

In sum, the facts and circumstances said to rebut a presumption of abandonment in this case are both factually and legally insufficient. There was no evidence that Ms. Davis made any real effort to keep the ditch operational, and any asserted financial inability to keep the ditch in repair, or failure to obtain financial assistance, is without legal effect.

## IV.    CONCLUSION.

The State respectfully requests that this Court accept and approve the report of the Special Master filed July 21, 2003. Other than the statement in Finding No. 14 discussed in footnote 1 above, the findings of the Special Master are fully supported by the evidence. Under F.R.C.P. Rule 53(e)(2) those findings should be accepted unless clearly erroneous. In addition, the evidence in this case fully supports the conclusions of the Special Master that under the circumstances of this case a 13-year period of nonuse of water rights, between 1990 and 2002, constitutes abandonment of the claimed rights. The excuses of the defendant for the nonuse of water are insufficient to rebut a presumption of abandonment, and the Special Master's conclusion in this regard is entitled to deference by this Court. For these reasons, this Court should accept the recommendation of the Special Master and find that the claimed water rights were abandoned.

Respectfully submitted,

/s/ Ed Newville
EDWARD G. NEWVILLE

Special Assistant Attorney General<br>
Office of State Engineer<br>
P.O. Box 25102<br>
Santa Fe, NM 87504-5102<br>
(505) 827-6150

## CERTIFICATE OF SERVICE

I hereby certify that copies of the State of New Mexico's Response to Defendant Faye Davis's Objections to Special Master's Report was mailed to following persons on September  22 , 2003.

                                                /s/ Ed Newville<br>
                                                Edward G. Newville

## RIO CHAMA SECTION 5 SERVICE LIST

Special Master Vickie L. Gabin  
USDC-DCNM  
P.O. Box 2384  
Santa Fe, NM 87504-2384

Karla McCall, Data Manager  
1315 Sagebrush Dr. SW  
Los Lunas, NM 87031

Bradley S. Bridgewater, Esq.  
David W. Gehlert, Esq.  
USDOJ-ENRD  
999 18th ST., Suite 945  
Denver, CO 80202

John W. Utton, Esq.  
Sheehan, Sheehan & Stelzner PA  
P.O. Box 271  
Albuquerque, NM 87103-0271

Fred J. Waltz, Esq.  
P.O. Box 6390  
Taos, NM 87571-4010

Mary E. Humphrey, Esq.  
P.O. Box 1574  
El Prado, NM 87529-1574

Fred Vigil, NM Acequia Commission  
c/o Jessie Bopp  
Depart. Of Finance & Admin.  
Bataan Memorial Building  
Santa Fe, NM 87503