IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF NEW MEXICO

STATE OF NEW MEXICO, ex rel.       )
State Engineer                     )
                                   )
        Plaintiff,                 )          69cv07941-BB-ACE
                                   )
        v.                         )          RIO CHAMA STREAM SYSTEM
                                   )          Rio Gallina, Section 5
RAMON ARAGON, *et al.*,            )
                                   )          Subfile No.  CHGA-003-0007
        Defendants.                )
_____   )

SPECIAL MASTER'S REPORT
AND RECOMMENDATIONS ON DISPUTED SUBFILE

To: The Honorable Bruce B. Black               From: Vickie L. Gabin
    United States District Judge                      Special Master

          This Report recommends that the Court recognize the water rights
          claims associated with Subfile No. CHGA-003-0007.

        THIS MATTER is before the Special Master on the May 2, 2003, State of New Mexico's

Proposed Findings of Fact and Conclusions of Law (Docket No. 7119), and the May 5, 2003,

Defendants Juan and Patsy Chavez and Jose and Piedad Chavez Proposed Findings of Fact and

Conclusions of Law (No. 7122).

        The evidentiary hearing on disputed Subfile No. CHGA-003-0007 was held February 7, 2003.

All transcript references are to that volume except where otherwise indicated.  State's Exhibits are

denoted "SE;" Defendants', "DE."

**A.  ISSUE PRESENTED**

        The Pretrial Order entered January 21, 2003 (No. 7023) states that the disputed issue for this

proceeding is whether the irrigation of the tracts of land under this subfile represents an illegal change

in the point of diversion.  The State of New Mexico, ex rel. State Engineer's ("State's") position is

that the tracts were originally irrigated from the Chavez Ditch, which has been abandoned; the change of point of diversion from the Cordova-Martinez Ditch was accomplished without a permit and thus is illegal. Defendants claim that their property is part of a ranch considered to be a single property, which was irrigated in its entirety from the Cordova-Martinez Ditch.

## B.  RECOMMENDED FINDINGS OF FACT

1.  The Court has jurisdiction over the parties and the subject matter herein.

2.  Juan and Patsy Chavez and Jose and Piedad Chavez are the current owners of the tracts of land identified as Subfile No. CHGA-003-0007. Juan and Jose Chavez are brothers. Tr. at 6, 71, 92.

3.  Patents indicate that the lands associated with Subfile 003-0007 were patented by the Chavez family members. SE 2, 31, 33, 34; Tr. at 101, 124, 126, 169.

4.  Gavino Chavez, Defendants' great-great grandfather, first acquired the property in question; it was then passed on from son to son: Leandro Chavez, Apolonio Chavez, Tomas Chavez, and then to Defendants. Until recent times, the property was irrigated and farmed as one ranch known as the Chavez Ranch. Tr. at 7-10.

5.  Leandro Chavez sold the property in 1915 to Leandro Martinez; it was then sold back to family (Apolonio Chavez) in 1940. The Chavez family lived on the property and continued to irrigate and harvest crops during that 25-year period.  Tr. 26-27; SE 35, 36.

6.  This subfile covers 25.5 acres, which are separated into three tracts of 13.0 acres, 11.2 acres and 1.3 acres. The Defendants claim irrigation rights from the Cordova-Martinez Ditch for the 13.0-acre and 11.2-acre tracts ("claimed tracts"), but not for the 1.3-acre tract. Tr. at 21; SE 28.

7.  The State Engineer recognized a pre-1907 water right from the Cordova-Martinez Ditch for lands associated with Subfile No. CHGA-003-0006, which are immediately south of the tracts under Subfile 003-0007.  Tr. at 18, SE 29, SE 41 at 2, 42.

8.  The lands associated with Subfile 003-0006 were part of the same ranch that belonged to Defendants' grandfather and father.  Tr. at 7-10, 19, 39-40.

9.  It is not likely that the two contiguous areas of irrigated land were irrigated from two separate sources.  Tr. 64-67.

10.  The lands underlying Subfiles 003-0006 and 003-007 are indistinguishable in aerial photographs, and were historically irrigated at the same time.  The claimed tracts under Subfile 003-0007 and the lands of Subfile 003-0006 were irrigated in 1935, 1963, 1981, and 1995.  All of the 11.2-acre claimed tract and most of the 13.0-acre claimed tract, and all of the lands of Subfile 003-0006 were irrigated in 1959.  No tract of Subfile 003-0007 appeared irrigated in 1974.  DE 37 at 5; SE 31, 32, 36, 42at 1-2; Tr. at 18-19, 54-55, 162.

11.  An analysis of climatic data shows that the years 1959 and 1974 were below average in precipitation in the region.  Tr. 1/28/03 at 66, DE 1 at 3, 7.

12.  For the Los Chavez Ditch:

a.  Family history relates that the ditch was used for only three or four years by Juan Chavez's grandfather because of landslides in the Gallina River Canyon.  Tr. at 10-14, 41-42.

b.  Juan Chavez became mayordomo of the ditch and decided to name it Chavez Ditch, just in case they could someday use water out of it.  The Los Chavez Ditch diverted surface water from the Rio Gallina, but which is now eroded and has been abandoned.  Tr. at 37, 42.

3

c.  No point of diversion for the Los Chavez Ditch could be found, and no remnants of the ditch were located beyond a point southwest of the tracts.  SE 28A; Tr. at 122, 147, 154.

d.  The USGS topographic map depicts a small drainage across the western edge of both Subfiles 003-0006 and 003-0007.  For the Los Chavez Ditch to have delivered water to these lands, it would have had to cross the drainage; there is no evidence of this crossing.  DE 43; SE 28A; Tr. at 151, 154.

13.  With respect to the Cordova-Martinez Ditch:

a.  The ditch diverts surface waters from the Rio Capulin.  Tr. at 38.

b.  A 1923 declaration of water rights (No. 0462) for the Cordova-Martinez Ditch was filed with the Office of the State Engineer ("OSE").  SE 30.

c.  Neither the declaration nor the map include the claimed tracts as being irrigated from that ditch, although the narrative recognizes water rights for 10 acres for Apolonio Chavez and for 75 acres for Gavino Chavez.  SE 30.

d.  Inconsistencies exist between the narrative and the map.  Tr. at 115 - 116.

14.  In some cases, particularly in the early years, declarations and maps were not totally accurate.  Tr. at 51-52.

15.  The OSE has not issued a permit for a change in the point of diversion for any water rights appurtenant to the claimed tracts.

16.  A complaint filed in 1893 in Rio Arriba District Court involved two groups of landowners who irrigated from the Rio Gallina.  Two of the defendants were Gavino and Leandro Chavez.  The suit was resolved by a compromise that allocated the parties the full use of the Rio Gallina's flow.  Tr. at 98-103; DE 45; SE 43 at 7-9.

17. The acequias involved in the suit were not mentioned by name; Dr. Baxter opined that they must have included the Placitas, Rincon, and Vigiles as well as the now-abandoned Chavez Ditch. Tr. at 100-104; SE 43 at 8.

18. Gavino Chavez recorded a "Statement of Old Water Rights" in 1909 for the Cordova-Martinez acequia. He had been admitted into ownership of the ditch in 1904. The statement declared that the ditch had been in operation for at least 25 years (since 1884) to irrigate 900 acres. A similar declaration was submitted by owners of the Gonzales-Gurule acequia. SE 43 at 13.

19. In 1909 one group of water users from both the Cordova-Martinez and Gonzales-Gurule acequias, including Gavino Chavez, brought suit against another group of water users from the same ditches, alleging the latter group was appropriating too much water in times of shortage. SE 43 at 14.

## C. RECOMMENDED CONCLUSIONS OF LAW

Every water rights claimant bears the burden of proof with respect to the elements of the water right claimed. See, State v. Abeyta, et al., No. 69cv07896-JEC-ACE, Order re: New Mexico's Motion for Court Action on Special Master's Report, entered July 23, 2001 (Docket No. 2806), which adopted the Special Master's recommendations that under New Mexico law, defendants bear the burden of proving every element of their water right claim (No. 2806).

Beneficial use is the basis, the measure and the limit of the right to the use of water, N.M. Stat. Ann. §72-1-2 (1997 Rep.), NM Const. Art. XVI, Sec. 4. The right to change a point of diversion must be accomplished in accordance with statutory procedure. Durand v. Reynolds, 75 NM 497, 406 P.2d 817 (1965). A permit is not required, however, for water rights acquired prior to the enactment of the State's water code in 1907. May v. Torres, 86 NM 62, 519 P.2d 298 (1974),

In this case, historical evidence, as well as testimony regarding family history, and testimony regarding the overall nature of the tracts, supports Defendants' claims.  I accept the testimony that water has been diverted from the Rio Capulin and applied to beneficial use on the claimed tracts for irrigation of crops on a consistent basis, whenever water has been available to do so.   From the evidence a reasonable inference may be drawn that the Chavez family lands were all of a piece, and that they were irrigated from the same source, the Cordova-Martinez Ditch.

The State offered evidence to the effect that the Defendants' family had diverted water from the Rio Gallina - the 1893 Complaint filed in Rio Arriba County District Court, for example - but the fact that Defendants' forebearers used water from the Rio Gallina at some point in time does not necessarily establish that they did not also divert from the Rio Capulin.  See, e.g., State ex rel. Martinez v. McDermett, 120 NM 327, 901 P.2d 745 (Ct. App. 1995) (evidence that water from a well was used for livestock did not conclusively show that the well wasn't also used for irrigation). The 1923 Declaration, the "Statement of Old Water Rights" filed by Gavino Chavez in 1909, and other evidence illustrate the conflicting and incomplete evidence concerning amount of acres irrigated and land ownership.  There is no definitive evidence of consistent irrigation from the Los Chavez Ditch, and other evidence strongly suggests continuous irrigation from the Cordova-Martinez Ditch in the pre-1907 period onward.  I conclude, therefore, that there has been no illegal change of point of diversion for the irrigation of the claimed tracts, and recommend that the Court recognize that the claimed tracts have valid water rights.

Respectfully submitted,

_____ /electronic signature/ _____
SPECIAL MASTER VICKIE L. GABIN

6