IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO *ex rel.*
State Engineer, *et al.*,

    Plaintiffs,

v.                                                 69cv07941 BB-ACE
                                                     Rio Chama Adjudication
RAMON ARAGON, *et al.*,                 Section 5: Rio Gallina

    Defendants.                          Subfile Nos.  CHGA-004-0003
                                                                     CHGA-004-0004

## **ORDER**

**THIS MATTER** comes before the Court on the State of New Mexico's Motion for Action on Special Master's Report (Doc. No. 7260, filed September 30, 2003) and Objections to Special Master's Report and Recommendations on Disputed Subfiles (Doc. No. 7215, filed September 2, 2003) and the Special Master's Report and Recommendations on Disputed Subfiles (Doc. No. 7203, filed July 23, 2003).  The Court has reviewed *de novo* the Special Master's Report, the objections and other submissions of the parties, other relevant portions of the record and the relevant law.  The State of New Mexico's Motion for Action on Special Master's Report (Doc. No. 7260, filed September 30, 2003) shall be GRANTED.  For the reasons set forth below, the Court overrules the objections and adopts the findings of fact and conclusions of law recommended in the Special Master's Report and Recommendations on Disputed Subfiles (Doc. No. 7203, filed July 23, 2003).

The State of New Mexico disputes the water rights claims of Defendants Abram Cordova (Subfile No. CHGA--004-0004) and Faye Davis (Subfile No. CHGA--004-0003).  The State's position with regard to the tracts of land under these subfiles is that the tracts are natural, subirrigated wetlands in the flood plain of the river, and there is no diversion of water out of the natural channel

of the river. (Pretrial Order, Doc. No. 7023, filed January 21, 2003). Defendants claim that they have diverted and continue to divert water from the river to irrigate these tracts for the production of forage. (*Id.*).

The Court consolidated Subfiles CHGA-004-0003 and CHGA-004-0004 for hearing. (*Id.*). An evidentiary hearing on the subfiles was held before the Special Master on January 28-30, 2003. The State and Defendants filed proposed findings of fact and conclusions of law on May 2 and 5, 2003, respectively (Doc. Nos. 7121 and 7124). On July 23, 2003, the Special Master filed her report (Doc. No. 7203) recommending that the Court grant the water rights claims associated with Subfiles CHGA-004-0003 and CHGA-004-0004. The State objected to the Special Master's Report. ("Objections," Doc. No. 7215, September 2, 2003). Defendants filed a response to the State's objections on September 22, 2003. (Doc. No. 7255). The State, with Defendants' concurrence, filed a motion for action on the Special Master's Report. (Doc. No. 7260, filed September 30, 2003).

The Court must decide *de novo* all objections to findings of fact and conclusions of law recommended by a master. FED. R. CIV. P. 53(g)(3) and (4).[1] Rule 53 calls for a *de novo* decision, not a *de novo* hearing. *See United States v. Raddatz*, 447 U.S. 667, 673-674 (1980)(construing statute regarding district court's responsibility in ruling on objections to magistrate judge's recommended findings and conclusions); *see also* FED. R. CIV. P. 37 advisory committee's notes for 1993 amendments (phrase "after opportunity for hearing" changed to "after affording an opportunity to be heard" to make clear that the court can consider written submissions as well as oral hearings). The Court, having reviewed the transcripts and the exhibits from the hearing before the Special

---

[1] FED. R. CIV. P. 53 was amended effective December 1, 2003. Prior to the amendment, the rule required that the court accept the master's findings of fact unless clearly erroneous. Under the amended rule, the court must decide all objections to a master's recommended findings of fact *de novo*, unless the parties stipulate with the court's consent that the findings will be reviewed for clear error.

Master on January 28-30, 2003, finds that the parties had ample opportunity to submit evidence, cross-examine witnesses and provide rebuttal testimony. The Court also reviewed the State's objections to the Special Master's Report. *See* FED. R. CIV. P. 53(g)(1)(in acting on a master's report or recommendations, the court must afford an opportunity to be heard).

The State objects to the Special Master's Report claiming that, because the tracts of land lie within the riverbed, there is no diversion of water out of the natural channel of the river. (Objections at 6-7). A man-made diversion is necessary to claim water rights by appropriation in New Mexico for agricultural purposes. *State ex rel. Reynolds v. Miranda*, 83 N.M. 443, 445, 493 P.2d 409, 411 (1972); *see also Harkey v. Smith*, 31 N.M. 521, 247 P. 550, 551 (1926)(appropriation of water is accomplished by the taking or diversion of it from a natural stream). A flood plain is land adjacent to rivers, which, because of its level topography, floods when the river overflows. BLACK'S LAW DICTIONARY 641 (6th ed. 1990). Flooding refers to water covering land not usually covered by water, where water ordinarily would not be expected to be, or under conditions which do not usually occur. *Id.* at 640-641. The tracts of land are adjacent to the river and are relatively flat. (State's Ex. 3 at 27). The tracts are flooded during spring runoff and after heavy rains, but are dry during the summer unless irrigated by water diverted from the river. (January 28, 2003, Tr. at 134-135). In the fall, the diversions are removed to let the tracts dry in order that the grass can be harvested. (January 28, 2003, Tr. at 106). The Court finds that the tracts of land are not within the riverbed but instead are in the flood plain of the river.

The State also objects to any finding that the entire 6.1-acre Davis tract is irrigated by use of a man-made channel which runs between the two points of diversions. (Objections at 8). That man-made channel divides the tract approximately in half, with one half being east and "upstream" of the

channel. (State's Ex. 4, Defs.' Ex. 38). The State contends that only the downstream half, west of the channel, can be irrigated with by the two diversions on the channel. (Objections at 8). The issue before the Special Master at the evidentiary hearing was whether there was a man-made diversion of water from the river. (Pretrial Order, Doc. No. 7023, filed January 21, 2003). The issue of the area of land irrigated was not thoroughly explored at the hearing. In her Report, the Special Master noted that calculation of water quantity has been deferred until a second phase of the litigation and was not addressed in her Report. The calculation of water quantity necessarily involves the area of the irrigated tract and the duty of water for the irrigated tract. The Special Master shall afford the parties an opportunity to be heard, and may receive evidence, on the total area irrigated within the Davis tract at that second phase of the litigation when water quantity is calculated.

The State's final objection is that Defendants did not meet their burden of proof that their diversion of water constituted a beneficial use because there was no evidence that such irrigation increased the yield of forage crops above what it would have been in the absence of such irrigation. Defendant Cordova, who has irrigated and harvested both tracts for many years, testified that irrigation increases the amount of grass hay produced on the two tracts. (January 28, 2003, Tr. at 102-106, 114-117, 127-129). The Court finds that water was diverted from the river and beneficially used on the two tracts of land. The amount of water beneficially used will be determined in the second phase of the litigation.

**IT IS SO ORDERED.**

*/s/ Bruce D. Black*
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE