IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO *ex rel.*
State Engineer, *et al.,*

        Plaintiffs,

    v.                                      69cv07941 BB-ACE
                                             Rio Chama Adjudication

RAMON ARAGON, *et al.*,

        Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on the United States' Motion for Partial Summary Judgment (Doc. No. 5435, filed June 21, 1996) and the State of New Mexico's Cross-Motion for Summary Judgment on United States' Wild and Scenic River Claim (Doc. No. 5459, filed August 5, 1996).  The Court has reviewed the submissions of the parties and the relevant law.  For the reasons set forth below, the United States' and the State of New Mexico's motions shall be GRANTED in part and DENIED in part.

The Wild & Scenic Rivers Act ("the Act") designated one segment of the Rio Chama as wild river and another as scenic.  16 U.S.C.A.§ 1274(a)(108) (West 2000 & Supp. 2003).  The United States filed a claim (Doc. No. 4004, filed March 1, 1995) for an instream flow water right under the Act.  Both the United States and the State of New Mexico seek partial summary judgment on the question of the legal basis for the quantification of the water right that is to be adjudicated for the United States' Wild and Scenic reserved water rights claim.

This issue is properly before the Court.  This Court has jurisdiction to adjudicate the United States' claim.  *See* 28 U.S.C. § 1345 (West 2003)(district court shall have original jurisdiction of all

suits commenced by the United States). The United States filed a claim for an instream flow water right under the Wild and Scenic Rivers Act, 16 U.S.C.A. §§ 1271 *et seq.* (West 2000 & Supp. 2003), and so is a proper party with a claim that is within the scope of the State of New Mexico's adjudication statutes. *See Jicarilla Apache Tribe v. United States*, 601 F.2d 1116, 1127 (10th Cir. 1979), *cert. denied*, 444 U.S. 995 (1979)(United States is proper party defendant in any general water rights adjudication proceeding, whether brought in federal court or state court, relating to federally created water rights); N.M. STAT. ANN. § 72-4-17 (Michie 1997)("In any suit for the determination of a right to use the waters of any stream system, all those whose claim to the use of such waters are of record and all other claimants, so far as they can be ascertained, with reasonable diligence, shall be made parties."); *United States v. Dist. Ct. in and for Eagle County*, 401 U.S. 520, 525 (1971)(McCarran Amendment, which gives consent to join the United States in water adjudication suits, is all-inclusive statute which has no exceptions and includes appropriated rights, riparian rights and reserved rights).

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). When applying this standard, a court must view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party. *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir. 1999). Once the movant carries this burden, the nonmovant cannot rest upon his or her pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof. *Id.* A mere scintilla of evidence supporting the

2

nonmoving party's theory does not create a genuine issue of material fact. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1175 (10th Cir. 1999). Instead, the nonmoving party must present facts such that under the applicable law, a reasonable jury could find in its favor. *Id.*

## THE UNITED STATES' MOTION

Specifically, the United States seeks a declaration:

1.     that the designation of the Rio Chama as a Wild and Scenic River created a reserved water right;

2.     that said right is quantified by applying federal law;

3.     that quantification of the reserved right is based on a determination of the quantity of water necessary to fulfil the purposes for which the Rio Chama was designated a Wild and Scenic River; and,

4.     that those purposes include preservation of the following attributes: recreational boating, fishing and trout fisheries, riparian habitat, habitat for bald eagles and mammal species, and scenic qualities.


**Designation as Wild and Scenic River Reserves Water Right**

Whether Congress reserved water when it enacted the Wild and Scenic Rivers Act is a legal issue. Case law indicates that Congress has the power to reserve water and the language of the Act demonstrates that Congress intended to reserve water for those portions of rivers designated "wild" or "scenic" under the Act. Accordingly, that portion of the United States' motion seeking a declaration that the designation of the Rio Chama as a wild and scenic river created a reserved water right shall be granted.

The Wild and Scenic Rivers Act reserves, albeit indirectly, water for the purposes of the Act. In a section titled "Reservation of waters for other purposes or in unnecessary quantities prohibited," the Act states

> Designation of any stream or portion thereof as a national wild, scenic or recreational river area shall not be construed as a reservation of the waters of such streams for purposes other than those specified in this chapter, or in quantities greater than necessary to accomplish these purposes.

16 U.S.C.A. §1284(c) (West 2000); *see also Potlatch Corp. v. United States*, 12 P.3d 1256, 1258-1259 (Idaho 2000)(Wild and Scenic Rivers Act creates express reservation of water); *Winters v. United States*, 207 U.S. 564, 577 (1908)("The power of the government to reserve the waters and exempt them from appropriation under the state laws is not denied, and could not be) *citing United States v. Rio Grande Dam & Irrig. Co.* 174 U.S. 702 (1899) and *United States v. Winans*, 198 U.S. 371 (1905); *Cappaert v. United States*, 426 U.S. 128, 138 (1976)(reservation of water rights is empowered by the Commerce Clause, which permits federal regulation of navigable streams, and the Property Clause, which permits federal regulation of federal lands); *United States v. Gerlach Live Stock Co.*, 339 U.S. 725, 738 (1950)(Congress has substantive power to tax and appropriate to promote the general welfare through projects for reclamation, irrigation, and other internal improvements); *Fed. Power Comm'n v. Oregon*, 349 U.S. 435, 445 (1955)(state agency lacks power to deny use when reserved by federal law for that purpose). The fact that the United States' claim is for an instream flow right, rather than a consumptive use, does not render the claim invalid. *See Cappaert v. United States*, 426 U.S. 128, 141 (1976)(government acquired by reservation water right to preserve an adequate water level in pool).

Nor is it required that there be a determination of whether there is unappropriated water in the stream system prior to adjudicating the United States' claim. Indeed, one goal of the adjudication is to determine the amount of unappropriated water. *See* N.M. STAT. ANN. § 72-4-15 (Michie 1997)(state engineer shall provide necessary information to attorney general who, at request of state engineer, shall enter suit for the determination of all rights to the use of such water, in order that the

amount of unappropriated water subject to disposition by the state may become known); *Snow v. Abalos*, 140 P. 1044, 1050 (N.M. 1914)(purpose of adjudication is to determine amount of water to which each water user is entitled, so that distribution of water can be facilitated and unappropriated water be determined, in order that it might be utilized).

**Reserved Water Right is Quantified by Applying Federal Law**

This Court is bound by decisions of the United States Supreme Court and the Tenth Circuit Court of Appeals which state that federal water rights are determined by federal law. The United States' water right for instream flow under the Act will thus be quantified by applying federal law. *Cappaert v. United States*, 426 U.S. 128, 145 (1976)(federal water rights are not dependent upon state law or state procedures); *Jicarilla Apache Tribe v. United States*, 601 F.2d 1116, 1126 (10th Cir. 1979)(federal law governs in determining the extent and status of water rights which are federally owned and established). Whether there is unappropriated and thus available water for the United States to exercise its right will be determined by the State's adjudication process. *See Wyoming v. Colorado*, 259 U.S. 419, 488 (1922)(water rights are not guarantees that water will be available but rather guarantee of a right to take water, in priority, if the requisite amount of water be there). Therefore, that portion of the United States' motion seeking a declaration that the water right reserved under the Wild and Scenic Rivers Act is quantified by applying federal law shall be granted.

**Quantification of Right is Based Upon Minimal Amount Necessary to Accomplish the Purposes of the Act**

In accordance with the language of the Act and federal reserved right case law, quantification of the United States' water right for instream flow on the Rio Chama under the Act will be based upon the minimal amount necessary to accomplish the purposes of the Act. *See* 16 U.S.C.A. §

1284(c) (West 2000)("Designation of any stream or portion thereof as a national wild, scenic or recreational river area shall not be construed as a reservation of the waters of such streams for purposes other than those specified in this chapter, or *in quantities greater than necessary to accomplish these purposes*.")(emphasis added);  *see also Potlatch Corp. v. United States*, 12 P.3d 1256, 1260 (Idaho 2000)(affirming district court ruling that the United States is entitled to the minimum quantity necessary to fulfill the purposes of the Wild and Scenic Rivers Act); *United States v. New Mexico*, 438 U.S. 696, 700-01 (1978)(Supreme Court has repeatedly emphasized that under the implied-reservation-of-water-rights doctrine, Congress reserved "only that amount of water necessary to fulfill the purpose of the reservation, no more").  Congress intended, and so stated, that the Act shall not be construed as reserving water in quantities greater than necessary to accomplish the purposes of the Act.  *See also Federal Water Rights*, 86 I.D. 553, 608 (1979)(Quoting Sen. Gaylord Nelson, principal sponsor and floor manager, "Specifically, only that amount of water will be reserved which is reasonably necessary for the preservation and protection of those features for which a particular river is designated").  Consequently, that portion of the United States' motion seeking a declaration that the quantification of the reserved right is based on a determination of the quantity of water necessary to fulfil the purposes for which the Rio Chama was designated a wild and scenic river shall be granted.

**The Purposes of the Act**

The United States' motion seeks, among other things, a declaration that the purposes of the Act include preservation of the following specific values or attributes of the designated sections of the Rio Chama: recreational boating, fishing and trout fisheries, riparian habitat, habitat for bald eagles and mammal species, and scenic qualities.  The Act has two general purposes.  One is to

6

maintain the river in a natural condition, i.e. flowing and free of any man-made impacts.  The other is to prevent damage to the river and its immediate environment. *See Sierra Club North Star Chapter v. Pena*, 1. F.Supp.2d 971, 973 (D. Minn. 1998); *Oregon Natural Desert  Ass'n v. Green*, 953 F.Supp. 1133, 1143 (D. Or. 1997).  Beyond that a comprehensive management plan must be developed as to each river to protect its unique values.  16 U.S.C. §1274(d)(1).  That plan must "address resource protection, development of lands and facilities, user capacities, and other management practices necessary or desirable to achieve the purposes of [the] chapter." *Id.*; *Friends of Yosemite Valley v. Norton*, 348 F.3d 789, 794 (9th Cir. 2003); *Riverhawks v. Zepeda*, 228 F.Supp.2d 1173, 1185 (D. Or. 2003).  This plan is to be developed within three years of the designation of the river under the Act.  *Oregon Natural Desert Ass'n v. Singleton*, 47 F.Supp.2d 1182, 1185 (D. Or. 1998); *Sierra Club v. U.S.*, 23 F.Supp.2d 1132, 1136-37 (N.D. Cal. 1998).

Other sections of the Act expressly address preservation and protection of specific river values.  *See King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991)(cardinal rule of statutory construction is that statute is to be read as a whole since the meaning of statutory language, plain or not, depends on context).  "Each [river and its immediate environment] in the national wild and scenic rivers system shall be administered in such manner as to protect and enhance the values which caused it to be included in said system." 16 U.S.C.A. § 1281 (West 2000).  "[T]he extent of the water reserved is the amount of unappropriated waters necessary to protect the particular aesthetic, recreational, scientific, biotic and historical features ('values') which led to the river's inclusion as a component of the National Wild and Scenic Rivers System, and to provide public enjoyment of such values." Federal Water Rights, 86 I.D. at 608.  Thus Congress apparently recognized, that preserving and protecting the river entails preserving the specific values that made the river eligible for

designation as a wild and scenic river.  However, Congress chose not to include such language when stating the purposes of the Act.

The law is clear that the quantification of the United States' water right will be the minimal amount needed to meet the purposes of the designation for each river.  Neither party provided any significant Congressional history or other sources as to the values which led to the inclusion of the two segments of the Rio Chama as alternately wild and scenic.  The fact that the two sections bear different designations itself leads to the conclusion different values and purposes were considered. Unfortunately nothing filed thus far provides any real enlightenment as to the purposes of the designations and therefore quantification is impossible.  The United States and the State of New Mexico shall jointly file a proposed approach for quantifying the United States' water right claim under the Wild and Scenic Rivers Act by July 1, 2004.  The other parties will have until August 2, 2004, to file comments on the proposed approach.  The United States and the State of New Mexico will have until September 1, 2004, to file a reply to any comments, and may file separate replies.

**THE STATE OF NEW MEXICO'S CROSS-MOTION**

The State of New Mexico seeks a declaration that:

a.     The Wild and Scenic Rivers Act preserves and protects certain riverine values, but does not require the enhancement or improvement of the river;

b.     A biologically based instream flow would enhance and improve the Rio Chama contrary to the Act;

c.     Historic minimum flows most accurately guarantee the natural instream flow of the Rio Chama wild and scenic river reach;

d.     If the United States wishes to enhance and improve the Rio Chama wild and scenic river reach, then it must do so by condemnation of vested water rights pursuant to 16 U.S.C. § 1277(a).

8

The State's motion also indicates that it seeks the legal basis for the quantification of the water right that is to be adjudicated for the United States' Wild and Scenic reserved rights claim. This again depends on the purpose of designating these portions of the Rio Chama. For example, if the "wild" designation was intended to limit degradation of the river banks, then limitations on grazing permits, *see Oregon Natural Desert Ass'n v. Singleton*, 755 F.Supp. at 151-53, or logging, *see Newton County Wildlife Ass'n v. Rogers*, 141 F.3d 803, 808 (8th Cir. 1998), might be required. The Act requires that the Secretary of Agriculture and the Secretary of the Interior prepare a management plan for the river, 16 U.S.C. §§ 1274 (a)(108) and (d), but the Court has received nothing indicative of the planning or even the thinking of either agency. That section of the Act also provides for involvement of the Secretary of the Army, but again nothing has been provided to indicate how any cooperative management would impact the Abiquiu Dam or the rest of the basin. *See* Pub. L. No. 100-633 (1988).

**Summary Judgment for Biologically Based Instream Flow, Historic Minimum Flow, and Improvement of River / Condemnation of Vested Water Rights Issues is Not Ripe and will be Denied**

Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

Those portions of the State's motion seeking declarations that "a biologically based instream flow would enhance and improve the Rio Chama contrary to the Act"[1] and "historic minimum flows most accurately guarantee the natural instream flow of the Rio Chama wild and scenic river reach" are also not properly supported and must be denied at this point.

That portion of the State's motion seeking a declaration that "if the United States wishes to enhance and improve the Rio Chama wild and scenic river reach, then it must do so by condemnation of vested water rights pursuant to 16 U.S.C. § 1277(a)" is denied.  Under the Act, "any *taking* by the United States of a water right which is vested under either State or Federal law at the time such river is included in the national wild and scenic rivers system shall entitle the owner thereof to just compensation."  16 U.S.C.A. § 1284(b) (West 2000)(emphasis added).  If it wishes to augment the flow of the river, the United States is not limited to taking vested water rights.  It may also acquire water rights in the same manner as any other public or private appropriator.  *See United States v. New Mexico*, 438 U.S. 696, 700-01 (1978)(Congress intended that the United States would acquire water for secondary purposes in the same manner as any other public or private appropriator).

**IT IS SO ORDERED.**

BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE

---

[1] Although it does not specifically define the phrase, the context of the motion suggests that "enhance and improve" means to augment the flow of the river.

10