IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO, *ex rel.*
State Engineer

    Plaintiff,

vs.

RAMON ARAGON, *et al.*,

    Defendants.

69cv07941 BB-ACE

RIO CHAMA STREAM SYSTEM
Section 3: Rio Cebolla

**Subfile No. CHCB-003-0015B**

## STATE OF NEW MEXICO'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

COMES NOW Plaintiff the State of New Mexico *ex rel.* State Engineer ("State") and files the State's Motion for Summary Judgment and Memorandum in Support, pursuant to the Pretrial Order issued March 8, 2004 (Doc. No. 7428), as amended by the Order Amending Pretrial Order and Notice of Status Conference issued September 21, 2004 (Doc. No. 7602)

### MOTION FOR SUMMARY JUDGMENT

The State moves for summary judgment in accordance with LR-CV 56.1, on the State's No Right Proposed Consent Order for Defendants David E. Archuleta and Lydia U. Archuleta ("Defendants") in Subfile No. CHCB-003-0015B. The State requests that the Court find and determine that Defendants have not established a surface irrigation right for any of the lands described in the No Right Proposed Consent Order tendered by the State. As grounds, the State shows the following:

    1.    On January 3, 2002, the State served Defendants with a No Right Proposed Consent

7625

Order relating to the use of surface water on 11.5 acres of land, from the Rito Cienega Redonda, a tributary of the Rio Cebolla, tributary of the Rio Chama. The point of diversion for such waters is the Rincon Blanca Ditch. The 11.5 acres are located in Section 03, Township 26N, Range 04E, N.M.P.M. (0.3 acres); and Section 34, Township 27N, Range 04E, N.M.P.M., Pt. SE1/4 (11.1 acres) and Pt. SW1/4 (0.1 acres).

2.  On February 5, 2002, Defendants filed Answers (Doc. Nos. 6526 & 6527) and objected to the description of water rights contained in the State's Proposed Consent Order on the grounds that, "The original Permit No. 2631 (of application) for water use indicated 13 acres of water rights for Frank Chavez. It is my contention that through the final judgment declared by the State Engineer that this property was erroneously left out. This property does not indicate or appear on the Proof of Application of Water to Beneficial Use. This is complete error and should coincide with the license to appropriate water." *See also* Answer to Complaint filed by Alfonzo G. Sanchez on August 25, 2003 (Doc. No. 7214), as attorney for Defendants.

3.  Defendants have further alleged that the lands at issue are in fact 13 acres of land that were acquired by Defendants from Frank Chavez and are located in their entirety in Section 3, Township 27N, Range 04E, to the south and southwest of, and separate from the lands originally described and mapped by the State under Subfile CHCB-003-0015B. *See* Proposed Counterclaim of Defendants attached to Defendants' Motion for Leave to file Counterclaim filed April 19, 2004 (Doc. No. 7439). Although the Court denied the Motion to file the Counterclaim, the State agreed that the Defendants could pursue their claim for irrigation water rights on the described 13 acre tract as part of these limited subfile proceedings. *See* Response filed April 22, 2004 (Doc. No. 7441) and Order filed April 29, 2004 (Doc. No. 7444) ("Special Master shall determine Defendants' claims to their

2

rights to the use of water on both parcels").

4.  The 13 acres of land located in Section 3, Township 27N, Range 04E for which Defendants claim water rights were the subject of an application for a permit to appropriate surface water for irrigation purposes made to the State Engineer in March 1948 under File No. 2631. The location of the 13 acre tract described in the application has been mapped by the hydrographic survey staff of the State Engineer and is shown in the revised mapping of tracts under Subfile CHCB-003-0015B, attached hereto as Exhibit 1. The State also prepared and served on Defendants a Proposed Consent Order describing both the 11.5 acre and 13 acre tracts as No Right (without irrigation water rights). *See* Proposed Consent Order for Subfile CHCB-003-0015B attached as Exhibit B to Motion to Enforce Settlement Agreement filed October 5, 2004 (Doc. No. 7610)

5.  Paul Saavedra, an employee of the State Engineer for over 26 years in the Water Rights Division, in his Affidavit dated October 26, 2004, attests to his familiarity with the State Engineer's Rules and Regulations for the appropriation of surface water and to his examination of File No. 2361. Relevant documents (labeled A through K) are attached to his Affidavit. Affiant Saavedra sets forth the relevant portions of the rules and regulations and attests that the file contains no record or evidence of proof of application of water to beneficial use during the permit development period for the 13 acres of land claimed by Defendants, as required by the State Engineer's administrative rules. He further attests that the record contains no evidence of a request for extension of time in which to place water to beneficial use filed by Frank Chavez, predecessor in interest to the Defendants, or that there is a license to appropriate water issued in the name of Frank Chavez. Mr. Saavedra further attests that such documentation is required by the State Engineer's Rules and Regulations governing the issuance of permits and licenses. Mr. Saavedra attests that the granting of License No. 2631

and License No. 2631 – 2735 represented final agency action by the Water Rights Division on Application No. 2631, and that the administrative proceedings to consider that application were closed by the granting of those licenses. Affidavit of Paul Saavedra, attached hereto as Exhibit 2.

6. Application for Permit No. 2631 to appropriate water ("Application") was filed with the Office of the State Engineer by Gerald Johnson and other parties on March 29, 1948. The Application sought a permit to divert surface waters of the Cienega Redonda Creek for irrigation purposes for a number of persons, among them F. Chavez. The total number of acres to be irrigated under the Application was listed as 850 acres. The Chavez lands were described as 13 acres located in the N1/2, N1/2, NW1/4, of Section 3, Township 26N, Range 4E. Exhibit 2 (A), Application for Permit.

7. The Application was protested and the State Engineer held an administrative hearing. On March 23, 1949, the State Engineer approved the Application, granting a permit to appropriate water through the Rincon Blanca Ditch for the applicants listed, subject to certain conditions, and subject to the requirement that construction of works were to be completed and that water applied to beneficial use on or before December 31, 1950. Exhibit 2 (A), Application for Permit; Exhibit 2 (B), Decision of State Engineer.

8. The decision of the State Engineer was appealed to the state district court in Rio Arriba County, New Mexico. The district court issued its decision and among other things concluded it was without jurisdiction to determine and adjudicate the respective water rights of the protestants. The district court upheld the State Engineer's decision, with modifications not relevant to this proceeding, and required that a water master be appointed. Exhibits 2 (C) and (D), Cordova v. Johnson, District Court of Rio Arriba County, Cause No. 5055, Decision and Judgment (1950).

4

9. On August 10, 1953, the attorney for the permittees (H. J. Guthmann) filed the permittees' Proof of Application of Water to Beneficial Use under Permit No. 2631 ("PBU") with the State Engineer. The PBU lists 503.0 acres of land as acreage where water had placed to beneficial use. The list does not include any land for F. Chavez. Exhibit 2 (H) Proof of Application of Water to Beneficial Use.

10. Included as part of the filing package submitted by the permittees was the final inspection and report under Permit No. 2631 prepared by Samuel P. Davalos, Engineer. The State Engineer appointed Mr. Davalos to make a final inspection and report on the completed works, irrigated acreage, and water actually applied to beneficial use under Permit No. 2631. Based on his field inspection, Mr. Davalos listed approximately 503.0 acres of land as being irrigated, and stated that "it is estimated that 503.0 acres [amount corrected by hand and initialed] have been irrigated both during the past and present irrigation seasons." The Report further states that there were reductions in area and acreage from the original application. The Report omits the lands belonging to F. Chavez that were listed in the original application. The Report also omits that land belonging to C.L. Jacobs and A.F. Seeding, and reduced the amount of acreage in the name of Dwight Baker from 640 acres to 320 acres. to Exhibit 2 (H), Report of Samuel P. Davalos.

11. In accordance with the PBU and Report of Engineer Davalos, the State Engineer issued License to Appropriate Water No. 2631, for 183 acres (the balance of acreage from the Report was acted upon in related License 2631-2735 issued for Dwight Baker). License No. 2631 does not include a license to irrigate 13 acres of land for F. Chavez. Exhibit 2 (I) License No. 2631. License No. 2631 also did not include a license to irrigate the lands of the two other individuals who were also omitted from the final inspection report and PBU. Exhibit 2. The State Engineer delivered the final

5

License No. 2631 to H. J. Guthmann, the attorney who had represented all of the applicants during the application process. Exhibit 2 (I), cover letter of State Engineer dated November 16, 1953.

12. Defendants have provided no evidence that any lands owned by Frank Chavez were placed under irrigation after the State Engineer issued Permit No. 2631, or were irrigated at the time of the field inspection by Engineer Davalos and issuance of License No. 2631, or thereafter were irrigated by Frank Chavez prior to David Archuleta's acquisition of title to the Chavez property. David Archuleta acquired the interests of Frank Chavez in the property in January 1960. *See* Deeds attached to Answer of Defendants filed August 25, 2003 (Doc. No. 7214).

13. Defendants have provided no evidence, other than the approval of Application No. 2631, that there is a right to use water for irrigation purposes on any of the lands mapped under Subfile CHCB-003-0015B described above.

14. In his Affidavit dated October 4, 2004, Reymundo David Martinez attests that he is familiar with the Tijeras lateral of the Rincon Blanca Ditch and is licensed to irrigate his lands under License No. 2631. Affiant Martinez further attests that he personally knew the Chavez family and that the Chavez family land now owned by Defendants is adjacent to his own. The location of the Martinez lands are shown in the Consent Order filed December 1, 2001 (Doc. No. 6423). Mr. Martinez further attests that Frank Chavez during the 1940s did not irrigate his land. He attests that Frank Chavez left his land and that during the late 1940s and 1950s there was no irrigation of the Chavez property. Mr. Martinez testifies that the only water that flows to Defendants' lands is run-off from the irrigation of his own property. Affiant Martinez further attests that existing water right owners, including himself, do not receive sufficient water during the irrigation season to meet their needs. Affidavit of Reymundo David Martinez, attached hereto as Exhibit 3.

6

15. In his Affidavit dated September 29, 2004, Clyde Baker attests that he is familiar with the Rincon Blanca Ditch and is licensed to irrigate his lands through that ditch under License No. 2631 – 2735. Affiant Baker further attests that he personally knew the Chavez family and that Frank Chavez did not follow through in the permitting process related to Application No. 2631, and did not want to be included in the completion of that process. He further attests that Frank Chavez did not participate in the maintenance and repair of the ditch, and neither Frank Chavez nor anyone else has irrigated the Chavez family lands from at least 1950 to the present time. Affiant Baker further attests that existing water right owners, including himself, do not receive sufficient water during the irrigation season to meet their needs. Affidavit of Clyde Baker, attached hereto as Exhibit 4.

16. There is no evidence that the 11.5 acres of land described by the State in the Proposed Consent Order for Subfile No. CHCB-003-0015B were placed under irrigation pursuant to a permit or license issued by the State Engineer.

17. There is no evidence that the 13 acres of land listed for F. Chavez in Application No. 2631, for which Defendants claim water rights in these proceedings under Subfile CHCB-003-0015B, were irrigated by anyone during the 1940s and 1950s, and prior to the acquisition of that property by the Defendants in about 1960.

18. Based on the material facts presented in the record, the State Engineer has not issued a License to Appropriate Water for the 13 acres of land listed for F. Chavez in Application No. 2631 for which Defendants assert a water right under Subfile No. CHCB-003-0015B.

19. There is no evidence indicating use of water for irrigation purposes prior to March 19, 1907 on any of the lands mapped under Subfile CHCB-003-0015B. Numerous affidavits prepared during the proceedings on Application No. 2631 state that the Tijeras Ditch, the lateral of the Rincon

Blanca Ditch that would supply irrigation water to the Chavez family lands, was constructed in about 1912. *E.g.*, Affidavits of Frank Chavez dated February 3, 1948 and February 9, 1948, attached hereto as Exhibit 5.

20. There is no evidence to support Defendants' claim of irrigation water rights for the either the 11.5 acres of land described by the State in the Proposed Consent Order for Subfile CHCB-003-0015B or the 13 acres of land described by Defendants in their Answer to Complaint. Argument in support hereof is set forth in the Memorandum below.

WHEREFORE, the State respectfully asks that the Court issue an Order granting the State's Motion for Summary Judgment. The State requests that the Court find and conclude as a matter of law that Defendants be adjudicated no water rights under Subfile CHCB-003-015B for both the 11.5 and the 13 acre tracts of land described herein, and grant such other relief to the State as may be necessary or appropriate.

## MEMORANDUM IN SUPPORT OF MOTION
## FOR SUMMARY JUDGMENT

Defendants have no legal right to divert the surface flows of the Rio Cebolla for irrigation of lands acquired from Frank Chavez. The legal right to divert water and place it to beneficial use is exclusively governed by the New Mexico Water Code, NMSA 1978, Sections 72-1-1 *et seq*. The State Engineer is charged with the administration of water rights within the state and has general supervision of the state's water, and of the measurement, appropriation, and distribution of these waters, and their apportionment in accordance with the licenses issued by the State Engineer and the adjudications of the courts. NMSA 1978, Sections 72-2-1, 72-2-9 (1907). Unless the administrative process has been followed for the appropriation of water, Defendants cannot claim a water right.

8

Under the Federal Rules of Civil Procedure, Rule 56(c), summary judgment is appropriate if the pleadings and record on file, together with any affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Rosette v. United States*, 277 F.3d 1222, 1226 (10th Cir. 2002); *Simms v. Oklahoma ex rel. Depot of Mental Health*, 165 F.3d 1321, 1326 (10th Cir. 1999). The evidence and any reasonable inferences are viewed in the light most favorable to the nonmoving party.

## I. THE ADMINISTRATIVE PROCESS GOVERNS DEFENDANTS' UNDERLYING RIGHT TO APPROPRIATE WATER

Defendants' claim to a water right is based on Application for Permit to Appropriate Water No. 2631 filed with the State Engineer in 1948. All claims to the use of water initiated after March 19, 1907 relate back "to the date of the receipt of an application thereof in the office of the territorial or state engineer, subject to compliance with the provisions of this article, and the rules and regulations established thereunder." NMSA 1978, Section 72-1-2 (1907). In order to hold a valid water right, as a matter of law, Defendants or their predecessors in interest must have complied with the applicable statutes and administrative regulations for the appropriation of water. They have not done so.

Under Section 72-5-6, an application to appropriate surface water approved by the State Engineer "shall become a permit to appropriate water, and shall state in such approval the time within which the construction shall be completed and the time within which water shall be applied to a beneficial use." NMSA 1978, Section 72-5-6 (1907). The time allowed for application of water to beneficial use "in no case shall exceed five years from the date of approval within which to complete construction, and four years in addition thereto within which to apply water to a beneficial use;

9

provided that the state engineer shall have the power to grant extensions of time as provided in Section 72-5-14." NMSA 1978, Section 72-5-6 (1907); *see also* NMSA 1978, Section 72-5-14 (State Engineer shall have power to grant extensions of time "upon proper showing by the applicant of due diligence or reasonable cause for delay").

The New Mexico courts have clearly held that a permit is but the first part of acquiring a water right under state law. In *Hanson v. Turney*, the court stated that

> A water permit is an inchoate right, and 'is the necessary first step' in obtaining a water right [citation omitted]. It is "the authority to pursue a water right--a conditional but unfulfilled promise on the part of the state to allow the permittees to one day apply the state's water in a particular place and to a specific beneficial use under conditions where the rights of other appropriators will not be impaired."
> . . . .
> The legislature was aware of the distinction between holders of permits and owners of water rights, as shown by NMSA 1978, § 72-12-8 (2002), which provides that "the owner of a water right" or "the holder of a permit from the state engineer to appropriate any such waters" forfeits their right if the water is not applied to beneficial use. . . . It is thus clear that if the legislature intended to treat permit holders the same as owners of water rights, it knew how to draft a statute which would successfully do so. The fact that the legislature did not do so, plus the absence of any reference to permit holders in Section 72-12-7(A), is compelling evidence that the legislature did not intend to allow permit holders who had not yet applied any water to beneficial use to be considered owners of a water right.

*Hanson v. Turney*, 2004 NMSA 069, ¶ 9, ¶12, 136 N.M. 1, 3-4, 94 P.3d 1, 3-4 (2004). It is not enough to show evidence that a permit was issued in the name of Defendants' predecessor in interest. The entire administrative process, culminating in proof of application to beneficial use, must be undertaken to create a water right.

New Mexico law requires the State Engineer to inspect the completed works and "issue a license to appropriate water to the extent and under the condition of the actual application thereof to beneficial use, but in no manner extending the rights prescribed in the permit: provided that the

inspection to determine the amount of water applied to beneficial use shall be made at the same time as that of the constructed work, if requested by the owner, and if such action is deemed proper by the state engineer." NMSA 1978, Section 72-5-13 (1907). The State Engineer may extend the time upon application by a permit holder for up to ten years after the date of approval of the application. NMSA 1978, Section 72-5-14 (1941). The State Engineer has promulgated rules and regulations for the administrative permitting and licensing process outlined by these statutes. An administrative agency is bound by its own rules and regulations. *Albuquerque v. State Labor & Indus. Common*, 81 N.M. 288, 289, 466 P.2d 565, 567 (1970) (*citing Connally v. Nitre*, 130 U.S.App.D.C. 351, 401 F.2d 416 (1968); *City of Albuquerque v. Burrell*, 64 N.M. 204, 326 P.2d 1088 (1958); *Vitarelli v. Seaton*, 359 U.S. 535, 79 S.Ct. 968 (1959)).

There is no record that Defendants' predecessors in interest were ever issued a license to appropriate water. The record shows that the permittees under Permit No. 2631 filed a Proof of Application of Water to Beneficial Use that did not include proof of irrigation for the Chavez land and excluded those lands. Exhibit 2. The record shows that the State Engineer appointed a designated engineer in accordance with Section 72-5-13 to make a final inspection report and submit proofs for Permit No. 2631, and that the field inspection did not show evidence of irrigation of the lands at issue and engineer's report does not list those lands. Exhibit 2 (G) & (H). In fact, the field inspection report states specifically that there were reductions in acreage from the application. Exhibit 2 (H). In accordance with state statutes and applicable administrative rules and regulations, the State Engineer issued a license which specified the lands to be irrigated under License No. 2631. Exhibit 2 (I). License No. 2631 does not include the lands at issue. Once a license is issued, the right to divert water exists pursuant to the license, not the original permit.

11

There is no record in the State Engineer files pertaining to Permit and License No. 2631 of any request for extension of time in which to place water to beneficial use for land owned by Frank Chavez after the other permittees provided proof of beneficial use for the reduced acreage in the license. Exhibit 2. Nor is there any record that the persons omitted in License No. 2631 claimed that they were aggrieved by that action. Exhibit 2. Where there is non-compliance with promulgated regulations, the courts do not address whether there exists a genuine issue of material fact concerning an individual's state of mind at the time. *See Romero v. Dairyland Ins. Co.*, 111 N.M. 154, 803 P.3d 243 (1990). Evidence presented with regard to Defendants' belief that the property they acquired had water rights is not material or relevant. Evidence that Defendants themselves may have from time to time irrigated their land either from return flows or from actual diversions from the Rincon Blanca do not create a water right where they do not have a valid permit or license issued by the State Engineer to divert water.

Because the original Chavez applicant failed to comply with the requirements of the statutes and regulations governing the appropriation of surface water, no irrigation water rights exist in relation to Defendants' land at issue. As a matter of law, Defendants' claim must be denied.

## II. THE ACTION OF THE STATE ENGINEER IN ISSUING LICENSE NO. 2631 WAS FINAL AND CONCLUSIVE AND CANNOT BE COLLATERALLY ATTACKED THROUGH THIS ADJUDICATION

The State Engineer properly issued License No. 2631 in accordance with Section 72-5-13 and the State Engineer's rules and regulations. If not in conflict with legislative policy, legislatively authorized rules and regulations have the force of law. *Romero v. Dairyland Ins. Co.*, 111 N.M. 154, 156, 803 P.2d 243, 245 (1990), *citing Jaramillo v. Fisher Controls Co.*, 102 N.M. 614, 698 P.2d 887 (Ct. App.), *cert. denied*, 102 N.M. 613, 698 P.2d 886 (1985). After this license was issued, no

12

persons notified the State Engineer in accordance with Section 72-2-16 that they were aggrieved by the action of State Engineer. Exhibit 2. Pursuant to NMSA 1978, Section 72-7-1(B), the action of the State Engineer is conclusive if an appeal is not timely taken within thirty days after receipt of notice of the State Engineer's decision, act or refusal to act. *See, e.g., Angel Fire Corp. v. C.S. Cattle Co.*, 96 N.M. 651, 634 P.2d 202 (1981); *Garbagni v. Metropolitan Inv., Inc.*, 110 N.M. 436, 796 P.2d 1132 (Ct. App. 1990); *El Dorado Utilities, Inc. v. Galisteo Domestic Water Users Assoc.*, 120 N.M. 165, 899 P.2d 608 (Ct. App. 1995).

Because the appropriation process was properly followed and the deadline for challenging a final action of the State Engineer is statutory, the Court cannot confer jurisdiction on itself through this adjudication to review the action of the State Engineer. Neither can the Court create new water rights in this proceeding. A general adjudication of water rights serves to determine and confirm existing rights to the use of water. *See* NMSA 1978, Section 72-4-15; *Cf. Department of Ecology v. Grimes*, 121 Wash.2d 459, 466, 852 P.2d 1044, 1048 (1993) (general adjudication of water rights is a special form of quiet title action to determine and confirm existing rights).

Allowing Defendants the right to challenge the issuance of License No. 2631 some 50 years later would defeat the principles of finality, namely to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and by preventing inconsistent decisions, encourage reliance on adjudication." *Three Rivers Land Company, Inc. v. Maddoux*, 98 N.M. 690, 694, 652 P.2d 240, 244 (1982). Regardless of the reasons the Defendants' predecessors may have had for not completing the administrative process for the appropriation of water, the Defendants cannot challenge in this adjudication, nor can the Court review, the final determination of the lands to be irrigated under License No. 2631. *See Garbagni*, 110 N.M. 436, 796 P.2d 1132 (Ct.App. 1990); NMSA 1978,

13

Section 62-7-1(B). Where the State Engineer complied with the law in issuing License No. 2631, his decision to limit the acreage in the license, and to exclude from the license the Chavez lands, is not subject to collateral attack in this forum. *See Vandervossen v. City of Espanola*, 2001 NMSA 015, ¶ 18-19, 130 N.M. 287, 293, 24 P.3d 319, 323. The State Engineer's orders are "presumed to be in proper implementation of the provisions of the water laws administered by him." NMSA 1978, Section 72-2-8 (H). For the State Engineer's act to be subject to indefinite collateral attack, there must be a clear showing that his decision was outside his statutory authority. *See Vandervossen*, 2001 NMSA 015, ¶ 19, 130 N.M. at 293, 24 P.3d at 323.

The evidence shows that the State Engineer acted within his authority and in accordance with law. Defendants cannot use a claim of mistake, misapprehension, or alleged lack of resources of Frank Chavez to justify setting aside a lawful license to appropriate water that excludes their acreage.

## CONCLUSION

For the reasons stated in this Motion for Summary Judgment and Memorandum in Support thereof, the State requests that the Court find and conclude as a matter of law that Defendants have no irrigation water rights for the 11.5 and the 13 acres of land described herein. The State further requests that the Court enter a Subfile Order adjudicating Defendants a No Right for irrigation purposes for these tracts under Subfile CHCB-003-0015B.

Respectfully submitted,

*Ed Newville*

Edward G. Newville, Esq.
P.O. Box 25102
Santa Fe, NM 87504-5102
(505) 827-6150

Stacey J. Goodwin, Esq.

300 Galisteo Street, Suite 205
Santa Fe, NM 87501

Special Assistant Attorneys General
Office of the State Engineer

## CERTIFICATE OF SERVICE

I hereby certify that copies of the above State of New Mexico's Motion for Summary Judgement and Memorandum in Support, with attached exhibits, was mailed to the following persons on October **27**, 2004.

*Ed Newville*
Edward G. Newville

Special Master Vickie L. Gabin
USDC-DCNM
P.O. Box 2384
Santa Fe, NM 87504-2384

Alfonso G. Sanchez, Esq.
2853 Calle Princesa Juana
Santa Fe, NM 87507