IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| STATE OF NEW MEXICO on the relation of State Engineer, | ) ) ) | |
| Plaintiff, | ) ) | 69cv07941-BB-ACE |
| v. | ) ) | RIO CHAMA STREAM SYSTEM |
| RAMON ARAGON, et al., | ) ) | Sections 3, 5, and 7 |
| Defendants. | ) ) | |

### REPLY TO STATE OF NEW MEXICO'S RESPONSE OBJECTING TO MOTION FOR ORDER ALLOWING WITHDRAWL AND TIME AND MOTION FOR LEAVE TO RESPOND TO THE STATE OF NEW MEXICO'S MOTION TO ENFORCE SETTLEMENT AGREEMENT

David E. Archuleta and Lydia U. Archuleta ("the Archuletas"), by and through their undersigned counsel, for their reply to the State of New Mexico's Response Objecting to Motion for Order Allowing Withdrawl and Time, and their Motion for Leave to Respond to the State's Motion to Enforce Settlement Agreement, state:

*A.  Introduction.*

The underlying issue with regard to the Archuletas Motion for Order Allowing Withdrawal and Time is precipitated by the State's Motion to Enforce Settlement Agreement and whether the Archuletas are bound by various discussions and correspondence by and between counsel for the State, Edward G. Newville, and Alfonso Sanchez, the Archuletas former counsel as outlined in the State's enforcement motion. The contention of the Archuletas is that there was no settlement agreement and because Alfonso Sanchez would necessarily be called to testify as to that contention, then he

would be disqualified from also acting as counsel for the Archuleta. Undersigned counsel is not prepared to extend that contention to include Mr. Newville as being similarly disqualified as Mr. Sanchez. Nonetheless, the Archuletas are prejudiced by the purely procedural issues involved in the immediate motions which would deny them a trial on the merits or an agreement that would not involve issues of mistake, inadvertence, or other reasons dealing with contract law to the effect that there was no meeting of the minds regarding the settlement agreement.

### B. *There was no Settlement Agreement entered into between the State and the Archuletas.*

Swift-Eckrich, Inc. v. Advantage Systems, Inc, et.al, 55 F.Supp.2d 1280, 1283-1284 (1999) contains an excellent statement of the applicable case on settlement agreements as is involved in this case. The statement follows:

> "A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it." *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir.1993). " 'Once it is shown that an attorney has entered into an agreement to settle a case, a party who denies that the attorney was authorized to enter into the settlement has the burden to prove that authorization was not given.' " *Trujillo v. State of New Mexico*, 172 F.3d 63, 1999 WL 63885, *2 (10th Cir.1999) (*quoting *1284 Turner v. Burlington N. R. Co.*, 771 F.2d 341, 345-46 (8th Cir.1985)). Whether the party has met its burden is a question of fact. *Id.* "Whether an evidentiary hearing is required to resolve material facts concerning the existence or terms of a settlement agreement is to be determined on a case-by-case basis." *Johnson v. Landmark Plaza, Ltd.*, 16 F.3d 416, 1994 WL 36773 (10th Cir.1994) (Table).
>
> "Questions regarding the enforceability or validity of ... [settlement] agreements are determined by federal law--at least where the substantive rights and liabilities of the parties derive from federal law." *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir.1984); *see Petition of Mal de Mer Fisheries, Inc.*, 884 F.Supp. 635, 639 n. 4 (D.Mass.1995) ("Federal law applies to the issue of an attorney's authority to settle a civil action brought under federal law.") (*citing Michaud v. Michaud*, 932 F.2d 77, 80 n. 3 (1st Cir.1991)). *See also Snider v. Circle K Corp.*, 923 F.2d 1404, 1407 (10th Cir.1991) (applying federal common law to Title VII settlement agreement).
>
> "Settlement agreements are a type of contract and are therefore governed

by contract law." *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir.), *cert. denied*, 506 U.S. 867, 113 S.Ct. 194, 121 L.Ed.2d 137 (1992). "A district court does not have the power to impose a settlement agreement when there was never a meeting of the minds." *Wang Laboratories, Inc. v. Applied Computer Sciences, Inc.*, 958 F.2d 355, 359 (Fed.Cir.1992) (*citing Ozyagcilar v. Davis*, 701 F.2d 306, 308 (4th Cir.1983)). Nor does the court have "the power to make an agreement for the parties or to decide, contrary to the facts and the law, that a draft settlement agreement was binding when the parties did not agree on it." *Id.*

"It is fundamental that an attorney does not by reason of his employment have authority to compromise his client's cause of action absent an emergency requiring prompt action." *Hayes v. Eagle-Picher Industries, Inc.*, 513 F.2d 892, 893 (10th Cir.1975). "[W]here clients unequivocally repudiate an unauthorized agreement immediately after learning of it (and this means a few days or reasonable time), the compromises are to be set aside." *Id.* at 894.

In this case there has been no meeting of the minds with respect the Archuletas. In its motion to enforce the settlement agreement, the State cites Mr. Sanchez' note at the top of Mr. Newville's letter dated July 21, 2004, to the effect that "David Archuleta agrees to proceed as outlined below" as binding David Archuleta to the ambiguous offer made in Mr. Newville's letter stating "[a]lthough I am unable to make any offer of water rights for irrigation purposes, it is possible to request that the Court make an expedited determination of water rights based upon stock watering and the stock ponds that are present on your clients' land." Mr. Newville's letter continues "[a]ssuming the State and your clients can reach an agreement on the amount and nature of any water rights based upon stock watering, those water rights could be recognized in a single Consent Order that also acknowledges that there are no irrigation water rights appurtenant to the land in question." (emphasis added). The first sentence in the last paragraph of Mr. Newville's letter similarly does not support the State's position. It states: "Your clients would be free to accept or reject any offer made by the State with regard to stock watering water rights, however, if the parties prove unable to reach an agreement then the present

3

litigation proceedings would be reinstated." (emphasis added). Attached hereto as Exhibits A and B, respectively, are the affidavits of David E. Archuleta and Alfonso Sanchez as to their understanding of whether they had entered into a settlement agreement with the State. Both essentially say that whatever understanding they had reached depended on acceptance of the Consent Order.

Mr. Newville's letter outlines a procedure for possible settlement of the issues in this Subfile. The agreement is entirely contingent on a number of things as outlined in the letter. It is contingent on the findings of additional field work by the State Engineer's office and it most certainly is contingent on an acceptance of those findings by the Archuletas. Acceptance would have been indicated by the Archuletas' signatures on the Consent Order.

At most there is an agreement to the abbreviated procedure of suspending litigation until the additional hydrographic surveying was completed to then determine whether a settlement agreement could be reached by the parties.

### C. *Consent of Opposing Counsel for the Motion for Leave to File Late Response to the Motion to Enforce Settlement Agreement.*

Undersigned counsel has twice contacted Mr. Newville's office, first, to attempt to seek consent for an enlargement of time within which to file a response to the State's Motion to Enforce Settlement Agreement and, then, to seek concurrence on a motion for leave to file a late response. None of undersigned counsel's telephone calls were returned. Accordingly, undersigned counsel presumes that the State opposes any attempt to enlarge time within which to respond to the Motion to Enforce Settlement Agreement

4

given the State's Response Objecting to Motion for Order Allowing Withdrawal and Time.

### D. *The State suffered no prejudice by Mr. Sanchez failure to contact State's counsel before filing Motion for Order Allowing Withdrawal and Time.*

Under Rule 61 of the Federal Rules of Civil Procedure, a court "at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." In this case, the State has not shown in support of its objection to the Archuletas Motion for Order Allowing Withdrawal and Time or in its Motion to Enforce Settlement Agreement that its substantial rights were affected. The State, therefore, suffered no prejudice, as a result Mr. Sanchez' failure to seek concurrence of the State's counsel before filing the motion. It is evident from the State's pleadings that the State would most likely have not concurred in the Motion for Order Allowing Withdrawal and Time.

**WHEREFORE**, the Archuletas that the Court:

A. Grant their Motion for Order Allowing Withdrawal and Time; and,

B. Grant their Motion for Leave to Respond to the State's Motion to Enforce Settlement Agreement, <u>or in the alternative</u>, to allow the foregoing pleading as the Archuleta's Response to Motion to Enforce Settlement Agreement.

Respectfully submitted,

PADILLA LAW FIRM P.A.

By: /s/ Ernest L. Padilla

Ernest L. Padilla
P.O. Box 2523
Santa Fe, NM 87504
(505) 988-7577

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Reply to State of New Mexico's Response Objecting to Motion for Order Allowing Withdrawal and Time and Motion for Leave to Respond to the State of New Mexico's Motion to Enforce Settlement Agreement was mailed to the following:

Alfonso G. Sanchez, Esq.
2853 Calle Princessa Juana
Santa Fe, New Mexico 87505

Edward G. Newville, Esq.
Special Assistant Attorney General
Office of State Engineer
P O Box 25102
Santa Fe, New Mexico 87504-5102

Stacey J. Goodwin, Esq.
Special Assistant Attorney General
Office of State Engineer
300 Galisteo Street, Suite 205
Santa Fe, New Mexico 87502

Subfile No. CHCJ-002-0011
Docket No. 7575
Ernestina V. Rivera
Leo E. Rivera
P.O. Box 585
Canjilon, NM 87515

Rick DeSimone
WATERS Project Manager
121 Tijeras, Suite 3000
Albuquerque, NM 87102

John W. Utton, Esq.
Sheehan, Sheehan & Stelzner
P.O. Box 271
Albuquerque, NM 87103-0271

Special Master Vickie L. Gabin
USDC-DCNM
P.O. Box 2384
Santa Fe, NM 87504-2384

NM Acequia Commission
Fred Vigil
Dept. of Finance & Admin.
Local Government Division
Bataan Memorial Building
Santa Fe, NM 87503

6

Subfile No. CHCJ-003-0069
Docket No. 7581
Nickiann Scheurwater
William N. Scheurwater
35 Grant Street
Denver, CO 80203

Subfile No. CHCJ-003-0051
Docket No. 7582
Lena Sanchez
P.O. Box 1048
Espanola, NM 87532

Karla McCall, Data Manager
1315 Sagebrush Drive, SW
Los Lunas, NM 87031

Fred J. Waltz, Esq.
P.O. Box 6390
Taos, NM 87571

Bradley S. Bridgewater, Esq.
David W. Gehlert, Esq.
USDCJ-ENRD
999 18th St., Suite 945
Denver, CO 80202

Paula Garcia
NM Acequia Association
607 Cerrillos Road, Suite F
Santa Fe, NM 87501

Ted Trujillo, Esq.
P.O. Box 2185
Espanola, NM 87532

this 28th day of October, 2004.

ERNEST L. PADILLA

7

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| STATE OF NEW MEXICO on the relation of State Engineer, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )  69cv07941-BB-ACE<br>) |
| | )  RIO CHAMA STREAM SYSTEM |
| RAMON ARAGON, et al., | )<br>)  Sections 3, 5, and 7 |
| Defendants. | )<br>) |

## AFFIDAVIT OF DAVID E. ARCHULETA

STATE OF NEW MEXICO)
                          ) ss.
COUNTY OF SANTA FE  )

Affiant, David E. Archuleta, first being duly sworn upon oath, states:

1. I am a Defendant in this action, and I am competent to make this affidavit.

2. Until recently, my wife, Lydia U. Archuleta, and I had employed Alfonso Sanchez as our attorney in this action.

3. Between my wife and I, I have been the person in charge of directing, through Mr. Sanchez, the litigation regarding our claims to water rights involved in this action.

4. Recently, I became aware, following the State of New Mexico's Motion to Enforce Settlement Agreement, that my wife and I had apparently agreed to a drastic reduction of our claimed water rights.

5. My understanding of the Motion to Enforce Settlement Agreement is that Mr. Sanchez evidently communicated with counsel for the State of New Mexico, Edward G. Newville and joined in a Motion to Stay Litigation Proceedings and allow the expedited determination of stock watering rights for stock watering ponds on our land only. I was aware of settlement efforts and discussion between Mr. Sanchez and Mr. Newville, but I was not aware that settlement would be limited to stock watering only.



EXHIBIT "A"

6. After reading the proposed Consent Order attached as Exhibit B to the State of New Mexico's Motion to Enforce Settlement Agreement, I asked Mr. Sanchez if he had agreed to the proposed Consent Order calling for only 1.1 acres and limited to Livestock Watering.

7. In response to my inquiry of Mr. Sanchez, Mr. Sanchez informed me that it was his understanding that the litigation would be stayed to try to resolve, after survey of our land by the State Engineer's office, all of our claims, and not limited to the watering ponds. Had I understood that the reasons for staying litigation would be limited to the watering ponds only, I would not, under any circumstances, have agreed to attempt to settle.

8. After considering the impact of the Motion to Enforce Settlement Agreement and the reasons given by the State of New Mexico for filing the motion and based upon Mr. Sanchez' factual disagreement with the motion, I have sought the assistance of other counsel because I believe that Mr. Sanchez' testimony is necessary concerning our perceived agreement to settle.

**Further Affiant sayeth naught.**

_____
DAVID E. ARCHULETA

**SUBSCRIBED AND SWORN** TO before me this 25th day of October, 2004, by David E. Archuleta.

_____
Notary Public

My Commission Expires:

December 9, 2006

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| STATE OF NEW MEXICO on the relation of State Engineer,<br><br>Plaintiff,<br><br>v.<br><br>RAMON ARAGON, et al.,<br><br>Defendants. | 69cv07941-BB-ACE<br><br>RIO CHAMA STREAM SYSTEM<br><br>Sections 3, 5, and 7 |

### AFFIDAVIT OF ALFONSO G. SANCHEZ

STATE OF NEW MEXICO)
                    ) ss.
COUNTY OF SANTA FE  )

Affiant, Alfonso G. Sanchez, first being duly sworn upon oath, states:

1. I am duly licensed attorney in the State of New Mexico continuously since August 15, 1957, and I have represented Defendants David E. Archuleta and Lydia U. Archuleta, and have personal knowledge concerning the facts in the State of New Mexico's Motion to Enforce Settlement Agreement

2. On July 20, 2004, at 9:00 a.m., David Martinez's deposition was to be taken before Court Reporter Betty Lamphere but she failed to appear. Attorneys Edward Newville and his co-counsel, Stacy J. Goodwin, David E. Archuleta, David Martinez and myself were present. Everyone waited for over an hour for the Court Report to appear, which gave us time to look for ways of possible settlement. Mr. Archuleta mentioned he was only a cattleman, not interested in raising and bailing hay, but in having irrigated pasture and water for his cattle. This is why the parties thought there was a possibility of settlement, if the three ponds were allowed water through the existing ditches. Mr. Newville indicated the pond issues would not be heard for a long time, possibly 10 years, but he further indicated that sooner or later the State would have to litigate the pond issues and if we might settle with the Defendants having the right to reject the offer. I indicated to Mr. Newville that any offer the State made it was up to Defendants to accept or reject but that in addition to the ponds the State should consider giving water rights several feet along the ditches. Mr. Newville suggested he would draft pleadings to follow

EXHIBIT "B"

through to get Court permission for additional time for State surveys which information would be shared with Defendants.

3. The notations dated July 7, 2004 on the letter dated July 21, 2004, from Ed Newville to me indicates that David Archuleta was agreeable to proceed along the lines spelled out by the content of Mr. Newville's letter. It was never intended to be a hard and fast agreement to the results of the hydrographic survey to be done by the State Engineer's office. As stated in Mr. Newville's letter my clients would have been free to accept or reject any offer made by the State with regard to the stock water rights. But that would have depended on the outcome of the survey and the proposed Consent Order. At no time did I feel that we could not have rejected a proposed settlement and continued the litigation.

4. When I finally did receive the proposed Consent Order, I mailed a copy to David Archuleta who thereafter told me that unless additional water right could be negotiated, he wanted to return to litigation because his claims were substantially higher than called for in the proposed Consent Order but told him, "let's meet with Ed Newville who with his surveyor who can better explain the offer and what the surveys show". David Archuleta would not then sign the Consent Order in its proposed form with only 11 acres allotted. He indicated that irrigated pasture was necessary for better forage leading to better sustenance for his cattle herd.

5. We met Mr. Newville and his two surveyors for them to better explain the Consent Order because up to that time and even up to now, nothing of the surveyor's notes or hydrographic maps have been given to me concerning the three ponds and how water for the ponds on ditches would flow to fill the ponds. As Mr. Newville handed me the 3' x 4' hydrographic survey map and as I was examining it, Mr. Archuleta told them he could not accept the Consent Order as written and without further discussion Mr. Newville took from my hands across the table and refused the present time to give any further information concerning the hydrographic survey and notes, information so as to possibly have our surveyor check them.

6. Because I disagree with the factual assertions made in the Motion to Enforce Settlement Agreement, and because I was involved in the settlement discussions with Ed Newville, I felt constrained to prepare this affidavit and withdraw as counsel for David E. Archuleta and Lydia U. Archuleta. I simply cannot agree that we were bound by the proposed Consent Order or anything that I may have said and not agreed to by my clients.

**Further Affiant sayeth naught.**

ALFONSO G. SANCHEZ

2

SUBSCRIBED AND SWORN TO before me this 28th day of October, 2004, by ALFONSO G. SANCHEZ.

_____
Notary Public

My Commission Expires:

12/09/2006