# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| STATE OF NEW MEXICO on the relation of State Engineer,<br><br>Plaintiff,<br><br>v.<br><br>RAMON ARAGON, et al.,<br><br>Defendants. | 69cv07941-BB-ACE<br><br>RIO CHAMA STREAM SYSTEM<br><br>Sections 3, 5, and 7 |

## AFFIDAVIT OF ALFONSO G. SANCHEZ

STATE OF NEW MEXICO)
) ss.
COUNTY OF SANTA FE )

Affiant, Alfonso G. Sanchez, first being duly sworn upon oath, states:

1. I am duly licensed attorney in the State of New Mexico continuously since August 15, 1957, and I have represented Defendants David E. Archuleta and Lydia U. Archuleta, and have personal knowledge concerning the facts in the State of New Mexico's Motion to Enforce Settlement Agreement.

2. On July 20, 2004, at 9:00 a.m., David Martinez's deposition was to be taken before Court Reporter Betty Lamphere but she failed to appear. Attorneys Edward Newville and his co-counsel, Stacy J. Goodwin, David E. Archuleta, David Martinez and myself were present. Everyone waited for over an hour for the Court Report to appear, which gave us time to look for ways of possible settlement. Mr. Archuleta mentioned he was only a cattleman, not interested in raising and bailing hay, but in having irrigated pasture and water for his cattle. This is why the parties thought there was a possibility of settlement, if the three ponds were allowed water through the existing ditches. Mr. Newville indicated the pond issues would not be heard for a long time, possibly 10 years, but he further indicated that sooner or later the State would have to litigate the pond issues and if we might settle with the Defendants having the right to reject the offer. I indicated to Mr. Newville that any offer the State made it was up to Defendants to accept or reject but that in addition to the ponds the State should consider giving water rights several feet along the ditches. Mr. Newville suggested he would draft pleadings to follow

7631

through to get Court permission for additional time for State surveys which information would be shared with Defendants.

3. The notations dated July 7, 2004 on the letter dated July 21, 2004, from Ed Newville to me indicates that David Archuleta was agreeable to proceed along the lines spelled out by the content of Mr. Newville's letter. It was never intended to be a hard and fast agreement to the results of the hydrographic survey to be done by the State Engineer's office. As stated in Mr. Newville's letter my clients would have been free to accept or reject any offer made by the State with regard to the stock water rights. But that would have depended on the outcome of the survey and the proposed Consent Order. At no time did I feel that we could not have rejected a proposed settlement and continued the litigation.

4. When I finally did receive the proposed Consent Order, I mailed a copy to David Archuleta who thereafter told me that unless additional water right could be negotiated, he wanted to return to litigation because his claims were substantially higher than called for in the proposed Consent Order but told him, "let's meet with Ed Newville who with his surveyor who can better explain the offer and what the surveys show". David Archuleta would not then sign the Consent Order in its proposed form with only 1.1 acres allotted. He indicated that irrigated pasture was necessary for better forage leading to better sustenance for his cattle herd.

5. We met Mr. Newville and his two surveyors for them to better explain the Consent Order because up to that time and even up to now, nothing of the surveyor's notes or hydrographic maps have been given to me concerning the three ponds and how water for the ponds on ditches would flow to fill the ponds. As Mr. Newville handed me the 3' x 4' hydrographic survey map and as I was examining it, Mr. Archuleta told them he could not accept the Consent Order as written and without further discussion Mr. Newville took from my hands across the table and refused the present time to give any further information concerning the hydrographic survey and notes, information so as to possibly have our surveyor check them.

6. Because I disagree with the factual assertions made in the Motion to Enforce Settlement Agreement, and because I was involved in the settlement discussions with Ed Newville, I felt constrained to prepare this affidavit and withdraw as counsel for David E. Archuleta and Lydia U. Archuleta. I simply cannot agree that we were bound by the proposed Consent Order or anything that I may have said and not agreed to by my clients.

**Further Affiant sayeth naught.**

_____
ALFONSO G. SANCHEZ

**SUBSCRIBED AND SWORN TO** before me this 28th day of October, 2004, by ALFONSO G. SANCHEZ.

_____
Notary Public

My Commission Expires:

12/04/2006

3