IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT

NOV 2 4 2004

| | |
|---|---|
| STATE OF NEW MEXICO on the relation of State Engineer, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| RAMON ARAGON, et al., | ) ) |
| Defendants. | ) ) ) |

69cv07941-BB-ACE

RIO CHAMA STREAM SYSTEM

Sections 3, 5, and 7

## RESPONSE TO MOTION FOR SUMMARY JUDGMENT

Defendants DAVID E. ARCHULETA and LYDIA U. ARCHULETA (the Archuletas), by and through their undersigned counsel of record, for their response to the State of New Mexico's Motion for Summary Judgment, state:

    *A.*    *Introduction.*

The State's Motion for Summary Judgment is a curious one. First, the State argues against its own Findings and Order [Exhibit B of Exhibit 2 (Saavedra Affidavit)]. The Findings and Order were based on the Application for Permit [Exhibit A of Exhibit 2 (Saavedra Affidavit)] filed by a number of water claimants, including F. Chavez, the Archuletas' predecessor in title. The Findings and Order found and determined that F. Chavez had 13 acres of land under irrigation. As indicated in the factual assertions in the State's Motion for Summary Judgment, an appeal was taken from the State Engineer's Findings and Order, but except for minor modifications, the State Engineer's Findings

7663

and Order were upheld. No later District Court ruling specifically divested F. Chavez of the original rights to 13 acres. The State argues that thereafter the License to Appropriate Water [a portion of Exhibit I of Exhibit 2 (Saavedra Affidavit)] did not include F. Chavez, and therefore F. Chavez lost his water rights. The State would have us surmise that the reason for F. Chavez being divested of his water rights was due to the July 24, 1953, final inspection and report of Engineer Sam B. Davalos, included as a portion of Exhibit H of Exhibit 2 (Saavedra Affidavit). Mr. Davalos made no specific finding or report on why the F. Chavez lands were omitted from his report. Was it an oversight? Were the lands not being irrigated? We do know from Exhibit L (Plat of Rincon Blanca Ditch, Cebolla, New Mexico, prepared by G. H. Denton in 1948) of Exhibit 2 (Saavedra Affidavit) that there was a ditch system to the 13 acres and that the Tijeras Ditch serving F. Chavez' land was constructed in 1912 (See, Exhibit 5 of Motion for Summary Judgment—Affidavits of F. Chavez).

The proceedings commencing with the 1948 Application to Appropriate before the State Engineer and subsequent Court proceedings effectively adjudicated the water rights of F. Chavez, the Archuletas predecessor in title. Those rights have never been divested from F. Chavez or the Archuletas, and for purposes of summary judgment, the State's motion fails to establish such a divestiture, either through failure of F. Chavez to perfect his water rights after the District Court affirmance of the State Engineer's Findings and Order or abandonment.

**B.** ***Specific Responses to Statements of Undisputed Facts.***

1. Defendants do not dispute the statement of facts contained in Paragraphs 1, 2, 3, and 4 as they recite the background of the instant controversy.

2

2.  Responding the statement of facts as stated in Paragraph 5 dealing with the attestations of Paul Saavedra, and the attachments to the Affidavit of Mr. Saavedra, Defendants directs the Court's attention to the following exhibits of Mr. Saavedra's Affidavit:

   a. Exhibit A—Application for Permit to Appropriate the Public Surface Waters of the State of New Mexico dated March 10, 1948.

   b. Exhibit B—Findings and Order of the State Engineer dated March 23, 1949.

   c. Exhibit C—Decision of the Court of the District Court of Rio Arriba County, New Mexico.

   d. Exhibit D—Judgment of the District Court of Rio Arriba County, New Mexico.

   e. Exhibit H—containing the final inspection and report of Engineer Sam Davalos.

   f. Exhibits I and K containing License to Appropriate Water.

Consistent throughout these documents is the fact that Defendants' predecessor in title was included in the initial application with having 13 acres of irrigated land. A protest to the Application for Permit No. 2631 was submitted by certain persons. The State Engineer made Findings and Order granting the application, including the lands of F. Chavez. An appeal was taken by the protestants to the District Court, which affirmed, with slight modifications, the original application and the State Engineer's Findings and Order with no modifications with respect to the 13 acres of F. Chavez. In fact, there is no explanation by Mr. Saavedra, in any of the foregoing exhibits as to why the lands of F. Chavez were ultimately deleted from the License to Appropriate other than that the lands were omitted by Engineer Sam Davalos and in the subsequent License to Appropriate.

3

Certainly, Sam Davalos in Exhibit H did not indicate why the lands of F. Chavez were omitted in his inspection and report. There was no indication that the 13 acres as shown in the Saavedra Affidavit Exhibit I. (Plat of Rincon Blanca Ditch, Cebolla, New Mexico, prepared by G. H. Denton in 1948) were not being irrigated. In fact the District Court had already affirmed the Findings and Order of the State Engineer which had approved the original permit (Exhibit A). Further the District Court in its Judgment ordered "That this Court shall retain jurisdiction of the parties and the subject matters herein for the purpose of modifying the judgment of this Court to meet the changed conditions and circumstances that may arise, materially affecting the rights of the parties herein." Simply stated, no further modifications to divest F. Chavez of rights as determined by the State Engineer and affirmed by the Court were ever made.

3. Defendants do not dispute the statement of facts contained in Paragraphs 6, 7, and 8 as they support the State Engineer's determination with respect to Defendants' interpretation of the original proceedings as stated in Paragraph 2 above.

4. Responding to the statement of facts contained in Exhibits 9, 10, 11, and 12 and 13, the State, again, provides no evidence of why the 13 acres of F. Chavez were omitted from the Engineer Davalos' report. That report is absolutely silent as to the F. Chavez lands. The State simply speculates that the 13 acres were not under irrigation. The State makes the point that F. Chavez' irrigation rights were not grandfathered prior to the 1907 appropriation statute, and attaches the February 3 and February 9, 1948 affidavits of F. Chavez (Exhibit 5 of the Motion for Summary Judgment) indicating that he had been irrigating the 13 acres through the Tijeras Ditch since 1912 when that ditch was constructed. Neither, the Findings and Order of the State Engineer, the District

4

Court's decision and judgment, the Davalos report, or the License to Appropriate show or find that the F. Chavez 13 acres were not being irrigated and for that reason were omitted from further consideration. There is simply no indication for deletion of the F. Chavez lands in any of the documentation submitted by the State in support of its motion for summary judgment. The Davalos report (contained in Exhibit H of the Saavedra Affidavit) contains no answer to directive No. 8 in the appointment of Mr. Davalos to make the inspection and final report. Directive No. 8 states as follows:

> "8. If the area irrigated does not correspond with the area originally listed in the application and on the map, fully describe and set forth such differences in your report."

In his report contained in Exhibit H of the Saavedra Affidavit, Mr. Davalos states:

> "All acres being irrigated correspond with area originally listed in application and which were further described in No. 6, except for some reductions in area and acreage from the original application."

From the foregoing we can equally surmise what the State has surmised or that Mr. Davalos did not inspect the F. Chavez 13 acres or that Mr. Davalos inspected the F. Chavez lands, but inadvertently left them out of his report. We can not, for purposes of summary judgment, dwell on speculation; however, we can conclude that there is no indication whatsoever why the F. Chavez lands were left out of the Davalos report. The reductions in acreage in the Davalos report cannot be said to be the F. Chavez lands without further explanation for purposes of summary judgment.

     5.     Responding to the statements of fact contained in Paragraphs 14, 15, 16, 17, 18, 19, and 20, Defendants dispute such facts with the exception of Paragraphs 16 and 20 dealing with the claim of an additional 11.5 acres. Defendants concede that since this acreage was not part of the 1948 application for permit to appropriate, they cannot

realistically now contend that 11.5 additional acres were included in that process. Nonetheless, as to the 13 acres there is evidence of irrigation as stated above in the State's own submittals. The statements that F. Chavez did not follow the administrative process is a red herring. The 1948 application commenced the administrative process of water appropriation. The State Engineer held a hearing and took evidence in an adversary proceeding once the application was protested. The State Engineer determined that F. Chavez had 13 acres of irrigated land. The District Court upon appeal agreed. The Tijeras Ditch had been constructed in 1912. There was nothing further to construct as far as F. Chavez was concerned. Contrary to the Affidavits of Mr. Reymundo David Martinez and Clyde Baker, attached is the Affidavit of Defendant David E. Archuleta as Exhibit A, stating that Reymundo David Martinez as lessee or caretaker of the F. Chavez lands prior to the Defendants purchase of the lands in 1960, irrigated the lands and have been irrigated by Defendants essentially since then. (See paragraphs 4 and 5 of David E. Archuleta Affidavit).

Attached as Exhibit B is a copy of State's answer to Defendants' Interrogatory No. 1-14 indicating and effectively admitting that notice under NMSA 1978 Section 72-5-28 was never given to F. Chavez or to Defendants, thus there could not have been abandonment as implied or argued by the State.

### C.   *Standard for Summary Judgment*

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." FRCP 56(c). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact.'" Munoz v. St. Mary Corwin Hosp., 221 F.3d 1160, 1164 (10th Cir. 2000). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. Id.

The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. See, Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289 (1968)). The movant's initial burden may be discharged by showing that there is an absence of evidence to support the non-moving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the non-moving party on an essential element of the party's claim. Adler v. Walmart Stores, Inc., 144 F.3d 664, 671 (10th Cir. 1999). Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter. See McGarry v. Pitkin Co., 175 F.3d 1201 (10th Cir. 1999).

If the moving party satisfies its initial burden, the party opposing the motion for summary judgment may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing there is a genuine issue for trial as to a dispositive matter for which it carries the burden of proof. See Munoz, 221 F.3d at 1164. It is not sufficient "to simply show that there is some metaphysical doubt as to the material facts."

7

Matsuchita Elec. Indus. Co., 475 U.S. at 586. An issue of material fact is genuine if a reasonable jury could return a verdict for the party opposing the motion. See Harvey Barnett, Inc. v. Shidler, 338 F.3d 1125, 1129 (10th Cir. 2003). The substantive law at issue determines which facts are material in a given case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will probably preclude the entry of summary judgment." Id.

### D.    Argument.

In this case the affidavits of F. Chavez (Exhibit 5 of the Motion for Summary Judgment) are very credible evidence of early irrigation on the F. Chavez lands. See also the portions of the Transcript of Testimony attached as Exhibit 1 of the Affidavit of David E. Archuleta. Furthermore, Defendant David E. Archuleta attests to maintaining and irrigating through the Tijeras Ditch since he and his wife acquired the F. Chavez lands. See Exhibit A. The State Engineers Findings and Order and the Rio Arriba County District Court decision and judgment did not differ. The State give us quite a bit of "metaphysical doubt," not based on evidence but on conjecture, as to why the F. Chavez lands were not ultimately included in the License to Appropriate. In response to Defendants' Interrogatory No. 1-7, the State does not have any evidence indicating that Frank Chavez was dropped from the Rio Arriba County Cause No. 5055, the cause number under which the judgment was rendered. See Exhibit C - Interrogatory No. 1-7 and Answer 1-7.

8

A material issue of fact based on New Mexico water law is missing as to whether the F. Chavez lands were irrigated and whether such rights have ever been divested from either the Archuletas or F. Chavez.

The State cites <u>Hanson v. Turney</u>, 2004 NMCA 069, 136 N.M. 1 for the proposition that "[a] water permit is an inchoate right, and 'is the necessary first step' in obtaining a water right." First the facts of this case are quite dissimilar to the facts of the instant case. In <u>Hanson,</u> the water rights had never been put to a beneficial use and a change of location for appropriation was, therefore, improper. Here, there is evidence that since 1912 water had been put to a beneficial use on 13 acres owned by F. Chavez, an original applicant in the 1948 application to appropriate irrigation water to the State Engineer. Here, there was an application filed before the State Engineer, the "necessary first step." Contrast, <u>Village of Wagon Mound v. The Mora Trust</u>, 2003-NMCA-035, ¶28, 133 N.M. 373, 380-381, cert. den'd, 133 N.M. 413, 63 P.3d 516, where the New Mexico Court of Appeals stated in part:

> ....There is no question that the Village has not complied with the Irrigation Act. The State Engineer has not recognized, permitted <u>or</u> licensed any right to appropriate water by the Village. And, there has been no adjudication of a water right in the Village. (emphasis added).

Here, the State Engineer not only recognized the 13 acres of F. Chavez, but effectively permitted and licensed those rights through its hearing process and subsequent court proceedings. The facts of this case and the facts and decision in <u>Farmer Development Co. v. Rayado Land & Irrigation Co, et al</u>, 28 N.M. 357, 213 P. 202 (1923). We quote liberally at 213 P. 206-207:

The mere intention to appropriate water for the irrigation of land, of course, is not sufficient to initiate a right, under the general law. There must be an act which the courts have termed "the first step," as an inception of the right, to be followed with the exercise of diligence in construction and the application of the water to a beneficial use. These conditions precedent, being performed, the right relates back to the time when the first step was taken. Rio Puerco Irr. Co. v. Jastro, 19 N. M. 149, 141 Pac. 874. The "first step" may be work in excavating ditches, necessary surveying, or any substantial act necessary to, and giving notice of, the building of the contemplated system for the irrigation of land. 2 Kinney on Irrigation (2dEd.) §747.

As neither of the parties hereto filed the notice required by chapter 104 of the Laws of 1905, neither secured any rights thereunder. Each initiated rights under the general law, the appellee, having initiated its the first, was prosecuting its work with diligence at the time the act of 1907 went into effect. Such right was recognized by, and excluded from, the operation of the act of 1907. Now appellant irrigation company does not claim any right under the general law (and if it did, it would be inferior to appellee's right), but rests its claims solely upon its appropriation under the act of 1907.

We therefore conclude that the district court was correct in holding that the appellee was entitled to a prior appropriation of water for 10,000 acres of land superior to the right of appellant Rayado Land & Irrigation Company, under its appropriation of May 27, 1907, subject to the conditions and provisions of the decree. The appellant Chicago Live Stock Company contends that the trial court awarded the right to use much less water than it and its predecessors in title had legally appropriated. The court allowed water for the irrigation of 475 acres, and placed the duty of water at 1 1/2 second feet per acre per crop season. It would serve no useful purpose to review this evidence, as it is conflicting to a high degree. There is not only substantial evidence to support the findings and decree of the court, but apparently very trustworthy evidence. It has been repeatedly held by this court, in equity cases as well as suits at law, that findings of the trial court supported by substantial evidence will not be disturbed. The contention that a large amount of meadow land had been irrigated by the Chicago Live Stock Company and its predecessors in title was apparently given due consideration by the trial court. We are not able to say that the district court was not correct in its finding.

In this case there was ample evidence in 1948 that when the Application to Appropriate was made the Tijeras Ditch lateral had been constructed and that irrigation had been conducted from that ditch by Federico Chavez, then later by Frank Chavez (or

F. Chavez). See Exhibit 5 of State's Motion for Summary Judgment. See also Affidavit of David E. Archuleta – Exhibit A.

The State's assertions that the Archuletas claims are barred by collateral estoppel and res judicata theories are misplaced. On the contrary, the State, itself, is barred from bringing this action on theories of claim and issue preclusion. In <u>State of New Mexico ex rel. Eluid L. Martinez, State Engineer v. Kerr-McGee Corporation</u>, 120 N.M. 118, 898 P.2d 1256 (1995), the State Engineer sought to invoke claim and issue preclusion theories against the Pueblos of Acoma and Laguna since the Pueblo had already been compensated under prior proceedings pursuant to the Indian Claims Commission. The New Mexico Court of Appeals defined claim and issue preclusion as follows:

> Claim preclusion bars litigation of claims that were or could have been advanced in an earlier proceeding. *See Miller v. United States Postal Serv.*, 825 F.2d 62, 64 (5th Cir.1987); *Cayuga Indian Nation of N.Y. v. Cuomo*, 667 F.Supp. 938, 947 (N.D.N.Y.1987). Claims are not precluded, however, where a plaintiff could not seek a certain relief or rely on a certain theory in the first action due to limitations on the subject matter jurisdiction of the first tribunal. *See* Restatement (Second) of Judgments §26(1)(c) (1980).
>
> ....................
>
> Issue preclusion bars litigation of an issue (1) that was "actually litigated" (that is, contested in a prior action), and "actually and necessarily determined" in a final judgment; and (2) when preclusion of subsequent litigation would be fair or, as more commonly stated, when the parties had a full and fair opportunity to litigate the issue in the first proceeding. *See Connors v. Tanoma Mining Co.*, 953 F.2d 682, 684 (D.C.Cir.1992); *Oglala Sioux Tribe*, 722 F.2d at 1413; Restatement (Second) of Judgements §27. Whether an issue was actually and necessarily determined in the prior action is a question of law to be addressed de novo by the appellate court. *See Connors*, 953 F.2d at 684. The party seeking to preclude litigation of an issue has the burden of showing with clarity and certainty that the issue was actually and necessarily determined; if the basis of the prior decision is unclear, subsequent litigation may proceed. *See id.; Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1321 (9th Cir.1992); *see also Gulf Tampa Drydock Co. v. Germanischer Lloyd*, 634 F.2d 874, 877-78 (5th Cir.1981).

11

Id. at 120 N.M. 121-122, 898 P.2d 1259-1260.

Claim or issue preclusion applies to the State under any scenario. The State, by bringing this action, is attempting to litigate claims that were or could be been advanced in 1948. Similarly, the State is attempting to litigate issues that were actually litigated or contested in the 1948 action and which were actually and necessarily determined in a final judgment. Preclusion would be fair since all of the parties involved in the proceedings beginning in 1948 had a full and fair opportunity to litigate issues of acreage which had then been irrigated. See also <u>Amoco Production Co. v. Heimann</u>, 904 F.2d 1405 (10th Cir. 1990) giving preclusion effect to an order of the New Mexico Oil Conservation Commission.

The State may argue that it was not a party to the 1948 administrative hearing and the later court proceedings. But in this case, the real parties in interest are persons, such as Reymundo David Martinez and Clyde Baker who contend and support the notion that there is insufficient irrigation water to go around. The fact of the matter is that all of their predecessors in interest were privies to the 1948 application and subsequent proceedings. The 1950 Rio Arriba County District Court judgment was an appealable and final judgment. It affirmed the Findings and Order of the State Engineer. That judgment was not an interlocutory order. See <u>State of New Mexico ex rel. State Engineer v. Parker Townsend Ranch Company</u>, 118 N.M. 780, 887 P.2d 1247 (1994) dealing with finality of subfile orders adjudicating water rights.

With respect to the State's theory of non-user or abandonment, NMSA 1978, Section 72-5-28( A) states in:

> When the party entitled to the use of water fails to beneficially use all or any part of the water claimed by him, for which a right of use has vested for the purpose for which it was appropriated or adjudicated, except the waters for storage reservoirs, for a period of four years, such unused water shall, if the failure to beneficially use the water persists one year <u>after notice and declaration of nonuser given by the state engineer</u>, revert to the public and shall be regarded as unappropriated public water; provided, however, that forfeiture shall not necessarily occur if circumstances beyond the control of the owner have caused nonuse, such that the water could not be placed to beneficial use by diligent efforts of the owner; and provided that periods of nonuse when irrigated farm lands are placed under the acreage reserve program or conservation reserve program provided by the federal Food Security Act of <u>1985, P.L., 99-198</u>, shall not be computed as part of the four-year forfeiture period; and provided, further, that the condition of notice and declaration of nonuser shall not apply to water that has reverted to the public by operation of law prior to June 1, 1965. (Emphasis added).

In answers to Defendants' Interrogatories the State has indicated that the State Engineer has not sent the notice required by Section 72-5-28 (A). See Exhibit B. <u>Village of Wagon Mound</u> 2003-NMCA-035, ¶73, 133 N.M. 388, addressed the issue of abandonment as follows:

> Assuming, for purposes of argument, that abandonment was a proper subject of this litigation, we hold that the Trust did not raise any question of material fact requiring trial. Its sole showing was an assertion of non-irrigation of some portion of the Berliers land for an undetermined length of time. Mere non-use with no indication of the reason for non-use is not sufficient to create a question of fact. <u>State ex rel. Reynolds v. S. Springs Co.</u>, 80 N.M. 144, 146, 452 P.2d 478, 480 (1969). Intent to abandon is a required element under the doctrine of abandonment of water rights. <u>Id.</u> We find no evidence of such intent in the record. In addition, there is no evidence that the State Engineer has issued a notice of forfeiture as is now required. <u>See §72-5-28</u>.

The affidavits of Reymundo David Martinez and Clyde Baker do not show any intent of abandonment. Mere non-use is not enough. Even if an inference can be made of abandonment, the Affidavit of David E. Archuleta states otherwise. Under these circumstances, summary judgment is inappropriate.

13

### E. Conclusion.

By the documents submitted by the State in support of its Motion for Summary Judgment, the State cannot prevail on its motion. Under no circumstances, given the record presented by the State to the Court, can the rule be applied that when the record is taken as a whole, a rational trier of fact could not find for the Archuletas, and therefore, there is no genuine issue for trial. This is especially true, considering that all inferences must be given to the non-moving party, the Archuletas. In this case the State bears the ultimate burden of persuasion, and it has not identified a lack of evidence on the material issues of facts as to whether the 13 acres were not irrigated prior to 1948 and thereafter, and whether water rights appurtenant to the 13 acres have been abandoned for non-user. These are material issues of fact.

Finally, due to the preclusive effect of the State Engineer's Findings and Order and the District Court's subsequent judgment with respect the 13 acres of F. Chavez, the State's action is barred by collateral estoppel and res judicata.

For the foregoing reasons the State's Motion for Summary Judgment should be denied, or in the alternative, the State's action should be dismissed due to the preclusive effect of the prior judgment.

Respectfully submitted,

PADILLA LAW FIRM P.A.

By: /s/ Ernest L. Padilla
Ernest L. Padilla
P.O. Box 2523
Santa Fe, NM 87504
(505) 988-7577

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Response to Motion for Summary Judgment was mailed to the following:

Edward G. Newville, Esq.
Stacey J. Goodwin, Esq
Special Assistant Attorney General
Office of State Engineer
P O Box 25102
Santa Fe, New Mexico 87504-5102

Special Master Vickie L. Gabin
USDC-DCNM
P.O. Box 2384
Santa Fe, NM 87504-2384

this 24th day of November, 2004.

ERNEST L. PADILLA

THE EXHIBITS ATTACHED TO THIS PLEADING ARE TOO VOLUMINOUS TO SCAN. SAID EXHIBITS ARE ATTACHED TO THE ORIGINAL PLEADING IN THE CASE FILE WHICH IS LOCATED IN THE RECORDS DEPARTMENT, U.S. DISTRICT COURT CLERK'S OFFICE.