IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED

05 FEB 24  AM II: 15

CLERK-SANTA FE

STATE OF NEW MEXICO, *ex rel.*
State Engineer

      Plaintiff,

vs.

RAMON ARAGON, *et al.*,

      Defendants.

69cv07941 BB-ACE

RIO CHAMA STREAM SYSTEM
Section 3: Rio Cebolla

**Subfile No. CHCB-003-0015B**

**SUPPLEMENTAL BRIEF IN SUPPORT OF
STATE OF NEW MEXICO'S
MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff the State of New Mexico *ex rel.* State Engineer ("State") and files this Supplemental Brief in Support of the State's Motion for Summary Judgment, pursuant to the Memorandum Opinion and Order issued February 3, 2005 (Doc. No. 7757).

As noted by the Court, the materials submitted with the State's Motion for Summary Judgment did not indicate whether Defendants' predecessor-in-interest (Frank Chavez) made a direct appeal to the district court in connection with the decision of the State Engineer to exclude his lands (13.0 acres) from License No. 2631. The State has caused to be searched the docket records from 1953 to 1960 of both the Rio Arriba County District Court and the Santa Fe County District Court.[1] No records were located in the records of either court indicating that Frank Chavez filed an appeal in connection with the exclusion of the 13.0 acre tract from the terms of License No. 2631 issued

---

[1]     The State ended its search of docket entries after the year 1960, the year the Defendants purchased the tract from Frank Chavez.

November 16, 1953. *See* Letter of Camille M. Garcia dated February 17, 2005, attached hereto as Exhibit 6; *see also* Affidavit of Vina Gallegos dated February 16, 2005, attached hereto as Exhibit 7. In addition, the State made a complete examination of the district court file in *Jose G. Chavez v. Gerald Johnson*, Rio Arriba County District Court Cause No. 5055 and determined that it contained no request for relief, objection, protest, appeal or any other pleading filed by Frank Chavez in connection with the exclusion of his lands from License No. 2631. *See id.*

The State has also searched the records of the Office of the State Engineer from 1953 to 1960 for any indication that the State Engineer was a party to a judicial proceeding that involved Defendants' predecessor-in-interest. Other than *Jose G. Chavez v. Gerald Johnson*, Rio Arriba County District Court Cause No. 5055, no records were found indicating that the State Engineer was a party to a judicial proceeding that involved Frank Chavez. *See* Affidavit of Ronald Palmer dated February 17, 2005, attached hereto as Exhibit 8. In addition, the contents of OSE file No. 2631, and all OSE files listed as being related to OSE file No. 2631, contain no protest or objection from Frank Chavez to his exclusion from License No. 2631, nor do those records suggest that Frank Chavez made any appeal to the district court or took any other action in connection with his exclusion from License No. 2631. *See id.*

As stated in the State's Reply Brief filed December 20, 2004, the whole point of the State's summary judgment motion is that the relevant final act of the State Engineer was the issuance of License No. 2631. Reply Brief at 9. That License, not the preceding permit, is the sole basis for a water right in this case. Approval of an application for the appropriation of water is not the equivalent of a water right. The applicable rules and regulations of the Office of the State Engineer are explicit on this point and have been so for many years.

2

> Upon approval the application becomes a permit to appropriate water. A permit does
> not in itself constitute a water right but merely allows the permittee to demonstrate to
> the State and others that he can and will, in good faith, construct the works and apply
> water to beneficial use as provided by the terms thereof.

*See* Rules and Regulations Governing the Appropriation and Use of the Surface Waters of the State

of New Mexico ["Rules and Regulations"], revised August, 1953, Rule II (J), attached hereto as

Exhibit 10; *see also* Rules and Regulations revised January, 1951, attached hereto as Exhibit 11

(same); Rules and Regulations revised April, 1941, attached hereto as Exhibit 12 (same).[2]   It is the

License issued by the State Engineer, after a field inspection of the project, that defines the nature and

extent of the water right granted. *See* Rules and Regulations, revised August, 1953, Rule II (O) ("The

State Engineer shall issue a license to appropriate water *which shall define the extent and conditions*

*of use under which the water right is granted.*") (emphasis added); *see also* Rules and Regulations

revised January, 1951, (same); Rules and Regulations revised April, 1941, (same).

In the case of Application and Permit No. 2631, after inspection of the project, Engineer

Davalos recommended that the State Engineer issue a License limited to 503.0 acres of irrigated land

upon which water had been applied to beneficial use.

> I recommend that the State Engineer issue a certificate and license to appropriate the
> surface waters of the State of New Mexico in compliance with the laws of said state
> and in accordance with the recommendations herein contained.  The said license to be
> limited to 1509 acre-feet of water delivered on the land during the irrigation season
> of 180 days from the 1st of April to the 1st of October and further to be limited to the
> said irrigated area upon which the water has been applied beneficially, comprising
> 503.0 acres under Permit No. 2631.

Report of Samuel P. Davalos dated July 24, 1953, State's Exhibit 2 (H).  This recommendation

represented a drastic reduction from the 850 acres listed in the approved application and permit.  The

---

[2]         With amendments not relevant to these proceedings, the Rules and Regulations
revised August, 1953 are still in effect.

3

lands owned by A.F. Seeding, C.L. Jacobs and Frank Chavez that were listed in the original application and permit were not included in the report and recommendation. The lands owned by Dwight Baker were reduced from 640 acres to 320 acres. There is no record that any of these individuals disputed the report or objected to the State Engineer's acceptance of Engineer Davalos' recommendation. In particular, there are no records that indicate that Frank Chavez made any appeal to the district court in connection with the exclusion of his lands in the final License.

As the State has argued in its brief in chief, the action of the State Engineer in issuing License No. 2631 was final and conclusive. Mr. Chavez' successors-in-interest cannot now, some 50 years later, collaterally attack that License in these proceedings. Moreover, whether or not Frank Chavez irrigated the 13 acres *prior* to the initiation and approval of Application No. 2631 is irrelevant. Whether or not the Defendants may have irrigated the 13 acres *after* their acquisition of the property in 1960 is also irrelevant. Any irrigation in either case was unlawful. As the cited Rules and Regulations state, water must be applied to beneficial use *as provided by the terms of the permit*, which by law includes a limit on the time within which the applicant may perfect an appropriation of surface water. *See* NMSA 1978, §72-5-6.

For the reasons stated in this Supplemental Brief, and in the State's Motion for Summary Judgment and Memorandum in Support thereof, the State requests that the Court find and conclude as a matter of law that Defendants have no irrigation water right for the 13 acres of land described herein. The State further requests that the Court enter a Subfile Order adjudicating Defendants a No Right for irrigation purposes for Defendants' tracts under Subfile CHCB-003-0015B.

Respectfully submitted,

*Ed Newell*

4

Edward G. Newville, Esq.
P.O. Box 25102
Santa Fe, NM 87504-5102
(505) 827-6150

Stacey J. Goodwin, Esq.
300 Galisteo Street, Suite 205
Santa Fe, NM 87501

Special Assistant Attorneys General
Office of the State Engineer

## CERTIFICATE OF SERVICE

I hereby certify that copies of the above Supplemental Brief in Support of State of New Mexico's
Motion for Summary Judgement, with attached exhibits, was mailed to the following persons on
February ___25___, 2005.

_Edward G. Newville_
Edward G. Newville

Special Master Vickie L. Gabin
USDC-DCNM
P.O. Box 2384
Santa Fe, NM 87504-2384

Ernest L. Padilla, Esq.
Padilla Law Firm, P.A.
P.O. Box 2523
Santa Fe, NM 87504

5



**State of New Mexico**
## First Judicial District Court
**Clerk's Office**

Hon. James A. Hall
Chief Judge

Stephen T. Pacheco
Court Administrator

P.O. Box 2268
Santa Fe, NM 87504
Phone: (505) 476-0196
Fax: (505) 827-7998

February 17, 2005

Re: Civil Suit filed by Frank Chavez

To Whom It May Concern:

Please be advised docket books consisting of civil cases from 1953 - 1960 were provided to
Special Assistant Attorney General Ed Newville in order to conduct a record search for Frank
Chavez in the counties Santa Fe and Rio Arriba. No civil records were found.

If you have any questions or need any additional information, please feel free to contact me at the
above address or phone number.

Sincerely,

*Camille M Garcia*

Camille M. Garcia
Judicial Leadworker
Special Services Division



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO, *ex rel.*
State Engineer

        Plaintiff,

    vs.

RAMON ARAGON, *et al.*,

        Defendants.

69cv07941 BB-ACE

RIO CHAMA STREAM
SYSTEM
Section 3: Rio Cebolla

**Subfile No. CHCB-003-0015B**

## AFFIDAVIT OF VINA GALLEGOS

State of New Mexico  )
               ) ss.
County of Sante Fe    )

I, Vina Gallegos, of lawful age and being duly sworn on oath, depose and state that:

1.    I have been an employee of the Office of the State Engineer in the Litigation and Adjudication Program for ten years.

2.    On February 14, 2005, I personally searched of the microfilm records of the Sante Fe County District Court and the Rio Arriba District Court for any legal proceedings, including appeals, that involved Frank Chavez of Cebolla, New Mexico and the New Mexico State Engineer (or State Engineer John Bliss or State Engineer Steve Reynolds) between the years 1953 and 1960.

3.    Other than *Jose G. Cordova v. Gerald Johnson,* Rio Arriba District Court No. 5055, I found no record of any proceedings or appeals that involved Frank Chavez and the New Mexico State Engineer (or John Bliss or Steve Reynolds), or any proceedings that involved the decision of then State Engineer John Bliss to exclude Frank Chavez and lands owned by him in Cebolla, New Mexico from OSE License No. 2631 issued November 16, 1953.

4.    I also examined the Rio Arriba District Court file for *Jose G. Cordova v. Gerald Johnson,* Rio Arriba District Court No. 5055. These records contain no request for relief, objection, protest, appeal or other pleading filed by Frank Chavez in connection with his exclusion from OSE License No. 2631. The last pleadings filed in this cause were a Petition for Appointment of New Water



EXHIBIT
7

Master on August 14, 1964, and an Order Appointing Water Master on February 9, 1965.

Further, Affiant sayeth not.

**VINA GALLEGOS**

**SUBSCRIBED AND SWORN** to before me this ___16th___ day of February, 2005.

OFFICIAL SEAL
Charlene Urioste
NOTARY PUBLIC
STATE OF NEW MEXICO
8.23.06

NOTARY PUBLIC

My Commission expires: ___8-23-06___.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO, *ex rel.*
State Engineer

                Plaintiff,

    vs.

RAMON ARAGON, *et al.*,

                Defendants.

69cv07941 BB-ACE

RIO CHAMA STREAM
SYSTEM
Section 3: Rio Cebolla

**Subfile No. CHCB-003-0015B**

### AFFIDAVIT OF RONALD PALMER

State of New Mexico )
                ) ss.
County of Santa Fe   )

I, Ronald Palmer, of lawful age and being duly sworn on oath, depose and state that:

1.     I am an employee of the Office of the State Engineer in the Water Resource Allocation Program, and I am familiar with the records of the Office of the State Engineer ("OSE").

2.     I have personally searched the records of the Office of State Engineer for any documents that indicate the New Mexico State Engineer (or State Engineer John Bliss or Steve Reynolds) was made a party to any judicial proceeding involving Frank Chavez of Cebolla, New Mexico between the years 1953 and 1960. Other than the appeal to the Rio Arriba District Court titled *Jose G. Cordova*, Cause No. 5055, I have found no documents indicating that the State Engineer was a party to any judicial proceeding that involved Frank Chavez between the years 1953 and 1960.

3.     I have reviewed the contents of OSE file No. 2631 involving water rights under the Rincon Blanca Ditch in Cebolla, New Mexico, and all OSE files listed as being related to OSE No. 2631. These records contain no protest or objection from Frank Chavez to his exclusion from License No. 2631 issued November 16, 1953, nor do these records suggest that Frank Chavez made any appeal to



the District Court or took any other action in connection with his exclusion from License No. 2631.

Further, Affiant sayeth not.

RONALD PALMER

SUBSCRIBED AND SWORN to before me this _17th_ day of February, 2005.

OFFICIAL SEAL
Patricia O. Bailey
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires: 5/4/08

NOTARY PUBLIC

My Commission expires: _5/4/08_.

# MANUAL

OF

# Rules and Regulations

Governing the Appropriation
and Use of the
## SURFACE WATERS
of the State of
New Mexico

★

Revised August, 1953

**STATE ENGINEER**
**Santa Fe, New Mexico**

# TABLE OF CONTENTS

Page

I. Constitutional Provisions and General Principles of Appropriation ............ 5

II. Procedure for Appropriating Public Surface Waters ............ 7
  A. Initiation of Water Right—Filing Fees—Priority ............ 7
  B. Notice of Intention ............ 7
  C. Surveys—Maps—Plans ............ 7
  D. Formal Application ............ 8
  E. Correction of Application ............ 8
  F. Notice of Publication—Proof of Publication ............ 9
  G. Protest—Hearing ............ 9
  H. Fees for Examining Plans and Specifications ............ 10
  I. Approval—Permit ............ 10
  J. Extensions of Time ............ 11
  K. Construction of Works—Inspection ............ 11
  L. Certificate of Construction ............ 12
  M. Application of Water to Beneficial Use ............ 12
  N. Final Inspection ............ 13
  O. License to Appropriate ............ 13

III. Changes and Amendments ............ 15
  A. Change of Point of Diversion ............ 15
  B. Change of Place or Method of Use ............ 16
  C. Application for Enlargement or Amendment ............ 17
  D. Change of Ownership—Assignment ............ 17

IV. Declaration of Old Right ............ 18

V. Additional Provisions and Requirements ............ 19
  Federal Reclamation Projects ............ 19
  Duty of Water—Rate of Diversion—Flood Flow ............ 19
  Artificial Waters ............ 19
  Diversion from Watershed ............ 20
  Rights of Common Carriers—Sale of Water ............ 20
  Lapse—Forfeiture—Cancellation ............ 20
  Right of Way—Eminent Domain ............ 20
  Unsafe Works—Inspection—Repair ............ 21
  Headgates—Measuring Devices ............ 21
  Bridges at Road Crossings ............ 21
  Misdemeanor—Penalty; Liens—Priority ............ 21
  Records—Copies—Furnishing of Information ............ 22

VI. Filing Maps, Plans, Specifications ............ 23
  A. General Filing Requirements ............ 23
  B. Map Title, Statements and Affidavits ............ 28

VII. Fees ............ 33

VIII. Hydraulic Data ............ 35
  Flow of Water in Open Channels and Pipes ............ 35
  Spillway Discharge ............ 38
  Conversion Table—Hydraulic Equivalents ............ 38

# I. CONSTITUTIONAL PROVISIONS
## AND
## GENERAL PRINCIPLES OF APPROPRIATION

All existing rights to the use of water for beneficial purposes in New Mexico were recognized and confirmed by the State Constitution at the time of its adoption.

The State Engineer is empowered to make all rules and regulations necessary to administer the duties devolved upon his office.

All natural waters flowing in streams and water courses in New Mexico are declared to be public and subject to appropriation for beneficial use.

Beneficial use is the basis, measure and limit of the right to use water. No water right, therefore, may be granted or claimed for more than the amount that can be beneficially used.

The unauthorized use of water to which another is entitled, or the wilful waste of water to the detriment of another or of the public is a misdemeanor. Excessive, wasteful and otherwise non-beneficial uses do not constitute a valid water right.

Priority in time shall give the better right.

All water appropriated for irrigation purposes, except as otherwise provided by written contract between the owner of the land and the owner of any ditch, reservoir, or other works for the storage or conveyance of water, is appurtenant to the land upon which it is used and shall so continue as long as it can be beneficially used on or until it is lawfully severed from the land. Water which is appurtenant to certain lands may not be transferred to other lands or used for other beneficial purposes excepting with the consent of the owner of the land and as provided by law.

No appropriation of water shall be exercised to the detriment of anyone having prior, valid and existing rights to the use of the waters of the stream system.

Excepting for water rights acquired prior to March 19, 1907, any right to the use of public waters must originate by application to the State Engineer as provided by statute. Unauthorized use shall be a misdemeanor.

The public is notified of proposed appropriations by publication in a newspaper of general circulation in the stream system and any water right owner who feels that the use of water under such application would be detrimental to his prior right may file a protest thereto. After due consideration of the facts, the State Engineer shall approve or reject the application.

It is unlawful to commence any construction of works until the formal application to appropriate water has been approved and signed by the State Engineer.

The diversion and distribution of water for irrigation and domestic purpose in New Mexico is a public purpose, and an appropriator may exercise the right of eminent domain to acquire rights-of-way for canals, ditches, reservoirs, etc., necessary to accomplish such purpose.

License to appropriate water is issued by the State Engineer after the works are satisfactorily completed and the water is applied to beneficial use.

Excepting stored waters, failure of an owner to beneficially use all or any part of the water in which he has a vested right for a period of 4 consecutive years consti-

( 5 )

tutes forfeiture and such unused water shall revert to the public; except that forfeiture does not necessarily occur should such non-use be caused by circumstances beyond the owner's control.

To the end that the waters of the several stream systems of the state may be so utilized as to prevent waste and damage and in order that the benefits of such waters be distributed among the land owners along said streams as equitably as possible without interfering with vested rights, the natural right of the people living in the upper valleys to impound and utilize a reasonable share of such waters has been recognized and declared, subject always to the provisions of the water right statutes.

The appropriation statutes do not apply to stockmen who shall build or construct tanks or ponds for watering stock which do not exceed 10 acre feet in capacity. The owners are, however, at all times responsible for any detriment or damage to prior water rights which may result from the construction of and storage of water in such stock ponds.

The State Engineer has the right and duty of supervision of the apportionment of water according to the licenses issued by his office and to the adjudications of the courts. Although water rights acquired prior to March 19, 1907, may be adjudicated only by the courts, all such rights are subject to regulation, adjudication and forfeiture for non-use as provided in the statutes; provided, that in all cases where the rights to the use of the waters in interstate streams of owners of land not included in conservancy districts, irrigation districts, or Federal reclamation projects have been the subject of litigation in the State or Federal courts of an adjoining state, the State Engineer shall assume control of all or any part of such interstate stream and the diversions and distribution of the waters of the same in the public interest.

## II. PROCEDURE FOR
## APPROPRIATING PUBLIC SURFACE WATERS

### A. Initiation of Water Right—Filing Fees—Priority.

The right to appropriate the public surface waters of New Mexico may be acquired by any person, firm, association, corporation, the State of New Mexico or the United States of America. Excepting projects of the Bureau of Reclamation (see page 19), all rights acquired after March 19, 1907, must be initiated in the office of the State Engineer by filing an application to make such appropriation. Acceptance of the filing by the State Engineer gives the applicant a tentative right to proceed according to statute in establishing his water right. It is unlawful, however, to commence any construction of works prior to the formal approval of the application by the State Engineer. The necessary blank forms for making water right application will be furnished by the State Engineer upon request. All other regular blank forms will be sent to applicant as required.

A water right may be initiated by filing Notice of Intention, to be followed within a designated time by Formal Application; or the right may be initiated by filing Formal Application directly. In either case there is a filing fee which is a necessary part of the application. The fee for filing Notice of Intention is $10.00. The fee for filing Formal Application is graduated in amount and depends upon the size and complexity of the project (see Article VII "Fees"). Excepting as it may be changed by the provisions of Sections D, E, F or K of this Article, the priority date of any water right is the date of receipt of initial filing papers accompanied by proper fee.

### B. Notice of Intention.

Notice of Intention to make Formal Application for Permit shall be filed in duplicate on the proper forms, accompanied by a $10.00 filing fee. Upon receipt of the Notice properly filled out, the State Engineer shall endorse thereon the date of receipt and shall establish the date for filing Formal Application. Initiation of a right by Notice of Intention is optional and is designed as the lawful means of establishing a priority date for a reasonable length of time sufficient to make surveys and prepare necessary maps, plans, etc., as required by statute. The time granted is usually 6 months but depends somewhat upon the size and complexity of the proposed project. Additional time may be granted at the discretion of the State Engineer in special or unusual cases where the original time allowance proves insufficient, but in no case may the time between filing of Notice of Intention and filing of Formal Application exceed an aggregate of 3 years.

### C. Surveys—Maps—Plans.

Field surveys of the project shall be made and maps, plans, field notes, specifications, etc., of the proposed works prepared by a qualified registered professional engineer. Small projects for simple diversion and distribution and which involve no planning or design of dams, canal structures, etc., may be prepared for filing by a registered surveyor, if qualified to do the work. The engineer is responsible for the reasonable correctness of maps, plans, etc., which he prepares for filing with the State Engineer.

The maps, plans, etc., must be prepared from actual field surveys and must be detailed and complete enough

to determine the feasibility, safety and adequacy of the proposed works. In cases involving storage or diversion of large amounts of water, the State Engineer may require any additional information he deems necessary to describe and define the proposed use.

Description and details of the data, certificates, etc., which must be shown on the maps and plans will be found under Article VI, "Filing Maps, Plans, Specifications."

## D. Formal Application

Formal Application shall be filed in duplicate on the proper forms and shall be accompanied by necessary maps, plans, etc. If Formal Application is an initial filing, it shall be accompanied by the required filing fees; if it follows a Notice of Intention it shall be filed not later than the date set by the State Engineer for such filing and shall be accompanied by the required filing fees from which amount has been deducted the $10.00 fee paid at the time of filing such Notice of Intention. The fees for filing Formal Application shall include the filing of maps, plans, specifications, proof of publication and all other papers relating to the application up to the issuing of the permit to appropriate water, and shall include the examination and study of all data therein with, the exception of plans and specifications, for the examination and study of which additional fees shall be collected.

The date of receipt of Formal Application by the State Engineer shall be endorsed thereon and noted in his record. If Formal Application is filed later than the limiting date fixed by Notice of Intention or by subsequent extensions of time thereto, it shall, excepting as to filing fee, be treated as a new application and the priority date shall become the date of the filing of Formal Application.

Formal Application defines and limits the maximum amount of water which may be appropriated, and no subsequent act, excepting as provided by statute, can extend or amplify such appropriation. A right can be acquired for any amount less than that asked for in the Formal Application, however. It should be emphasized here, also, that proposed irrigated areas described in the Formal Application cannot be changed or other areas substituted in lieu thereof, nor can the proposed point of diversion be changed, excepting as provided by law.

## E. Correction of Application.

Before acceptance by the State Engineer, Formal Application and accompanying maps, etc., must conform with the statutes and with the rules and regulations of his office. If application is defective as to form, unsatisfactory as to feasibility or safety of plan or as to the ability of the applicant to carry the construction to completion, it shall be returned to the applicant within 30 days with a statement of the necessary corrections or additions required. Indicated changes shall be made and the application refiled within 60 days from the date returned by the State Engineer. If refiled later than the statutory 60 days, it shall be treated in all respects as an original application with a new priority date, excepting that no additional filing fee may be charged. If the corrected application is still unsuitable, it will be returned for other necessary changes, and adequate additional time for refiling may, at the discretion of the State Engineer, be allowed. Correction of inadequate or unsuitable designs not only protects the public but is primarily beneficial to the interests of the applicant.

After all necessary corrections, if any, have been made, the State Engineer shall sign the State Engineer's certifi-

(8)

cates on the filing maps, plans and specifications, thereby endorsing his approval thereof and duly accepting them for filing as a part of the permanent record.

Plans and specifications may be amended at any time upon request of the applicant and with the consent of the State Engineer provided that such changes do not unnecessarily delay construction and further provided that changes in the proposed point of diversion or in place or method of use shall be subject to the statutes covering the same (see Article III, Sections A, B and C).

## F. Notice of Publication—Proof of Publication.

The State Engineer shall prepare a Notice of Publication and shall send it to the applicant with instructions that it shall be published weekly for three consecutive weeks in a newspaper of general circulation within the stream system. Cost of printing is borne by the applicant who shall also see that publisher's affidavit of Proof of Publication is filed within 60 days of issuance of such notice. If proof is filed after the time limit has expired the application shall be treated as a new filing with a new priority dating from the date of receipt of such proof in proper form. The State Engineer may refuse to order the publication of notice of any application which, in his opinion, is contrary to the public interest.

## G. Protest—Hearing.

Any person, firm, association, corporation, the State of New Mexico or the United States, deeming that the granting of a proposed application would be truly detrimental to its prior valid and existing rights in the waters of said stream system, may protest in writing the State Engineer's approval of such application. Said protest, which must be accompanied by supporting affidavits, shall set forth all protestant's reasons why the application should not be approved. The protest, together with proof that a copy thereof has been served upon the applicant, must be filed with the State Engineer within 10 days after the last date of publication. Service of protest may be done in person or by registered mail, return receipt requested. Proof of service may be by affidavit of person making such service or, in the case of registered mail, the return receipt properly signed. Applicant shall file with the State Engineer answers to any proper protests and shall furnish protestants with a copy thereof. Further information, complaints and answers may be filed if deemed proper and expedient by the State Engineer.

On or after the expiration of the protest period and upon receipt of the Proof of Publication, the State Engineer shall take up the application for consideration and shall determine from the evidence presented and from a study of stream flow and other pertinent records whether there is unappropriated water available for the proposed project. Should the evidence be inconclusive or the data insufficient for a proper decision, the State Engineer shall set a date and place for a hearing at which both sides of the question will be fully presented by witnesses. Upon request of the State Engineer, applicant and protestants shall each deposit in advance a fee estimated by the State Engineer to be sufficient to cover all costs and expenses of the hearing. Should it later become evident that the costs thereof will exceed the original fee, the State Engineer shall immediately request from both parties sufficient additional monies to cover such increased expenses. In all hearings before the State Engineer, either the applicant or protestant may request the State Engineer to subpoena any witness who is deemed necessary to present pertinent testimony, and the State

(9)

Engineer shall thereupon issue said subpoena upon the payment by the requesting party of all estimated costs of such witness, including mileage and per diem as provided by law. A complete transcript of the proceedings shall be kept for the record unless specifically waived by all parties. An informal hearing may be held by the State Engineer at the joint request of the applicant and others having prior rights on the stream system, the costs to be borne equally by the parties thereto. Should the protestant or protestants be owners of old water rights (prior to March 19, 1907) which have not been filed for record in the office of the State Engineer, it is urged that such owners declare or put such rights on record as provided herein (see "Declaration of Old Rights," Article IV, page 18).

In taking up an application for his decision the State Engineer shall consider whether there is any unappropriated water available; whether the applicant can satisfactorily complete his appropriation; whether the project is a feasible one; whether the building of the project will be in the best interest of the public. The State Engineer has no power to define any rights not initiated in his office after March 19, 1907 (unless adjudicated by the courts) nor can his approval of an application bestow any rights which the applicant may exercise to the detriment of any others having prior, valid and existing rights. If, in his opinion, there is no unappropriated water available, he shall reject such application. He may also refuse to consider or approve an application or notice of intention to make formal application if, in his opinion, the approval thereof would be contrary to the public interest.

Upon reaching a final decision on a protested application, the State Engineer shall issue a Findings and Order which shall be attached to and become a part of the permanent application record. He shall then return the fee of the prevailing party and pay the costs of hearing from the fee advanced by the losing party, or, at his discretion, the costs may be shared by both parties should the evidence warrant such procedure. An appeal from the decision of the State Engineer may be taken to the District Court within whose jurisdiction the lands lie. Such appeal must be filed within a 30-day period.

**H. Fees for Examining Plans and Specifications.**

Before he shall approve an application the State Engineer shall require the deposit of the fees prescribed by statute for the examination and study of the plans and specifications of the proposed works (see Article VII, "Fees"). These fees are graduated in amount and depend upon the size and complexity of the project, excepting that no fees are charged in the case of small, simple diversion projects where the submission of plans and specifications are not required, and no fees may be charged for studying plans and specifications in the case of projects initiated by the United States or its authorized agencies.

**I. Approval—Permit.**

In approving an application, the State Engineer shall sign his endorsement upon the Formal Application and shall set the time within which applicant shall construct the works and apply water to beneficial use, but not to exceed five years for construction of works and four years in addition thereto for application to beneficial use. If, in his opinion, sufficient unappropriated waters are not available to satisfy the project, the State Engineer may approve the application for a smaller amount of water than that applied for. In no case may the amount be increased excepting by a new or amended filing. Appli-

cations are always approved with the provision that they must not be exercised to the detriment of any appropriators having prior, valid and existing rights to the use of the water of the stream system. For special conditions, special additional provisions may be imposed.

Upon approval the application becomes a permit to appropriate water. A permit does not in itself constitute a water right but merely allows the permittee to demonstrate to the State and others that he can and will, in good faith and with due diligence, construct the works and apply water to beneficial use as provided by the terms thereof. The permit defines and limits the water right which may be required and should be filed of record with the clerk of the county within which the works are to be situated.

**J. Extensions of Time.**

Construction of works and application of water to beneficial use shall be prosecuted diligently in order that the project may be completed within the time limits set in the permit. Should conditions arise, however, such that construction is unavoidably delayed, the State Engineer may, at his discretion, grant reasonable extensions of time as provided by statute. The regulations regarding extensions are not rigid but permit liberal consideration thereof by the State Engineer in dealing with irrigation projects begun for the purpose of developing lands of the State which would be otherwise unproductive.

In general, extensions of time to complete works or to apply water to beneficial use may aggregate not more than 5 years beyond the original time for construction fixed by the permit. In any case, however, in which the limit for extensions of time has been reached and in which it may be shown by sworn affidavits and by any other evidence required by the State Engineer that one-fourth of the works has been actually constructed but that it will be impossible to complete such construction within the time allowed, the State Engineer may, upon such reasonable terms and conditions as he may prescribe, extend the time within which to complete the works for any additional periods he deems necessary; provided that no single extension of time may be granted for a period of more than 2 years. The completion of at least one-fourth of the work is required by statute as an evidence of the good faith and intentions of the permittee and failure to complete at least one-fourth of the construction within the time limit must be taken as evidence of the permittee's inability or lack of intention to proceed with the filing. Upon proper showing by the permittee that prosecution of the work was prevented for a time by operation of law or other causes beyond his control, the State Engineer shall add to the total time allowed for construction of works a period of time equal to that during which construction was so prevented.

Applications for Extensions of Time shall be made out in duplicate on the proper blank forms, shall state all reasons why additional time is requested and, if desired or necessary, shall be accompanied by sworn affidavits, photographs of works completed or destroyed, and/or other proof supporting the request. A fee of $10.00 shall accompany each application for Extension of Time.

**K. Construction of Works—Inspection.**

The works shall be constructed by the permittee under the supervision of a qualified registered professional engineer unless this provision is specifically waived by the State Engineer. If he deems it necessary to the public safety, the State Engineer may call in consulting engineers or geologists to study and pass upon the project.

( 10 )

( 11 )

Cost of such supervision and consulting work shall be borne by the permittee. Construction shall be carried on according to the plans and specifications approved by the State Engineer and no changes or alterations shall be made without his knowledge and consent. As soon as possible after notification of completion of works, the State Engineer, or a proper assistant, shall make a thorough inspection of the works to determine their actual capacity, their adequacy, safety and efficiency, and shall file his report thereon as a part of the permanent record; provided that, in the case of works involving the diversion of not to exceed 20 cubic feet of water per second of time or a dam not exceeding 10 feet in height above stream bed, the State Engineer may appoint a registered engineer or land surveyor to make the inspection. If the works have been materially changed from the original plans on file, corrections shall be made on the originals, or amended plans shall be submitted for the record. If found to be improperly constructed or unsafe, the State Engineer shall require the making, within a reasonable time limit fixed by him, of all changes or repairs indicated as necessary. If the time allowed proves insufficient, the State Engineer may, upon sufficient showing by the permittee, grant additional time for making the required changes. Failure to make such corrections shall cause the postponement of the priority date of the permit for the length of time elapsing between the date set by the State Engineer and the date when the changes have been satisfactorily completed.

Upon completion, the permittee shall file in duplicate on the proper forms Proof of Completion of Works, which shall be duly sworn to and signed by the inspecting engineer after he has made a thorough field inspection. If not done previously, the owner shall at this time make affidavit or submit proof that he holds all necessary rights-of-way for his works without controversy. A fee of $5.00 for the issuance of a Certificate of Construction shall accompany this filing.

## L. Certificate of Construction.

The State Engineer shall then issue a Certificate of Construction which shall include the location of the point or points of diversion, the capacities of canals and reservoirs, and shall certify to the adequacy of the works for the intended use. Owner shall record the Certificate of Construction with the clerk of the county within which the works lie.

## M. Application of Water to Beneficial Use.

As soon as practicable after completing the works, permittee shall divert water and apply it to his intended use. Since beneficial use is the measure and limit of the right to use water, no license may be granted for the irrigation of more land than has actually been covered or more water than has actually been put to beneficial use during the development period; excepting that in no case may the rights prescribed by the permit be extended or enlarged thereby. After making full use of the water as contemplated by his permit, or as much thereof as is deemed feasible, applicant shall file in duplicate upon the proper forms Proof of Application of Water to Beneficial Use. Such proof shall be made out in detail and shall fully describe the uses made, the quantity of water used, amount and description of lands irrigated, etc. A fee of $5.00 for the issuance of a License to Appropriate Water shall accompany this filing.

## N. Final Inspection.

Upon due notice to the owner of the permit, the State Engineer, one of his assistants, or a qualified registered professional engineer or land surveyor appointed by him shall make an inspection at the owner's expense and shall prepare and file as a part of the record a final report on the project, incorporating therein his recommendations of water use. Such report shall describe in detail by legal subdivision the land irrigated, giving acreages and as closely as possible the quantity of water applied on the lands. Such report is not required to determine losses in transit as they are uncertain and vary widely according to methods of delivery and character of soils thru which the works are constructed. A license to apply a given quantity of water on the land carries with it the right to divert from the stream an additional quantity sufficient to cover actual necessary losses in transit.

In the case of small diversion or storage projects, the State Engineer may in his discretion, when requested by the owner, cause the inspection of works and final inspection of application of water to beneficial use to be made at the same time.

## O. License to Appropriate. 

The State Engineer shall issue a license to appropriate water which shall define the extent and conditions of use under which the water right is granted. The right granted by a license is limited by actually beneficial use but can in no manner be extended beyond the limits prescribed in the permit.

License to appropriate water, together with Certificate of Construction, permit, decrees, findings, and any other papers or documents granting or limiting the water right shall be recorded with the clerk of the county within which the works and lands are situated.



# MANUAL

OF

## Rules and Regulations

Governing the Appropriation
and Use of the

SURFACE WATERS

of the State of
New Mexico

Revised January, 1951

JOHN H. BLISS
STATE ENGINEER
Santa Fe, New Mexico

EXHIBIT
10

## TABLE OF CONTENTS

Page

I. Constitutional Provisions and General Principles of Appropriation ................................................ 1

II. Procedure for Appropriating Public Surface Waters ... 1
  A. Initiation of Water Right—Filing Fee—Priority ... 1
  B. Notice of Intention ........................................ 7
  C. Surveys Maps Plans ...................................... 7
  D. Formal Application........................................ 8
  E. Correction of Application................................ 8
  F. Notice of Publication—Proof of Publication........ 9
  G. Protest—Hearing .......................................... 9
  H. Fees for Examining Plans and Specifications........ 10
  I. Approval—Permit .......................................... 10
  J. Extensions of Time ........................................ 11
  K. Construction of Works—Inspection................ 11
  L. Certificate of Construction............................ 12
  M. Application of Water to Beneficial Use............ 12
  N. Final Inspection ............................................ 12
  O. License to Appropriate.................................. 13

III. Changes and Amendments.................................. 15
  A. Change of Point of Diversion ........................ 15
  B. Change of Place or Method of Use ................ 16
  C. Application for Enlargement or Amendment .... 17
  D. Change of Ownership—Assignment................ 17

IV. Declaration of Old Right.................................... 18

V. Additional Provisions and Requirements................ 19
  Federal Reclamation Projects .......................... 19
  Duty of Water—Rate of Diversion—Flood Flow... 19
  Artificial Waters............................................ 19
  Diversion from Watershed................................ 20
  Rights of Common Carriers—Sale of Water........ 20
  Lapse—Forfeiture—Cancellation ...................... 20
  Right of Way—Eminent Domain...................... 20
  Unsafe Works—Inspection—Repair .................. 21
  Headgates—Measuring Devices ........................ 21
  Bridges at Road Crossings................................ 21
  Misdemeanor—Penalty; Liens—Priority............ 22
  Records—Copies—Furnishing of Information ...... 22

VI. Filing Maps, Plans, Specifications...................... 23
  A. General Filing Requirements........................ 23
  B. Map Title, Statements and Affidavits............ 28

VII. Fees ............................................................ 33

VIII. Hydraulic Data ............................................ 35
  Flow of Water in Open Channels and Pipes........ 35
  Spillway Discharge ........................................ 38
  Conversion Table—Hydraulic Equivalents........ 38

SOUTHWESTERN PUBLISHING CO.

# CONSTITUTIONAL PROVISIONS
## AND
## GENERAL PRINCIPLES OF APPROPRIATION

All existing rights to the use of water for beneficial purposes in New Mexico were recognized and confirmed by the State Constitution at the time of its adoption.

The State Engineer is empowered to make all rules and regulations necessary to administer the duties devolved upon his office.

All natural waters flowing in streams and water courses in New Mexico are declared to be public and subject to appropriation for beneficial use.

Beneficial use is the basis measure and limit of the right to use water. No water right, therefore, may be granted or claimed for more than the amount that can be beneficially used.

The unauthorized use of water to which another is entitled, or the wilful waste of water to the detriment of another or of the public is a misdemeanor. Excessive, wasteful and otherwise non-beneficial uses do not constitute a valid water right.

Priority in time shall give the better right.

All water appropriated for irrigation purposes, except as otherwise provided by written contract between the owner of the land and the owner of any ditch, reservoir, or other works for the storage or conveyance of water is appurtenant to the land upon which it is used and shall so continue as long as it can be beneficially used on or until it is lawfully severed from the land. Water which is appurtenant to certain lands may not be transferred to other lands or used for other beneficial purposes excepting with the consent of the owner of the land and as provided by law.

No appropriation of water shall be exercised to the detriment of anyone having prior, valid and existing rights to the use of the waters of the stream system.

Excepting for water rights acquired prior to March 19, 1907, any right to the use of public waters must originate by application to the State Engineer as provided by statute. Unauthorized use shall be a misdemeanor.

The public is notified of proposed appropriations by publication in a newspaper of general circulation in the stream system and any water right owner who feels that the use of water under such application would be detrimental to his interest may file a protest thereto. After due consideration of the facts, the State Engineer shall approve or reject the application.

It is unlawful to commence new construction of works until the formal application to appropriate water has been approved and signed by the State Engineer.

The diversion and distribution of water for irrigation and domestic purposes in New Mexico is a public purpose and an appropriator may exercise the right of eminent domain to acquire rights-of-way for canals, ditches, reservoirs, etc. necessary to accomplish such purpose.

License to appropriate water is issued by the State Engineer after the works are substantially completed and the water is applied to beneficial use.

Excepting stored waters, failure of an owner to beneficially use all or any part of the water in which he has a vested right for a period of 4 consecutive years constitutes forfeiture and such unused water shall revert to the public, except that forfeiture does not necessarily occur should said non-use be caused by circumstances beyond the owner's control.

To the end that the waters of the several stream systems of the state may be so utilized as to prevent waste and damage and in order that, the benefits of such waters be distributed among the land owners along said streams as equitably as possible without interfering with vested rights, the natural right of the people living in the upper valleys to impound and utilize a reasonable share of such waters has been recognized and declared, subject always to the provisions of the water right statutes.

The appropriation statutes do not apply to stockmen who shall build or construct tanks or ponds for watering stock which do not exceed 10 acre feet in capacity.

The State Engineer has the right and duty of supervision of the apportionment of water according to the licenses issued by his office and to the adjudications of the courts. Although water rights acquired prior to March 19, 1907 may be adjudicated only by the courts, all such rights are subject to regulation, adjudication and forfeiture for non-use as provided in the statutes; provided, that in all cases where the rights to the use of the waters in interstate streams of owners of land not included in conservancy districts, irrigation districts, or Federal reclamation projects have been the subject of litigation in the State or Federal courts of an adjoining state, the State Engineer shall assume control of all or any part of such interstate stream and the diversions and distribution of the waters of the same in the public interest.

## II.  PROCEDURE FOR APPROPRIATING PUBLIC SURFACE WATERS

### A.  Initiation of Water Right—Filing Fees—Priority.

The right to appropriate the public surface waters of this Mexico may be acquired by any person, firm, association, corporation, the State of New Mexico or the United States of America. Excepting property of the Bureau of Reclamation (see page 15), all rights acquired after March 19, 1907 must be initiated in the office of the State Engineer by filing an application to make such appropriation. Acceptance of the filing by the State Engineer gives the applicant a tentative right to proceed according to statute in establishing his water right. It is unlawful, however, to commence any construction of works prior to the formal approval of the application by the State Engineer. The necessary blank forms for making water right application will be furnished by the State Engineer upon request. All other regular blank forms will be sent to applicant as required.

A water right may be initiated by filing Notice of Intention, to be followed within a designated time by Formal Application; or the right may be initiated by filing Formal Application directly. In either case there is a filing fee which is a necessary part of the application. The fee for filing Notice of Intention is $10.00. The fee for filing Formal Application is graduated in amount and depends upon the size and complexity of the project (see Article VII, "Fees"). Excepting as it may be modified by the provisions of Section L, K, J or K of this Article, the priority date of any water right is the date of receipt of initial filing papers accompanied by proper fee.

### B.  Notice of Intention.

Notice of Intention to make Formal Application for Permit shall be filed in duplicate on the proper forms, accompanied by a $10.00 filing fee. Upon receipt of the Notice properly filled out, the State Engineer shall endorse thereon the date of receipt and shall establish the date for filing Formal Application. Initiation of a right by Notice of Intention is optional and is designed as the lawful means of establishing a priority date for a reasonable length of time sufficient to make surveys and prepare necessary maps, plans, etc. as required by statute. The time granted is usually 6 months but depends somewhat upon the size and complexity of the proposed project. Additional time may be granted at the discretion of the State Engineer in special or unusual cases where the original time allowance proves insufficient, but in no case may the time between filing of Notice of Intention and filing of Formal Application exceed an aggregate of 3 years.

### C.  Surveys—Maps—Plans.

Field surveys of the project shall be made and maps, plans, field notes, specifications, etc. of the proposed works prepared by a qualified registered professional engineer. Small projects for simple diversion and distribution not which involve no planning or design of dams, canal structures, etc. may be prepared for filing by a registered surveyor, if qualified to do the work. The engineer is responsible for the person by whom the survey of maps, plans, etc. are prepared for filing with the State Engineer.

The maps, plans, etc. must be prepared from actual field surveys and must be plotted and complete enough to determine the feasibility, safety and adequacy of the proposed works. In cases involving storage or diversion of

large amounts of water, the State Engineer may require any additional information as being necessary to describe and define the proposed use.

Description and details of the uses, certificates, etc., which must be shown on the maps and plans will be found later in Articles VI, "Filing Maps, Plans, Specifications."

## D. Formal Application.

Formal Application shall be filed in duplicate on the proper forms and shall be accompanied by necessary maps, plans, etc. If Formal Application is an initial filing, it shall be accompanied by the required filing fees; if it follows a Notice of Intention it shall be filed not later than the date set by the State Engineer for such filing and shall be accompanied by the required filing fees from which amount has been deducted the $10.00 fee paid at the time of filing such Notice of Intention. The fees for filing Formal Application shall include the filing of maps, plans, specifications, proof of publication and all other papers relating to the application up to the issuing of the permit to appropriate water, and shall include the examination and study of all data therein with the exception of plans and specifications, for the examination and study of which additional fees shall be collected.

The date of receipt of Formal Application by the State Engineer shall be endorsed thereon and noted in his record. If Formal Application is filed later than the limiting date fixed by Notice of Intention or by subsequent extensions of time thereto, it shall, excepting as to filing fee, be treated as a new application and the priority date shall become the date of the filing of Formal Application.

Formal Application defines and limits the maximum amount of water which may be appropriated, and no subsequent act, excepting as provided by statute, can extend or amplify such appropriation. A right can be acquired for any amount less than that asked for in the Formal Application, however. It should be emphasized here, also, that proposed irrigated areas described in the Formal Application cannot be changed or other areas substituted in lieu thereof, nor can the proposed point of diversion be changed, excepting as provided by law.

## E. Correction of Application.

Before acceptance by the State Engineer, Formal Application and accompanying maps, plans, etc., must conform with the statutes and with the rules and regulations of his office. If application is defective as to form, unsatisfactory as to feasibility or safety of plan or as to the ability of the applicant to carry the construction to completion, it shall be returned to the applicant within 30 days with a statement of the necessary corrections or additions required. Indicated changes shall be made and the application refiled within 60 days from the date returned by the State Engineer. If refiled later than the statutory 60 days, it shall be treated in all respects as an original application with a new priority date, excepting that no additional filing fee may be charged. If the corrected application is still unsuitable, it will be returned for other necessary changes, and adequate additional time for refiling may, at the discretion of the State Engineer, be allowed. Correction of inadequate or unsuitable designs not only protects the public in its primary interest, but, in many of the applications ...

After all necessary corrections have been made, the State Engineer shall sign the State Engineer's certificates on the filing maps, plans and specifications, thereby endorsing his approval thereof and duly accepting them for filing as a part of the permanent record.

8

Plans and specifications may be amended at any time upon request of the applicant, and with the approval of the State Engineer, provided that such changes do not cause greatly delay construction and further provided that changes in the proposed point of diversion or in place or nature of use shall be subject to the advance approval thereof as in Article III, Sections ... to ...

## 2. Notice of Publication—Proof of Publication.

The State Engineer shall prepare a Notice of Publication and send it to the applicant with instructions that it shall be published weekly for three consecutive weeks in a newspaper of general circulation within the stream system. Cost of printing is borne by the applicant who shall also see that publisher's affidavit of Proof of Publication is filed within 90 days of issuance of such notice. If proof is filed after the time limit has expired the application shall be treated as a new filing with a new priority dating from the date of receipt of such proof in proper form. The State Engineer may refuse to order the publication of notice of any application which, in his opinion, is contrary to the public interest.

## ORDER

IT IS HEREBY ORDERED that Section G of Article II of the Manual of Rules and Regulations governing the appropriation and use of surface waters of the State of New Mexico, revised January 1951, be amended to read as follows:

## 3. Protest — Hearing.

Any person, firm, association, corporation, the State of New Mexico or the United States, deeming that the granting of a proposed application would be truly detrimental to their prior valid and existing rights in the waters of said stream system, may protest in writing the State Engineer's approval of such application. Said protest, which must be accompanied by supporting affidavits, shall set forth all protestant's reasons why the application should not be approved. The protest, together with proof that a copy thereof has been served upon the applicant, must be filed with the State Engineer **within 10 days after the last date of publication.** Service of protest may be done in person or by registered mail, return receipt requested. Proof of service may be by affidavit of person making such service or, in the case of registered mail, the return receipt properly signed. Applicant shall file with the State Engineer answers to any proper protests and shall furnish protestants with a copy thereof. Further information, complaints and answers may be filed if deemed proper and expedient by the State Engineer.

On or after the expiration of the protest period and upon receipt of the Proof of Publication, the State Engineer shall take up the application for consideration and shall determine from the evidence presented and from study of stream flow and other pertinent records whether there is an unappropriated water available, or the proposed project. Should the evidence be inconclusive or the data insufficient for a proper decision, the State Engineer shall set a date and place for a hearing at which both sides of the question will be fully presented by witnesses. Upon request of the State Engineer applicant and protestant shall each furnish at witnesses ... by the State Engineer to be sufficient to cover all costs and expense of the hearing. Should at later become evident that the costs thereof will exceed the original fee, the State Engineer shall immediately request from both parties sufficient additional monies to cover such increased expenses. In all hearings before the State Engineer, either the applicant or protestant may request the State Engineer

present pertinent testimony, and the State Engineer shall, thereupon issue said subpœna, upon the payment by the appearing party of all estimated costs of such witness, including mileage and per diem as provided by law. A complete transcript of the proceedings shall be kept for the record unless specifically waived by all parties. An informal hearing may be held by the State Engineer at the joint request of the applicant and others having prior rights on the stream system, the costs to be borne equally by the parties thereto. Should the protestant or protestants be owners of old water rights prior to March 19, 1907, which have not been filed for record in the office of the State Engineer, it is urged that such owners declare or file such rights on record as provided herein (see "Declaration of Old Rights," Article IV, page 18).

In taking up an application for his decision the State Engineer shall consider whether there is any unappropriated water available; whether the applicant can satisfactorily complete his appropriation; whether the project is a feasible one; whether the building of the project will be in the best interest of the public. The State Engineer has no power to define any rights not initiated in his office after March 19, 1907 (unless adjudicated by the courts) nor can his approval of an application bestow any rights which the applicant may exercise to the detriment of any others having prior, valid and existing rights. If, in his opinion, there is no unappropriated water available, he shall reject such application. He may also refuse to consider or approve an application or notice of intention to make formal application if, in his opinion, the approval thereof would be contrary to the public interest.

Upon reaching a final decision on a protested application, the State Engineer shall issue a Findings and Order which shall be attached to and become a part of the permanent application record. He shall then return the fee of the prevailing party and may the costs of hearing from the fee advanced by the losing party, or, at his discretion, the costs may be shared by both parties should the evidence warrant such procedure. An appeal from the decision of the State Engineer may be taken to the District Court within whose jurisdiction the lands lie. Such appeal must be filed within a 30-day period.

## H. Fees for Examining Plans and Specifications.

Before he shall approve an application the State Engineer shall require the deposit of the fees prescribed by statute for the examination and study of the plans and specifications of the proposed works (see Article VII, "Fees"). These fees are graduated in amount and depend upon the size and complexity of the project, excepting that no fees are charged in the case of small, simple diversion projects where the submission of plans and specifications are not required, and no fees may be charged for studying plans and specifications in the case of projects initiated by the United States or its authorized agencies.

## I. Approval—Permit.

In approving an application, the State Engineer shall pen his endorsement upon the Formal Application and shall set the time within which applicant shall construct the works and apply water to beneficial use, but not to exceed five years for construction of works and four years in addition thereto for application to beneficial use. If, in his opinion, sufficient cause compels it, may the approval may permit the applicant to the State Engineer may approve in his discretion, for a smaller amount of water than that applied for, in any case may the amount be increased, excepting by a new or amended filing. Applications are always approved with the provision that they must not be exercised to the detriment of any appropriators having

prior, valid and existing rights to the use of the water of the stream system. For special conditions, special additional provisions may be imposed.

Upon approval the application becomes a permit to appropriate water. A permit does not in itself constitute a water right but merely allows the permittee to demonstrate to the State and others that he can and will, in good faith and with due diligence, construct the works and apply water to beneficial use as provided by the terms thereof. The permit defines and limits the water right which may be acquired and should be filed of record with the clerk of the county within which the works are to be situated.

## J. Extensions of Time.

Construction of works and application of water to beneficial use shall be prosecuted diligently in order that the project may be completed within the time limits set in the permit. Should conditions arise, however, such that construction is unavoidably delayed, the State Engineer may, at his discretion, grant reasonable extensions of time as provided by statute. The regulations regarding extensions are not rigid but permit liberal construction thereof by the State Engineer in dealing with irrigation projects begun for the purpose of developing lands of the State which would be otherwise unproductive.

In general, extensions of time to complete works or to apply water to beneficial use may aggregate not more than 5 years beyond the original time for construction fixed by the permit. In any case, however, in which the limit for extensions of time has been reached and in which it may be shown by sworn affidavit and by any other evidence required by the State Engineer that one-fourth of the works has been actually constructed but that it will be impossible to complete such construction within the time allowed, the State Engineer may, upon such reasonable terms and conditions as he may prescribe, extend the time within which to complete the works for any additional periods he deems necessary; provided that no single extension of time may be granted for a period of more than 2 years. The completion of at least one-fourth of the work is required by statute as an evidence of the good faith and intentions of the permittee and failure to complete at least one-fourth of the construction within the time limit must be taken as evidence of the permittee's inability or lack of intention to proceed with the filing. Upon proper showing by the permittee that prosecution of the work was prevented for a time by operation of law or other causes beyond his control, the State Engineer shall add to the total time allowed for construction of works a period of time equal to that during which construction was so prevented.

Applications for Extensions of Time shall be made out in duplicate on the proper blank forms, shall state all reasons why additional time is requested and, if desired or necessary, shall, in the case supported by maps, affidavits, photographs of works completed or destroyed, and/or other proof supporting the request. A fee of $10.00 shall accompany each application for Extension of Time.

## K. Construction of Works—Inspection.

The works shall be constructed by the permittee under the supervision of a qualified registered professional engineer unless this provision is specifically waived by the State Engineer. If he deems it necessary to the public safety, the State Engineer may call in consulting engineers or geol-

10

11

ers to study and pass upon the project. Cost of such
supervision and censuring, work shall be borne by the
permittee. Construction shall be carried on according to
the plans and specifications approved by the State Engi-
neer and no changes or alterations shall be made without
his knowledge and consent. As soon as possible after com-
pletion of completion of works, the State Engineer, or
proper assistant, shall make a thorough inspection of the
works to determine their actual capacity, their adequacy,
safety and efficiency, and shall file his report thereon as a
part of the permanent record. Provided, that, in the case of
works involving the diversion of not to exceed 20 cubic feet
of water per second of time or a dam not exceeding 10 feet
in height above stream bed, the State Engineer may appoint
a registered engineer or land surveyor to make the inspec-
tion. If the works have been materially changed from the
original plans on file, corrections shall be made on the
originals, or amended plans shall be submitted for the
record. If found to be improperly constructed or unsafe,
the State Engineer shall require the making, within a rea-
sonable time limit fixed by him, of all changes or repairs
indicated as necessary. If the time allowed proves insuffi-
cient, the State Engineer may, upon sufficient showing by
the permittee, grant additional time for making the re-
quired changes. Failure to make such corrections shall
cause the postponement of the priority date of the permit
for the length of time elapsing between the date set by the
State Engineer and the date when the changes have been
satisfactorily completed.

Upon completion, the permittee shall file in duplicate on
the proper forms Proof of Completion of Works, which
shall be duly sworn to and signed by the inspecting engi-
neer after he has made a thorough field inspection. If not
done previously, the owner shall at this time make affi-
davit or submit proof that he holds all necessary rights of
way for his works without controversy. A fee of $5.00 for
the issuance of a Certificate of Construction shall accom-
pany this filing.

## L. Certificate of Construction.

The State Engineer shall then issue a Certificate of Con-
struction which shall include the location of the point or
points of diversion, the capacities of canals and reservoirs,
and shall certify to the adequacy of the works for the in-
tended use. Owner shall record the Certificate of Construc-
tion with the clerk of the county within which the works
lie.

## M. Application of Water to Beneficial Use.

As soon as practicable after completing the works, permit-
tee shall divert water and apply it to his intended use.
Since beneficial use is the measure and limit of the right
to use water, no license may be granted for the irrigation
of more land than has actually been covered or more water
than has actually been put to beneficial use during the de-
velopment period, excepting that in no case may the rights
prescribed by the permit be extended or enlarged therein.
After making full use of the water as contemplated by his
permit, or as much thereof as is deemed feasible, applicant
shall file in duplicate upon the proper forms Proof of Ap-
plication of Water to Beneficial Use. Such proof shall be
made out in detail and shall fully describe the uses made,
the quantity of water used, together with a map of a
scale prepared and a fee of $5.00 for the issuance of a
license to Appropriate Water shall accompany this filing.

## N. Final Inspection.

Upon due notice to the owner of the permit, the State

12

Engineer, one of his assistants, or a qualified registered
professional engineer or land surveyor appointed by him
shall make an inspection at the owner's expense and shall
prepare and file as a part of the record a final report on
the project, incorporating therein his recommendations if
any, etc. Such report shall describe in detail or legal
subdivision the land irrigated, giving acreage and as
nearly as possible the quantity of water applied on each
tract. Such report, as not required to determine losses in
transit as they are uncertain and vary widely according to
methods of delivery and character of soils that water the
works are constructed. A license to apply a given quantity
of water on the land carries with it the right to divert
from the stream an additional quantity sufficient to cover
actual necessary losses in transit.

In the case of small diversion or storage projects, the
State Engineer may in his discretion, when requested by
the owner, cause the inspection of works and final inspec-
tion of application of water to beneficial use to be made
at the same time.

## O. License to Appropriate.

The State Engineer shall issue a license to appropriate
water which shall define the extent and conditions of use
under which the water right is granted. The right granted
by a license is limited by actually beneficial use but can in
no manner be extended beyond the limits prescribed in the
permit.

License to appropriate water, together with Certificate
of Construction, permit, decrees, findings, and any other
orders or documents granting or limiting the water right,
shall be recorded with the clerk of the county within
which the works and lands are situated.

13

# MANUAL

OF

# Rules and Regulations

for Proceeding Before the
State Engineer Under the Laws
Affecting the Surface Waters
of the State of New Mexico

Revised April, 1941

By J. H. Bliss

FILED WITH
STATE RECORDS CENTER
1941 JUN 27 PM 4 41

THOMAS M. McCLURE
STATE ENGINEER
Santa Fe, New Mexico

STATE RECORDS CENTER

JUN 27 PM 4: 42

# TABLE OF CONTENTS

Page

I. Constitutional Provisions and General Principles of Appropriation .......... 5

II. General Order of Procedure for Appropriating Public Surface Waters ............ 7
A. Initiation of Water Right—Filing Fees ...... 7
B. Notice of Intention...... 7
C. Surveys, Maps, Plans, etc........ 7
D. Formal Application ................. 8
E. Correction of Application.... 8
F. Notice of Publication—Proof of Publication .. 9
G. Protest—Hearing ..... 9
H. Fees for Examining Plans and Specifications.. 10
I. Approval—Permit .................. 10
J. Extensions of Time .... 10
K. Construction of Works—Inspection ... 11
L. Certificate of Construction... 12
M. Application of Water to Beneficial Use.... 12
N. Final Inspection ................ 12
O. License to Appropriate ............. 12

III. Changes and Amendments..... 13
A. Change of Point of Diversion ...... 13
B. Change of Place or Method of Use.... 14
C. Application for Enlargement or Amendment. .. 15
D. Change of Ownership—Assignment......... 15

IV. Declaration of Old Right............ 16

V. Additional Provisions and Requirements. .... 17
Federal Reclamation Projects.... 17
Duty of Water—Rate of Diversion—Flood Flow. 17
Artificial Waters .................. 17
Diversion from Watershed ............ 18
Rights of Common Carriers—Sale of Water . 18
Lapse—Forfeiture—Cancellation ....... 18
Right of Way—Eminent Domain...... 18
Unsafe Works—Inspection—Repair ....... 19
Headgates—Measuring Devices ......... 19
Bridges at Road Crossings....... 19
Misdemeanor—Penalty; Liens—Priority ....... 19
Records—Copies—Furnishing of Information...... 19

VI. Filing Maps, Plans, Specifications, etc........ 21
A. Map Title, Statements and Affidavits......... 26

VII. Fees ............ 30

VIII. Hydraulic Data ................ 31
Flow of Water in Open Channels.......... 31
Spillway Discharge ............ 34
Conversion Table, Hydraulic Equivalents, Weights, etc. 34

STATE RECORDS CENTER

'73 JUN 27 PM 4: 42

# CONSTITUTIONAL PROVISIONS
## AND
## GENERAL PRINCIPLES OF APPROPRIATION
## OF SURFACE WATERS

All existing rights to the use of water for beneficial purposes in New Mexico were recognized and confirmed by the State Constitution at the time of its adoption.

The State Engineer is empowered to make all rules and regulations necessary to administer the duties devolved upon his office.

All natural waters flowing in streams and water courses in New Mexico are declared to be public and subject to appropriation for beneficial use.

Beneficial use is the basis, measure and limit of the right to use water. No water right, therefore, may be granted or claimed for more than the amount that can be beneficially used.

The unauthorized use of water to which another is entitled, or the wilful waste of water to the detriment of another or of the public is a misdemeanor. Excessive, wasteful and otherwise non beneficial uses do not constitute a valid water right.

Priority in time shall give the better right.

All water appropriated for irrigation purposes, except as otherwise provided by written contract between the owner of the land and the owner of any ditch, reservoir, or other works for the storage or conveyance of water, is appurtenant to the land upon which it is used and shall so continue as long as it can be beneficially used on or until it is lawfully severed from the land. Water which is appurtenant to certain lands may not be transferred to other lands or used for other beneficial purposes excepting with the consent of the owner of the land and as provided by law.

No appropriation of water shall be exercised to the detriment of anyone having prior, valid and existing rights to the use of the waters of the stream system.

Excepting for water rights acquired prior to March 19, 1907, any right to the use of public waters must originate by application to the State Engineer as provided by statute. Unauthorized use shall be a misdemeanor.

The public is notified of proposed appropriations by publication in a newspaper of general circulation in the stream system and any water right owner who feels that the use of water under such application would be detrimental to his prior right may file a protest thereto. After due consideration of the facts, the State Engineer shall approve or reject the application.

It is unlawful to commence any construction of works until the formal application to appropriate water has been approved and signed by the State Engineer.

The diversion and distribution of water for irrigation and domestic purpose in New Mexico is a public purpose, and an appropriator may exercise the right of eminent domain to acquire rights-of-way for canals, ditches, reservoirs, etc., necessary to accomplish such purpose.

License to appropriate water is issued by the State Engineer after the works are satisfactorily completed and the water is applied to beneficial use.

5

Excepting stored waters, failure of an owner to beneficially use all or any part of the water in which he has a vested right for a period of 4 consecutive years constitutes forfeiture and such unused water shall revert to the public; except that for feiture does not necessarily occur should such non use be caused by circumstances beyond the owner's control.

To the end that the waters of the several stream systems of the state may be so utilized as to prevent waste and damage and in order that the benefits of such waters be distributed among the land owners of several streams as equitably as possible without interfering with vested rights, the natural right of the proper living on the uses of valleys to an equal and without a reasonable share of such waters has been recognized and declared, subject always to the provisions of the water right statutes.

The appropriation statutes do not apply to stockmen who shall build or construct tanks or ponds for watering stock which do not exceed 10 acre feet in capacity.

The State Engineer has the right and duty of supervision of the apportionment of water according to the licenses issued by his office and to the adjudications of the courts. By the limitations of this section, the State Engineer apparently has no control over water rights acquired prior to March 19, 1907 excepting those adjudicated by court decree; provided, however, that all such rights are subject to regulation, adjudication and forfeiture for non use as provided in the statutes; provided, further, that in all cases where the rights to the use of the waters in interstate streams or owners of land not included in conservancy districts, irrigation districts, or federal reclamation projects have been the subject of litigation in the State or Federal courts or an adjoining State, the State Engineer shall assume control of all or any part of such interstate stream and the diversion and distribution of the waters of the same in the public interest.

# GENERAL ORDER OF PROCEDURE FOR APPROPRIATING PUBLIC SURFACE WATERS

## A.  Initiation of Water Right - Filing Fees

The right to appropriate the public surface waters of New Mexico may be acquired by any person, firm, association, corporation, the State of New Mexico or the United States of America. Excepting projects of the Bureau of Reclamation (see page 17), all rights acquired after March 19, 1907 must be initiated in the office of the State Engineer by filing an application to make such appropriation. Acceptance of the filing by the State Engineer gives the applicant a tentative right to proceed according to statute in establishing his water right. It is unlawful, however, to commence any construction or works prior to the formal approval of the application by the State Engineer. The necessary blank forms for making water right application will be furnished by the State Engineer upon request. All other regular blank forms will be sent to applicant as required.

A water right may be initiated by filing Notice of Intention, to be followed within a designated time by Formal Application; or the right may be initiated by filing Formal Application directly. In either case there is a filing fee which is a necessary part of the application and if, for any reason, it is insufficient or unsatisfactory, the priority date for the filing must become the date upon which proper fee is received. The fee for filing Notice of Intention is $10.00. The fee for filing Formal Application is graduated in amount and depends upon the size and complexity of the project (see Article VII "Fees".)

## B.  Notice of Intention.

Notice of Intention to make Formal Application for Permit shall be filed in duplicate on the proper forms, accompanied by a $10.00 filing fee. Upon receipt of the Notice properly filled out, the State Engineer shall endorse thereon the date of receipt and shall establish the date for filing Formal Application. Initiation of a right by Notice of Intention is optional and is designed as the lawful means of establishing a priority date for a reasonable length of time sufficient to make surveys and prepare necessary maps, plans, etc., as required by statute. The time granted is usually 6 months but depends somewhat upon the size and complexity of the proposed project. Additional time may be granted at the discretion of the State Engineer in special or unusual cases where the original time allowance proves insufficient, but in no case may the time between filing of Notice of Intention and filing of Formal Application exceed an aggregate of 3 years.

## C.  Surveys, Maps, Plans, etc.

Field surveys of the project shall be made and maps, plans, field notes, specifications, etc., of the proposed works prepared by a qualified registered professional engineer. Small projects for simple diversion and distribution and which involve no planning or design of dams, canal structures, etc., may be prepared for filing by a licensed surveyor, if qualified to do the work. The engineer is responsible for the reasonable correctness of maps, plans, etc., which he prepares for filing with the State Engineer.

The maps, plans, etc., must be prepared from actual field surveys and must be detailed and complete enough to determine the feasibility, safety and adequacy of the proposed works. In cases involving storage or diversion of large amounts of water,

FILED WITH
STATE RECORDS CENTER
APR 27 PM 4:42

the State Engineer may require any additional information he deems necessary to describe and define the proposed use.

Description and details of the data, certificates, etc., which must be shown on the maps and plats will be found under Article VI, "Filing Maps, Plats, Specifications, etc."

### D. Formal Application

Formal Application shall be filed in duplicate on the proper forms and shall be accompanied by necessary maps, plats, etc. If Formal Application is an actual filing, it shall be accompanied by the required data, etc., as it follows a Notice of Intention it shall be filed not later than the date set by the State Engineer for such filing and shall be accompanied by the required filing fees from which amount has been deducted the $10.00 fee paid at the time of filing such Notice of Intention. The fees for filing Formal Application shall include the filing of maps, plats, specifications, proof of publication and all other papers relating to the application up to the issuing of the permit to appropriate water, and shall include the examination and study of all data to meet with the exception of plans and specifications, for the examination and study of which additional fees shall be collected.

The date of receipt of Formal Application by the State Engineer shall be endorsed thereon and noted in his record. If Formal Application is filed later than the hearing date fixed by Notice of Intention or by subsequent extensions of time thereto, it shall, excepting as to filing fee, be treated as a new application and its priority date shall become the date of the filing of Formal Application. It may be noted here that the original priority date of any application is tentative and subject to change or penalty in conformance with the statutes and with the rules and regulations of the State Engineer.

Formal Application defines and limits the maximum amount of water which may be appropriated, and no subsequent act, excepting as provided by statute, can extend or amplify such appropriation. A right can be acquired for any amount less than that asked for in the Formal Application, however. It should be emphasized here, also, that proposed irrigated areas described in the Formal Application cannot be changed or other areas substituted as best thereof, nor can the proposed point of diversion be changed, excepting as provided by law.

### E. Correction of Application

Before acceptance by the State Engineer, Formal Application and accompanying maps, etc., must conform with the statutes and with the rules and regulations of his office. If application is defective as to form, unsatisfactory as to feasibility or safety of plan or as to the ability of the applicant to carry the construction to completion, it shall be returned to the applicant within 30 days with a statement of the necessary corrections or additions required. Indicated changes shall be made and the application refiled within 60 days from the date returned by the State Engineer. If refiled later than the statutory 60 days, it shall be treated in all respects as an original application with a new priority date, excepting that no additional filing fee may be charged. If the corrected application is still unsuitable, it will be returned for other necessary changes, and adequate additional time for refiling may, at the discretion of the State Engineer, be allowed. It should be understood that all corrections and additions are required as much for the protection of the interest of the applicant as for the interest of the public.

After all necessary corrections, if any, have been made, the State Engineer shall sign the State Engineer's certificates on the filing maps, plats and specifications, thereby endorsing his approval thereon and finally accepting them for filing as a part of the permanent record.

Plans and specifications may be amended at any time upon request of the applicant and with the consent of the State Engineer provided that such changes do not unnecessarily delay construction and further provided that change in the proposed point of diversion or in place or method of use shall be subject to the statutes covering the same. (See Article III, Sections A, B and C.)

### F. Notice of Publication—Proof of Publication.

The State Engineer shall prepare a Notice of Publication and shall send it to the applicant with instructions that it shall be published weekly for three consecutive weeks in a newspaper of general circulation within the stream system. Publication in any other paper than that specified by the State Engineer will not be accepted. Cost of printing is borne by the applicant who shall also see that publisher's affidavit of Proof of Publication is filed within 60 days of such order. If proof is filed after the time limit has expired the application shall be treated as a new filing with a new priority dating from the date of receipt of such proof in proper form. The State Engineer may refuse to order the publication of notice of any application which, in his opinion, is contrary to the public interest.

### G. Protest—Hearing.

Any person, firm, association, corporation, the State of New Mexico or the United States, deeming that the granting of a proposed application would be truly detrimental to their prior, valid and existing rights in the waters of said stream system, may protest in writing the State Engineer's approval of such application. Said protest, which must be accompanied by supporting affidavits, shall set forth all protestant's reasons why the application should not be approved. The protest, together with proof that a copy thereof has been served upon the applicant, must be filed with the State Engineer on or before the expiration of the 60-day limit fixed by the Notice of Publication. Service of protest may be done in person or by registered mail, return receipt requested. Proof of service may be by affidavit of person making such service or, in the case of registered mail, the return receipt properly signed. Applicant shall file with the State Engineer answers to any proper protests and shall furnish protestant with a copy thereof. Further information, complaints and answers may be filed if deemed proper and expedient.

On or after the expiration of the 60 day period, the State Engineer shall take up the application for consideration and shall determine from the evidence presented and by a study of stream flow and other pertinent records whether there is unappropriated water available for the proposed project. Should the evidence be inconclusive or the data insufficient for a proper decision, the State Engineer shall set a date and place for a hearing at which both sides of the question will be fully presented by witnesses. Upon request of the State Engineer, applicant and protestants shall each deposit in advance a fee estimated by the State Engineer to be sufficient to cover all costs and expenses of the hearing. Should it later become evident that the costs thereof will exceed the original fee, the State Engineer shall immediately request from both parties sufficient additional monies to cover such increased expenses. A complete transcript of the proceedings shall be kept for the record unless specifically waived by all parties. An informal hearing may be held by the State Engineer at the joint request of the applicant and others having prior rights on the stream system, the costs to be borne equally by the parties thereto. Should the protestant or protestants be owners of old water rights (prior to March 19, 1907) which have not been filed for record in the office of the State Engineer, it is urged that such owners declare or put such rights on record as provided herein (see "Declaration of Old Right", Article IV, page 16)

In taking up an application for his decision the State Engi-

9

neer should consider whether there is any unappropriated water available; whether the applicant can satisfactorily complete his appropriation; whether the project is a feasible one; whether the building of the project will be to the best interests of the public. The State Engineer has no power to define any rights not initiated in his office after March 19, 1907 (unless adjudicated by the courts) nor can his approval of an application bestow any rights which the applicant may exercise to the detriment of any others having prior, valid and existing rights. If in his opinion, there is no unappropriated water available, he shall reject such application. He may also refuse to consider or approve an application or notice of intention to make formal application if, in his opinion, the approval thereof would be contrary to the public interest.

Upon reaching a final decision on a protested application, the State Engineer shall issue a Findings and Order which shall be attached to and become a part of the permanent application record. He shall then return the fee of the prevailing party and pay the costs of hearing from the fee advanced by the losing party, or, at his discretion, the costs may be shared by both parties should the evidence warrant such procedure. An appeal from the decision of the State Engineer may be taken to the District Court within whose jurisdiction the lands lie. Such appeal must be filed within a 30-day period.

**H. Fees for Examining Plans and Specifications.**

Before he shall approve an application the State Engineer shall require the deposit of the fees prescribed by statute for the examination and study of the plans and specifications of the proposed works (see Article VII, "Fees"). These fees are graduated in amount and depend upon the size and complexity of the project, excepting that no fees are charged in the case of small, simple diversion projects where the submission of plans and specifications are not required, and no fees may be charged for studying plans and specifications in the case of projects initiated by the United States or its authorized agencies.

**I. Approval—Permit.**

In approving an application, the State Engineer shall sign his endorsement upon the Formal Application and shall set the time within which applicant shall construct the works and apply water to beneficial use, but not to exceed five years for construction of works and four years in addition thereto for application to beneficial use. If, in his opinion, the available unappropriated waters are limited in amount, the State Engineer may, if he deems best, approve the application for a smaller amount of water than that applied for. In no case may the amount be increased excepting by a new or amended filing. Applications are always approved with the provision that they must not be exercised to the detriment of any appropriators having prior, valid and existing rights to the use of the water of the stream system. For special conditions, special additional provisos may be imposed.

Upon approval the application becomes a permit to appropriate water. A permit does not in itself constitute a water right but merely allows the permittee to demonstrate to the State and others that he can and will, in good faith, construct the works and apply water to beneficial use as provided by the terms thereon. The permit defines and limits the water right which may be acquired and should be filed of record with the clerk of the County within which the works are to be situated.

**J. Extensions of Time.**

Construction of works and application of water to beneficial use shall be prosecuted diligently in order that the project may be completed within the time limits set in the permit. Should conditions arise, however, such that construction is unavoidably delayed, the State Engineer may, at his discretion, grant reason-

able extensions of time as provided by statute. The regulations regarding extensions are not rigid but permit liberal construction thereof by the State Engineer in dealing with irrigation projects begun for the purpose of developing lands of the State which would be otherwise unproductive.

In general, extensions of time to complete works or to apply water to beneficial use may aggregate not more than 5 years beyond the original time for construction fixed by the permit. In any case, however, in which the limit for extensions of time has been reached and in which it may be shown by sworn affidavits and by any other evidence required by the State Engineer that one-fourth of the works had been actually constructed but that it will be impossible to complete such construction within the time allowed, the State Engineer may, upon such reasonable terms and conditions as he may prescribe, extend the time within which to complete the works for any additional periods he deems necessary; provided that no single extension of time may be granted for a period of more than 2 years. The completion of at least one-fourth of the work is required by statute as an evidence of the good faith and intentions of the permittee, and failure to complete at least one-fourth of the construction within the time limit must be taken as evidence of the permittee's inability or lack of intention to proceed with the filing. Upon proper showing by the permittee that prosecution of the work was prevented for a time by operation of law or other causes beyond his control, the State Engineer shall add to the total time allowed for construction of works a period of time equal to that during which construction was so prevented.

Applications for Extensions of Time shall be made out in duplicate on the proper blank forms, shall state all reasons why additional time is requested and, if desired or necessary, shall be accompanied by sworn affidavits, photographs of works completed or destroyed, and/or other proof supporting the request. A fee of $10.00 shall accompany such application for Extension of Time.

**K. Construction of Works--Inspection.**

The works shall be constructed by the permittee under the supervision of a qualified registered professional engineer unless this provision is specifically waived by the State Engineer. If he deems it necessary to the public safety, the State Engineer may call in consulting engineers or geologists to study and pass upon the project. Cost of such supervision and consulting work shall be borne by the permittee. Construction shall be carried on according to the plans and specifications approved by the State Engineer and no changes or alterations shall be made without his knowledge and consent. As soon as possible after notification of completion of works, the State Engineer, or a proper assistant, shall make a thorough inspection of the work, to determine their actual capacity, their adequacy, safety and efficiency, and shall file his report thereon as a part of the permanent record; provided that, in the case of works involving the diversion of not to exceed 20 cubic feet of water per second of time or a dam not exceeding 10 feet in height above stream bed the State Engineer may appoint a registered engineer or land surveyor to make the inspection. If the works have been materially changed from the original plans on file, corrections shall be made on the originals, or amended plans shall be submitted for the record. If found to be improperly constructed or unsafe, the State Engineer shall require the making, within a reasonable time limit fixed by him, of all changes or repairs indicated as necessary. If the time allowed proves insufficient, the State Engineer may, upon sufficient showing by the permittee grant additional time for making the required changes. Failure to make such corrections shall cause the postponement of the priority date of the permit for the length of time elapsing between the date set by the State Engineer and the date when the changes have been satisfactorily completed.

STATE RECORDS CENTER

Upon completion, the permittee shall file in duplicate on the proper forms Proof of Completion of Works, which shall be duly sworn to and signed by the inspecting engineer after he has made all the necessary field inspection. If not done previously, the owner shall at this time make affidavit or submit proof that he holds all necessary rights of way for his works without controversy. A copy of Section 76, the issuance of a Certificate of Construction, shall accompany this filing.

## L.  Certificate of Construction.

The State Engineer shall then issue a Certificate of Construction which shall explain the location on the point or points of diversion, of reservoirs, of canals and reservoirs, and shall certify to the adequacy of the works for the intended use. Owner shall record the Certificate of Construction with the clerk of the county within which the works lie.

## M.  Application of Water to Beneficial Use.

As soon as practicable after completing the works, permittee shall divert water and apply it to his intended use. Since beneficial use is the measure and limit of the right to use water, no license may be granted for the irrigation of more land than has actually been covered or more water than has actually been put to beneficial use during the development period; excepting that in no case may the rights conserved by the permit be extended or enlarged thereby. After making full use of the water as contemplated by his permit, or as much thereof as is deemed feasible, applicant shall file in duplicate upon the proper forms Proof or Application of Water to Beneficial Use. Such proof shall be made out in detail and shall fully describe the uses made, the amount of water used, amount and description of lands irrigated, etc. A fee of $5.00 for the issuance of a License to Appropriate Water must accompany this filing.

## N.  Final Inspection.

Upon due notice to the owner of the permit, the State Engineer, or one of his assistants or a qualified registered professional engineer or land surveyor appointed by him shall make an inspection at the owner's expense and shall prepare and file as a part of the record a final report on the project, incorporating therein his recommendations of water use. Such report shall describe in detail by legal subdivision the lands irrigated, giving total acreage and as far as possible the amount of water applied on the lands. Such report is not required to determine losses in transit as they are uncertain and vary widely according to methods of delivery and character of soils thru which the works are constructed. A license to apply a certain amount of water on the land naturally carries with it the right to divert a reasonable amount from the stream sufficient to cover actual necessary losses in transit.

In the case of small diversion or storage projects, the State Engineer may in his discretion, when requested by the owner, cause the inspection of works and final inspection of application of water to beneficial use to be made at the same time.

## O.  License to Appropriate.

The State Engineer shall issue a License to Appropriate Water which shall define the extent and conditions of use under which water right is granted. The right granted by a license is limited by actual beneficial use but can in no manner be extended beyond the rights prescribed in the permit.

License to Appropriate Water, together with Certificate of Construction, permit, decrees, findings, and any other papers or documents granting or limiting the water right must be recorded with the clerk of the County within which the works and lands are situated.

12

# CHANGES AND AMENDMENTS

Plans of construction on any project may be amended or altered at any time upon request of the applicant and with the approval of the State Engineer, provided that no water right is extended or enlarged thereby excepting as provided by law, and further provided that change in point of diversion or in place or method of use shall be subject to the statutes governing the same. In other words, changes in construction which can affect only the applicant require the approval of the State Engineer only, whereas the public must be notified of any proposed changes which might affect the rights of other users on the stream. Applications to change point of diversion, to change location of irrigated areas or place of use, to change method of use, or to increase the amount of water diverted or consumed come under this latter classification. The public is notified by publication in a newspaper of general circulation in the stream system, and any water user who deems that the granting of such application would be truly detrimental to his water rights may protest such proposed change.

Application to change or amend may be made in connection with two different conditions of water right: (1) a completed right, either one established by beneficial use prior to March 19, 1907, or a water right application before the State Engineer upon which final license to appropriate has been issued; and (2), an uncompleted filing or conditional right which is still pending before the State Engineer. In the case of application to change or amend, in connection with a completed water right, the application, if approved, is carried thru to completion and a final instrument (Certificate of Construction, Amended License to Appropriate, etc.) issued by the State Engineer. If the application is made in connection with an uncompleted filing, the change or amendment is carried thru to as approval by the State Engineer after which the original application or permit as amended is completed in the usual manner.

In any case where application to change or amend is asked for in connection with an uncompleted right, and where the time limit of the original permit is insufficient to complete the proposed changes, applicant shall request an extension of time under the original filing. This requirement is essential because the approval of an application to change or amend cannot authorize any additional time for the completion of construction or works.

Any other special changes not specifically covered by this article shall comply with the statutes and the rules and regulations of the State Engineer.

## A.--Change of Point of Diversion

An application for permit to change Point of Diversion (including change of location of channel storage) shall be made out in duplicate on the proper blank forms and shall be accompanied by a $5.00 filing fee. Filing maps and any plans and specifications necessary shall accompany the application.

The forms shall be filled out fully and in sufficient detail to completely describe the proposed changes. The maps and plans shall be on standard size tracing cloth and shall conform in all respects with the statutes and the State Engineer's requirements (see Article VI, "Filing Maps, Plans, etc.") The filing map shall show the location of the old as well as the new points of diversion and should indicate any intervening points of diversion which might be affected by the change. The traverse of any new sections of canal from the proposed point of diversion to the points where they tie to existing works shall also be shown. The new point of diversion shall be tied by course and

13

**Pleading Separator Sheet USDC NM**

**michaelr   Case Number: 69cv7896**

**NewMexicoStateof, EduardoAbeyta**

**Document #:  4595**



**69cv7896+4595+2005-03-02**

FILED
at Santa Fe, NM

MAR - 2 2005

MATTHEW J. DYKMAN
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO, *ex rel.* )
STATE ENGINEER, *et al.*, )            69cv07896 BB (ACE)
)            **Rio Pueblo de Taos Adjudication**
        **Plaintiffs,** )
v. )            69cv7939 BB (ACE)
)            **Rio Hondo Adjudication**
EDUARDO ABEYTA, *et al.*, )            **(Consolidated)**
and CELSO ARELLANO, *et al.*, )
)            Rio Pueblo Section
        **Defendants.** )            Lower Manuel Andres Trujillo Ditch
)            Juan Manuel Lucero Community Ditch
)            Subfiles: 8.1, 8.2, 8.3, 8.7, 8.8, 8.9, 9.1, 9.2,
)            9.2A, 9.3, 9.4, 9.5, 9.6, 9.7, 9.7A, and 9.8

## MOTION TO AMEND CERTAIN SUBFILE ORDERS
## INVOLVING THE LOWER MANUEL ANDRES TRUJILLO
## DITCH AND THE JUAN MANUEL LUCERO DITCH

The State of New Mexico *ex rel.* State Engineer ("State") requests an order amending the subfile orders identified herein to show that the affected tracts receive water from both the Lower Manual Andres Trujillo Ditch ("LMAT Ditch") and the Juan Manuel Lucero Community Ditch ("JML Ditch"). The grounds for this Motion are as follows:

1.      The subfile orders for the subfiles captioned above provide that only one acequia serves the associated tracts of land ("Affected Tracts"), either the LMAT Ditch or the JML Ditch.

2.      The LMAT Ditch and the JML Ditch filed motions with this Court (#2959 and #2953, respectfully) to correctly identify the acequias that serve the Affected Tracts.

3.      The LMAT Ditch and the JML Ditch, through their counsel Fred J. Waltz, Esq., assert that both the LMAT Ditch and JML Ditch serve the Affected Tracts, and that the subfile owners are members of both acequias and entitled to receive water from both acequias.

4595

4.      The court should amend the subfile orders for the Affected Tracts by replacing entirely the *surface water* "point of diversion" element with the following:[1]

> "*Points of Diversion:*
> *Ditches:*      (1) *Lower Manuel Andres Trujillo Ditch*
>                      (2) *Juan Manuel Lucero Community Ditch*
>
> *Locations:*   (1) *The Lower Manuel Andres Trujillo Ditch diverts out of the north bank of the Arroyo Seco located in the Antonio Martinez or Godoi Grant. The position of this diversion is X: 692,310 and Y: 1,999,550. New Mexico State Plane Coordinate System, Central Zone, NAD 1927.*
>
>                      (2) *The Juan Manuel Lucero Community Ditch diverts from the south bank of the Rio Lucero in the Tenorio Tract, Taos Pueblo Grant. The position of this diversion is X: 703,450 and Y: 1,997,400, New Mexico State Plane Coordinate System, Central Zone, NAD 1927.*"

5.      Through its records and the records of the Court, the State has attempted to ascertain the identity of all parties and other persons who may claim an interest in the Affected Tracts and associated water rights and mailed copies of this Motion to the last known address of all such persons. (*See* attached Service List.) The State did not seek concurrence from any party except counsel for the LMAT and JML Ditches.

6.      Counsel for the LMAT Ditch and the JML Ditch assisted the State in preparing this Motion and supports the granting of this Motion.

7.      ***Persons who oppose this Motion should file a written Response with the Court within fourteen (14) days after service of this Motion on such person, as required CV-LR 7.6(a). The undersigned State's attorney may be contacted to answer questions by telephone at 505-827-6150. Mr. Waltz may also be contacted at 505-758-0407.***

WHEREFORE, the State respectfully requests the Court to enter an order amending the

---

[1] This motion does not affect groundwater rights, including the groundwater rights adjudicated under Pueblo subfiles 8.1 and 8.7.

Motion to Amend Certain Pueblo Section Subfiles
Page 2

subfile orders for the Affected Tracts, as described in paragraph 4 above, such order to be entered after all response and reply times have expired.  State will request entry of an order after such time has expired.

Respectfully submitted,

R. Bruce Frederick
Special Assistant Attorney General
New Mexico Office of the State Engineer
P.O. Box 25102
Santa Fe, NM  87504-5102
(505) 827-6150
Attorney for Plaintiff State of New Mexico
*ex rel.* State Engineer

## CERTIFICATE OF SERVICE

I hereby certify that on 3/2 , 2005 copies of the foregoing pleading was mailed to the persons identified on the attached Service List.

R. Bruce Frederick

## Service List

| Subfile | Owner | Address |
|---------|-------|---------|
| 8.1 | | |
| | TORRES, CONCHA E. | P.O. BOX 1168 EL PRADO, NM 87527 |
| 8.2 | | |
| | MARTINEZ, AMANDA | 11705 FREEMAN AVE HAWTHORNE, CA 90250 |
| | MARTINEZ, BILLY | P.O. BOX 232 RANCHOS DE TAOS, NM 87557 |
| | MARTINEZ, FELIX A. | P.O. BOX 232 RANCHOS DE TAOS, NM 87557 |
| | MARTINEZ, FELIX | 11705 FREEMAN AVE HAWTHORNE, CA 90250 |
| 8.3 | | |
| | WILSON, MARK | P.O. BOX 1738 EL PRADO, NM 87529 |
| | WILSON, PHYLLIS | P.O. BOX 1738 EL PRADO, NM 87529 |
| | MARTINEZ, FELIX | 11705 FREEMAN AVE HAWTHORNE, CA 90250 |
| 8.7 | | |
| | MILLS, OLIVIA A. | 323 N. BELMONT PL. WICHITA, KS 67208 |
| | ROSEBERRY, ELEANOR | 1214 OKIAH WAY UPLAND, CA 91786 |
| | AHUMADA, PATRICIA | 2042 PLATO COURT SIMI VALLEY, CA 93065 |
| 8.8 | | |
| | MARTINEZ, GUILLERMO | P.O. BOX 1444 TAOS, NM 87571 |
| 8.9 | | |
| | PARRISH SELF DIRECTED IRA, DERRELL | P.O. BOX 2380 LAS CRUCES, NM 880042380 |
| | BESS, CHRIS | P.O. BOX 1409 MESILLA PARK, NM 88047 |
| | BESS, MARY ANN | P.O. BOX 1409 MESILLA PARK, NM 88047 |
| | BROWN FAMILY REVOCABLE TRUST, | BOX 563 MESILLA, NM 88046 |
| | GENCON CORP. PROFIT SHARING, TRUST | BOX 448 MESILLA, NM 88046 |
| | GENCON CORPORATION, | BOX 448 MESILLA, NM 88046 |
| | HILLGER, JOAN | 828 CANTERBURY ARC LAS CRUCES, NM 88005 |
| | HILLGER, MARVIN L. | 828 CANTERBURY ARC LAS CRUCES, NM 88005 |
| 9.1 | | |
| | SANTISTEVAN, RAFAELITA E. | P.O. BOX 252 TAOS, NM 87571 |
| 9.2 | | |
| | VENTURE NINE ONE, | P.O. BOX 904 TAOS, NM 87571 |
| | TRIPLE S, JOHNSON LAND | 6769 GUADALUPE DR.NW ALBUQUERQUE, NM 87107 |
| 9.2A | | |
| | SANTISTEVAN, FELIX | P.O. BOX 252 TAOS, NM 87571 |
| | SANTISTEVAN, FELIX J. | P.O. BOX 252 TAOS, NM 87571 |
| | SANTISTEVAN, RAFAELITA E. | P.O. BOX 252 TAOS, NM 87571 |

| Subfile | Owner | Address |
|---|---|---|
| 9.3 | | |
| | GROSSMAN, MARTHA | P.O. BOX 675 EL PRADO, NM 87529 |
| | GROSSMAN, THESDOR | P.O. BOX 675 EL PRADO, NM 87529 |
| 9.4 | | |
| | MARTINEZ, EMILIO | P.O. BOX 12 RANCHOS DE TAOS, NM 87557 |
| | MARTINEZ, FELIBERTO | BOX 12 RANCHOS DE TAOS, NM 87557 |
| | HUGHES, JOHN R. | P.O. BOX 2079 RANCHOS DE TAOS, NM 87557 |
| | MARTINEZ, FELIBERTO SR. (EST.) | BOX 12 RANCHOS DE TAOS, NM 87557 |
| 9.5 | | |
| | SANTISTEVAN, RAFAELITA E. | P.O. BOX 252 TAOS, NM 87571 |
| 9.6 | | |
| | TRIPLE S, JOHNSON LAND | 6769 GUADALUPE DR.NW ALBUQUERQUE, NM 87107 |
| 9.7 | | |
| | SANTISTEVAN, FELIX | P.O. BOX 252 TAOS, NM 87571 |
| | SANTISTEVAN, FELIX J. | P.O. BOX 252 TAOS, NM 87571 |
| 9.7A | | |
| | GRANGER, JOHN | P.O. BOX 3099 TAOS, NM 87571 |
| 9.8 | | |
| | MARTINEZ, FELIBERTO SR. (EST.) | BOX 12 RANCHOS DE TAOS, NM 87557 |
| | HUGHES, JOHN R. | P.O. BOX 2079 RANCHOS DE TAOS, NM 87557 |
| | MARTINEZ, EMILIO | P.O. BOX 12 RANCHOS DE TAOS, NM 87557 |
| | MARTINEZ, FELIBERTO | BOX 12 RANCHOS DE TAOS, NM 87557 |
| | Fred J. Waltz, Esq. | Box 6390, Taos, NM  87571 |

Pleading Separator Sheet USDC NM

michaelr  Case Number: 5cv182

Apodaca, TheZiaCompany,et

Document #:  20



5cv182+20+2005-03-02

UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO



SINFOROSA APODACA, et al.

v.                                                    Civ-05-182 MV/DJS

THE ZIA COMPANY, et al.

## ORDER EXTENDING
## TIME TO FILE RESPONSIVE PLEADING

THIS MATTER having come before the Court on the Stipulated Motion for

Extension of Time To File Responsive Pleading, the Court finding good cause exists,

IT IS THEREFORE ORDERED that Defendant McDonnell Douglas Corporation

shall have and is hereby granted until March 7, 2005 within which to file a responsive

pleading in this action.

_____

UNITED STATES DISTRICT JUDGE DON J. SVET

Approved:

**CARPENTER & STOUT, LTD.**
William H. Carpenter
David J. Stout
1600 University Blvd., NE, #A
Albuquerque, NM 87102

**WILLIAMS & TRINE, P.C.**

**By:** Approved via electronic mail 2/24/05
J. Conard Metcalf
Judy B. Snyder
1435 Arapahoe Ave.
Boulder, CO 80302



*Attorneys for Plaintiffs*

**BRYAN CAVE, LLP**
      Rebecca Jackson
      Laura Rehm Giokas
      One Metropolitan Square
      211 North Broadway, Suite 3600
      St. Louis, MO 63102

**MODRALL, SPERLING, ROEHL, HARRIS**
  **& SISK, P.A.**

By: _____
      Martha G. Brown
      Post Office Box 2168
      Bank of America Centre
      500 Fourth Street NW, Suite 1000
      Albuquerque, New Mexico 87103-2168
      Telephone: 505.848.1800

*Attorneys for McDonnell Douglas Corporation*
*K:\dox\client\9000\143\W0460882.DOC*