IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

06 JAN 17  AM 10: 17

CLERK ALBUQUERQUE

STATE OF NEW MEXICO, *ex rel.*
State Engineer

    Plaintiff,

    vs.

ROMAN ARAGON, *et al.*,

    Defendants.

69cv07941 BB-ACE

RIO CHAMA STREAM SYSTEM
Section 7: Rutheron & Plaza Blanca

**Subfile No. CHRU-004-0044**

## SUPPLEMENTAL BRIEF OF STATE OF NEW MEXICO

Pursuant to the Order entered October 19, 2005 (Doc. No. 8035), the Plaintiff State of New Mexico. *ex rel.* State Engineer ("State"), files this Supplemental Brief addressing pending motions affecting Subfile CHRU-004-0044, and other issues arising during the hearing before Special Master Vickie L. Gabin on October 14, 2005.  Based on additional evidence and testimony presented to the Court at the October 14th hearing, the State now <u>opposes</u> the Motion to Set Aside Default Judgment filed May 20, 2005, by Henry G. Coors (Doc. No. 7901).

At the October 14th hearing, Coors failed to show that he has a meritorious claim to water rights under Subfile CHRU-004-0044.  In addition, Coors' failure to oppose the entry of the default order comes after a decision on his part to avoid any involvement in the general adjudication of water rights of the Rio Chama Stream System.  His decision to ignore these proceedings precludes any finding of "excusable neglect" or "mistake" or "other reason" justifying relief under Fed. R. Civ. P. 60(b).

8109

<u>Coors has no meritorious claim to water rights</u>. With the exception of void judgments, a showing of a meritorious claim or defense is a precondition to obtaining relief from judgment under F. R. Civ. Pro. 60(b). *See In re Stone*, 588 F.2d 1316, 1319 (10th Cir. 1978) ("Rule 60(b) . . . permits relief from a final judgment only if the movant can demonstrate . . . the existence of a meritorious defense."). In this case, Coors has no claim to the water rights appurtenant to the 7.3 acres of land mapped under Subfile CHRU-004-0044. It follows that he has no standing in these proceedings to raise such a claim. In making this assertion, the State relies on just two factors: (1) the conveyance of Lot C of the Fort Heron Preserve Subdivision to Steve A. Padilla and Jemelle S. Padilla ("Padilla") on November 7, 2000 without a reservation of water rights; and (2) the conveyance of 10 acre-feet of consumptive use water rights to the Rutheron Mutual Domestic Water Association (Rutheron MDWA) on August 20, 2002. Although Coors asserted at the October 14th hearing that there exists a "residual" amount of water rights to which he remains the rightful owner (Hearing Tr. 45, 55, 113, 116, 161, 162), there is no basis in law or fact to support that position.

"In a conveyance or mortgage of real estate all rights, easements, privileges and appurtenances belonging to the granted estate shall be included in the conveyance, unless the contrary shall be stated in the deed, and it shall be unnecessary to enumerate or mention them generally or specifically." NMSA 1978, § 47-1-34 (1947). With reference to the sale of Lot C, it is undisputed that Coors failed to reserve appurtenant water rights when he sold the property to Padilla. *See* Respondents' Exhibit 5 (Warranty Deed dated November 7, 2000). In addition, there has been no testimony that there was any discussion between the parties concerning a reservation of water rights at the time of the sale. Hearing Tr. 80, 151. Nor has Coors produced any document representing a purported disclaimer or quitclaim of those water rights in his favor. For these reasons,

-2-

unless the water rights originally appurtenant to Lot C were lawfully severed <u>prior</u> to the sale of land to Padilla, those water rights passed with title to the land by operation of law pursuant to Section 47-1-34 and Padilla remains the rightful owner of those water rights today.

With respect to Lot C, the record shows there is no basis to claim that any pre-conveyance administrative severance of the water rights took place prior to the sale to Padilla. At the October 14th hearing. Coors took the position that the water rights were severed when he *submitted an application* to the State Engineer to transfer those rights on October 22. 1999.[1]  Hearing Tr. 78. 79. New Mexico law does not support this position.

The statutory requirements for severing and transferring irrigation water rights are set forth in Section 72-5-23.

> All water used in this state for irrigation purposes, except as otherwise provided in this article, shall be considered appurtenant to the land upon which it is used, and the right to use it upon the land shall never be severed from the land without the consent of the owner of the land, but by and with the consent of the owner of the land, all or any part of the right may be severed from the land, simultaneously transferred and become appurtenant to other land, or may be transferred for other purposes, without losing priority of right therefore established, if such changes can be made within the state and not detrimental to the public welfare of the state, *on the approval of an application of the owner by the state engineer.* Publication of notice of application, opportunity for the filing of objection or protests and a hearing on the application shall be provided as required by Sections 72-5-4 and

---

[1]    In his testimony at the October 14th hearing. Coors describes and discusses both the application filed December 7, 1998 to transfer irrigation water rights to offset evaporation from two ponds. and the application filed October 22, 1999 to transfer 10 acre-feet of water rights to the Rutheron MDWA. However, the first application filed in 1998 in connection with the ponds is. irrelevant to his argument because Lot C is not listed in the application as one of lots in the subdivision from which the water rights were to be severed. *See* Plaintiff's Post Trial Exhibit 9. Application filed December 7, 1998. p. 1, ¶ 6. In contrast. in the 1999 application submitted in connection with the proposed transfer to the Rutheron MDWA Lot C is in fact listed in the application. *See* Plaintiff's Post-Trial Exhibit 9. Application filed October 22, 1999. p. 1. ¶ 5. Copies of the two applications are included here as Exhibits A and B for the convenience of the Court and parties.

72-5-5 NMSA 1978.

NMSA 1978, Section 72-5-23 (emphasis added).

The New Mexico Supreme Court recently addressed the statutory requirements for severance and stated "to effect a severance, Section 72-5-23 requires the consent of the landowner, and 'approval of an application' by the State Engineer." *Turner v. Bassett*, 2005 NMSC-009, ¶ 20, __ __ N.M. ___, 111 P.3d 701. The Court explained that during the administrative review process, the "proposed severance" is evaluated by the State Engineer to determine whether the changed use of water may result in adverse impacts to other appropriators or may be detrimental to water conservation and public welfare. *Id.* Under *Turner*, it is the approval of the application or "issuance of a permit" that gives rise to a presumption that the land and water rights are no longer appurtenant. *Id.* at ¶ 24; *see also In the Matter of the Application by Silver City*, 2005 NMCA-No.25,159 (December 5, 2005).

The language of Section 72-5-23 and the Court's decision in *Turner* leaves no doubt that the mere submission of an application to the State Engineer for a transfer of water rights does not effect a severance. Since there was no pre-conveyance administrative severance of the water rights appurtenant to Lot C, those water rights passed by operation of law to Padilla with the sale of the property. In addition, in the absence of sufficient evidence to prove that the parties actually reached an agreement concerning appurtenant water rights, a deed cannot be reformed to include a reservation of water rights. *See Twin Forks Ranch, Inc. v. Brooks*, 1998-NMCA-129, ¶¶ 14, 20-21,125 N.M. 674, 964 P.2d 839 (water rights passed by operation of law pursuant to Section 47-1-34), *cert denied*, No. 25.321 (1998). As indicated earlier, there has been no testimony that Coors and Padilla reached an agreement concerning appurtenant water rights at the time of the sales transaction.

-4-

(Hearing Tr. 80, 151). Thus, those water rights passed by operation of law to Padilla and the deed is not subject to reformation.

Review of original amount of licensed water rights and effect of approved transfers and sale of water rights by Coors. It is undisputed that Coors acquired licensed water rights appurtenant to 35.3 acres of irrigated land in November 1988 when he purchased 102 acres of land from Norbert D. Dunham. Subsequently, Coors transferred the water rights appurtenant to 2.67 acres of irrigated land to the Rutheron MDWA in 1994, and transferred water rights appurtenant to an additional 2.67 acres of irrigated land to the Rutheron MDWA in 1996. *See* Plaintiff's Post-Trial Exhibit 9, Application filed May 7, 1993, approved January 3, 1994; Application filed March 12, 1996, approved October 4, 1996. Coors also sold water rights appurtenant to 8.0 acres of irrigated land to William Mauldin and Linda DeMill when they purchased 50 acres from Coors on the eastern portion of his property. Hearing Tr. 39, 104.[2] Finally, Coors severed all water rights appurtenant to 14.66 acres of irrigated land to offset evaporative losses from two ponds. *See* Plaintiff's Post Trial Exhibit 9, Application filed June 21, 2001, approved by Order dated June 21, 2001. After the completion of these transactions and the approval of these applications for transfer, there remained 7.3 acres of land having licensed appurtenant irrigation water rights.

The hydrographic survey division of the State Engineer, with input and approval from Coors (Hearing Tr. 128-31), mapped the location of the 7.3 acres as shown in the color subfile map for

---

[2]     Change of Ownership of Water Right forms in connection with this transaction were filed with the State Engineer on May 29, 1996 and June 3, 1996. Copies of the documents are available from the WATERS database at the State Engineer's website.

Subfile CHRU-004-0044. Plaintiff's Ex. 1.[3] The map also shows the location of two "no right" tracts to account for the three applications to the State Engineer for transfer that were approved in 1994, 1996 and 2001. An overlay of the Fort Heron Preserve Subdivision on the subfile map shows the allocation of the 7.3 acre tract among Lots B, C, D, E and F of the subdivision. Plaintiff's Ex. 4. The tract purchased by Padilla (Lot C) encompasses 3.0 acres of the original and remaining licensed water rights and irrigated acreage. Because Coors has no claim to water rights for the 3.0 acres owned by Padilla and allocated to Lot C, the <u>most</u> Coors might claim in these proceedings are water rights appurtenant to the remaining 4.3 acres of land. However, Coors has no claim for water rights appurtenant to the remaining 4.3 acres because he conveyed any interest he may have had in those rights to the Rutheron MDWA. *See* Water Rights Deed dated August 20, 2002; Motion to Set Aside Default Judgment, Ex. 13.

<u>Deed to Rutheron Mutual Domestic Water Users Association.</u> The Water Rights Deed to the Rutheron MDWA executed by Coors on August 20, 2002 was recorded with the Rio Arriba County Clerk on August 23, 2002. *Id.*, p. 4. There has been no assertion that it is ineffective or otherwise invalid. The deed purports to grant to the Rutheron Water Association "ten (10) acre-feet of consumptive use water rights" for the purpose of supplying domestic water to 37 designated lots in the Fort Heron Preserve Subdivision. Page three of the deed states that the conveyance is to include

---

[3]       A proposed Consent Order recognizing the amount and location of these water rights was sent to Coors on June 17, 2002. The packet sent to Coors contained a copy of the color subfile map, request for waiver of service of summons, notice of field offices, and other adjudication related documents and explanatory information. Although Coors signed and returned a completed Waiver of Summons (filed with the Court on September 3, 2002), the Consent Order was returned unsigned without explanation. A follow up letter sent to Coors requesting his approval of the proposed Order was never answered. A copy of counsel's letter to Coors on August 20, 2002, is attached hereto as Exhibit C.

the 2.0 acre-feet of consumptive use rights transferred to the Rutheron MDWA in 1994, the 2.0 acre-feet of consumptive use rights transferred to the Rutheron MDWA in 1996, and an additional 6.0 acre-feet of consumptive use rights under the application dated October 22, 1999 then pending before the State Engineer. *Id.*, p. 3.

For the reasons discussed above, the only irrigated land to which the grant of 6.0 acre-feet of consumptive use water rights might apply is the 4.3 acres of licensed irrigated acreage remaining after the sale of Lot C to Padilla. Although Coors has postulated various scenarios to calculate the amount of irrigated acreage that would support a transfer of 6.0 acre-feet of consumptive use water rights, even a scenario most favorable to him shows that the remaining 4.3 irrigated acres is insufficient to fulfill the grant of water rights in the deed to the Rutheron MDWA. These calculations are set out below.

In acting on the 1998 application to offset evaporation from the ponds, and using then current available data, the Water Rights Division computed the Regional Consumptive Irrigation Requirement (CIR) at the move-from area to be 1.01 acre-feet per acre per year. *See* Plaintiff's Post Trial Ex. 9, Application filed December 7, 1998, Report and Recommendation of the Hearings Examiners, ¶ 8. The Regional CIR, including an adjustment for historic surface water supply, was calculated to be 0.93 acre-feet per year per acre (92% Historic Supply X 1.01 afy/ac CIR = 0.93). *Id.* at ¶ 9. The report and recommendations of the hearings examiners based on these calculations was accepted and adopted by the State Engineer. *Id.* Using these same CIR and historic supply figures, and applying them to the remaining 4.3 acres in this case, the amount of water available for transfer from the remaining acreage is 3.99 acre-feet per year (4.3 x 0.93 = 3.99 acre-feet/year). There is nothing to suggest that the Water Rights Division would calculate the amount of water

available to transfer as being any greater than this figure, which is clearly insufficient to satisfy the grant of 6.0 acre-feet of consumptive use water rights described in the deed to the Rutheron MDWA.[4] Thus there is no "residual" amount of water rights to which Coors can have a claim of ownership. Any water rights he may have had after his previously-approved transfers and sale of lands and water rights to Mauldin, DeMill and Padilla were conveyed to the Rutheron MDWA.

There is also nothing to suggest that the State Engineer would somehow recalculate or revisit the amount of irrigated acreage necessary to offset the two previously approved transfers of 2.0 acre-feet of consumptive use water rights to the Rutheron MDWA. The Orders approving those transfers, and severing water rights appurtenant to a total of 5.34 acres of land, were final and conclusive thirty days after receipt of the notice of the decision in those applications. *See* NMSA 1978, § 72-7-1 (B). Significantly, a review of the State Engineer file for the 1993 application shows that Coors was dissatisfied with the conditions of approval attached to that application and he sent a letter to the State Engineer stating that he was aggrieved. *See* Plaintiff's Post Trial Ex. 9, application filed May

---

[4]    The most current available data and quantification of irrigation water requirements in the Rutheron subsection is contained in the Rutheron & Plaza Blanca Hydrographic Survey Report dated April 30, 2002. The weighted CIR for the Rutheron subsection is reported as 0.88 acre-feet per acre per year. *See* Rutheron & Plaza Blanca Hydrographic Survey Report, at xiii. Using this CIR figure, which is significantly less favorable to Coors, the amount of water available for transfer from the 4.3 acres is 3.48 acre-feet per year (92% Historic Supply X 0.88 CIR X 4.3 acres = 3.48 acre-feet per year).

The CIR figures in the hydrographic survey report are provisional and there has been no judicial determination of the CIR for the Rutheron area or Section 7 generally. *See* Procedural Order for the Adjudication of Water Rights Claims in Section 7 of the Rio Chama Stream System (Doc. No. 6939) ¶ 1, G ("The adjudication of irrigation water requirements . . . will be initiated by the State following the completion of the individual subfile activity."). While the Water Rights Division would likely use the CIR from the hydrographic survey report in all pending administrative applications for transfer, since this information is now the most current that is available, it is unnecessary to address that question here. There is no "residual" amount of water rights in either case.

3, 1993, letter of Coors dated July 21, 1994. However, Coors' letter came over 6 months after he had been notified of the decision and the conditions of approval to which he objected. *Id.*, letter of J. T. Smith dated January 3, 1994. The Water Rights Division informed Coors that the "State Engineer lost jurisdiction to modify the conditions of approval to the application thirty (30) days after approval of the application." *Id.*, letter of J. T. Smith dated August 9, 1994. Nothing has changed during the intervening 10 or more years. Formal action on these transfer applications were concluded long ago, and there is no indication the Water Rights Division would even consider a redetermination of the amount of irrigated acreage necessary to support the 1994 and 1996 transfers of water rights to the Rutheron MDWA. Coors admits this in his testimony, stating that the Water Rights Division would not go along with his efforts to recalculate the amount of acreage he was required to retire from irrigation using a revised CIR. Hearing Tr. 171-72.

In sum, based only on the conveyance of Lot C without a reservation of water rights, and the later conveyance of water rights to the Rutheron MDWA, Coors has no claim to any residual amount of water rights. He therefore lacks standing to claim ownership of water rights in these proceedings. Coors other arguments concerning standing also fail.

Claimed beneficial interest. At the October 14th hearing Coors claimed a beneficial interest as a developer and owner of subdivision lots to see that the water rights that he conveyed to the Rutheron MDWA were used for the benefit of the lots in the subdivision. Hearing Tr. 23, 29. While Coors may have such an interest, even an economic one, the State disagrees that such an interest gives him standing in these proceedings.

The standing inquiry requires the Court to consider "both constitutional limitations on the federal-court jurisdiction and prudential limitations on its exercise." *Sac and Fox Nation of Missouri*

*v. Pierce*, 213 F.3d 566, 573 (10th Cir. 2000).

> The Supreme Court has identified three constitutional standing requirements. A plaintiff must allege (1) a concrete and particularized actual or imminent injury, (2) which is fairly traceable to defendant's conduct, and (3) which a favorable court decision will redress.

> Additionally, the Supreme Court has identified three prudential standing principles. First, a plaintiff must generally assert its own rights, rather than those belonging to third parties. Second, a generalized grievance shared by a large class of citizens normally does not warrant a federal court's exercise of jurisdiction. Third, the interests which the plaintiff seeks to protect must arguably be within the zone of interests to be protected by the statute or constitutional guarantee.

*Id.* (citations and quotation marks omitted).

Even assuming Coors is able to met the other requirements outlined above, the claimed beneficial interest in having the Rutheron MDWA supply water to his subdivision lots represents an interest outside the "zone of interests" protected or regulated by the New Mexico adjudication statutes.

As the Court is fully aware, this proceeding is a general adjudication of water rights. The procedures for a general stream system adjudication are set forth in NMSA 1978, Sections 72-4-15 through 72-4-19. Pursuant to these statutes, the State Engineer is required to make a hydrographic survey of "all rights to the use of the waters of [the] stream system." NMSA 1978, § 72-4-15. This information is delivered to the attorney general who at the request of the State Engineer files suit on behalf of the state "for the determination of all rights to the use of such water." *Id.* Finally, "all those whose claim to the use of such waters are of record and all other claimants, so far as they can be ascertained, with reasonable diligence, shall be made parties." NMSA 1978, § 72-4-17. These statutes define and limit the scope of these proceedings to claims involving *a right to the use of water*.

The interests protected or regulated by these adjudication statutes are water rights, that is, a right to the use of water. This does not include incidental interests that stem from how or where water may be used by others. Coors has no standing in these proceedings based on a beneficial interest in how the Rutheron MDWA may use the water rights he deeded over to that entity, or based on whether or not they use those water rights at all. There are many hundreds of persons that have transferred water rights to municipalities or other public or private entities in years past. It is inconceivable that these persons would have standing in a general adjudication of water rights based on a claimed beneficial interest in the use of that water by the municipalities or other entities to whom the water rights were conveyed. Standing in these proceedings is based on a personal claim to the right of the use of water, that is, ownership of a "water right." Unless Coors has such a claim he lacks standing.[5]

Claimed nonreceipt of Court notices and pleadings. In the Motion to Set Aside Default Judgment filed May 20, 2005, Coors makes no claim that he failed to receive any notices sent to him by the Court or pleadings sent by counsel. In Coors' Reply to Defendants' Response to the Motion to Set Aside Default Judgment, he argues that his failure to receive actual notice of his required attendance at the September 20, 2004 scheduling conference constitutes excusable neglect pursuant to Rule 60(b)(1), or alternately good cause to set aside the judgment under Rule 60(b)(6). See Reply filed July 11, 2005 (Doc. No. 7933). According to his affidavit (attached as Exhibit A to the

---

[5]     Pursuant to the Memorandum Opinion and Order filed August 24, 2004 (Doc. No. 8006), the Rutheron Water Association was notified by the State and the Special Master of the October 14th evidentiary hearing. See Order Setting Hearing (Doc. 8012). The Rutheron MDWA (already a party to the adjudication proceedings in connection with Subfiles CHRU-004-0017 and CHRU-004-0045) notified the Special Master on October 12th that it did not wish to file a claim to the ownership of water rights involved in the Coors application and would not attend the hearing. See Exhibit D attached hereto.

Response for Motions for Sanctions filed July 11, 2005) Coors was traveling in a motor home during
the summer and fall of 2004. He states that his mail service held his mail for him after July 26,
2004, and that he did not receive his mail until October 18, 2004 when returned to Albuquerque.
He states that he has no recollection of receiving anything in the mail he received that indicated that
anyone claimed the water rights that he had transferred to the Rutheron Water Association.

Coors' testimony and claims at the October 14th hearing were considerably more expansive.
At the hearing, Coors claimed that he had never received any of the notices mailed by the Court, or
the pleadings mailed by counsel, or even the copy of the default order entered by the Court that was
mailed to him on October 28, 2004. He claims that the first time he learned a default had been
entered was after he was notified by the Water Rights Division in February of 2005 that the pending
application to transfer water rights had been denied. Hearing Tr. 60, 115. The sheer volume of mail
and documents which he claims he never received makes this assertion untenable. A list of the
documents and the date of mailing as indicated on each certificate of service follows:

- *Joint Request for Scheduling Conference and Setting Scheduling Conference*; copy
  mailed August 31, 2004 (*see* Certificate of Service contained in Joint Request for
  Scheduling Conference).

- *Order Granting Request for Scheduling Conference and Setting Scheduling
  Conference*; copy mailed September 7, 2004 (*see* Certificate of Service filed
  September 8, 2004).

- *Amended Order Granting Request for Scheduling Conference and Setting Scheduling
  Conference*; copy mailed September 14, 2004 (*see* Certificate of Service filed
  September 17, 2004).

- *Motion for Default Judgment*; copy mailed October 13, 2004 (*see* Certificate of Service filed October 13, 2004).

- *Order Granting Motion for Default Judgment*; copy mailed October 28, 2004 (*see* Certificate of Service filed October 28, 2004).

Coors claims to have received <u>none</u> of these documents. This assertion simply cannot be accepted. Two of the five documents he claims he never received were mailed to him by Special Master Vickie Gabin, and she has not reported that they were returned to her because they could not be delivered. In addition, the copy of the default order that the State mailed to Coors was not mailed to him until after his return to Albuquerque on October18, 2004. Thus this particular mailing followed the completion of his motor home travels and the period of time during which his mail service held his mail during the summer and fall of 2004. In addition to its determination that Coors had no interest in the water rights in Subfile CHRU-004-0044, the Court's default order provided further notice that other defendants claimed these water rights in pleadings that had been filed with the Court.

Coors' testimony concerning his failure to receive first class mail stands in contrast with his documented receipt of certified mail. Attached as Exhibit E is a copy of the return receipt received by the State in connection with the mailing of the original service packet and proposed Consent Order in these proceedings. The service packet was received by "Escapees Mail Service" on June 20, 2002. Later, Coors signed and returned the requested Waiver of Service form listing the same Livingston, Texas address that the State had used in mailing the service packet. *See* Exhibit F. Another documented example of his receipt of certified mail is the notification of the denial of the 1999 application to transfer additional waters to the Ruthcron MDWA. *See* Respondents' Ex. 12.

Under both the federal and State of New Mexico cases, materials mailed to a correct address are presumed to have been received. *See Davis United States Postal Service*, 142 F.3d 1334, 1340 (10th Cir. 1998); *DeArmond v. Halliburton Energy Ser., Inc.*, 2003-NMCA-148, ¶ 20, 134 N.M. 630, 635, 81 P.3d 573, 578, *cert. denied*, 135 N.M. 51, 84 P.3d 668. Other than his mere allegation that he never he received these documents, Coors offers no documentation or support for his allegations. Under these circumstances, Coors cannot be said to overcome the presumption of receipt raised by the evidence of mailing. *Cf. Gurung v. Ashcroft*, 371 F.3d 718, 722 (10th Cir. 2004) (in order to rebut presumption of receipt of notice petitioner must present "substantial and probative evidence . . . demonstrating that there was improper delivery or that nondelivery was not due to respondents's failure to provide an address where he could receive mail"); *see also Denmon v. Runon*, 208 B.R. 225, 228-29 (1997) (allegation of denial of receipt does not by itself rebut presumption of receipt of notice; presumption can only be overcome by clear and convincing evidence that the mailing was not, in fact, accomplished).

In addition, there is no "due process" claim that forms a basis for standing as suggested by Coors' counsel at the October 14th hearing. Hearing Tr. 24. "Notice of a proceeding satisfies due process if it is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections'." *Gurung* at 721 (quoting *Mullane v. Cen. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). All of the notices and documents described above were mailed to Coors at the address that he provided to the Court in his waiver. It cannot be argued that the use of regular mail to deliver Court notices and pleadings to that address was not reasonably calculated to apprise Coors of these proceedings. Thus, all of the mailings satisfied the requirements of constitutional due process.

-14-

Deliberate or willful conduct is never excusable neglect.   In addition to the above considerations, the State believes the Court should take into account Coors apparently deliberate decision to ignore these adjudication proceedings. Deliberate or willful conduct is never excusable neglect.   12 J. W. MOORE, MOORE'S FEDERAL PRACTICE § 60.41[1][c][I] (3rd ed. 2005). Significantly, at the October 14th hearing Coors on several occasions stated that after receiving the adjudication related materials sent to him in June 2002, he wanted to have no involvement in these proceedings. Hearing Tr. 58, 85, 113. This testimony is certainly consistent with his actions prior to the Court sending him the notice concerning the September 20, 2004 scheduling conference. Prior to this time Coors had failed to sign and approve the State's proposed Consent Order sent to him in June 2002; failed to respond to a letter from the State returning the unsigned Consent Order and asking for his approval; failed to attend any of the local field offices in Chama or otherwise contact the State to take exception to the terms of the proposed order, as required by the procedural order entered in connection with the adjudication of water rights in the Rutheron area. *See* Order entered November 19, 2002, (Doc. No. 6939). A copy of this procedural order, and other materials explaining his obligation to attend a field office session, were included in the packet of materials delivered to him in June 2002.

After receiving the adjudication related materials sent to him in June 2002, Coors quickly sought to distance himself from these proceedings by transferring his interests to the Rutheron MDWA. *See* Hearing Tr. 58, 85. The Water Rights Deed to the Rutheron MDWA was signed and executed on August 20, 2002 while Coors was traveling in Nova Scotia, Canada. *See* Motion to Set Aside Default Judgment, Ex. 13, p. 4. In taking these actions, Coors (an attorney for over 35 years) must have known he would subject to a default judgment in these proceedings. Moreover, it must

be presumed that he received the notice that required his attendance at the September 20, 2004 scheduling conference, and the copy of the State's Motion for Default Judgment subsequently mailed to him on October 13, 2004. Consistent with his desire to take no part in these proceedings, Coors failed to attend the scheduling conference or oppose the motion for default judgment. He also failed to take exception to the subsequent default order for over three months.

Although the law disfavors judgments by default, there is no relief for deliberate litigation strategies that backfire. 12 J. W. MOORE, MOORE'S FEDERAL PRACTICE § 60.22[3][c] (3rd ed. 2005); *see also Cashner v. Freedom Stores, Inc.*, F.3d 572 (10th Cir. 1996) (relief from final judgment based on "mistake" not available to party who simply misunderstands the legal consequences of his deliberate acts). In this case, Coors had numerous opportunities to participate in these proceedings and raise any claims with respect to the water rights under Subfile CHRU-004-0044. He took advantage of none of them. Under these circumstances, the State believes his conduct justifies the denial of relief from the default judgment entered October 28, 2004.

Respectfully submitted,

EDWARD G. NEWVILLE
Special Assistant Attorney General
Office of State Engineer
P.O. Box 25102
Santa Fe, NM 87504-5102
(505) 867-7444

-16-

## CERTIFICATE OF SERVICE

I hereby certify that copies of the above Supplemental Brief of State of New Mexico were mailed to following persons on January __17__, 2006.

_Edward G. Newville_ (signature)

Edward G. Newville

Special Master Vickie L. Gabin
USDC-DCNM
P.O. Box 2384
Santa Fe, NM 87504-2384

Karla McCall, Data Manager.
1315 Sagebrush Dr. SW
Los Lunas, NM 87031

Peter B. Shoenfeld, Esq.
P.O. Box 2421
Santa Fe, NM 87504-2421

Walter L. Reardon, Jr., Esq.
3733 Eubank Blvd., NE
Albuquerque, NM 87111-3536

IMPORTANT — READ INSTRUCTIONS ON BACK BEFORE FILLING OUT THIS FORM

## APPLICATION FOR PERMIT TO CHANGE PLACE OR PURPOSE OF USE
### OF SURFACE WATERS

File No. 1545-1699

1. Name of Water Right Owner Henry G. Coors
   Mailing address HC 75, Box 116
   City and State Rutherton, NM 87551   File No. 1545-1699

2. Water right is recorded in the State Engineer's office under No. 1545-1699

3. Water is at present used for irrigation and pond, purpose

4. Quantity of water claimed under right 15.3 × 3.02 plus 2.325 for pond   65 acre-feet
   acre feet, Source of water supply Chama River via Willow Creek Mesa Ditch (river, arroyo, spring, etc.)   acre-feet.

5. Point of diversion or outlet from storage lies in the following 3 S.   Range 2 E.   T.A. Grant   Zone
   tributary of   Grid
   Quantity of water to be transferred 17.10   feet, N.M. Coordinate System   of Section
   Section 11   Township 3 S.   described as follows
   By X = 408,600   feet, Y = 2,103,000
   in the   bears 14.66   Owner
   at a point where the   Range   Henry G. Coors
   Township   Section Township Range Acres

6. Area from which water rights are to be served, al   14.66   Henry G. Coors

| Subdivision | Section | Township | Range | Acres | Owner |
|---|---|---|---|---|---|
| Lots Q,H,M,K,J-1, | 11 | 3 S. | 2 E. | 14.66 | Henry G. Coors |
| H-1, E-1 and Common | | | | | |
| Area, Ft. Heron Preserve | | | | | |
| Subdivision | | | | | |

(b) If there are other sources of water for these lands, describe by file No.

7. Application is made to change place or purpose of use for the following reasons the character of the land
   has changed from irrigated hayfields and pasture land to a rural
   subdivision   acres described as follows

| Subdivision | Section | Township | Range | Acres | Owner |
|---|---|---|---|---|---|
| | | 6.72 | | | Ft. Heron Preserve Property |
| | 11 | 3 S. | 2 E. | 7.72, Ft. Heron Preserve Property Owners Association |
| Pond in common area | | | | | Owners Association |
| Ft. Heron Preserve | | | | | |
| Subdivision | | | | | |
| Center of Upper Pond | X=391,227 | Y=2,073,749 | | | |
| Center of Lower Pond | X=391,057 | Y=2,072,015 | | | |

(b) Water to be used thereon for make up water lost by evaporation in ponds used for wild
life habitats, fishing and recreation.

(c) If there are other sources of water for these lands, describe by file No.

9. Additional statements or explanations See attached exhibits of Metes & Bounds to show
   irrigated area per license, area to be dried up, and location of ponds
   and other exhibits documenting water right ownership and evaporation
   calculations.

I, Henry G. Coors, joint owner (with Judith A. Coors) and holder of said water right
(sole, partial, agent for, etc.)
and belief and that I am the affirm that the foregoing statements are true to the best of my knowledge

Henry G. Coors and Fort Heron Preserve
Property Owners Association Applicant

Henry G. Coors, Individually and as President of
Fort Heron Preserve Property Owners Association November ___ 19 98
Subscribed and sworn to before me this 30th day of   Notary Public

My commission expires   File No. 1545-1699

OFFICIAL SEAL
CECILIA C. GARCIA
NOTARY PUBLIC - STATE OF NEW MEXICO

EXHIBIT
A

## ACTION OF STATE ENGINEER

This application is approved provided it is not exercised to the detriment of any others having prior, valid and existing rights to the use of waters of this stream system or to the detriment of any rights acquired prior to this application for permit to change place or purpose of use

*Approved by Order*
*dated June 21st, 2001*
*with Special Condition*
*(attached)*

Proof of application of water to beneficial use shall be filed on or before _N/A_ 19 _____

Witness my hand and seal this _17th_ day of _April_ A.D. _2002_

S.E. Reynolds, State Engineer

By: _SM Wells_

## INSTRUCTIONS

This form shall be executed, preferably typewritten, in triplicate and must be accompanied by a $5.00 filing fee. Each copy must be properly signed and attested. If applicant is not recorded owner of water right, Change of Ownership affidavit should accompany this application.

**EXHIBIT A**

**METES & BOUNDS**

According to the License issued in SEO File 1545-1699, Henry G. Coors, as successor grantee of the Crain water rights, has sufficient water rights to irrigate 35.3 acres. Henry G. Coors purchased the land in November 1988. From the 35.3 acres of irrigation, deduction should be made for the following transfers:

| | | |
|---|---|---|
| 8.0 | acres conveyed to Mauldin | 01/31/92 |
| 2.67 | acres transferred to Rutheron | 01/03/94 |
| 2.67 | acres transferred to Rutheron | 10/04/96 |
| 14.66 | acres transferred to Ft. Heron | 06/27/01 |

See attached table (Exhibit B) of unused water rights during the period these water rights were owned by Henry G. Coors.

Total available water rights = 329.53 acres

Multiply by CIR (.93 acre feet/acre = 306.46 acre feet)

Since the big lake (6.02 acres) was full when I acquired the property and was full except for 1992 and 1993 when it was drained for cleaning, perhaps an additional 146.6 acres should be deducted for evaporation.

329.53 - 146.6 = 182.93

182.93 x .93 = 170.12

Therefore, during the period that the ponds were filled, Henry Coors had more than twice the amount of available water rights to fill the ponds

EXHIBIT B

## AVAILABLE WATER RIGHTS

| | 1989 | 1990 | 1991 | 1992 | 1993 | 1994 | 1995 | 1996 | 1997 | 1998 | 1999 | 2000 | 2001 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Water Rights (Acres) | 35.3 | 35.3 | 35.3 | 35.3 | 35.3 | 35.3 | 35.3 | 35.3 | 35.3 | 35.3 | 35.3 | 35.3 | 35.3 |
| Mauldin | | | | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 |
| Rutheron No. 1 | | | | | | 2.67 | 2.67 | 2.67 | 2.67 | 2.67 | 2.67 | 2.67 | 2.67 |
| Rutheron No. 2 | | | | | | | | | 2.67 | 2.57 | 2.67 | 2.67 | 2.67 |
| Pond Evaporation | | | | | | | | | | | | | 14.66 |
| Available Water Used For Pond Filling | 35.3 | 35.3 | 35.3 | 27.3 | 27.3 | 24.63 | 24.63 | 24.63 | 21.96 | 21.96 | 21.96 | 21.96 | 7.3 |



## APPLICATION FOR PERMIT TO CHANGE POINT OF DIVISION AND PLACE AND/OR PURPOSE OF USE OF SURFACE WATERS

**DENIED**

1. Name of Applicant ___Henry G. Coors___
   Mailing Address ___HC 75, Box 1161___
   City and State ___Rutheron, NM___                    Zip Code ___87551___

2. Water right is recorded with the State Engineer under File No. ___1545-1699___
   and has a priority of ___1922___ for ___domestic, livestock & irrigation___ purposes.

3. Annual quantity of water claimed under right: ___35.3 x 1.02 = 36.006___ acre-feet. Quantity of
   water stored: _2.226 for evaporation_ acre-feet. Name of ditch: _Willow Creek_
   Source of water supply: ___Chama River___, a tributary of ___Rio Grande___
   (river, arroyo, spring, etc.)                                        application
   Annual quantity of water to be transferred by this application: _10 which included 4 from prior_ acre-feet.

4. Point of diversion to which water right is to be changed:        (a) ____1/4 ____1/4 ____1/4
   of Section ___ ___ ___, Township _____, Range _____, N.M.P.M. at a point
   whence the _____ of Section _____, Township _____
   Range _____ bears, _____ feet, X=, _____ feet distant.
   (b) X= ___403,800___ feet, Y= _2,103,000_ feet, N.M. Coordinate System
   Zone within the _____ Grant.

5. Area from which water right is to be severed: (a) _____ 19.81 acres,
   described as follows:

| Subdivision | Section | Township | Range | Acres | Owner |
|---|---|---|---|---|---|
| All or part of | 11 | 3 S. | 2 E. | 9.81 | Henry G. Coors |
| Lots B, C, D, E-1, | | | | | |
| F and G-1 of Ft. | | | | | |
| Heron Preserve Subdivision | | | | | |
| and a portion of the Mauldins | | | | | |
| property being east of the subdivision | | | | | |

   (b) If there are no other sources of water for these lands, describe by source and file No. _____

6. This water right is to be changed from ___irrigation___ purposes
   to ___domestic___ purposes.

7. Location of proposed point of diversion:        (a) ____1/4 ____1/4 of section
   _____, Township _____, Range _____, N.M.P.M. at a point whence
   the _____ of Section _____, Township _____
   Range _____ bears, _____ feet distant.
   Range _____ bears, _____ feet distant.
   (b) X= ___395,045___ feet, Y= _2,073,664_ feet, N.M. Coordinate System
   Zone within the _Tierra Amarilla_ Grant.
   (c) Name of stream, spring, tributary, etc., from which diversion is proposed to be made _Chama River_

   (d) Description of new diversion system (give construction material, type, dimensions, hydraulic properties, pump
   information, etc.) _Infiltration gallery - See Rutheron Water Association diversion_
   _facility_

   (e) Additional data (give dimensions, capacity, etc., of new canal section; also data on any other proposed works)

8. Area to which water right is to be moved:        (a) ___120___ acres, described as follows:

| Subdivision | Section | Township | Range | Acres | Owner |
|---|---|---|---|---|---|
| Fort Heron Preserve | 11 | 3 S. | 2 E. | 120 | Henry G. Coors |
| Subdivision plus | | | | | |
| 3 acres south of the | | | | | |
| subdivison | | | | | |

   (b) Water to be used theron for ___domestic___ purposes.
   (c) If there are no other sources of water for these lands, describe by source and file No. _____

### FOR STATE ENGINEER USE ONLY.

Data Received_____          File No._____

**EXHIBIT**
**B**

9. Application is made to change point of diversion and place and/or purpose of use for the following reasons: Land is now being used for residential purposes rather than as a farm

10. Additional statements or explanations: See attached supplement and Plat for additional information

I, Henry G. Coors , affirm that the foregoing statements are true to the best of my knowledge and belief and that I am the sole owner.
(solo, partial, agent for, etc.)

_Henry G Coors_ , Applicant

Subscribed and sworn to me before this 21st day of October , A.D., 19 99

My commission expires 7-23-2003

OFFICIAL SEAL
CECELIA C. GARCIA
NOTARY PUBLIC - STATE OF NEW MEXICO
Notary Bond Filed With Secretary of State
My Commission Expires 7.23.2003

_Cecelia C. Garcia_
Notary Public

## ACTION OF STATE ENGINEER

This application is approved provided it is not exercised to the detriment of any others having prior and existing rights to the use of waters of this stream or to the detriment of any rights acquired prior to filing this application for prmit to change point of diversion and place or purpose of use

**DENIED**

Proof of completion of works shall be filed on or before _____, 19____

Proof of application of water to beneficial use shall be filed on or before_____, 19____

Witness my hand and seal this _____ day of _____, A.D., 19____

STATE ENGINEER

By: _____

## INSTRUCTIONS

This form shall be executed, preferably typewritten, in triplicate and must be accompanied by a $50.00 filing fee. Each copy must be properly signed and attested. If applicant is not recorded owner of water right, Change of Ownership affidavit should accompany this application. DO NOT FILL IN the date received and file number listed at the bottom of first page of this form as this information will be entered by the State Engineer.

## SUPPLEMENT

DENIED

This application seeks to change the point of diversion, the place of beneficial use and the purpose of use for:

10 acre feet consumptive use, which includes 2 acre feet on the Applications of Henry G. Coors, dated May 7, 1993 and the 2 acre feet on the Application of Henry G. Coors dated March 12, 1996 plus an additional six (6) acre feet.

**Transferors:** The transferors will be Henry G. Coors and Judith A. Coors

**Transferee:** The transferee shall be Rutheron Water Association.

**Original Point of Diversion:** Willow Creek Mesa Ditch  X=408,600  Y=2,103,664

**New Point of Diversion:** Rutheron Water Association's Infiltration Gallery
X=395,045    Y=2,073,664

**Original area of use:** Parcels 1, 2 and 3, Section 11, T.3 S., R. 2 E., Tierra Amarilla Land Grant.

**New Area of Use:** Sections 1, 2, 11 of T. 3 S., R. 2 E., and Sections 31, 32, 33 T. 2 S., R. 2 E., being the service area of the Rutheron Water Association.

**Original Purpose of Use:** Irrigation.

**New Purpose of Use:** Domestic

**Plat:** Attached to this Application is a Plat which shows:

1. Original 35.3 acres of permitted water rights
2. 14.66 acres now being dedicated to offset evaporation in two ponds
3. 8.0 acres conveyed to William Mauldin and Linda DeMill
4. 9.81 acres subject to this application
5. 2.83 acres to remain under irrigation in Lots D, F and G, Fort Heron Preserve
6. Area to receive domestic water service from 10 acre feet of consumptive use water rights.

**Calculations:**

9.81 acres x 1.02 = 10.0 acre feet
Consumptive use = CIR x adjustment for historic supply
= 1.11 x .92
= 1.02

WATER PLAT FOR
HENRY G. COORS
Near the Community of Rutheron
Rio Arriba County, New Mexico

PARCEL 2

PARCEL 3

LOT F

LOT G

LOT H

MAULDIN

LOT I

DeMILL

LOT J

0     300     600
Scale   1" = 300'

Irrigable Acres
Original acres          =   38.30 Acres
Less pond area          =   14.65 Acres
Less Mauldin\Demill     =    8.00 Acres
Less part of lot D      =    1.00 Acres
Less part of lot F      =    0.66 Acres
Less part of lot G      =    0.97 Acres

Rutheron Acres          =    6.81 Acres
                            0.00 Acres

Service Area

Irrigated Area

10/23/99





# STATE OF NEW MEXICO

## OFFICE OF THE STATE ENGINEER

| Thomas C. Turney<br>State Engineer | **WATER RIGHTS PROTECTION<br>AND ADJUDICATION PROGRAM**<br>130 South Capitol<br>Santa Fe, New Mexico 87501 | Mailing Address:<br>P.O. Box 25102<br>Santa Fe, NM 87504-5102<br>Telephone: (505) 827-6150<br>Fax: (505) 827-3887 |

August 20, 2002

Henry G. Coors
163 Rainbow Drive, No. 6313
Livingston TX 77399-1063

Re:   <u>State of New Mexico *ex rel.* State Engineer v. Aragon, *et al*</u>
No. CV-7941 JEC, Rio Chama Stream System
**Subfile No. CHRB-004-0044**

Dear Mr. Coors:

I am returning the enclosed proposed consent order to you because the document was not signed.
If the proposed order is acceptable, please sign and return it to me in the enclosed envelope.

Please call me if you have any questions. Thank you for your cooperation and assistance.

Sincerely,

Ed Newville
Special Assistant Attorney General

**EXHIBIT**

tabbies

C

PETER J HOLZEM
ATTORNEY AT LAW
451 MAPLE STREET
POST OFFICE BOX 308
CHAMA, NEW MEXICO 87520
—
(505) 756-2920

October 12, 2005

FAX-

Special Master Vickie L. Gabin
United States District Court
P. O. Box 2384
Santa Fe, New Mexico 87504-2384

Re:   State of New Mexico, ex rel. State Engineer vs. Aragon, et al
      #69cv07941-BB-ACE
      Subfile CHRU 004-0044 Henry Coors, Steven Padilla, et al

Dear Special Master Gabin:

I am writing this letter on behalf of the Rutheron Mutual Domestic Water Consumer
Association. They have reviewed the Court's Memorandum Opinion of August 24, 2005
and the request by the State Engineer for a scheduling conference in connection with
Subfile CHRU-004-0044.

Please be advised that the Rutheron Mutual Domestic Water Consumer Association does
not wish to file a claim to the ownership of the water rights involved in the application of
Mr. Coors. It is my understanding that this conference has been scheduled for October
14, 2005. Rutheron Mutual Domestic Water Consumer Association will not attend this
status conference.

If you have any questions with regard to this matter, please feel free to contact my office.
Thank you for your help and cooperation in this matter.

Sincerely,

Peter J Holzem

PJH:dts
Cc:   See Page 2

EXHIBIT
D

Special Master Vickie L. Gabin
October 12, 2005
Page 2


Cc:    Rutheron Domestic Water Consumer Association
       c/o Vernon Kerr
       HC 75 Box 204
       Los Ojos, New Mexico 87551

       Henry Coors
       105 North San Juan Trail
       Casa Grande, Arizona  85222

       Walter L. Reardon, Esq.
       Attorney at Law
       3733 Eubank Boulevard, NE
       Albuquerque, New Mexico 87111-3536

       FAX-
       Peter B. Shoenfeld, Esq.
       Attorney at Law
       P. O. Box 2421
       Santa Fe, New Mexico 87504-2421

       FAX-
       Ed Newville, Special Assistant
       Attorney General's Office of the State Engineer
       P. O. Box 25102
       Santa Fe, New Mexico 87504-5102

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, ξ  Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Received by (Please Print Clearly)  B. Date of Delivery  6-20-02<br>SCAFEES MAIL SERVICE<br>C. Signature<br>X Linda Arsop  ☒ Agent  ☐ Addressee |
| 1. Article Addressed to:<br><br>HENRY G. COORS<br>163 RAINBOW DRIVE, NO. 6313<br>LIVINGSTON, TX  77399-1063 | D. Is delivery address different from item 1?  ☐ Yes<br>If YES, enter delivery address below:  ☐ No<br>RECEIVED<br>JUN 2 4 2002<br>OFFICE OF THE STATE ENGINEER<br>LEGAL SERVICES DIVISION |
| | 3. Service Type<br>☒ Certified Mail  ☐ Express Mail<br>☐ Registered  ☐ Return Receipt for Merchandise<br>☐ Insured Mail  ☐ C.O.D. |
| | 4. Restricted Delivery? (Extra Fee)  ☐ Yes |
| 2. Article Number (Copy from service label)<br>7000 0520 0025 5248 9904 | |
| PS Form 3811, July 1999  Domestic Return Receipt  4-44 | 102595-00-M-0952 |

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

Ed Newville
Office of the State Engineer
Litigation & Adjudication Program
P.O. Box 25102
Santa Fe, NM  87504

EXHIBIT

E