```
              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW MEXICO
```

STATE OF NEW MEXICO ex rel.,
State Engineer,

                Plaintiff,        No. 69cv07941-BB-ACE
    -vs-                             RIO CHAMA STREAM SYSTEM
                                          Section 7
ROMAN ARAGON, et al.,            Subfile CHRU-004-0044

                Defendants.

<u>RESPONSE OF PADILLA AND ANDREWS TO
COORS SUPPLEMENTAL BRIEF, No. 8108</u>

<u>Preliminary Issue: Special Master Function</u>

    The transcript and briefing herein show that there are fact issues which turn on the credibility of the witnesses. There are conflicts in the evidence presented by Mrs. Andrews and Mr. Coors, only one or the other of which may be the basis of the Court's decision. The conflict is whether Mr. and Mrs. Andrews purchased their lots B and D with and for the very reason that those lots had irrigation water rights as Mrs. Andrews testified (Tr. 139, 140) and as Mr. Coors testified (Tr. 82, 84) and whether the disclaimer/quitclaim from Andrews to Coors was given on the promise of Mr. Coors to reconvey the water rights to them (Tr. 141), which was not directly contradicted by Mr. Coors.

    The Special Master heard the evidence, but stated her understanding of the Court's order that she would merely forward the record made at the hearing to the Court and would not perform some of the other functions of Special Master under F.R.Civ.P.

53. Where there is conflicting evidence, and a necessary resolution of the conflict depends in whole or part on the credibility of conflicting witnesses, it would make sense for the Special Master to either make or recommend findings of fact.

> The findings of the Special Master are of course entitled to respect and their weight will be increased to the extent that credibility of witnesses is involved, as he saw them and heard them, while we have only a cold record. Credibility, however, seems to play no part here. <u>Mississippi v. Arkansas</u>, 415 U.S. 289 (1974)

Here too, there is only a "cold record" but the conflict may not need to be resolved by remanding for the Special Master to recommend or make findings and conclusions.

The need for the fact-finder to determine the truth between conflicting testimony might be avoided by the resolution of another issue, which does not depend on testimony, but solely on documentary proof.  I.e., whether the conveyance of Lot C to Mr. and Mrs. Padilla included the water rights appurtenant to that lot.  The rights were not reserved to Coors, nor were they previously severed, and no document was shown nor argument made that those rights were subsequently severed from the real estate. As a result of the Padilla transaction there was a conveyance of the three water rights acres to the Padillas, and no determination of credibility is required, since the Coors case for standing fails of its own weight, as discussed <u>infra</u>.

<u>Response to Coors' Argument Respecting His Standing</u>

-2-

Mr. Coors argument respecting his standing fails because his deed of Lot C to Mr. and Mrs. Padilla contained no reservation of the water rights appurtenant to that land, and there is no disclaimer, quitclaim, or "conformation of agreement" (misleadingly referred to in the Coors Supplemental Brief as a "Conformation Agreement"; see Movant's Exhibit 19) applicable to the Lot C water rights.  (Respondents have no idea and have been able to discover no indication of what a "conformation of agreement" is or might be.) Thus, Coors owned less water right than he purported to convey to Rutheron by the so-called Water Rights Deed (Movant's Exhibit "13", attached to his motion to set aside the default).

Mr. Coors' argument for standing is based on his claim that he retains some part of the water rights after his attempted conveyance to Rutheron.  See Tr. 28, 54, 55.  This claim depends in turn on his argument that he retained ownership of the water rights to Lot C.  Because he did not do so, his argument respecting the 'surplus' which he retained and which he asserts gives him standing, is lost to him.  No matter what the CIR, and no matter whether Mr. Coors is or the Andrews are believed by the fact finder, he retained no interest in any water right which might serve to give him standing.  The numbers, most favorably construed in Mr. Coors' favor, and as he argues in his brief, are that he retained sufficient water rights for .48 acres (Tr. 55)

or .85 acres (Tr. 55) following his attempt to convey water rights to Rutheron.  If, as Respondents claim, he did not own the rights appurtenant to the three acres of Lot C, he was at least 2 to 3 acre feet shy of his undertaking to convey water rights to Rutheron, and his claim that he has something left which gives him standing in this action fails.  See p. 4 of Mr. Coors' supplemental brief herein, asserting that he should have had enough water rights remaining to him to irrigate 2.83 acres.

The Water Rights Have Not Been Severed as a Matter of Law.

Mr. Coors asserts that he has somehow overcome a presumption that the rights have not been severed (a presumption which, as best Respondents can tell, does not and has never existed):

> because the land had not been irrigated for 12 years and Padilla was told that no water rights came with the land and that applications were pending to transfer waters for evaporation losses from the ponds and for domestic use. . . . Padilla should not enjoy the benefit of the water rights that were used to support the ponds, which he and his neighbors overlook and enjoy. Coors Supplemental Brief, pp. 10, 11.

Mr. Coors overlooks the fact that his two previous applications, to provide water rights to Rutheron so it could supply domestic water to his subdivision, had already been granted and, contrary to the State Engineer's requirements, he never identified the acreage here at issue (or any other acreage) as the move-from acreage.  See Arianne Singer's testimony, Tr. 128, 129, 135, and Mr. Coors' testimony, Tr. 52.

The law is that water rights are not severed from their move-from location until there is a license issued by the State Engineer with respect to their move or change of place or purpose of use, Sun Vineyards, Inc. v. Luna County Wine Dev. Corp., 107 NM 524, 760 P.2d 1290 (S. Ct. 1988), but under Bassett v. Turner, cited throughout, there is a rebuttable presumption that water rights have been severed if a permit exists and other conditions are present.  The Bassett opinion of the New Mexico Supreme Court depends entirely on the existence of a permit.  Here no permit was issued, and in fact it was denied.

The acreage claimed by Padilla and Andrews here is completely different acreage from that retired for use in the pond pursuant to the earlier application to the State Engineer, and it represents in its total the acreage left over after the previous transfers to Rutheron, 7.3 acres, as testified to by Ms. Singer, Tr. 135, lines 17-23.  Without his having identified the earlier move-from acreage transferred to Rutheron, it was not clear where Coors' remaining acreage was.

The State Engineer, as Plaintiff in this case, designated the acreage which he believed was dried up as a result of the previous transfer to Rutheron.  Notwithstanding the efforts of the State Engineer personnel to get Mr. Coors to tell them which acreage he had retired, he did nothing.  He never made any effort to state that the State Engineer's mapping was wrong, nor did he

ever agree to it.  He declined to agree to the State Engineer's proposed Consent Decree here, but simply washed his hands of the whole matter.  He has now belatedly appeared before this Court and inappropriately accused the State Engineer of causing the problem by delay, etc.  The problem was not improper Crop Irrigation Requirements ("CIR").  The problem was not State Engineer delay.  The problem was that Mr. Coors refused to tend to the business of arranging his water rights affairs.  Even at the end stages of this case, he could have appeared and straightened out the difficulties.  He did not do so, and in the process caused immense amounts of what might have been needless litigation and expense.

The 12 year lack of irrigation discussed by Mr. Coors in his Supplemental Brief (p. 11) appears nowhere in the record.  Even if it did, it would be meaningless under the authorities. The water right either exists or it does not exist.  The State Engineer has acknowledged that the right exists by its subfile proposals to the parties.  The right might only terminate in the manner recognized by law: abandonment or forfeiture.  Termination of a water right by forfeiture is largely a thing of the past, since under NMSA 1978 § 72-5-28 (2002) the requisite four years of non-use must have occurred before June 1965, or, in the alternative, the State Engineer must have given a notice of nonuser to the owner.  Counsel represents, based on the anecdotal

-6-

history of the New Mexico water law as he knows it, that the State Engineer, in the 40+ years since the 1965 amendment of § 72-5-28, supra, has never given such a notice.  No one has asserted it was abandoned.  Surely Mr. Coors is not be cynically claiming abandonment of the very water right he claims gives him standing.  He cannot do so.

Mr. Coors' testimony that he told Mr. Padilla that no water rights came with the land is contradicted by Mr. Padilla's testimony that the subject of water rights accompanying the conveyance was never discussed.  The testimony of Mr. Coors is inappropriate to vary the terms of the deed from Coors to Mr. and Mrs. Padilla under the parol evidence rule:

> Parol evidence may not be received when its purpose and effect is to contradict, vary, modify, or add to a written agreement, but is generally admissible to supply terms not in the written contract, to explain ambiguities in the written agreement, or to show fraud, misrepresentations, or mistake. Yrisarri v. Wallis, 76 N.M. 776, 418 P.2d 852 (1966).

The deed is clear on its face.  It does not mention the water rights.  Since the water rights are irrigation water rights, they are real property and as a matter of law are included in the deed when not mentioned.  KRM v. Caviness, 1996-NMCA-103, 122 N.M. 389, 925 P.2d 9.

Excusable neglect:

Mr. Coors has failed to show excusable neglect.  Instead he has shown a series of acts in which he intentionally ignored

-7-

deadlines and settings made by both the Court and the State Engineer.  See his Supplemental Brief, P. 6:

> Initially, Mr. Coors had stated that he had believed that he had done everything necessary to transfer the water rights to Rutheron and that he would no longer have a meaningful interest in water rights in that area **and therefore would not be concerned about a Default Judgment entered against him**. . . . (Bold added.)

On its face, the default against Coors was not the result of excusable neglect, but of Mr. Coor's intentional acts.  See the factual discussion contained in Respondents' Supplemental Memorandum respecting Coors' opportunities to respond to notices, etc., and his disregard of those notices.

The Pelican case, relied on by Mr. Coors as his authority under Rule 60(b), held that:

> Carelessness by a litigant or his counsel does not afford a basis for relief under Rule 60(b)(1). . . .  We know of no reason that the failure of Pelican's lawyer . . . to answer the motion to dismiss would be excusable. Perhaps an excuse would be offered if we had his affidavit on his reason for not responding, but we do not. . . . Finally, although we do not decide the issue, were Pelican to demonstrate that it was wholly innocent in the matter of failing to respond to the motion to dismiss we might still find this not to constitute excusable conduct under Rule 60(b). . . . (dismissal resulting from counsel's inexcusable neglect does not amount to a dismissal for parties' excusable neglect). Pelican Production Corp. v. Marino, 893 F.2d 1143 (10th Cir. 1990).

See also 7 Moore's Federal Practice ¶ 60.22[2].  One of the items to be addressed in a motion under Rule 60(b)(1) is the prejudice to other parties.  Prejudice may lie in the fact that:

> . . . that costs have or will increase to an unfair degree or something similar. [Citing INVST Financial Group, Inc. v.

Chem-Nuclear Systems, Inc., 815 F. 2d 391, 398 (6th Cir., 1987).]

The Court should take judicial notice that a number of half-days in court plus a full day evidentiary hearing, counsel's travel to Tierra Amarilla for conferences scheduled by the Court, together with sometimes obfuscated motions and responses and briefing, have unfairly increased Respondents' costs and expenses. (No evidence of attorney fees was presented at the hearing before the Special Master, as counsel understands that this is a separate issue to be tried only following the resolution of the issues before the Court.)

Mr. Coors selected his Livingston, Texas, mail service at which he elected to receive his mail.  He maintained other addresses in Rutheron, Tierra Amarilla, and multiple addresses in Albuquerque.  He gave the Livingston address to this Court, and he gave it to the State Engineer.  He knows or should know better than to say, as he does in his Supplemental Brief, p. 13, that:

> Escapees [the Livingston, Texas, mail service] was an agent to forward mail and not an agent to receive mail or for service of pleadings.

In his discussion of prejudice, Mr. Coors overlooks the Court's deadline for claims by unknown claimants.   The Respondents made their claims in response thereto, and would risk losing whatever interest they had by failing to do so.  They were thrown into the melee by the requirement to protect their property interests.   They respected their responsibilities to the

-9-

Court.  They had the right to expect that competing litigants would live up to their obligations, in respect to procedural matters as well as their obligations to be forthright with the Court. Mr. Coors failed to do so, and he should be held accountable for that failure.

The failure to participate in the Rule 16 scheduling conference has not been shown to be excusable.  Coors' misbegotten effort to excuse his failure to participate, by misrepresenting to the Court that a water right permit had been granted, but which in fact had been denied, is beyond inexcusable and should be the subject of Rule 11 sanctions.

                                      PETER B. SHOENFELD, P.A.
                                      P.O. Box 2421
                                      Santa Fe, New Mexico 87504-2421
                                      (505) 982-3566; FAX: (505) 982-5520

                                  By:S/Peter B. Shoenfeld (e-filed)
                                      Attorney for Defendants Andrews,
                                      and Padilla

## Certificate of Service

I certify that on January 29, 2006, I served a copy of the foregoing on the following by mail.

Edward G. Newville, Esq.        Walter L. Reardon, Jr., Esq.
State Engineer Office            3733 Eubank Blvd., NE
P.O. Box 25102                   Albuquerque, NM 87111-3536
Santa Fe, New Mexico 87504-5102

Special Master Vickie L. Gabin
USDC-DCNM
P.O. Box 2384
Santa Fe, NM 87504-2384
                                      S/Peter B. Shoenfeld (e-filed)