IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

06 JAN 30 PM 1:11

CLERK-ALBUQUERQUE

STATE OF NEW MEXICO, *ex rel.*
State Engineer

Plaintiff,

vs.

ROMAN ARAGON, *et al.*,

Defendants.

69cv07941 BB-ACE

RIO CHAMA STREAM SYSTEM
Section 7: Rutheron & Plaza Blanca

**Subfile No. CHRU-004-0044**

## RESPONSE BRIEF OF STATE OF NEW MEXICO

The Plaintiff State of New Mexico, *ex rel.* State Engineer ("State"), submits this Response to the Supplemental Brief in Support of Motion to Set Aside Default Judgment filed by Movant Henry C. Coors on January 14, 2006 (Doc. No. 8108) ("Coors' Supplemental Brief"). As part of its Response, the State incorporates by reference the contents and arguments of the Supplemental Brief of State of New Mexico filed January 17, 2004 (Doc. No. 8109).

The States takes issue with a number of factual statements included in pages 1 through 5 of Coors' Supplemental Brief. On page two, Coors states that he "conveyed" water rights to the Rutheron Water Association ("Association" or "Rutheron MDWA") in 1993 and 1996. Coors' testimony and OSE records indicate that while he may have transferred water rights into the Association's infiltration gallery in 1993 and 1996, no actual conveyance of the title to those water rights took place until Coors executed the Water Rights Deed to the Association on August 20, 2002. Hearing Tr. 38, 39; Plaintiff's Post Trial Exhibit 9, Applications filed May 7, 1993 and March 12,

1996; Motion to Set Aside Default Judgment, Ex. 13. The difference in terminology (convey vs. transfer) is not insignificant. Coors argues on page 6 of his Supplemental Brief that the water rights he conveyed to the Association in August 2002 should somehow be restored to him. This would seem to include ownership of all the water rights described in the 2002 Water Rights Deed including ownership of the water rights (4.0 acre-feet per annum) transferred to the Association's point of diversion in 1993 and 1996; there was no separate or previous conveyance of these rights. However, there is no reason to assume the Association intended to walk away from its ownership of those rights (4.0 acre-feet per annum) in addition to any claim it might have had to ownership of rights appurtenant to the 7.3 acres of irrigated land at issue by not attending the October 14th hearing.

The State also disputes that there has been any testimony that Coors actually told prospective purchasers that they would have no water rights other than the benefit of those that were to be transferred to the Association or used to offset evaporation from the ponds. The testimony cited in Coors' Supplemental Brief (Hearing Tr. 40, line 1-7) does not support this statement. Coors' testimony suggests that the purchasers were not so informed. Hearing Tr. 79, 80; *see also* Hearing Tr. 151.

Certain statements concerning applications filed by Coors on December 31, 1996 and December 7, 1998, also require correction or clarification. The application filed on December 31, 1996 (proposed change from irrigation to domestic, 14.66 acres) was not withdrawn, this application was denied. *See* Plaintiff's Post Trial Exhibit 9, Application filed December 31, 1996, Report and Recommendation of Hearing Examiner. The application was denied, in part, because Coors had failed to reserve water rights appurtenant to the affected subdivision lots when he sold them. Thus he was unable to sustain his burden of showing that 14.66 acres with valid and existing water rights

were available for transfer from the move-from location. *See id.* ¶¶ 19, 28.

Eventually, Coors was able to use the use the water rights appurtenant to the 14.66 acres of land specified in the 1996 application to offset the evaporation from the two ponds he had constructed in the subdivision. After the denial of the 1996 application, Coors obtained a disclaimer and quitclaim from each of the lot owners involved (Lots O, N, M, L, K, J-1, L-1, H-1 and E-1) and was able to demonstrate to the satisfaction of the State Engineer that the water rights were indeed valid and that Coors owned them. *See* Motion to Set Aside Default Judgment, Ex. 4, 7 through 12; Plaintiff's Post Trial Exhibit 9, Application filed December 7, 1998, letter from Fred Abramowitz dated December 13, 2002. However, the use of the water rights appurtenant to the 14.66 acres to offset evaporation from the ponds was not voluntarily undertaken as the discussion in Coors' Supplemental Brief might suggest. Coors was required by the State Engineer to offset this evaporation after he had constructed and filled the ponds without first obtaining a permit.[1] *Id.*, Report and Recommendation of Hearing Examiners, ¶ 20; letter of Stermon Wells dated September 10, 1997.

After the approval of the application to offset the evaporation from the ponds, there remained pending the 1999 application to transfer an additional 10 acre-feet of water rights to the Association's point of diversion. Coors correctly states that the application was remanded to the Water Rights Division ("WRD") on June 10, 2002 after the county withdrew its protest. However, after the remand of the application Coors still had a burden to show that there were valid and existing water rights appurtenant to the acreage that he proposed to retire from irrigation (9.81 acres), and that he was the owner of those water rights.

After the remand, there remained significant issues concerning the location of the land Coors

proposed to retire form irrigation (9.81 acres), and the location of land required to be retired under previously approved applications (5.34 acres). Despite their efforts, the WRD had been unsuccessful in obtaining a plat from Coors, or the Rutheron MDWA, for the acreage that was required to be retired under the applications approved in 1994 and 1996. *See e.g.*, Plaintiff's Post Trial Ex. 9, Applications filed May 7, 1991 and March 12, 1996, letters of Paul Wells dated March 2, 1998 and March 3, 1998.

These issues were still unresolved at the time of the hydrographic survey of the Rutheron area and the remand of the pending application to the WRD. In an attempt to resolve them, the attorney representing the WRD in the pending application, together with the hydrographic survey staff, contacted Coors in order to reach a tentative agreement on the amount and location of the remaining irrigated acreage, and the location of the retired acreage under the previously approved applications. Hearing Tr. 126-31. Despite reaching an agreement, Coors failed to sign and approve the State's proposed Consent Order in subfile CHRU-004-0044 when the order was sent to him very shortly thereafter. A follow up letter returning the unsigned order was never answered. The WRD was notified of these facts.

Coincident with these events, Jemelle Padilla contacted the State in these proceedings claiming ownership of the water rights appurtenant to Lot C. *See* letter dated July 7, 2002 attached hereto as Exhibit F. She was also in direct contact with the WRD and the Attorney General's Office about this and other grievances concerning the subdivision. *See* Plaintiff's Post Trial Exhibit 9, Application filed October 22, 1999, email to Buck Wells from Jemelle Padilla dated September 4, 2003 with attachments. Since the State Engineer acting through the WRD cannot "adjudicate ownership" the WRD prudently delayed its action on the application. The Padillas (and others)

-4-

eventually filed claims to the ownership of water rights in this Court, which is the only body with the authority to have resolved the dispute. Contrary to Coors' assertions, a hasty approval of the pending application would not have resolved the issues in this case. *See* Coors' Supplemental Brief at 5 ("If the SEO had acted timely, the issues in this case would have been resolved."). Any approval would not have precluded Padilla or others from filing a claim of ownership in these proceedings, or a determination by this Court that those persons were the actual owners of the water rights appurtenant to the subject acreage. In fact, any approval would have only further complicated matters. In the event the Court determined that persons other than Coors owned these water rights, the State Engineer would then have been required to rescind or cancel the approved application.

There were other problems as well with the pending application in addition to claims of ownership by Padilla and others. In his application Coors' proposed to retire from irrigation 9.81 acres of land as shown in the exhibit that was attached to the application. *See* Plaintiff's Post Trial Exhibit 9, Application filed October 22, 1999, Water Plat for Henry G. Coors. Significantly, the proposed 9.81 acre tract extended onto property that Coors had previously sold to DeMill and Mauldin (with water rights). Coors' claim (or proposal to the State Engineer in the application) that there would remain some amount of irrigated lands appurtenant to Lots D, F and G after approval of the application was dependant upon this shifting in the location of the move-from lands onto the DeMill/Mauldin property. Coors presented no grounds for claiming any water rights on the DeMill/Mauldin property, nor did he claim any such rights in this adjudication.[1]

In short, there were multiple problems with the pending application. To claim that all of

---

[1] The eight acres of irrigated land on the DeMill/Mauldin property is mapped under subfiles CHRU-004 (Tina Cordova) and CHRU-004-0038. *See* Consent Order filed November 25, 2002 (Doc. 6958) and Default Order entered July 14, 2005 (Doc. 7949).

these problems would have been resolved if the State Engineer had just approved the application amounts to wishful thinking. At a minimum, the conflicting claims by Padilla and others required resolution prior to any approval of the application, and the Court in this adjudication proceeding had the exclusive jurisdiction to resolve them. NMSA 1978, § 72-4-17 ("The court in which any suit involving the adjudication of water rights may properly be brought shall have exclusive jurisdiction to hear and determine all questions necessary for the adjudication of all water rights within the stream system involved . . . .")

Standing and joinder issues. For the reasons discussed in the Supplemental Brief of State of New Mexico filed January 17, 2004, Coors has no standing to assert his claims in this proceeding. He has no meritorious claim to water rights, and any interest he has asserted as a developer and owner of lots in the subdivision is outside the "zone of interests" protected or regulated by the New Mexico adjudication statutes. *See* State's Supplemental Brief, pp. 2-10. Likewise, other individual lot owners who do not claim actual ownership of water rights are also outside the zone of interests protected or regulated by these statutes.

The State disagrees that any additional current owners in the subdivision should be joined as parties or were required to be notified of the October 14th hearing. Additional owners of lots in the subdivision were not joined or notified of the hearing because there is no indication that any of these individuals are current owners of the water rights at issue. The Rutheron MDWA (already a party defendant) was notified of the October 14th hearing because the Court and State learned of the existence of the 2002 Water Rights Deed and conveyance of water rights to the Association when Coors filed his Motion to Set Aside Default Judgment on January 14, 2006. Prior to this time the possible interests of the Association were unknown. Other than the claims filed with the Court by

Padilla, Andrews and Luhes, no other claims have been asserted in connection with any of the lots in the Fort Heron Preserve Subdivision. In addition, the hydrographic survey division determined that the 7.3 acres of irrigated land at issue fell within Lots B, C, D, E and F, lots currently owned by either Padilla, Andrews or Luhes. *See* Plaintiff's Ex. 4.

In sum, there is no requirement or need to join the remaining lot owners in the subdivision to these proceedings, and there has been no claim of ownership of water rights by lot owners other than Padilla, Andrews and Luhes.[2] Further, any additional water rights claims in these proceedings appear highly unlikely. The general adjudication of water rights in the Rutheron area, and the completion of the State's hydrographic survey in April 2002, has been widely publicized. In addition to local public meetings after completion of the hydrographic survey, the State mailed to all defendants (including Coors) notices of field offices to be held in the area during 2003 and 2004. Procedural barriers now exist to the assertion of new claims. Unknown claimants of interest to surface water for irrigation purposes in the Rutheron subsection of the stream system have been served by publication. *See* Proof of Publication of Notice of Pendency of Suit filed March 9, 2005 (Doc. 7782). The Clerk of the Court entered a default against unknown claimants on September 29, 2005. *See* Clerk's Certificate of Default (Doc. 8022).

<u>Coors' claim to water rights.</u> The State incorporates by reference its argument on this point and only a few additional comments are necessary here. Contrary to Coors' assertion, there is no evidence that Coors informed Padilla at the time of the sale that "no water rights went with the land." *See* Coors' Supplemental Brief at 9. Coors' testimony on this point was equivocal at best. *See*

---

[2] Luhes, the owner of Lot E-1, has disposed of his interest to Andrews. *See* Motion for Rule 11 Sanctions filed July 8, 2005 (Doc. 7928), p. 1.

Hearing Tr. 79-80. There appears to have been some discussion between Padilla and Coors of the pending applications before the State Engineer, but no actual discussion of how that may have affected Padilla and any water rights appurtenant to the tract of land involved in the sale. *Id., see also* Hearing Tr. 152. Coors appears to have assumed that the submission of the 1996 application to transfer additional water rights effected a severance of the water rights. However, unless the water rights had been severed by an approved administrative permit for transfer, they remained appurtenant to their original place of use. Thus, in the absence of any reservation of appurtenant water rights in the Warranty Deed to Lot C, the appurtenant water rights passed to Padilla with the title to the land by operation of law. Finally, Coors has presented the Court with no arguably valid quitclaim or disclaimer from Padilla for the water rights appurtenant to Lot C.

The State takes no position with regard to the validity of the quitclaim and disclaimers of water rights appurtenant to the remainder of the tracts at issue here. Whether these documents are valid appears to involve matters of credibility and conflicting testimony. However, to the extent any of the documents are determined to be valid, the State believes that any interest Coors' may have had was conveyed to the Rutheron MDWA by the Water Rights Deed dated August 20, 2002. After the State notified the Association of the background and issues to be addressed at the October 14th hearing, the Association made a considered decision not to appear at the hearing and make a claim to the water rights at issue. Coors cites to no legal authority for his claim that the water rights described in the deed should somehow be restored to him. Essentially, he is asking this Court (without the involvement of the Association) to invalidate the Water Rights Deed.

<u>Excusable neglect or mistake under Rule 60(b).</u> The State disagrees that Coors has demonstrated excusable neglect or any mistake that would justify setting aside the default judgment

entered against him. Although Coors claims never have to have received any of the various notices or pleadings mailed by either the Special Master or the parties concerning this matter, his receipt of these documents is presumed. *See* State's Supplemental Brief at 14. These documents were all mailed to the same Livingston, Texas address that he provided to the Court for the delivery of mail concerning these proceedings. He provides no explanation of why his mail service would not have received the documents, or why he himself would not have received them when they were forwarded to him by his mail service. His claim that he simply never received any of these documents should be rejected.

In addition, the State strongly disagrees that "what happened [in this case] was largely due to the delay in the State Engineer's Office" in acting on Coors' pending application. As discussed earlier, any action to hastily act upon or approve the pending application would not have resolved the ownership questions surrounding the remaining water rights appurtenant to lots in the subdivision. Coors was given numerous opportunities to participate in these proceedings in order to resolve these questions and he had an obligation to do so. Apparently, he decided early on that he did not want to be involved in these adjudication proceedings. Hearing Tr. 58, 85, 113. Deliberate conduct is never excusable neglect. *See* State's Supplemental Brief at 15. In addition, while Coors' may have misunderstood the legal consequences of his deliberate acts, this does not justify relief based on "mistake" under Rule 60(b). *Id.* at 16. For these reasons, and those discussed in the State's Supplemental Brief, the State believes that his conduct justifies the denial of Coors' Motion to Set Aside Default Judgment.

<u>Prejudice to non-moving parties.</u> The Court may properly consider the prejudice to the parties in deciding whether or not to grant relief under Rule 60(b). *See* 12 J. W. MOORE'S FEDERAL

PRACTICE § 60.22[2] (3rd ed. 2005). Relief from a judgment may be inappropriate if circumstances are such that setting it aside would prejudice a party. *Id.* Coors turns this analysis around. He argues that the Court should consider a balancing of harm not only to Coors but to others if the default is not set aside. *See* Coors' Supplemental Brief at 15. This argument misapplies the principles involved. It is the prejudice to the parties that <u>oppose</u> setting the judgment aside that the Court may take into consideration. In this regard, the Court might take into consideration the additional expense that Padilla and Andrews will incur in resolving Coors' ownership claims, and whether these costs will be increased to an unfair degree. *Id.* The Court might also consider the competing demands on the staff and resources of the State that are available to complete this adjudication in a timely fashion.

Respectfully submitted,

*/s/ Ed Newville*
EDWARD G. NEWVILLE
Special Assistant Attorney General
Office of State Engineer
P.O. Box 25102
Santa Fe, NM 87504-5102
(505) 867-7444

## CERTIFICATE OF SERVICE

I hereby certify that copies of the above Response Brief of State of New Mexico were mailed to following persons on January __30__, 2006.

*(signed)* Ed Newville
Edward G. Newville

Special Master Vickie L. Gabin
USDC-DCNM
P.O. Box 2384
Santa Fe, NM 87504-2384

Peter B. Shoenfeld, Esq.
P.O. Box 2421
Santa Fe, NM 87504-2421

Walter L. Reardon, Jr., Esq.
3733 Eubank Blvd., NE
Albuquerque, NM 87111-3536

**Steve A. and Jemelle S. Padilla**
HC 75, Box 1228
Rutheron, NM 87551
505-588-7808

July 7, 2002

Mr. Edward G. Newville
Special Assistant Attorney General
Office of the State Engineer
P. O. Box 25102
Santa Fe, NM 87504-5102

Dear Mr. Newville:

I attended the June 30 meeting on the adjudication of water rights for the Rutheron and Plaza Blanca Surface Water. I understood that if water rights were found on our property but we had not been informed of the rights, we should write to the State Engineer's Office (SEO) to establish a Claim for Right of Notification. Once established, I understood this would subsequently result in our being able to obtain the necessary documents with regard to the law suit associated with the hydrographic survey.

Subfile Number CHRU 004-0044, Willow Creek Mesa Ditch aerial of the Rio Chama Hydrographic Survey outlines, in green, 7.3 ac of Irrigated Track Boundry of which 3.51 acres of that land are owned by Steve A. and Jemelle S. Padilla. A copy of the deed is attached along with a copy of the plat of the land in question, with which boundry lines can be compared to those on the aerial photograph.

The previous owners, Henry G. and Judith A. Coors, 163 Rainbow Drive, No. 6313, Livingston, TX 77399-1063, may have received correspondence on the adjudication process but have not forwarded the documents to us. One of the documents attached to the Subfile, (copy also enclosed) indicates an application was filed by Mr. Coors with the SEO to transfer 7.3 ac water rights to the Rutheron Water Association. In view of the fact Mr. Coors does not own the land, I am anxious to have the records amended to prevent our water rights from being transferred.

Should you require additional information, please contact me at the above address or telephone number. I appreciate your assistance in this matter.

Sincerely yours,

Jemelle S. Padilla

Enclosures (3)


EXHIBIT F

File No. 00000901 JR                    Chama Title Company, Inc.

## WARRANTY DEED

**Henry G. Coors and Judith Coors, husband and wife**, for consideration paid, grant to **Steve A. Padilla and Jemelle S. Padilla, husband and wife** whose address is **1641 Speakman SE, Albuquerque, NM 87123** the following described real estate in **Rio Arriba** County, New Mexico:

Lot C, Fort Heron Preserve, as shown on plat filed in the Office of the County Clerk, Rio Arriba County, New Mexico, on December 23, 1994, in Plat Book O-213, page 3320, as Document No. 114092.

207983

FILED IN THE COUNTY CLERK'S OFFICE
AT 7:06 O'CLOCK P. M
Book 324 Page 703

NOV 14 2000

County Clerk RA County
New Mexico
By _____ Deputy

Subject to: **Reservations, restrictions and easements of record and taxes for the year 2000 and thereafter.**

with warranty covenants.

Witness my hand this 7th day of **November**, **2000**.

_____    Henry G. Coors

_____    Judith Coors

### ACKNOWLEDGEMENT FOR NATURAL PERSONS:

State of New Mexico   )
                      ) SS.
County of Rio Arriba  )

This instrument was acknowledged before me on the 7th day of **November**, **2000**, by **Henry G. Coors and Judith Coors, husband and wife**.



# State of New Mexico
## Office of the State Engineer
## Upper Rio Chama Stream System
## Hydrographic Survey

### Rutheron & Plaza Blanca Surface Water Section

Subfile No.: CHRU-004-0044

**Owner:** HENRY G. COORS
**Address:** 163 RAINBOW DRIVE, NO. 6313
LIVINGSTON, TX 77399-1063

**A. IRRIGATED LANDS (Surface Water Only):**

**Office of the State Engineer File No(s):** 1545 & 1699
**Priority:**
  WILLOW CREEK MESA DITCH: TO BE DETERMINED

**Source:** WILLOW CREEK MESA DITCH: Surface water of the Rio Chama, a tributary of the Rio Grande.

**Purpose of Use:**
  IRRIGATION

**Point(s) of Diversion**
  **Ditch Name:** WILLOW CREEK MESA DITCH
  **Location X:** 1,548,909 feet  **Y:** 2,103,084 feet
  New Mexico State Plane Coordinate System, Central Zone, NAD 1983

**Amount of Irrigated Acreage:**

| | |
|---|---|
| Within the Tierra Amarilla Grant | 7.3 acres |
| Total | 7.3 acres |

As shown on the 2002 Hydrographic Survey Map CHRU-4.

**Amount of Water (acre-feet per acre per year, not to exceed):**

  Consumptive Irrigation Requirement = 0.88

**Comments:**
  An application was filed with the Office of the State Engineer to transfer water rights to Rutheron Water Association, but the Application has not been approved.