IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO ex rel.,
State Engineer,

      Plaintiff,

vs.

ROMAN ARAGON, et al.,

      Defendants.

No. 69cv07941-BB-ACE
RIO CHAMA STREAM SYSTEM
Section 7

RESPONSE OF HENRY COORS TO SUPPLEMENTAL
POST TRIAL MEMORANDUM (PADILLA AND ANDREWS)

Movant Henry G. Coors submits this Response to the Supplemental Post Trial Memorandum of Padilla and Andrews.

POINT I
COORS HAS A MERITORIOUS DEFENSE

Andrews claims that Coors is estopped from relying on the Quitclaim Deed and Disclaimer signed by Andrews because he promised that he would give the water rights back to them so that they could irrigate their property. To refute this claim, Coors cites the following evidence:

1.    Coors had a plan to develop approximately 37 parcels of land and to use the water rights he had to provide domestic water for the residents and two ponds for their recreational use. (Transcript, page 160-163.)

2.    At the time Coors sold these lots including the lots to Andrews, he explained his development plan to the lots purchasers. (Transcript, page 163.)

3.    In order to provide water for domestic purposes and to make up evaporation loses in the ponds, Coors obtained Conformation Agreements and Disclaimers

and Quitclaims of water rights from each lot owner. (Exhibit 3 to Affidavit of Henry Coors dated March 31, 2005 and Movant Exhibit 19.)

4. The amount of land that had to be dried up for each of Coors' applications could not be determined until the State Engineer established the Consumptive Irrigation Requirement (CIR), which changed with each application filed by Coors.

5. Coors' letters to the Andrews and his telephone conversation show that after the amount of land which had to be dried up to provide domestic water rights was determined the remaining water rights would be left for the irrigation of the northern lots, two of which were owned by Andrews. (Respondent's Exhibits 10 and 11.)

6. Andrews understood that Coors needed the Quitclaim Deed so that people in the subdivision would have drinking water. (Transcript, page 154, line 20-155, line 4.)

7. The Conformation of Agreement (Applicant Exhibit 19) confirms the discussion that Coors had with Andrews at the time of sale which is consistent with Coors testimony and his plan of development.

The above evidence shows that Coors intended to use the water he acquired at the time of his purchase to provide water for the benefit of the lots he developed and that any water left over would be left to irrigate lots along the northern border to the extent possible. (Transcript, page 162.) Andrews was not misled when they executed the Disclaimer and Quitclaim of Water Right for lots B and D to Coors.

Andrews was aware of Coors' development plan and acknowledged this plan when they executed the Confirmation of Agreement and the Disclaimer and Quitclaim of Water Rights for Lots B and D to Coors. If Andrews ever claimed ownership of the water rights for lots B and D, such claim was extinguished by their conveyance to Coors. Coors has shown a meritorious claim to these water rights.

Padilla claims that the water rights had not been severed when he purchased lot C from Coors in November 2000 and relies on the case of Turner v. Bassett, 2005 NMSC-009, 111 P.3d 701 (2005) as authority. Turner v. Bassett, *supra*, recognized that severance of appurtenant water rights had occurred even though the water rights were not reserved in the deed conveying the real property. The factual difference between this case and Turner v. Bassett, *supra*, is that the State Engineer had issued a permit to transfer the water from the Bassett land and in this case the application for such permit was pending before the State Engineer. Before the Padillas purchased lot C they were told of Coors plans for the development and that the applications were pending to use the water rights for domestic use and pond evaporation. (Transcript, page 79, line 9-24.) Lot C had not been irrigated for 10 years before it was sold to Padilla and had a home, garage, office and outbuildings located in the middle of it.

The purpose of NMSA 72-5-23 (1978 Comp) is to protect a purchaser of real estate so that appurtenant water will be conveyed with the land and the purchaser will receive all of what he anticipates. This protection is not necessary if the purchaser is notified that the land is not irrigated and that the water rights are in the process of being transferred to provide water to support an adjacent pond and surrounding parcels of land. In Turner v. Bassett, *supra*, there was no evidence that Turner was

advised at the time he purchased the land that the water rights had been severed or that a permit had been issued severing the water rights from the land.  The giving of actual notice that the water rights were the subject of an application to sever should be sufficient to overcome the presumption created by NMSA 72-5-23 (1978 Comp.)

POINT II
COORS HAS DEMONSTRATED EXCUSABLE NEGLECT

Andrews claims that delivery of mail to Escapees mail service is delivery to Coors.  Andrews fails to understand the function of a mail service.  A mail service does not open mail or notify the addressee of its existence.  It acts only as a depository until it receives instructions where to mail the mail it holds.  It is not quick, nor absolutely reliable, but it is the best way for motorhomers to receive their mail.

Coors states that he never received any claim of Andrews or Padilla to the water rights nor did he receive any notice of the scheduled hearings.  During the period that these claims were filed until after the default judgment was heard, Coors was on a motor home trip part of which was in Canada.  (Coors' Affidavit dated July 10, 2005 attached as Exhibit "A" to the Response to Motion for Sanctions.)  He did not request Escapees to forward the mail to him because of the uncertainty of his next destination and the lead-time needed by Escapees to forward his mail.  As soon as Coors received notice (February 25, 2005) that his application had been denied and that summary judgment had been entered against him, he contacted the State Engineer and opposing counsel to see if this problem could be corrected.  (Transcript, page 168.)  When he determined that he would not get the relief he sought, he filed a grievance letter with the State Engineer and a Motion to Set Aside the Default Judgment.  Coors should

not be penalized because he took a trip where it would have been practically impossible to contact him.  If he had been a New Mexico resident who had taken an extended 3 month trip during which time a default judgment had been taken against him, he would certainly be able to set such judgment aside when he returned and became aware of it.  Coors should not be deprived of his interest in these water rights when he received no notice of these claims.

## CONCLUSION

Coors respectfully submits that the Motion to Set Aside the Default Judgment should be granted.

WALTER L. REARDON, JR., P.A.

_____
WALTER L. REARDON, JR., 2158
Attorney for Henry G. Coors
3733 Eubank Blvd., N.E.
Albuquerque, NM 87111-3536
Telephone: (505) 293-7000
Fax: (505) 293-0831
Email: walter@reardonlawnm.com

We hereby certify that a copy of the foregoing pleading was sent by the method(s) indicated below to the person(s) and indicated address(es) listed below on the 3rd day of February, 2006.  If by facsimile or email, the transmission was reported as complete and without error.

Special Master Vickie L. Gabin, sent via first class mail
USDC-DCNM
P. O. Box 2384
Santa Fe, NM 87504-2384

5

Karla McCall
Data Manager, sent via first class mail
1315 Sagebrush Drive, S.W.
Los Lunas, NM 87031

Peter B. Shoenfeld, sent via first class mail
P. O. Box 2421
Santa Fe, NM 87504-2421

Ed Newville, sent via first class mail
Special Assistant Attorney General
Office of the State Engineer
P. O. Box 25102
Santa Fe, NM 87504-5102

Sent By: Karen Madison
Sender's Fax: (505) 293-0831
Sender's Email: walter@reardonlawnm.com