IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO, *ex rel.*
State Engineer

      Plaintiff,

vs.

ROMAN ARAGON, *et al.,*

      Defendants.

69cv07941-BB

RIO CHAMA STREAM SYSTEM

Section 1, Chama Mainstream

**STATE OF NEW MEXICO'S MOTION
TO ADOPT, *IN PART*, TO MODIFY AND OBJECTIONS TO
SPECIAL MASTER'S REPORT ON PRIORITIES FOR THREE ACEQUIAS**

The Plaintiff State of New Mexico on the relation of the State Engineer ("State"), moves the Court to adopt, *in part*, the Special Master's Report filed December 16, 2010 (Doc. 9546) ("Report") on the priorities of three acequias in Section 1 of the Rio Chama Stream System. After a careful review of the testimony and documentary evidence presented to Special Master Vickie L. Gabin at the hearings on disputed priorities held between August 14 and August 19, 1996, the State requests that the Court adopt the findings of the Special Master, as modified by the State's specific requests below, and find:

(1)    That the water rights initiated by the first Spanish settlers in the area of the Acequias de Chamita, Hernandez and Los Salazares were not abandoned. Report at 10, Recommendation No. 1.

(2)    That 1600 is an appropriate water right priority date for those acequias. Report at 10, Recommendation No. 2.

While the State has no objection to the ultimate recommendations of the Special Master described above, the States believes that the evidence presented to the Special Master indicates that several of the Master's Findings of Fact ("FOF") contain minor errors or require clarification. The State respectfully requests that the Court modify those findings in support of a decision to adopt the ultimate recommendations of the Special Master. The State's requested modifications and explanations for each request are set forth below.

In addition, the State <u>does object</u> to the statement of the Special Master with respect to the questions to be determined, to the Master's discussion section, and to Conclusion of Law. No. 1. Those matters are addressed following the State's requests for modification of the Master's findings of fact.

<u>Requests for Modification of the Special Master's Findings of Fact.</u>

<u>Finding of Fact No. 6.</u>  Due to the absence of many colonizers while they were on expeditions, Indian raids made farming difficult and decimated the livestock. The diminished population and relatively isolated location made San Gabriel vulnerable to Indian raids. Baxter, Tr. Vol. 1 at 43, 50. (Report at 5).

The State requests that FOF No. 6 be modified to read as follows:

> 6. Due to the absence of many colonizers while they were on expeditions, Indian raids made farming difficult and decimated the livestock. The diminished population and the location of San Gabriel at the edge of the Navajo frontier made it vulnerable to Indian raids. Baxter, Tr. Vol. 1 at 43, 50.

There was no testimony that San Gabriel's "relatively isolated location" made it vulnerable to Indian raids as found by the Special Master. *See* Special Master's FOF No. 6. Dr. Baxter's cited testimony and other evidence introduced at the hearing indicated that it was the proximity of San Gabriel to the open Navajo frontier that made it vulnerable to raids from that tribe. *See also* Baxter, Tr. Vol. 1 at 54-55; State's Ex. 1 at 104, n.6.

> Finding of Fact No. 7.  While the capital was being moved from San Gabriel to Santa Fe in 1608, Juan Martinez de Montoya reported that he was building a new house at San Gabriel.  Baxter, Tr. Vol. 1 at 131; Hordes, Tr. Vol. II at 282-83, 385-87; Hordes Report at 4.  (Report at 5).

The State requests that FOF No. 7 be modified to read as follows:

> 7.    In 1608, Juan Martinez de Montoya reported that he was building a new house at San Gabriel.  Baxter, Tr. Vol. 1 at 131; Hordes, Tr. Vol. II at 282-83, 385-87; Hordes Report at 4.

There was no testimony or other documentary evidence that there had been a decision to move the capital to Santa Fe by 1608 as the Special Master's finding strongly implies.  *See* Special Master's FOF No. 7.  Dr. Baxter stated that as of 1608 "it was certainly not clear that the capital was being moved" and that there was "no official capital [at Santa Fe] until 1610."  Baxter, Tr. Vol. 1 at 131-32.  The testimony by Dr. Hordes is indefinite on this point.  *See* Hordes, Tr. Vol. III at 282-83 ("Santa Fe was organized and occupied somewhere around 1607.  And around that time the Spanish colonial authorities decided to transfer the capital [to the new Villa de Santa Fe]."); *see also* Acequias' Exhibit U at 188-89 (Bloom, *When was Santa Fe Founded*?, 4 New Mexico Historical Review, (1929) (stating that while the proposal to move the colony from San Gabriel to a new site had been made long before Oñate tendered his resignation in August of 1607, nothing had been done or even decided up to that time).

> Finding of Fact No. 8.  Fra[y] Alonso de Benavides, a member of the Franciscan order in New Mexico, wrote a report on New Mexico in the 1620s.  The report did not mention San Gabriel.  Baxter, Tr. 61, 62; Plaintiff's Exh. 3. ( Report at 5).

The State requests that FOF No. 8 be modified to read as follows:

> 8.    In 1630, Fray Alonso de Benavides, a member of the Franciscan order in New Mexico, wrote a report on New Mexico.  The report did not mention San Gabriel.  Baxter, Tr. 61, 62; Plaintiff's Exh. 3.

The Special Master's finding can be understood to indicate either that the report by Fray

-3-

Benavides was written in the 1620s, or that the report described conditions in New Mexico in the 1620s. *See* Special Master's FOF No. 8. In the Report on page 9, line 4, the Special Master refers to the "1620 report by Fray Benavides" which is incorrect since the Benavides report was not written in 1620 or during the 1620s generally. A close reading of the Benavides report indicates that the report was made in 1630 after Fray Benavides returned to Spain, and that it described conditions in the colony during the previous year (1629) or earlier. State's Ex. 3 at 12, 45.

> Finding of Fact No. 10. In 1712, Roque Madrid and other settlers petitioned for lands at the Villa de Yunque for the purpose of improving the existing "corrales de piedra." Def. Exh. E1 at 9. (Report at 5).

The State requests that FOF No. 10 be modified to read as follows:

> 10. In 1712, Roque Madrid and other settlers petitioned for lands at the Villa de Yunque for the purpose of improving the standing structures that existed at the site. Hordes, Tr. Vol. II at 293, 326, 382-85.

The Special Master's finding confuses the 1712 petition made for the purpose of improving certain standing structures ("fabricas fuertes") at the Villa de Yunque with two other petitions made in 1710 and 1714 for grants of agricultural land on the west bank of the Rio Grande. The 1710 and 1714 petitions contain the reference to the stone corrals ("corrales de piedra") – not the 1712 petition by Roque Madrid and others. *See* Hordes, Tr. Vol. II at 296, 322-24; Hordes Report at 17-19.

While the above requested modifications may seem minor in nature, the State makes these requests because questions regarding the historical events in this area are likely to arise in other contexts in these proceedings. For this reason, the Court's adoption of findings of fact should be as accurate as possible to avoid confusion and the need for clarification in the future.

With the modifications requested above to FOF 6, 7, 8 and 10, the State has no objection to the approval or adoption by the Court of the Special Master's findings of fact. Although the State

believes that some correction or clarification of the findings is warranted, the evidence and findings of the Special Master support the ultimate conclusion that the water rights of the settlers were not abandoned, and that 1600 is an appropriate water right priority for those rights.

<u>Objections to the Special Master's Statement of the Questions to be Determined, Discussion Section, and to Conclusion of Law. No. 1.</u>  While the State has no objection to the ultimate recommendations of the Special Master, the State does object to the Master's statement of the questions to be determined, the discussion section of the Report, and to the Master's Conclusion of Law No. 1. *Inter alia*, the State believes these parts of the Report mis-state and incorrectly apply the the doctrine of abandonment.  The State requests that the Court not adopt or approve those portions of her report.

The law of abandonment of water rights in New Mexico is set forth fully in the State's Memorandum Brief filed April 3, 1997 (Doc. 5629) and that analysis is incorporated here.  Briefly, common law abandonment in New Mexico requires the relinquishment of the right by the owner with the intention to forsake it.  *State ex rel. State Engineer v. South Springs Co.*, 80 N.M. 144, 147, 452 P.2d 478, 481 (1969).  However, a showing of intent required to support a claim of abandonment may be either express or implied.  *Id.*  Further, the New Mexico Supreme Court has expressly stated that the failure to use a water right for an unreasonable period time is in itself evidence of the intention to abandon it.  *Id.* at 146, 452 P.2d at 480.  Thus, proof of nonuse of available water for an unreasonable period establishes a presumption of abandonment and is prima facie proof thereof.  *Id.* at 148, 452 P.2d at 482.  To rebut the presumption the party resisting the claim of abandonment must come forward with evidence of some fact or condition that would excuse the long period of nonuse.  *Id.*

The State objects to the Special Master's statement of the "Questions to be Determined."

Report at 7.  The State believes that the Special Master has re-framed the issue or question to be determined by the Court, and that this reformulation is not consistent with the required legal analysis set out by the New Mexico Supreme Court concerning the law of abandonment.  The Special Master states that the questions to be determined are whether "the State has shown by clear and convincing evidence that the 17th century colonizers abandoned the water rights initiated around 1600; and, if abandonment has been shown, whether the Acequias have shown a reasonable excuse for having done so."  Report at 7.  This reformulation of the question by the Special Master is incorrect and collapses the presumption analysis described in *South Springs*.  The Special Master's statement of the question improperly requires the State to show "clear and convincing evidence of abandonment" and ignores the *South Springs* presumption analysis.  In its Memorandum Brief in support of its requested findings of fact and conclusions of law, the State asserted the following: [that] the state has established by clear and convincing evidence that there has been an unreasonably long period of time of nonuse thereby permitting a presumption that the Colonists at San Gabriel intended to abandon their water rights in 1615.  State's Memorandum Brief at 4.  This assertion correctly represents the question before the Court.

The State objects to the wording of the Master's Conclusion of Law No. 1 because it similarly represents an incorrect statement of the requirements to prove the abandonment of water rights under New Mexico law.

> <u>Special Master's Conclusion of Law No. 1.</u>  The State has failed to show abandonment by clear and convincing evidence with regard to: a. the existence of a period of non-use between 1608 and 1714; and b. the settlers' intent, either express or implied, to abandon the lands irrigated by water diversion structures which are substantially the present-day Acequias de Chamita, Hernandez and Los Salazares.  (Report at 10).

The Master's Conclusion of Law No. 1 would require the State to satisfy a two part analysis in order

to prove abandonment. First, clear and convincing evidence of an [unreasonable] period of nonuse; and second, clear and convincing evidence of intent, either express or implied, to abandon the water rights. The State respectfully asserts that this is a misreading of the New Mexico Supreme Court's decision in *South Springs*.

*South Springs* was the first case in New Mexico to carefully distinguish between the doctrine of common law abandonment of water rights and forfeiture under the so-called "forfeiture statute." *See South Springs*, 80 N.M. at 147-48, 452 P.2d at 481-82; NMSA 1953, § 75-5-26 (amended and now codified as NMSA 1978, § 72-5-28 (2002)). The *South Springs* Court examined its earlier cases and noted that the terms had been used interchangeably in the past. *South Springs*, 80 N.M. at 147-48, 452 P.2d at 481-82. The Court explained that while the element of intent is required to show abandonment, intent is not a necessary element for the application of the forfeiture statute. Nonuse alone, if un-excused by circumstances beyond the control of the owner, may satisfy the requirements of that statute. *Id.* The specific holding of the Court with respect to forfeiture was as follows:

> In the case before us, if appellants obtained appropriative rights to the use of the water in question, any such rights have now become lost by continuous nonuse for more than four years, as shown by the evidence, and such rights (if any) are forfeited.

*Id.* at 147, 452 P.2d at 481.

The Court also explained the doctrine of abandonment of water rights. The Court stated that the element of intention is required to show abandonment, and that nonuse alone is insufficient to show intent to abandon. *Id.* at 147-48, 452 P.2d at 481-82. However, the Court also stated that the failure to use a water right for "an unreasonable time is evidence of the intention to abandon it," and further stated that after "a long period of nonuse, the burden of proof shifts to the holder of the right to show the reasons for nonuse." *Id.* at 146, 148, 452 P.2d at 480, 482. The Court's decision in *South Springs*

clearly indicates that the required element of intent may be inferred from an unreasonably long period of nonuse, and that proof of nonuse for an unreasonable period establishes a presumption of the intent to abandon. If the presumption is not rebutted by proof of some fact or condition that would excuse the nonuse, the water rights are abandoned and the unused water reverts to the public.

Recently, the New Mexico Supreme Court reviewed its decision in *South Springs* and restated the principles involved including the presumption analysis to prove the ultimate fact of abandonment.

> This Court recognized common law abandonment and distinguished it from forfeiture in *State ex rel. Reynolds v. South Springs Co.*, 80 N.M. 144, 146-47, 452 P.2d 478, 480-81 (1969). Unlike forfeiture, abandonment requires an intent to abandon. *Id.* A presumption of an intent to abandon is created by "'evidence of the failure of the party charged to use the right, or the water, or to keep the works necessary for the utilization of the water in repair" for an unreasonable period of time. *Id.* at 146, 452 P.2d 478, 480-81 (quoting 2 Clesson S. Kinney, *A Treatise on the Law of Irrigation and Water Rights*, § 1116, at 2012 (2d ed. 1912)).

*Montgomery v. Lomos Altos, Inc.*, 2007-NMSC-002, ¶ 32, 141 N.M. 21, 150 P.3d 971. The Court's recent decision in *Montgomery* clearly reaffirms the principle that proof of nonuse for an unreasonable period of time creates an evidentiary presumption of intent to abandon. The effect of presumptions in civil cases under the New Mexico rules of evidence is governed by Rule 11-301 NMRA. Under Rule 11-301, a presumption has an evidentiary effect so as to permit the fact finder "to draw an inference of the presumed fact from proof of the basic or predicate fact." *Chapman v. Varela*, 2009-NMSC-0041, ¶ 12, 146 N.M. 680, 213 P.3d 1109. In addition, the inference may continue to operate in an evidentiary sense even after the introduction of rebuttal evidence that tends to establish the contrary. *Id.*

The State believes that Federal District Court is required to apply the presumption analysis described in *South Springs* and reaffirmed in *Montgomery.* The federal rules of evidence expressly

incorporate state evidence law when state law provides the rule of decision. *See* Fed. R. Evid. 302 (the effect of a presumption respecting a fact which is a element of a claim or defense as to which State law supplies the rule of decision is determined in accordance with State law). Under *South Springs* and Rule 11-301 NMRA, the required element of intent to abandon may be inferred from proof of the basic or predicate fact (an unreasonably long period of nonuse) that establishes the basis for the evidentiary presumption. If not rebutted by proof of a fact or condition that would excuse the nonuse, no other showing or proof of intent is required because the evidentiary effect of the presumption fully satisfies the required proof of an intent to abandon. The State believes that a contrary reading of the Court's decision in *South Springs* negates the effect of the presumption and is contrary to the rule of decision adopted by the New Mexico Supreme Court.

In addition, while the Report quotes certain language in *South Springs* that "nonuse alone is not sufficient to show intent to abandon," this phrase in *South Springs* should not be read out of context. The Court in that case made this statement while explaining the difference between statutory forfeiture and common law abandonment and the fact that the trial court in that case had tried these issues together. *South Springs*, 80 N.M. at 148, 452 P.2d at 482. The statement should be understood as an explanation that while nonuse alone for a period of four years would satisfy the forfeiture statute, the same period of nonuse (four years) is insufficient to show an intent to abandon. After making this statement the Court continued and stated that after a "long period of nonuse," the burden shifts to the owner of the water rights to show the reasons for the nonuse. *Id*. The Court then quoted with approval several decisions from Colorado to the effect that proof of nonuse "for an unreasonable period establishes a presumption of abandonment" and that periods of forty, thirty and eighteen years constituted "unreasonable periods of nonuse and raised a strong presumption of abandonment." *Id*.

at 148-49, 452 P.2d at 482-83.

Any doubt that a long or unreasonable period of nonuse may create a presumption of intent to abandon under New Mexico law should be dispelled by the recent Supreme Court decision in *Montgomery v. Lomos Altos*. That decision confirmed the principle that a presumption of intent to abandon is created by evidence of the failure to use the right or water, or keep the works necessary for the utilization of the water in repair, for an unreasonable period of time. *Montgomery* at ¶32.[1] This principle is not peculiar to New Mexico. It is a well established rule of western water law. *See Okanogan Wilderness League, Inc., v. Town of Twisp*, 133 Wash.2d 769, 776, 947 P.2d 732, 739 (1997) (while nonuse is not "per se abandonment," nonuse is evidence of intent to abandon, and long periods of nonuse raise a rebuttable presumption of intent to abandon a water right).

In addition to the State's objection to the Special Master's legal analysis discussed above, the State also objects to the Special Master's characterization of the State's assertions with respect to the period of nonuse under consideration. The State did not contend that the period of asserted nonuse began in 1608 as stated in Conclusion of Law. No. 1. The State asserted that the evidence established a period of nonuse beginning in 1615. State's Memorandum Brief at 4.

---

[1] The Court in *Montgomery* failed to clarify whether the burden of proof to establish the presumption is clear and convincing evidence or the standard burden of proof generally used in civil cases–proof by a preponderance of the evidence. The State believes this remains an open question. While the Court in *South Springs* stated that it was "duly impressed with the reasoning" of the Colorado case that discussed the relationship of nonuse and intent to abandon a water right, there is no clear indication that the Court also intended to adopt the "clear and convincing" standard of proof suggested by the Colorado decision. *See South Springs*, 80 N.M. at 149, 452 P.2d at 483 (quoting *Commonwealth Irr. Co. v. Rio Grande Canal Water Users' Ass'n*, 96 Colo. 478, 45 P.2d 622 (1935). Since the time of the decision in *South Springs*, Colorado has repeatedly held that the preponderance of evidence standard applies in this context. *See Colorado Water Conservation Bd. v. Upper Gunnison River Water Conservancy Bd.*, 109 P.3d 585, 597 (Colo. 2005). For purposes of the decision in this case, the State argued that the evidence introduced to raise the presumption of intent to abandon satisfied the clear and convincing standard. State's Memorandum Brief at 4.

The State also objects to the discussion section of the Report for a number of reasons. The Special Master's summary of the evidence showing nonuse is incomplete and fails to include significant evidence relied upon by the State as a basis for its position that the colonists at San Gabriel had abandoned their irrigation efforts by 1615. The discussion makes no mention of the testimony of Dr. Baxter that the colonists had left San Gabriel and moved to Santa Fe, or the article written in 1951 by Donald Worcester which in large part formed the basis for that opinion. Baxter, Tr. Vol. 1 at 53-55, 137-39; State's Ex. 1 at 102 n.6; *see also* State's FOF 27.[2] At no point in the Report is there any discussion or citation to Dr. Baxter's testimony that San Gabriel was abandoned or depopulated in favor of Santa Fe, or the Worcester article and its sources cited by Dr. Baxter in support of that opinion. *See* State's Requested Find of Fact No. 27 ("The primary historic source most contemporaneous to the establishment of the Province of New Mexico Villa of Santa Fe in 1610 states, in Spanish, that the San Gabriel site was abandoned or depopulated in favor of Santa Fe, that is, 'desploblo y traslado a donde hoy permanaca con el nombre de Santa Fe de Granada'."). While reasonable minds might differ on the interpretation of this historical evidence, the State believes that at least some discussion of this testimony and evidence is warranted, and that to submit a report to the Court omitting any reference to Dr. Baxter's testimony presents a very incomplete picture of the proceedings.

The discussion section of the Report also contains a number of troubling statements that should

---

[2] The Report also omits any mention that Dr. Baxter served as the Court's expert witness at the hearing. *See* Orders entered November 20, 1986 (Doc. 3298) and August 25, 1993 (Doc. 3480). The State did not retain its own historical consultant, and in the 1996 hearings the State advocated the opinions of the Court appointed expert.

not be approved or adopted by the Court. For example, the Special Master states that evidentiary standards such as "clear and convincing" or "preponderance of the evidence" are standards that "do not lend themselves to ready application in this case." Report at 9. She states that it tempting to use a decision in Utah "for the basis of a declaration that New Mexico's extraordinary colonial history prevents the fact finder from finding very many facts with any degree of certainty." Report at 9 (citing *Eskelson v. Town of Perry*, 819 770, 774 (Utah, 1991). She notes that "no evidence introduced by either party . . . allows the fact finder to construct very much more than plausible inferences." Report at 10. These broad statements seem inconsistent with the responsibility of the Master to apply long established and well understood standards of proof to the evidence in this case. In addition, the Special Master's statement that "in civil cases generally, the plaintiff satisfies the burden of persuasion by a clear and convincing (or similar standard) of proof" is incorrect or at best misleading. Report at 8, 9. In civil cases generally, a burden of proof is satisfied by a mere preponderance of the evidence. *See Addington v. Texas*, 441 U.S. 418, 423 (1979). The Master's statements suggest that she would require a higher standard than a preponderance of the evidence in order to find evidentiary facts with an acceptable degree of certainty. A preponderance of the evidence simply requires the finder of fact to believe "that the existence of a fact is more probable than its nonexistence." *Metropolitan Stevedore Co. v. Rambo*, 521 U.S. 121, 137 n.9 (1997); *see also* Federal Civil Jury Instructions of the Seventh Circuit, 1.27 Burden of Proof (2008). The State sees no reason why New Mexico's complex history should interfere with the application of the appropriate civil standard of proof in this case or in others like it. The evaluation of complex historical evidence in many forms (including even archeological evidence with respect to Indian claims) is part and parcel of a general adjudication of water rights under New Mexico's prior appropriation system.

The State also objects to the fact that the discussion section of the Report lacks any specific or particular discussion of the historical evidence presented, its probative value, relative merits or other factors to be taken into consideration in the evaluation of that evidence. A discussion of this type by the Special Master should be expected in a case such as this where the appointment of the master is based, at least in part, upon the specialized expertise of the master in this area of the law. For all of the above reasons, the State requests that the Court not adopt or approve the above described statements of the Special Master or the discussion section of the Report.

In summary, while reasonable minds might differ in the interpretation of the historical evidence presented to the Court, particularly the Granillo Report and the historical sources relied upon by Donald Worcester in his 1935 article, the State recognizes that the evidence adduced by the Court's expert witness to show the abandonment of the settlement of San Gabriel, when weighed against the contrary evidence presented by the Acequias, is insufficient to raise a presumption of the abandonment of the water rights by the settlers. Thus, the State does not object to the ultimate recommendations of the Special Master, that the water rights initiated by the first Spanish settlers in the area of the Acequias de Chamita, Hernandez and Los Salazares were not abandoned, and that 1600 is an appropriate priority date for those rights. In significant part, the State takes this position in the interest of reaching a conclusion in this contested matter, which has been pending before the Special Master for approximately 13 years since the time of the hearings in 1996.

In addition, while State has no objection to the Court's approval of the Special Master's findings of fact, the State requests that the Court modify FOF 6, 7, 8 and 10 for purposes of clarity and to avoid confusion in the future concerning the historical events and documents described. The State objects to the discussion section of the Report for the reasons stated, and objects to the Special

Master's statement of the Questions to be Determined and Conclusion of Law No. 1 because they represent a misstatement of the requirements of New Mexico law regarding the abandonment of water rights and a misreading of the New Mexico Supreme Court's opinion in *South Springs*. The State requests that the Court adopt the Special Master's Report, *in part*, as described above.

      Respectfully submitted,

      /s/ Ed Newville
      EDWARD G. NEWVILLE
      Special Assistant Attorney General
      Office of State Engineer
      P.O. Box 25102
      Santa Fe, NM 87504-5102
      (505) 867-7444 telephone
      (505) 867-2299 facsimile

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the __20th__ day of February 2010, I filed the foregoing electronically through the CM/ECF system which caused the parties listed on the electronic service list, as more fully set forth in the Notice of Electronic Filing, to be served via electronic mail

      /s/ Ed Newville
      EDWARD G. NEWVILLE