IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| STATE OF NEW MEXICO on the relation of State Engineer,<br><br>Plaintiff,<br><br>-v-<br><br>RAMON ARAGON et al.,<br><br>Defendants. | 69cv07941-BB<br><br>RIO CHAMA STREAM SYSTEM<br><br>Section 7, Rito de Tierra Amarilla |

OBJECTIONS
OF THE ASSOCIACIÓN DE ACÉQUIAS NORTEÑAS DE RIO ARRIBA
AND THE TIERRA AMARILLA COMMUNITY DITCH
TO PROPOSED IRRIGATION REQUIREMENTS

COME NOW the Associación de Acéquias Norteñas de Rio Arriba and the Tierra Amarilla Community Ditch, also known as the Acéquia de Tierra Amarilla, on its own behalf and on behalf of its members (collectively the "Acéquias"), pursuant to the Court's Notice and Order to Show Cause filed May 28, 2010 (Document Nos. 9769 & 9770), and hereby file the following objections to the irrigation requirements proposed therein:

1.      The Acéquias object to the proposed weighted consumptive irrigation requirement (CIR) of 1.05 acre-feet per acre per annum because that number understates the actual and historic CIR within the Rito de Tierra Amarilla subsection. Although the Associación de Acéquias Norteñas de Rio Arriba agrees with and has stipulated to the use of U.S. Soil Conservation Service Modified Blaney-Criddle Method for determining consumptive use of crops in Section 7, the Acéquias object to the use of a fallow-acreage-percentage assumption in employing this methodology. If consideration of a fallow-acreage-percentage is appropriate, it should be used to adjust the Project Diversion Requirement (PDR) and not the CIR. Applying

the fallow-acreage-assumption to the CIR has the effect of reducing the consumptive use water right of each parciante or acéquia member to a quantity that is below historic beneficial use and below the actual crop requirements.

2. The Acéquias object to the on-farm and ditch efficiencies used to calculate the farm delivery requirement (FDR) and the PDR, respectively.  Because of the specific physical conditions within the Rito de Tierra Amarilla subsection, including porous and rocky soil conditions, variability in length of ditches, irrigation-related riparian growth and slopping and uneven land, the Tierra Amarilla Community Ditch experiences high levels of incidental losses both on and off farm, with the result that greater quantities of carriage water are required to deliver the CIR needed for member crops.

3. The proposed PDR of 4.38 acre-feet per acre per annum is also insufficient because it does not include water for other beneficial uses made by the Tierra Amarilla Community Ditch.  The proposed PDR omits the quantity needed for livestock watering from the ditch, including during non-irrigation months of the year.  It also omits water needed for hydraulic maintenance of the ditch including higher flows used for ditch flushing.  Use of ditch flows to recharge the shallow aquifer relied on for domestic purposes is not considered.

4. A fundamental problem with the proposed irrigation requirements is that they would impose an annual volume maximum that is incompatible with the variable supply conditions of the Rito de Tierra Amarilla.  The proposed irrigation requirements are based upon calculating a crop demand and do not consider availability of supply.  If the Tierra Amarilla Community Ditch received its water from a regulated supply, such as from a storage reservoir, or from a reliable surface flow, it could operate based on its monthly or even weekly demand.  But because flows of the stream are highly unregulated and variable, the ditch cannot operate that

way.  Instead, the ditch's operations are necessarily supply driven:  when water is available, the ditch diverts as much as it can use, because its mayordomo does not know how long the water will last and when it will come back.   In the spring, when flows are typically higher, the ditch will divert at its maximum capacity.  After flows from snow-melt runoff drop, supply to the ditch will depend on the vagaries of summer precipitation patterns.  Enforcement of the proposed PDR would put the Tierra Amarilla Community Ditch in the precarious position of having to choose whether to give up some of its snow-melt runoff supply for the uncertain prospect of summer rain flows.  That result is not practical and is contrary to the ditch's historic and lawful practices.

     5.     The Acéquias object to any reduction in the historic amount of diversion of the Tierra Amarilla Community Ditch.   Under New Mexico law the PDR of the ditch should be based upon the quantity of its maximum historic diversion for beneficial use.  Furthermore, in its Statement of Issues Regarding the Applicability of the Treaty of Guadalupe Hidalgo, filed June 1, 2006, the Associación de Acéquias Norteñas de Rio Arriba raised the following issue:  "5. Whether the Acequias are subject to a reduction in diversion amount below their historical diversion amount[.]"   The Acéquias request that this Treaty issue either be considered now as part of this process or be explicitly reserved for determination along with the other Treaty issues held in abeyance by the Court.

     6.     Finally, the Associación de Acéquias Norteñas de Rio Arriba believes there may be two different ditches in the area known to as the Ismael Ulibarri Ditch and objects to the extent that the incorrect ditch is referred to in the Notice and Order to Show Cause.

     WHEREFORE, the Associación de Acéquias Norteñas de Rio Arriba and the Tierra Amarilla Community Ditch request the Court reject the proposed irrigation requirements because

they understate historic water uses and inaccurately reflect the lawful practices of the Tierra Amarilla Community Ditch.

Respectfully Submitted,

SHEEHAN & SHEEHAN, P.A.
40 First Plaza N.W., Suite 740 (87102)
Post Office Box 271
Albuquerque, New Mexico  87103
(505) 247-0411

*Electronically Filed*

BY:  */s/ John W. Utton*
         JOHN W. UTTON

DAVID BENAVIDES
New Mexico Legal Aid
P.O. Box 5175
Santa Fe, NM 87502
(505) 982-9886


Attorneys for Associación de Acéquias
Norteñas de Rio Arriba and
the Tierra Amarilla Community Ditch


**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 28th day of July, 2010, I filed the foregoing electronically through the CM/ECF system which caused the parties on the electronic service list, as more fully set forth in the Notice of Electronic Filing, to be served via electronic mail.

/s/  *John W. Utton*
JOHN W. UTTON