FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

10 SEP -8 AM 11:33

CLERK-SANTA FE

Case: 6:69-cv07941-BB

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO, on the relation
    The State Engineer,

                Plaintiff,

    v.

ROMAN ARAGON,   et al,

                Defendants.

No. 69cv-07941-BB

Rio Chama Stream System

Section 1 (mainstream)

## MOTION TO RECONSIDER; RECEIVE THE EVIDENCE, TO MODIFY IN PART AND THE OPPORTUNITY TO BE HEARD.

    Comes again this plebian, pro se parciente, Acequia de Chamita Commissioner, david ortiz, respectfully requesting the Court to reconsider the limiting, the exclusion and reconsider and receive the evidence filed by "the objectors and joint objectors to the Special Masters report (Doc.9546, filed 12/16/2009), Priorities for three Acequias. The modification in part is to assign the Acequia de Chamita its establishment date of August 11, 1598.

    What does the following mean your Honor?

### Reference: Federal Civil Rules Handbook 2009

        Balcon-Mckee, Jamsen Carr Thomsen West 2008

    Rule 53 Masters Orders. (d) A Master who issues an order must file it and promptly serve each party. The clerk must enter the order on the docket.

    No one on the Acequia de Chamita Commission received the Special Masters Report (Doc.9546 filed 12/16/2009, except the

Acequias Legal Counsel who accepted it on 1/7/2010 (Doc.9556), without notification of the Acequia de Chamita Commissioners. We found out about it by "accident" at a Stockman's meeting in Taos on 1/10/2010. On 1/26/2010 the Legal Counsel showed up at a meeting called by the Acequia Commissioners, apologized and handed us a copy of  Doc.9546. The RCAA Chairman also mailed us a copy on 1/22/2010 which we already had because the Rio Arriba County Lawyer had mailed one to us on 1/13/2010. What they failed to tell us is that Counsel had already accepted it. We found out from the States Doc.9606 filed on 2/25/2010. You know what date it was sent to who you consider the party.

The RCAA Chairman and the Legal Counsel touted the "Victory" of accepting 1600 instead of August 11, 1598 and WARNED us not to oppose it or we could wind up with 1714 (attachment A1, A2).

Apparently two(2) of the Chamita de Acequia Commissioners were afraid of winding up with 1714 (they had not seen the evidence submitted by Hordes or knew the State Water Law that says, "there must be an intent to abandon", and voted to accept the Report (Doc.9546), already accepted by Lawyer. A meeting was then called for the Acequia Parcientes and a vote was to be taken to accept the 1600. No vote was taken. (Meeting was recorded and source will be noted below).

So who do you think made the bed of Compromise that Hordes, Baxter  and Levine, and others were in? Problem is "all" of them do "it" for money. They can be bought and sold for .50 cents and a banana, as a wise Spanish woman has said. The Lawyer's reputation is well known. (Doc.6267 filed 11/09/2007) (New Mexican: Attorney quits Aamodt

water-rights case by Staci Matlock/AP/6/6/2007,attachment B1 and letter from the Attorney to the affected individuals he had represented in Aamodt. Attachment B2)

Let's look again at Doc.9683 filed on 4/19/2010, Motion to limit consideration of objections; an objection by those individuals (or any others) does not include the ability to present new evidence to the Court, evidence that might easily have been presented to the Special Master at the hearings held in 1996. A party seeking a new trial to present evidence must show; (1) The evidence was newly discovered since the trial; (2) The moving party was diligent in discovering the evidence;

We will address (2). While it is true that we were asleep in 1996, we were not in the bed of Compromise. We were given a drug to make us believe our traditional establishment date was being defended by Legal Counsel and expert Historian. (attachment C1)

Stanley Hordes at the meeting of the Acequia on 3/16/2010 was asked by me, david ortiz, why this Abstract was not included in later reports to the RCAA? He said, "he didn't remember it". The Lawyer jumped up and said "it was a draft". I then pressed Mr. Hordes for an answer and he said, "He could change his opinion".

I then asked Legal Counsel where he thought the first Acequia, established August 11, 1598 was dug? He answered, I don't know, nobody knows (attachment D1). To hear this meeting in its entirety, go to: ROBIN COLLIER, DIRECTOR, www.culturalenergy.com, contact at HCR 74 Box 21912, El Prado, NM 87529 ph-1-575-758-9791 or E-mail robincollier@newmex.com. (Recorded Acequia de Chamita meeting on 3/16/2010).

You can't say we have not been diligent in discovering the evidence. Had we known what had happened in 1996 and that we had 14 years to diligently prepare evidence, we might have had 1,598 pages instead of 260 in 40 days.

IT IS NOT ABOUT US. IT IS ABOUT TRUTH, JUSTICE AND HISTORY. That's why the law is slack (weak) and right Judgment does not take place, because the unrighteous surround the righteous, therefore wrong Judgment comes forward. A Lawyer should know the Law and use the Law to defend people's rights.

AND YOU ALWAYS GO FOR THE EARLIEST PRIORITY DATE, ASK ANYBODY WITH AN OUNCE OF BRAINS, unless there is conspiracy in the bed of Compromise. Why compromise the August 11,1598 establishment date? Some do not value their inheritance. They sell their inheritance for a bowl of soup or .50 cents and a banana. What's two (2) years they say. IT'S INHERITANCE. Governor Don Juan de Onate, the Colonizer for Spain, after taking Possession, the first thing he does on August 11, 1598, 7 days before the main party of settlers arrive is establish the Community Acequia, between two (2) rivers, irrigated by the minor one. WHERE DO YOU SAY THAT ACEQUIA IS?

RECONSIDER, RECEIVE AND HEAR THE INHERITORS OF THE FIRST SETTLERS.

Case: 6:69-cv-07941-BB



**1600**

Aug.
11
**1598**

Respectfully Submitted by Defendant David Ortiz,

*David Ortiz*
(Signature of Defendant)
David Ortiz, Commissioner/Treasurer

DAVID ORTIZ
(Printed name of Defendant)

PO Box 1082
(Street address or P.O. Box)

San Juan Pueblo, NM
(City, State and Zip Code) 87566

Map 22

Tract 17

Subfile 267

ATT. A1-1

**FRED J. WALTZ**
**Attorney at Law**
214 B Kit Carson Road
Taos, New Mexico 87571
Phone/Fax:  (575) 758-0407

January 26, 2010

Chamita Acequia Association
c/o David Ortiz

Dear Mr. Ortiz:

I am responding in this letter to your recent questions about the Special Master's decision that the priority date of the Acequia de Chamita is 1600.  I am aware of the commonly held belief and historical custom that the Chamita area was first settled and irrigated when Onate arrived with a large group of settlers, soldiers, and religious in 1598.  Upon a close examination of the historical record that is only partly true.  The historical documents show that Onate did arrive with his large party in 1598, but that he settled at San Juan Pueblo on the east side of the Rio Grande.  There he had constructed an acequia with the labor of 1500 Native Americans.  The new Spanish settlement then moved by 1600 to a site across the Rio Grande to the abandoned pueblo of Yunque Yunque near the site of present day Chamita.  These historical facts are contained in documents cited by and relied upon by both the Acequias expert, Dr. Stan Hordes and the expert relied upon by the State of New Mexico, Dr. John Baxter.  A copy of Dr. Hordes' report is attached.  Because they both agreed upon this initial history, they signed a Stipulation which was presented to the Court. A copy of the Stipulation is enclosed.

At the trial the Acequias relied upon the expert report of Dr. Hordes to establish a priority date of 1600.  The State however tried to prove that the Chamita area was later abandoned by about 1610 when the capital was moved to Santa Fe.  There are documents which suggest this abandonment.  However we were able to convince the Special Master that the area was not completely abandoned, that some settlers remained.

Of course there was the Pueblo Revolt of 1680 when all Spanish settlers were forced to leave New Mexico.  The State has tried to argue that the priority date for the Chamita Ditch should be 1714 when the area was resettled after the Pueblo Revolt.

The Special Master accepted the Acequias' evidence and arguments and ruled in their favor that the priority date for the Chamita Ditch is 1600, not 1714 as argued by the State.  This is a tremendous victory for the Chamita Acequia and community of Chamita.

I understand that there is an argument that the Special Master's decision should be appealed to argue for an even earlier priority date of 1598.  That would be a terrible mistake because the evidence does not support that priority date for the Chamita Acequia.  Based upon the historical record, there is no chance of successfully appealing the decision to make the priority date earlier than 1600.  In fact, if the Acequia did appeal, you would be forfeiting the 1600 date and risk the Court deciding instead in favor of the

State's suggested priority date of 1714.  This would be a tragic consequence for the Chamita Acequia and community of Chamita.

Sincerely,

*Fred J Waltz*

Fred J. Waltz
Attorney at Law

FJW/co

Enclosures

ATT: A2

Rio de Chama Acequias Association
Box 687
Medanales, New Mexico 87548

January 22, 2010

Dear Commissioners from Acequias de Chamita

Enclosed is a copy of the Special Master Vickie Gabin decision on the Priority Date for your acequia. The Special Master decided in your favor and ruled that the evidence establishes a Priority Date of 1600 for your acequia.

The Special Master decided against the State of New Mexico and did not accept their argument that your acequia should have a Priority Date of 1714.

This decision is not final yet because the Federal District Court Judge needs to enter an order adopting the Special Master decision. Hopefully this will happen soon.

Thank you for all your support during the trial. The Special Master decision is an important victory for your acequia.

Sincerely,

Fred Vigil
RCAA

From: white <white@grappawireless.com>
    To: Garcia Amelia and Joe <AmeliaJacona@aol.com>
Subject: Resignation
    Date: Thu, Aug 5, 2010 5:47 pm

## NewMexican

## Attorney quits Aamodt water-rights case   print

By STACI MATLOCK | Associated Press
June 6, 2007

*Pojoaque Basin Water Alliance lawyer cites 'polarized view' for withdrawal*

The attorney for 400 domestic well owners in the Pojoaque Basin withdrew as their representative in the Aamodt water-rights case Wednesday in federal District Court in Santa Fe, saying the "divergent views" of some clients made it impossible to fairly represent all of them.

Attorney Fred Waltz and other attorneys in the decades-old case met to update U.S. District Judge Martha Vázquez on progress in getting a proposed settlement turned into federal legislation this year.

Waltz has represented the Pojoaque Basin Water Alliance since 2005 in the 41-year-old case. The alliance will scramble now to find an attorney at a critical juncture.

The settlement still needs approval by Congress and a deadline looms next week to finalize some lingering funding and water-rights issues so legislation can be sent to the U.S. Capitol.

Waltz was a member of a subcommittee hammering out details to further protect nonpueblo domestic well owners in the basin. "This is bad for us," said Andy Welch, one of the alliance's board members, standing outside the courtroom with Waltz.

The Aamodt case was filed to settle the water rights of four pueblos, Santa Fe County and the nonpueblo landowners in the Pojoaque Basin north of Santa Fe. The case affects 4,000 to 5,000 people.

Pueblos have the oldest water rights in the valley. The Aamodt case was to determine how much water each pueblo and each nonpueblo landowner is entitled to and how to supply water during drought. The state, county and pueblos in 2004 agreed to a settlement that they say protects the water rights of domestic well-owners while ensuring the pueblos receive the water they need for current and future residential and commercial uses.

But some nonpueblo well owners from various groups, including members of the Pojoaque Basin Water Alliance, have ongoing concerns with some aspects of the settlement. "I would say 1 percent of our members are opposed to any settlement and another 1 percent are happy with it the way it is now," Welch said. "The other 98 percent are fine with the settlement except for the regional water system."

ATT: B1-2

The proposed Aamodt settlement includes a plan to construct a regional water system and encourage domestic well owners to hook into the system. Those who hook into the regional system would have to cap their wells. Those who don't would be limited further in how much water they could use from their wells.

The polarized views of alliance members creates a fundamental "conflict of interests" among his clients, Waltz said.

"How can I represent one client against another?" he said.

The fallout in the alliance was immediate. Paul White, the vocal vice president of the Pojoaque Basin Water Alliance, said at least two of the other six board members want him to resign. "They're blaming me for his resignation," White said, calling Waltz a "fence-sitter" in settlement negotiations. "I've always wanted to have a negotiated settlement, but I don't feel this is an equitable settlement. We're getting screwed."

White said he felt Waltz was conflicted from the beginning because he also represents an acequia association in a case involving water rights for Taos Pueblo and the Taos Valley. Both that case and the Aamodt settlements call for securing more water rights, potentially pitting parties in both cases against each other for the same resource.

*Contact Staci Matlock at 470-9843 or smatlock@sfnewmexican.com.*

# Comments

By paul white (Submitted: 06/10/2007 3:20 am)
Miguel, what kind of life will it be when Pojoaque looks like Airport Road and the Pueblos start to inject Rio Grande water into the aquifer? Or when all of the deep wells envisioned in the settlement start to dry up our wells as is happening in Cuyamungue right now? -Pablo

By Miguel Vigil (Submitted: 06/09/2007 12:25 pm)
Thanks Pablo, it is not great, but the pueblos have all the money and power and we have nothing, at least if it is settled we can go on with our lives.

By paul white (Submitted: 06/09/2007 8:52 am)
Miguel, sign it now or sign it later, just make sure that you read the whole document. And if you have surface rights you'll lose protection to the Pueblos if you don't use all of your rights. It's unlikely waterbanking will be valid here. -Pablo

By Oyegi Thamu (Submitted: 06/08/2007 9:27 am)
I guess he's not sittin' on that fence anymore.

By Miguel Vigil (Submitted: 06/08/2007 8:53 am)
OK, but when can we sign the agreement?  Do we have to wait for Congress to allocate money or can we sign now and get it over with.

By paul white (Submitted: 06/06/2007 6:30 pm)
Fred Waltz was a big dissapointment for many of us involved in the

ATT: B1-3

settlement. He was a fence sitter. Fred knew going in that there were divergent points of view, did he pull out because Taos is no longer going to get their full allotment of San Juan Chama Water for the Abeyta settlement where he represents the acequias? I believe he was conflicted and did a disservice to the well owners who now have no representation.
-Pablo Blanco

Close | Print

Questions? Comments? Send an email to webeditor@sfnewmexican.com

**FRED J. WALTZ**
**Attorney at Law**
214 B Kit Carson Road
Taos, New Mexico 87571
Phone/Fax: (505) 758-0407

November 9, 2007

Richard H. Rochester
243 Camino de Rincon
Santa Fe, NM  87506

Re: State of New Mexico, ex rel. State Engineer v. Aamodt, et al.,
U.S.D.C. No. CIV 66-6639 MV/LCS

Dear Mr. Rochester:

As you know, I represent you in the Aamodt water rights adjudication case.  I also have been representing the Pojoaque Basin Water Alliance in the negotiations involving a settlement of water rights claims of the Pueblos and non-Pueblo parties.  In particular, I have been representing the interests of domestic well owners, such as you, in those negotiations.

There are 266 domestic well owners that I represent in this matter.  Over the past many months it has become increasingly difficult to represent those well owners because of divergent and contradictory views among them as to how the negotiations should proceed.

While I personally believe that progress has been made in protecting your water rights in these negotiations, some of my clients have informed me that they cannot support the present state of the draft settlement agreement with the Pueblos and want me to actively oppose it.  Many others are in favor of the settlement agreement in its present form and do not want it changed.  A third group of clients are not satisfied with all provisions of the present draft of the settlement agreement and want negotiations to continue until further changes are made.

I am presently in a situation of true conflict in representing the best interests of each of my clients.  I cannot fight against the present draft settlement when there are those who like it.  I cannot support the present settlement when there are clients who oppose it.  Also I cannot withdraw from some clients and continue to represent others, because that would still put me in a situation of pursuing a certain course of action against the desires of a former client in the same case.

Under these circumstances where there is a lack of unanimity and there are opposing views among my clients, I must withdraw from representation of all domestic well owners in this case.  I will be filing pleadings with the court to advise it of the conflict of interest and the need to withdraw from representation.

Please note that when I withdraw from representing you, you will remain in this case as a party to it, but without an attorney. For most of you this will be the same situation you were in before I entered my appearance for you. However, I advise you to retain a new attorney who will represent you in the future. You do not need to have a lawyer, but, in a complex case like this, having a lawyer is best.

Enclosed is a copy of a Motion for Withdrawal of Counsel which I have filed with the court. Please read it carefully. You have the right to object to my withdrawal. However, I do not believe that the court would force me to represent one of my clients against other former clients. If I do not hear from you otherwise within ten (10) days of this date, I will assume that you will not oppose my withdrawal from representation.

I am sorry that I cannot be of further assistance to you. It has been a challenge and a pleasure to represent domestic well owners in this case.

Please contact me if you have any questions about this matter. Also, please contact the PBWA, or its President Dick Rochester, to be informed about its activities to assist domestic well owners.

Sincerely,

Fred J. Waltz

Fred J. Waltz
Attorney at Law

FJW/co

Enclosure

ATT: C1-1

SECTION ON
ACEQUIA de CHAME:
ONLY

HISTORICAL ABSTRACTS OF ACEQUIAS ALONG THE LOWER RIO CHAMA

Prepared for:

Río Chama Acequia Association
Medanales, New Mexico

Prepared by:

Stanley M. Hordes, Ph.D.
HMS Associates
P.O. Box 4543
Santa Fe, New Mexico  87502

August 21, 1992

# HISTORICAL ABSTRACTS OF ACEQUIAS ALONG THE LOWER RIO CHAMA

**Research Goals and Methodology:**

The purpose of this investigation was to establish defensible dates for twenty-six (26) community acequias located along the Río Chama between Abiquiú Dam and the confluence of the Río Grande and Río Chama. Research was undertaken through published and archival material to produce information relating to: (1) the dates that evidence of irrigation first appeared in the historical record pertaining to areas served by the ditches in question and (2) the presence of cultivation and irrigation in the areas under consideration from the first evidence of irrigation until 1900.

Acequias investigated in this report are: Hernández, Salazar, Chamita, Chilí, Río de Chama, Río del Oso, Martínez y Duranes, Manzanares y Montoya, J.V. Martínez, Mariano, Ferran, La Puente, Tierra Azul, Valentín Martínez, Quintana, J.P. Gonzales, Gonzales, Esquibel, Carl Bode, Abiquiú, Mestas, Barranco, Suazo, Ranchitos, Abeyta/Trujillo, and Ghost Ranch.

For purposes of this project, acequias were considered as part of the same ditch system if the waters from one emptied into another. In such cases, the earliest date of cultivation or irrigation discovered in the documentation pertaining to the area served by one acequia was applied to the entire system.

Two members of HMS Associates participated in this investigation. Stanley M. Hordes, Ph.D., directed the project, with research assistance from Susan Perlman, M.A.

Data pertaining to the dating of the ditches was found primarily in records at the New Mexico Records Center and Archives, including administrative from the Spanish, Mexican and Territorial Period, land grant records, land dispute proceedings, civil and criminal records, and papers of the Office of Surveyor General and Court of Private Land Claims.  Other pertinent records included proceedings of the Pueblo Lands Board, and cartographic records at the Bureau of Land Management, U.S. Forest Service, and University of New Mexico.

Contained in this report are: (1) Abstracts of documents pertaining to each acequia system under consideration.  The abstracts are organized chronologically, referencing the date and provenance of each document, and offering a brief summary as it pertains to settlement, cultivation or irrigation of the area served by each system; and (2) Table of priority dates assigned by the State Engineer Office, priority dates suggested by the documentation, and basis for the revision.  The revised dates reflect the earliest documentary evidence indicating either (a) specific evidence of irrigation or cultivation in a given area; or (b) settlement of an area that was used for agricultural purposes.

The conclusions and recommendations of this report are based upon the sources cited only.  Although HMS Associates believes these sources to be reliable, HMS Associates is not responsible for information obtained from sources that later prove unreliable, or for sources that withhold information.

## CHAMITA ACEQUIA

| Date | Document | Abstract |
|------|----------|----------|
| 1598 | Torquemada Cap. XXXX | Juan de Torquemada, in his 1612 Monarquía Indiana (published in 1723), cites Oñate's settlement at San Gabriel as located between the banks of two rivers, one having less water than the other. "The smaller one [Río Chama] irrigates all the plantings of wheat, and barley and corn, and all the other items that are cultivated in gardens . . ." |
| 1701 | I-926 | Petition and grant to Diego Trujillo; boundaries extend from confluence of RG to angostura; no occupation cited |
| 1707 | I-824 | Bartolome Sánchez petitions for lands at Puesto de Zhama; boundaries: N-un pueblo quemado antiguo; S-Pueblo de Santa Clara de la otra banda del Río del Norte; E-Mesa de San Juan; W-el mismo lindero de Santa Clara; no occupation cited [APPEARS TO ENCOMPASS BOTH SIDES OF RIO CHAMA] |
| 1710 | I-1020 | Juan de Urribarí, Bartolomé Lovato, Joseph Madrid, Sevastian Duran and Simon de Cordova petition for land at Yunque; boundaries: W&S-corrales de piedra and las lomas; N-Pueblo de Chama; E-Río Grande; grant approved, but no act of possession cited |
| 1711 | I-827 | Bartolome Sánchez petitions for revalidation of grant at Río Arriva de Chama; indicates that he has not yet occupied lands earlier granted |
| 1712 | I-1020 | Diego Márquez, Bartolomé Lovato, Matías Madrid, Joseph Madrid, Andrés Gonzales, Sebastian Duran, Tomás de Bejarano, Ysabel de Serna (widow of Blas Lobato), Simon de Córdoba, and Xptóbal de Castro petition for land at la Villa de Yunque; Juan Páez Hurtado indicates that Santa Cruz cannot afford to lose so many settlers; |
| 1714 | I-926 | DT dies; widow asks that grant be assigned to Salvador de Santiesteban and Nicolas Valverde, her close relatives; put in possession of 4 fanegas de sembradura de maís; boundaries: N-matoral de poñíl, y una loma parda que tiene al pie un serrito pequeño que blanquea . . .; S-Río Chama; E-Río del Norte; W-mojoneras . . . |

ATT: D1



# La Jicarita News

*A community advocacy newspaper for northern New Mexico*

*Box 6 El Valle Route, Chamisal, NM 87521*

| Volume IX | October 2004 | Number IX |
|---|---|---|

**Home**

**Current Issue**

**Archive 1996-2002**

**Article Index**

**Subscribe**

**About Us**

**Environmental Justice**

**Links**

**The High Road Art Tour**

**ANNOUNCEMENTS**

**Update on Aamodt Adjudication**

**Taos County Regional Water Plan**

**Adjudication of Water Rights Involving Acequias** *By Fred Waltz, Water Rights Attorney*

**Editorial** *By Mark Schiller and Kay Matthews*

## The High Road Art Tour

Tejadores de Las Trampas opened the community center in Las Trampas for the High Road Art Tour in September to display their colorful rag rugs. A project of the Española Valley Fiber Arts Center, the group, comprised of approximately 13 women, is successfully marketing their rugs through art fairs and direct sales. They get together on Mondays and Tuesdays at the community center to weave the rugs made of cloth remnants on looms kept at the center. Several of the women have looms at home in the neighboring villages of Ojo Sarco and La Joya. To make an appointment to see the rugs or place an order you may call Jody Ford at 689-2315.

## Adjudication of Water Rights Involving Acequias

**By Fred Waltz, Water Rights Attorney**

An acequia is both a physical irrigation ditch and a community of people or parciantes who own water rights distributed by the irrigation ditch and who operate the ditch for their common benefit and good. Acequias, also called community ditch associations, are political subdivisions of New Mexico. Acequias are also like corporations, with the power to sue or be sued as such. The Supreme Court of New Mexico has described acequias as "a hybrid between a corporation and a public body."

Acequias have existed for centuries. When Oñate brought the first Spanish settlers to New Mexico in 1598 they almost immediately dug an acequia from the Rio Grande near San Juan Pueblo. Virtually every early community had acequias to take water from rivers, streams, and springs and deliver it for irrigation, livestock watering, and