IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO on the )
relation of State Engineer, )
 )
Plaintiff, )
 )                69cv07941-BB-LFG
    -v- )
 )                RIO CHAMA STREAM SYSTEM
RAMON ARAGON et al., )
 )                Section 7, Rio Brazos
Defendants. )
 )

**OBJECTIONS
OF THE ASSOCIACIÓN DE ACÉQUIAS NORTEÑAS DE RIO ARRIBA
AND SIX MEMBER ACÉQUIAS
TO PROPOSED
PRIORITY DATES AND IRRIGATION REQUIREMENTS**

COME NOW the Associación de Acéquias Norteñas de Rio Arriba and the Acéquia de

Los Brazos, Acéquia del Porvenir, Brazito Lateral Ditch, Ensenada Community Ditch, the

Parkview Community Ditch (Acéquia de Los Ojos) and La Puente Community Ditch, on their

own behalf and on behalf of their members (collectively the "Acéquias"), pursuant to the Court's

Notices and Orders to Show Cause filed July 6, 2011 (Document Nos. 10501, 10502, 10503,

10504, 10505, 10506, 10508), and hereby file the following objections to priority dates and the

irrigation requirements proposed therein:

1.      The Acéquias object to adjudication of any priority dates that does not recognize

and accede to historic customs and practices and agreements regarding water allocation,

distribution and sharing among acéquias.  In its Statement of Issues Regarding the Applicability

of the Treaty of Guadalupe Hidalgo, filed June 1, 2006, the Associación de Acéquias Norteñas

de Rio Arriba raised the following issue: "1.  Whether the Acéquias may gain legal recognition

to maintain customs and practices implementing a *repartimiento* system of equitable distribution of water, as opposed to strict priority; and whether Acequias maintaining such customs and practices are protected against priority administration by the State, or the establishment of a Water District or Water Master, or the application of any State regulations pertaining to priority administration or active water resource management[.]"   The Acéquias request the Court to consider this Treaty issue now as part of this order to show cause proceeding.

2.      The Acéquias object to the proposed weighted consumptive irrigation requirement (CIR) of 1.11 acre-feet per acre per annum because that number understates the actual and historic CIR within the Rio Brazos subsection.  Although the Associación de Acéquias Norteñas de Rio Arriba agrees with and has stipulated to the use of U.S. Soil Conservation Service Modified Blaney-Criddle Method for determining consumptive use of crops in Section 7, the Acéquias object to the use of a fallow-acreage-percentage assumption in employing this methodology.  If consideration of a fallow-acreage-percentage is appropriate, it should be used to adjust the Project Diversion Requirement (PDR) and not the CIR.  Applying the fallow-acreage-assumption to the CIR has the effect of reducing the consumptive use water right of each parciante or acéquia member to a quantity that is below historic beneficial use and below the actual crop requirements.

3.      The Acéquias object to the on-farm and ditch efficiencies used to calculate the farm delivery requirement (FDR) and the PDR, respectively.   Because of the specific physical conditions within the Rio Brazos subsection, including porous and rocky soil conditions, variability in length of ditches, irrigation-related riparian growth and sloping and uneven land, the Acéquias experience high levels of incidental losses both on and off farm, with the result that greater quantities of carriage water are required to deliver the CIR needed for member crops.

4.      The proposed FDR of 2.78 and PDR of 4.63 acre-feet per acre per annum for pre-1907 ditches are also insufficient because they do not include water for other beneficial uses made by the Acéquias.  The proposed quantities omit the amount needed for livestock watering from the ditch, including during non-irrigation months of the year.  The proposed PDR also omits water needed for hydraulic maintenance of the ditch including higher flows used for ditch flushing.  Use of ditch flows and irrigation water to recharge the shallow aquifer relied on for domestic purposes is not considered.

5.      Furthermore, with respect to post-1907 ditches, the Acéquias object to PDR and FDR quantities that are inconsistent with methodologies used to calculate quantities for pre-1907 ditches.  Lower quantities proposed for post-1907 ditches are derived from licenses issued many decades ago and are no longer accurate.  Time and better methodologies have proven those lower numbers to be in error.  The adjudication should correct those numbers so that a uniform standard applies for quantifying PDR and FDR within each subsection.

6.      A fundamental problem with the proposed irrigation requirements is that they would impose an annual volume maximum that is incompatible with the variable supply conditions of the Rio Brazos. The proposed irrigation requirements are based upon calculating a crop demand and do not consider availability of supply.  If the Acéquias received their water from a regulated supply, such as from a storage reservoir, or from a reliable surface flow, they could operate based on monthly or even weekly demand.  But because flows of the stream are highly unregulated and variable, a ditch cannot operate that way.  Instead, the ditch's operations are necessarily supply driven:  when water is available, the ditch diverts as much as it can use, because its mayordomo does not know how long the water will last and when it will come back. In the spring, when flows are typically higher, the ditch will divert at its maximum capacity.

After flows from snow-melt runoff drop, supply to the ditch will depend on the vagaries of summer precipitation patterns.  Enforcement of the proposed PDR would put the Acéquias in the precarious position of having to choose whether to give up some of their snow-melt runoff supply for the uncertain prospect of summer rain flows.  That result is not practical and is contrary to the Acéquias' historic and lawful practices.

7.       The Acéquias object to any reduction in their historic amount of diversion.  Under New Mexico law the PDR of the ditch should be based upon the quantity of its maximum historic diversion for beneficial use.  Furthermore, in its Statement of Issues Regarding the Applicability of the Treaty of Guadalupe Hidalgo, filed June 1, 2006, the Associación de Acéquias Norteñas de Rio Arriba raised the following issue:  "5.  Whether the Acequias are subject to a reduction in diversion amount below their historical diversion amount[.]"   The Acéquias request the Court to consider this Treaty issue now as part of this order to show cause proceeding.

WHEREFORE, the Associación de Acéquias Norteñas de Rio Arriba and its six members diverting from the Rio Brazos request the Court to reject the proposed priority dates and irrigation requirements consistent with the above-stated objections.

Respectfully Submitted,

SHEEHAN & SHEEHAN, P.A.
40 First Plaza N.W., Suite 740 (87102)
Post Office Box 271
Albuquerque, New Mexico  87103
(505) 247-0411
*jwu@ssslawfirm.com*

***Electronically Filed***

BY:   */s/ John W. Utton*
        JOHN W. UTTON

4

DAVID BENAVIDES
New Mexico Legal Aid
P.O. Box 5175
Santa Fe, NM 87502
(505) 982-9886


Attorneys for Associación de Acéquias
Norteñas de Rio Arriba and its member ditches


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 1st day of September 2011, I filed the foregoing electronically through the CM/ECF system, which caused the parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing


/s/ *John W. Utton*
JOHN W. UTTON