IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO ex rel.          )
State Engineer,                                       )
                                                            )          No. 69cv07941-BB
        Plaintiffs                                      )
                                                            )          Consolidated with Cause No. 4922
        v.                                                 )          Rio Arriba County District Court
                                                            )
ROMAN ARAGON, et al.,                        )          Rio Chama Adjudication
                                                            )          Section 8 – Rio Puerco de Chama
        Defendants                                  )          Acequia Mesa del Medio
_____

**JOSE LEANDRO MARTINEZ and MAGDALENA MARTINEZ'S REPLY
TO CORLINDA LUJAN'S RESPONSE IN OPPOSITION TO MOTION TO
SUBSTITUTE PARTIES**

Movants file this reply to Corlinda H. Lujan's ("Lujan") *Response in Opposition to*

*Motion to Substitute Parties* [No. 10828] ("Response").  Movants assert that this Court has

jurisdiction and that Fed.R. Civ. Pro 25(c) is the appropriate rule of procedure to join Movants as

parties to this adjudication.   In support of their motion, Movants state the following:

**Reply to Lujan's Factual Allegations and Background of the Dispute.**

Lujan mistakenly believes that Movants seek to modify her water rights.  This belief is

premised on an incomplete understanding of the nature of irrigation water rights.   In New

Mexico, irrigation water rights are appurtenant to specific tracts of land. NMSA 1978, §72-1-2

(1907) )( ". . . waters appropriated for irrigation purposes . . . shall be *appurtenant to specified*

*lands* owned by the person . . . having the right to use the water, . . .") (emphasis added).

Adjudication decrees describes water rights used for irrigation by ". . . the *specific tracts of land*

*to which it shall be appurtenant . . .*"  NMSA 1978, §72-4-19 (1907) (emphasis added).

On June 1, 1962, the <u>Chacon</u> state district court entered its Decree adjudicating the

irrigation water rights in the Rio Puerco stream system.   Relevant portions of the Decree are attached as Exhibit A.   In keeping with New Mexico law, the Decree provides that:

> 6. . . .  all water rights hereafter fixed, determined and limited are *appurtenant to the lands . . .*, as set forth in *such specific portions* of this Decree, . . .

See Exhibit A at p. 3, ¶6 (emphasis added).   The Decree also specifies that:

> 2. . . ., it is held *for the purposes of this Decree* that each party or substituted party claimant is the owner of the respective tract or tracts of land.

See Exhibit A at p. 2, ¶2 (emphasis added).   Although the <u>Chacon</u> court determined the specific locations and areas of the tracts of land with appurtenant water rights, it did not make any legal determination as to the owners of those lands;  rather, it only *assumed* that the named parties owned the lands in order to enter the Decree.   The actual owner of the specific tracts of land to which water rights are adjudicated is the owner of the water rights appurtenant to that land. ***Bounds v. Carner,*** 53 N.M. 234, 205 P.2d 216 (1949).

Although the Decree lists "Jose Onisimo Lujan and wife Corlinda Lujan" in connection with 42.2 acres, the description of specific location of the 42.2 acres indexed to Hydrographic Survey Map Sheet 19, is the information that determines the owner of the water right.  See Exhibit A at p. 8.   Lujan is therefore incorrect in claiming that the Chacon Decree "adjudicated water rights to Corlinda H. Lujan . . . on 42.2 acres of land served by the Acequia Mesa del Medio."  Response at p. 2.  The Decree adjudicated water rights to the owners of those 42.2 acres.  Notwithstanding that Jose O. and Corlinda Lujan were *assumed* to be the owners of the 42.2 acres at the time the Decree was entered, they actually owned only a portion of the land, whereas Fabian Lujan owned the other significant part of the 42.2 acres at the time the Decree was entered, [Doc No. 10801-2, 3] and was the *actual* owner of all water rights appurtenant to the acres of land that he owned.  See Section I at pp. 5-6 below.  Movants became the owner of

those water rights when Fabian Lujan conveyed the land to them. ***Walker v. U.S***., 2007-NMSC-038,¶23,142 N.M. 45, 52.  [Doc No. 10801-4].

Significantly, Lujan does not dispute that Movants are owners of a portion of the 42.2 acres of land depicted on Map Sheet 19 [No. 10801-1, 10801-5], nor does she purport to show that the 42.2 acres shown on Map Sheet 19 are different that the 42.2 acres described in the Decree.  Instead, she complains of the quality of Movants' evidence, which consists of recorded instruments and a copy of the hydrographic survey.  Response at 6.   However, this same "evidence" was reviewed by the New Mexico State Engineer in 1984 and 1998, and recently by the attorneys for the State of New Mexico, who respectively determined such evidence to be sufficient to support the Change of Ownership of Water Rights filed by Movants in 1984 and the motion to substitute now before this Court.  Lujan also incorrectly states that Movants have never taken "legal action to pursue their alleged interest."  Response at 2.   Movants filed a Change of Ownership with the New Mexico State Engineer, who determined in 1987 that Movants own approximately 19.5 acres of the 42.2 acres, see Exhibit B, which was confirmed in 1998 by then-State Engineer Tom Turney.  See Exhibit C.

Lujan implies that Movants motion for substitution in this Court is "in retaliation for" her filing of a lawsuit against the Acequia Mesa del Medio, Response at p. 2., and is an attempt "to avoid litigating the ownership dispute." Response at p. 3.  Lujan mischaracterizes both her state court lawsuit, as well as Judge Pfeffer's ruling in that lawsuit.   Lujan filed a complaint for declaratory judgment and injunctive relief against the Acequia Mesa del Medio and its officers ("Acequia"), asking the Court to realign longstanding ditch interests.  The case was docketed in the First Judicial District Court as <u>Lujan v. Acequia Mesa del Medio</u>, No. D-117-CV-2011-00521.  See Exhibit D.  In lieu of an answer, the Acequia filed a *Motion to Dismiss for Failure to*

*Join Necessary Parties and for Lack of Jurisdiction* and a *Motion to Dismiss for Failure to State a Claim Pursuant to Rule 12(B)(6).*

Before the state district could schedule a hearing on the Acequia's motions to dismiss, Lujan filed an *Application for Temporary Restraining Order and Motion for Preliminary Injunction,* asserting that she was the owner of 42.2 acres of water rights and that the Acequia's recognition of ditch irrigation time for Jose Leandro Martinez was illegal.  Lujan attached to her application many of the same exhibits as she attached to her Response filed in this Court on Movant's Motion to Substitute Parties.  The Acequia's response, to which were attached many of the exhibits relied upon by Movants here, asserted that Lujan could not show a substantial likelihood she could prevail on the legal claims.  Unexpectedly, Lujan then withdrew her motion, effectively forestalling the state district court from making a determination of the "ownership issue" that Lujan now accuses Movants of attempting "to avoid litigating."  See Response at 3.

The state district court convened a hearing on the Acequia's motions to dismiss on June 15.  After oral argument  the court granted the Acequia's *Motion to Dismiss for Failure to Join Necessary Parties and for Lack of Jurisdiction*, holding that "the Declaratory Judgment Act "requires all persons be made parties who have, or claim any interest which would be affected by the Declaration, and no Declaration shall prejudice the rights of persons not parties to the proceeding," and that in order to go forward, Lujan must join all necessary parties,  Exhibit D at p. 9, lines 3-15.  The court's order reflects that there are three categories of persons and entities that Lujan must join prior to the state district court's jurisdiction over her claims.  See Exhibit D at p. 13, lines 16-21 and Exhibit E.

Contrary to Lujan's representation in her Response, the court did not order Lujan to join Movants "to litigate Movants' ownership claim," see Response at 1, nor did he state that the

purpose of joining the "Martinezes in the state court lawsuit is to litigate the ownership of water rights the Acequia asserts belong to the Martinezes." See [Doc. No. 10828-1 at p. 12-13, ¶4]. During argument prior to the court's ruling from the bench, Lujan's counsel raised the "ownership issue."   See Exhibit D at p. 8, lines 11-21.  The court, when allowing Lujan an opportunity to amend and join all the necessary parties, stated that in regard to the Martinezes and others, only that it was "clear under the [Declaratory Judgment] Act, that all those people need an opportunity to be heard."  See Exhibit D at p. 11 lines 1-10.

At this point in time, the state district court does not have jurisdiction to hear the "ownership issue" or any of Lujan's other complaints.  In contrast, this Court has the full authority to join Movants as parties to the overall Rio Chama stream system adjudication.

**Reply to Lujan's Argument**

I.      **Rule 25(c) is  the appropriate rule of civil procedure for substitution of a successor-in-interest.**

Lujan argues that Rule 25(c) is not the "appropriate vehicle for litigation of a water rights dispute."   Response at p. 3. As shown below, Movants do not seek a determination of heretofore undetermined water rights; Movants merely seek to be substituted in and joined as a party, based on their clear chain of title to land upon which water rights have already been determined, so as to be given notice of future proceedings in the adjudication of water rights in the Rio Chama Stream System.

"Substitution of a successor in interest or its joinder as an additional party under Rule 25(c) is generally within the sound discretion of the trial court." ***Prop-Jets, Inc. v. Chandler***, 575 F.2d 1322, 1324 (10th Cir. 1978).     Rule 25(c) provides:

> If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the

action or joined with the original party. The motion must be served as provided in
Rule 25(a)(3).

Contrary to Lujan's accusation that Movants are attempting to somehow "modify Mrs. Lujan's substantive rights," Response at 1, Movants seek to be substituted in as a party who is successor-in-interest to Pablita A. Lujan, the original plaintiff/counter-defendant in the Chacon adjudication suit, as owners of 19.5 acres of the 42.2 acres that were adjudicated water rights. Therefore, it is irrelevant that "there has been no transfer of interest from Mrs. Lujan to Movants," because Movants, like Lujan herself, are successors-in-interest to the original plaintiff Pablita A. Lujan, who was the widow of Jose O. Lujan, Sr.

The Chacon adjudication suit was initiated by the individual ditch members of the Acequia Mesa del Medio, the Acequia Mesa Poleo and the Acequia Pinatebel in July 1948. Pablita A. Lujan was one of the named Plaintiffs . See Exhibit G.  Corlinda Lujan is a successor-in-interest to Pablita A. Lujan through deeds from Pablita Lujan to Jose O. Lujan, Jr., (Corlinda Lujan's husband), see Exhibit H, and a subsequent deed to herself as Jose O. Lujan, Jr.'s widow. The location of Corlinda Lujan's land is depicted as belonging to "Heirs of Jose Onsesimo Lujan" on the 1964 survey attached to Movants' motion. [Doc. No. 10801-3]. Movants Jose Leandro and Magdalena are likewise successors-in-interest to Pablita A. Lujan, having purchased their property from Fabian Lujan. [Doc. No. 10801-2, 10801-4].   Movants therefore are on equal footing with Corlinda Lujan, claiming a transfer of interest as successors-in-interest to Pablita A. Lujan, the original party in this adjudication suit.

Water rights have already been determined by the adjudication court as being appurtenant to 42.2 acres of land specifically located as shown on Map Sheet 19 of the Rio Puerco Hydrographic Survey.  [Doc. No. 10801-1].  Movants do not seek any type of substantive modification in the water rights themselves.  What Movants seek derives directly from the

undisputed facts, i.e., that Movants are successors-in-interest to the original party who owned all or some of the 42.2 acres of land to which water rights were adjudicated.  (Lujan does not dispute that Movants are indeed the owners of part of that 42.2 acres.)  From this the Court can determine and have the record indicate that Movants are the present owners of 19.5 acres of water rights of the 42.2-acre tract set forth in the Decree, and can substitute Movants as parties on that basis.

**II.**    **Granting of Movants' Motion Is Necessary to Satisfy Constitutional Notice and Due Process Requirements of the Broader Rio Chama Adjudication Suit.**

As owners of land to which water rights have been adjudicated, Movants' substitution into this lawsuit is also necessary to satisfy constitutional due process requirements with respect to activities in the overall adjudication of the Rio Chama and its tributaries.  Periodically, *inter se* subproceedings take place in general stream adjudications in New Mexico in which the Court orders that notice of a settlement or claim be given to <u>all</u> parties in all sections (or designated sections) of the suit, and the parties served are required to object to the settlement or claim by a given deadline and are barred from objecting at a later date.  The State or movant in these cases are under a constitutional obligation, as well as a statutory obligation, to use an updated service list of parties that includes water right owners that may not have been included on previous such lists but who have come to the attention of the State as owners of lands on which there are adjudicated water rights.  ***Mullane v. Central Hanover Bank & Trust Co.****, 339 U. S. 306, 314 (1950)* (Constitutional due process requires, for "any proceeding which is to be accorded finality", notice to interested parties and an opportunity to present their objections; personal notice is required for those whose identities and whereabouts are known or readily ascertainable

by the exercise of reasonable diligence.).   NMSA 1978, §72-4-17 (1907) (In a general stream adjudication "all other claimants, so far as they can be ascertained, with reasonable diligence, *shall* be made parties") (emphasis added).  A motion to substitute is an appropriate way to join such newly-discovered water right owners into the suit.

The Rio Puerco section of the Rio Chama adjudication is subject to these types of subproceedings, and so the list of parties in that section must be updated when new information is obtained by the State.  For example, in 1995, notice and an opportunity to participate as an *inter se* objector was given to the then-known list of parties from the Rio Puerco Section (as well as other sections) of the settlement of the water rights Jicarilla Apache Tribe. See Exhibit I (relevant pages from Doc. No 4455, "Certificate of Service" of Notice of Proceedings on Jicarilla Apache Tribe's Water Rights).  Corlinda Lujan was served with this notice, *see* id., but Movants presumably were not, since they had not yet been substituted in as parties.  Omissions like these threaten to compromise the finality and the binding effect that is sought to be achieved in these subproceedings, particularly where the State has information, as it does now, that Movants are legitimate owners and claimants of water rights.   §72-4-17 ("all other claimants, so far as they can be ascertained, with reasonable diligence, shall be made parties").  See Exhibits B and C (Letters from OSE).  Granting Movant's motion would foreclose, with respect to any future notices, any claim that Movants, as known water right owners, were denied constitutional notice and due process from lack of inclusion on the service list.  Corlinda Lujan will of course remain a party and continue to receive notices as well.  The State, which is well aware of this notice issue, has concurred in Movants' Motion to Substitute Parties.

**III.     This court, as the adjudication court, has exclusive jurisdiction over questions regarding the determination of water rights in the Rio Chama stream system.**

Lujan argues that this Court does not have jurisdiction over any matters pertaining to the 1962 Decree of the Rio Puerco Section of the Rio Chama general stream adjudication.  This reflects a misunderstanding of the status of this case and the nature of this motion.  This Federal Court has jurisdiction over the adjudication of all water rights in the Rio Chama stream system including its tributaries.  Moreover, under the line of cases that includes most notably ***El Paso & R. I. R. Co. v. District Court of Fifth Judicial Dist.***, 36 N.M. 94, 8 P.2d 1064 (1932), this Court, because it is the adjudication court for this stream system, has *exclusive* jurisdiction over the determination of water rights throughout the Rio Chama Stream system.  ***El Paso & R. I. R. Co. v. District Court of Fifth Judicial Dist.***, 36 N.M. 94, 8 P.2d 1064 (1932); ***Elephant Butte Irrigation Dist. v. Regents of N.M. State Univ.***, 115 N.M. 229, 849 P.2d 372 (App. 1993); ***Brantley Farms v. Carlsbad Irrigation Dist.***, 1998-NMCA-23, 124 N.M. 698, 954 P.2d 763; ***State ex rel. Reynolds v. Sharp***, 66 N.M. 192, 334 P.2d 943 (1959).

The Rio Puerco Section was the original section of the Rio Chama that came under adjudication, being filed as Rio Arriba County District Court Cause No. 4922 on July 1, 1948.  Although a Decree was entered June 1, 1962, *see* Exhibit A, the Decree was amended subsequently by an Order entered on September 26, 1968 by the same Court under the same cause number.[1]  Exhibit J.  This 1968 modification of the Decree belies Lujan's contention that the Court lost jurisdiction over the Decree 30 days after it was entered in 1962.  Only days after

---

[1]  Various parties entered into and filed a Stipulation on September 26, 1968, addressing a needed correction to the Decree, and the Court entered an Order Approving Stipulation on that same day, stating "It is hereby ordered, adjudged and decreed that the Final Decree in this cause is hereby amended as provided by the stipulation."  Both pleadings are attached herein as Exhibit J.  The Stipulation modified the amount of acreage on a particular tract and affirmed the authority of acequia officers to administer water in accordance with the various acequia customs, traditions and by-laws.

this modification, the case was consolidated with a separate Rio Arriba district court action, No. 8294, which had been filed on August 26, 1961 as a general adjudication of the entire Rio Chama stream system, including all tributaries.  The October 7, 1968 Order granting the State's motion to consolidate, Exhibit K, could hardly have made it plainer on its face that the Court had retained jurisdiction over the 1962 Decree, stating:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that notice of any claim made hereafter in the above-styled and captions cause, affecting or concerning the rights to the use of the Rio Puerco de Chama as decreed in said Partial Final Judgment, shall be given to the said parties in Cause No. 4922 by service of process upon them, sufficiently setting forth the nature of said claim.

Exhibit K at 2 (emphasis added).

Lujan argues, against the plain language of this Order, that "the state court failed to retain jurisdiction over the [1962] Decree".  Response at 6.  She disregards not only the language of the Order, but the fact that the very same Court exercised jurisdiction by correcting the Decree under the same cause number six years after entry of the 1962 Decree, just prior to consolidation.  The Court's words and actions place it squarely among those numerous courts cited to on page 7 of Lujan's Response that retained jurisdiction over water decrees.  Lujan's citation to a Complaint filed after the 1962 decree does little to persuade otherwise.

On March 5, 1969, the consolidated case was removed to this Federal Court, upon petition by the United States, as noted by Lujan in her Response.  There is nothing in the record to suggest that the jurisdiction that the state court had retained in its 1968 consolidation Order did not pass to the Federal Court upon removal.  Lujan, having reached the erroneous conclusion that the state court had lost jurisdiction over the Rio Puerco Section Decree, argues that the Federal Court could not have recovered it.  Response at 8-9.  Not only does the Federal Court have exclusive jurisdiction over the Rio Puerco section of this case, it certainly has sufficient

authority, and moreover the constitutional and statutory obligation, to substitute into this suit Movants who are legitimate water right owners and who have not heretofore had the opportunity to receive notices and otherwise participate in this suit.  Indeed it is hard to imagine a state court or another court that would have the authority to order joinder into this suit.  Moreover, the Federal Court certainly has the authority to acknowledge Movants as the successors-in-interest to one of the original parties in the suit and as present owners of a portion of the water rights decreed as appurtenant to the 42.2-acre tract shown in the hydrographic survey.

WHEREFORE, for the reasons stated above, Movants respectfully request the Court to *substitute in and join* them as parties in regard to ownership of 19.5 acres of the 42.2 acres of land with water rights identified on Map Sheet 19 as belonging to Jose O. Lujan and for such other relief as may be just and proper.

Respectfully submitted,

NEW MEXICO LEGAL AID, INC.

*/s/ David Benavides*
_____

David Benavides
P.O. Box 5175
Santa Fe, NM 87502
Telephone:  (505) 982-9886
Facsimile: (505) 982-6278
davidb@nmlegalaid.org

Counsel for José Leandro and
Magdalena Martínez

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 9th day of July, 2012, I filed the foregoing electronically through the CM/ECF system, which caused the parties or counsel reflected on the Notice of Electronic Filing to be served by electronic means.

*/s/ David Benavides*
_____