2011 DEC -2 PM 2: 16

OFFICE OF THE
STATE ENGINEER
HEARINGS UNIT
SANTA FE, NM

## BEFORE THE NEW MEXICO STATE ENGINEER

| | |
|---|---|
| IN THE MATTER OF THE METERING ORDER ) | Hearing No. 11-042 |
| ISSUED TO THE M-B DITCH FOR THE ) | |
| DIVERSION OF SURFACE WATERS OF THE ) | OSE License No. 1974 |
| CHAMA RIVER IN THE RIO GRANDE BASIN IN ) | OSE File No. SP-1974 |
| THE STATE OF NEW MEXICO | |

## MOTION TO SET ASIDE THE SECOND METERING ORDER
## BASED ON THRESHOLD ISSUES IDENTIFIED IN THE SCHEDULING ORDER

COMES NOW, the M-B Ditch, by and through the undersigned, and hereby moves the State Engineer to set aside the second metering order issued on June 20, 2011, and as grounds therefore states as follows:

### BACKGROUND

The Scheduling Order in the above-captioned matter requested "motions on the statement of issues." The two issues identified were:

A.  To whom a Metering Order should be served upon in the context of the above-captioned case (i.e. the water rights holders on a ditch or an official/commissioner of a Ditch)?

B.  To which entities or water rights owners does a Metering Order, issued by State Engineer John R. D'Antonio, apply to in the context of the above-captioned case?

The undersigned interprets these to be threshold issues; as indicated at the scheduling conference, there remain other issues, identified in the aggrieval, that relate to the merits of issuing a metering order at all. Those, however, are proper subjects of the hearing on the merits, should the State Engineer deny this motion.

On December 10, 2010, the State Engineer issued a Metering Order regarding M-B Ditch. As described in M-B Ditch's first Notice of Aggrieval and Motion to Set Aside Metering Order, the Metering Order was sent by regular (not certified) mail to "C. Mott Woolley, M-B Ditch Association Chairman, c/o John Utton, 560 Montezuma Ave. Suite 201-D, Santa Fe, NM

## Exhibit A

87502." John Utton did not then, does not currently, and never has represented the M-B Ditch Association. Instead, he is counsel for the Acequias Norteñas. Further, upon information and belief, the address indicated on that cover letter was not Mr. Utton's then-current address. Following M-B Ditch's first Notice of Aggrieval and Motion to Set Aside Metering Order, the State Engineer re-sent the original Metering Order with a new cover letter. The operative text of the Metering Order "direct[s] *the water users of the M-B Ditch* and the Commissioners of the M-B Ditch to construct and maintain" a locking headgate and metering device. (Emphasis added). While properly sent by certified mail to C. Mott Woolley, the re-issued Metering Order has not been served upon the individual irrigators whom it directs to take action. M-B ditch likewise aggrieved this order, and it was set aside and assigned to this hearings unit docket.

1.    **Issue B**:  The Text of the Metering Order Provides that it Applies both to the Commissioners of the M-B Ditch Association *and* "the Water Users of the M-B Ditch."

The response to the second issue identified in the scheduling order is plain. The text of the metering order itself indicates that it is to be applied against both the M-B Ditch Association *and* all of the water users of the ditch. Specifically, following the recitals, the operative section of the order provides: **"NOW THEREFORE**, I, John R. D'Antonio Jr. P.E., State Engineer of the State of New Mexico, by virtue of the authority vested in me by the laws of the State of New Mexico, direct *the water users of the M-B Ditch* and the Commissioners of the M-B Ditch to construct and maintain" the locking headgate and measuring device. (Emphasis added). On its face, then, the order "direct[s]" all of the water rights holders to install the devices or face the criminal sanctions of NMSA 1978, § 72-5-20 (1907, as amended in 1941). Nonetheless, it has never been served on any of those individuals.

2

**Exhibit A**

II.   <u>Issue A</u>:  The Metering Order Should Have Been Served on the Individual Water Right Holders to Whom it "Direct[s]" Compliance and Who Are Most Impacted by its Requirements.

    A.    The Individual Irrigators, to Whom License 1974 was Issued, are Necessary and Indispensable Parties to any Proceeding Concerning the Validity of the Metering Order.

The Caption of the Metering Order identified License No. 1974, the master water rights file number for those who irrigate off of the M-B Ditch.  That license, as the caption suggests, was "grant[ed] *to the water users* under the M-B Ditch within the Lucerne Irrigation Project, Rio Arriba County, New Mexico."  *See* License, attached hereto as Exhibit 1 (emphasis added).  As indicated by the N.M.W.R.R.S printout and selected materials from the OSE file, collectively attached hereto as Exhibit 2, M-B Ditch itself is not recognized as having any water rights. Instead, those rights have been adjudicated to the individual irrigators.

Those individuals, having put the water diverted by the M-B Ditch Association to beneficial use, are the owners of the resulting water right.  *Snow v. Abalos*, 18 N.M. 681, 140 P. 1044, 1048 (1914) (concluding "that the right to divert water, or the water right, is appurtenant to specified lands, and inheres in the owner of the land; that the right is a several right, owned and exercised by the individual, and, the officers of the community acequia, in diverting the water act only as the agents of the appropriator.");  *see also Millheiser v. Long*, 10 N.M. 99, 61 P. 111, 113 (1911) (holding that the lower court erred in failing "to observe the distinction between a diversion and appropriation of water. . . .  Diversion is one of several elements necessary to a legal appropriation of water, and, while a valid appropriation may follow immediately upon the diversion of water from a stream by reason of concurrence of the other necessary elements, it is still but an element of that appropriation, and is not equivalent to it.");  *Harkey v. Smith*, 31 N.M.

**Exhibit A**

521, 247 P. 550, 551 (1926) ("Under this doctrine it is quite as necessary to make use of the water as it is to divert it, in fact, no appropriation can be effected without such use.").

Perhaps for that reason, M-B Ditch is not a party to the ongoing adjudication; instead, the State Engineer has served the individual irrigators with offers of judgment. In the email attached as Exhibit B to the second notice of aggrieval, Mr. Newville, representing the State, explained:

> Because these two ditches were never joined to the adjudication proceedings, and because no attorney has entered an appearance on their behalf effectively making them a party, the State's position with respect to these two ditch associations is that presently they are not a party to proceedings. The State has no plans to join them, and does not believe it is necessary to do so in order to adjudicate the water rights that belong to their members.
>
> I wanted to let you know how we are looking at this situation, and that since these two ditches are not parties, we do not plan to send a Notice and Order to Show Cause out to them with respect to the State's proposed priority dates and IWR for the water rights in these areas. I think any objections that the Court might entertain would have to be made by individuals.

The State Engineer did not join M-B Ditch to the adjudication suit to determine the scope and nature of water rights in the basin and "does not believe it is necessary to do so in order to adjudicate the water rights that belong to their members." However, when now issuing an order that dramatically impacts the administration of those rights, the State Engineer has *only* included M-B Ditch in the process. Clearly, both positions cannot be right.[1]

In any event, the individual irrigators are necessary parties to any process regarding a metering order on the ditch that supplies the water to which they hold rights. *Cf. Snow v. Abalos,*

---

[1] Indeed, it may well be that these issues should be deferred entirely to the adjudication court. The metering order comes in the context of a dispute between several of the irrigators off the M-B Ditch and the State Engineer about the proper amount of water to be diverted by the ditch as well as the proper amount to be delivered to the headgate. Those parties are also disputing the proper priority date for some of the lands within the ditch system that had actually irrigated prior to the 1931 Heron application. Those disputes will be resolved by the adjudication court, and it may be best to have the challenge to the metering order heard in that forum as well. Notably, Judge Valentine has concluded that the Lower Rio Grande adjudication court had jurisdiction to hear the groundwater metering order issued by the State Engineer for that basin. *See* Letter Opinion, attached hereto as Exhibit 3.

4

**Exhibit A**

18 N.M. 681, 140 P. 1044, 1048 (1914) ("If our conclusion is sound, and the right to divert and utilize water, acquired under a community ditch, is a several right, vested in the individual appropriator, it necessarily follows that the individual is a proper and necessary party in an action for the adjudication of water rights, where such rights are exercised through a community ditch. If it be true that the individual is the owner of the right to divert water, it would necessarily follow that he would only be bound by decree, in a suit, to which he was a party.").

In ordinary civil litigation, this question is governed by Rule 1-019 NMRA. Subsection A of that rule provides:

> A person who is subject to service of process *shall* be joined as a party in the action if:
>
> (1) in his absence complete relief cannot be accorded among those already parties; or
>
> (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may:
>
> (a) as a practical matter impair or impede his ability to protect that interest; or
>
> (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his claimed interest.

(Emphasis added). "The use of the word 'shall' imposes a mandatory, not discretionary, requirement." *Martinez v. Cities of Gold Casino*, 2009-NMCA-087, ¶ 30, 146 N.M. 735, 215 P.3d 44; *see also* NMSA 1978, § 12-2A-4(A) (1997).

The irrigators under M-B Ditch clearly have "an interest relating to the subject of the action" and are "so-situated that the disposition of the action in his absence may . . . as a practical matter impair or impede his ability to protect that interest." Indeed, because those irrigators, rather than the ditch association, hold the right to put water to beneficial use on their property through the ditch to be metered, they have a *greater* interest in the metering order than does the

**Exhibit A**

ditch association.  In determining whether an absent party is necessary under Rule 1-019(A)

NMRA,

> New Mexico courts have adopted a functional analysis of the effects of the person's absence upon the existing parties, the absent person, and the judicial process itself. . . .  Courts demonstrate a willingness to bring in an absent person whenever there exists a reasonable possibility that the person's interests will be affected by the conclusion of an action to which he has not been made a party.

*Srader v. Verant*, 1998-NMSC-025, ¶ 22, 125 N.M. 521, 964 P.2d 82 (citations omitted); *see also Gallegos v. Pueblo of Tesuque*, 2002-NMSC-012, ¶¶ 39-42, 132 N.M. 207, 46 P.3d 668.

There has been no showing or suggestion that the individual irrigators could not have

been made parties[2] to this matter—indeed, they have been made parties to the adjudication suit.

Because no such suggestion has been made, it is unnecessary at this point to determine, under

Rule 1-019(B), "whether in equity and good conscience the action should proceed among the

parties before it, or should be dismissed, the absent person being thus regarded as indispensable."

However, because they are clearly necessary, this matter cannot proceed until they have been

given the opportunity to become parties.

> **B.     Both NMSA 1978, § 72-2-16 (1973) and Principles of Due Process Require that the Parties "Direct[ed]" to Take Action by the Metering Order be Served with a Copy of the Order and Given an Opportunity to Aggrieve It.**

Under NMSA 1978, § 72-2-16 (1973), the State Engineer is authorized, as apparently

was the case here, to "enter[] a decision, act[] or refuse[] to act" without first holding a hearing.

However, in those circumstances, "*any person* aggrieved by the decision, act or refusal to act, is

entitled to a hearing, if a request for a hearing is made in writing within thirty days *after receipt*

*by certified mail* of notice of the decision, act or refusal to act." *Id.*  In this instance, the affected

---

[2] Because this is an administrative hearing rather than a civil litigation, the process is different.  As described in greater detail in the next section, State Engineer actions must be served upon the affected individuals by certified mail, whereupon those individuals may, but are not required to, provide notice that they are aggrieved by the action which notice entitles them to a hearing.

**Exhibit A**

irrigators of the M-B Ditch have not been given notice of the decision "by certified mail," as required by Section 72-2-16. Nonetheless, the order "direct[s]" them to take certain steps or risk committing a misdemeanor under Section 72-5-20. Because the metering order directly affects the irrigator's water rights, and further directs them to take certain actions, Section 72-2-16 plainly requires the order to be served on them by certified mail so that they have the opportunity to request a hearing. Even were the statute not abundantly clear, due process would certainly require the same. *Santa Fe Exploration Co. v. Oil Conservation Com'n of State of N.M.*, 114 N.M. 103, 109, 835 P.2d 825 (1992) ("At a minimum, procedural due process requires that before being deprived of life, liberty, or property, a person or entity be given notice of the possible deprivation and an opportunity to defend.").

      C.    **NMSA 1978, § 72-5-20 (1907, as amended in 1941) Likewise Requires the Metering Order be Issued to the "Owner" of the Ditch; Case Law Recognizes that Community Ditches such as the M-B Ditch are "Owned" by the Irrigators as Tenants in Common.**

Lastly, even were the individual irrigators not necessary parties, and even would Section 72-2-16 and due process not require notice to those irrigators of the metering order, Section 72-5-20, the very authority for the metering order itself, would require that the order be provided to those irrigators. That section provides:

> Every *ditch owner* shall, when requested to do so by the state engineer, construct and maintain a substantial headgate at the point where the water is diverted, and shall construct a measuring device, of a design approved by the state engineer, at the most practical point or points for measuring and apportioning the water as determined by the state engineer. The state engineer may order the construction of such device by the *ditch owner* and, if not completed within twenty days thereafter, refuse to deliver water to such *owner*. The taking of the water by such *ditch owner*, after refusal by the state engineer to deliver water to him until the construction of such device and the approval thereof by the state engineer, shall be a misdemeanor. Such devices shall be so arranged that they can be locked in place, and when locked by the state engineer or his authorized agent, for the measurement or apportionment of water, it shall be a misdemeanor for any unauthorized person to interfere with, disturb or change the same.

**Exhibit A**

(Emphasis added).  The ditch association, however, is not the "owner" of the M-B Ditch system; instead, it is the regulatory body entrusted to regulate the delivery of water to the irrigators.  *Cf. Snow v. Abalos*, 18 N.M. 681, 140 P. 1044, 1048 (1914) (noting the common practice that irrigators "appoint a mayordomo or superintendent, whose business it is to divert the waters from the stream into the irrigating ditch.  This mayordomo is but the agent of the individual owners of the lands under the ditch, and when he turns the water in he is acting for them.").  Case law recognizes that those irrigators from a community ditch own the ditch itself as tenants in common.  *Olson v. H & B Properties, Inc.*, 118 N.M. 495, 882 P.2d 536 (1994) ("Olson [Plaintiff] and H & B [Defendant], as successors in interest to the lands of the Swarts ditch community, own the physical structure of the ditch jointly as tenants in common."); *see also Holmberg v. Bradford*, 56 N.M. 401, 244 P.2d 785 (1952).  Because the landowners own the ditch in common, even the text of Section 72-5-20 requires that the "request" to meter the ditch be addressed to them.

> **WHEREFORE**, the M-B Ditch respectfully requests the Hearing Examiner set aside the second metering order based on threshold issues identified in the scheduling order.

Respectfully submitted,

LAW & RESOURCE PLANNING ASSOCIATES,
*A Professional Corporation*

By: _____
    Charles T. DuMars
    Stephen Curtice
    Attorneys for M-B Ditch
    Albuquerque Plaza, 201 Third Street NW Suite 1750
    Albuquerque, NM  87102
    (505) 346-0998 / Fax (505) 346-0997

**Exhibit A**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via first class mail on this 2nd day of December, 2011 as follows:

Stacey J. Goodwin, Esq.
Law Offices of Randall W. Childress
300 Galisteo Street, Suite 205
Santa Fe, NM 87501

Hilary Lamberton, Esq.
Administrative Litigation Unit
130 South Capitol Street
Concha Ortiz y Pino Building
Santa Fe, New Mexico 87504

Stephen Curtice

9

**Exhibit A**

293067

STATE OF NEW MEXICO )
                          )
OFFICE OF STATE ENGINEER )

## LICENSE TO APPROPRIATE WATER

License No. 1974                   Refers to Permit No. 1974

WHEREAS, on the 27th day of February, 1932, after notice pursuant to statute, the State Engineer did approve Application No. 1974, with a priority as of filing of formal application, being the 27th day of November, 1931, to appropriate 2,924 acre feet of surface water per annum from the Chama and Chamita Rivers, tributary of the Rio Grande, delivered through the M-B Ditch for stock, domestic and irrigation purposes upon 1,949 acres of land within the Lucerne Project near Chama, New Mexico, and

WHEREAS, the water rights appurtenant to 3.46 acres of land under Permit No. 1974 within Parcel 1, Tract 48, located in the N. pt. NW¼SE¼ Section 11, Township 1 South, Range 2 East, Martin and Borders Subdivision of a portion of the Tierra Amarilla Grant, Rio Arriba County, New Mexico, were assigned file No. 1974-A and were transferred to another point of diversion, place and purpose of use as reflected in Permit No. 1974-A issued the 11th day of June, 1968, and

WHEREAS, Proof of Completion of Works, Proof of Application of Water to Beneficial Use and Engineer's Report on final inspection have been filed in accordance with the rules and regulations of the State Engineer.

NOW, THEREFORE, I, S. E. Reynolds, State Engineer of the State of New Mexico, by virtue of the authority vested in me by the laws of said State, do hereby grant to the



**Exhibit A**

water users under the M-B Ditch within the Lucerne Irrigation Project, Rio Arriba County, New Mexico, this License No. 1974, with a priority dating from the filing of formal application, being the 27th day of November, 1931, to appropriate 1832.055 acre feet (1.5 acre feet per acre per annum) of surface water per annum by direct diversion from the Chama and Chamita Rivers, tributary of the Rio Grande delivered through the M-B Ditch for stock, domestic and irrigation purposes upon 1221.37 acres of land, and to appropriate 64.68 acre feet (1.0 acre foot per acre per annum) of surface water per annum by direct diversion from the Chama and Chamita Rivers, tributary of the Rio Grande delivered through the M-B Ditch for stock, domestic and irrigation purposes upon 64.68 acres of land; all irrigated land being within the Lucerne Irrigation Project located within the Martin and Borders Subdivision of a portion of the Tierra Amarilla Grant, Rio Arriba County, New Mexico, the irrigated tracts being described as follows:

Section 1, Township 1 South, Range 2 East, Martin and Borders Subdivision

| Subdivision | Parcel No. | Tract No. | Acres | Water Duty Ac.Ft. per Ac.per Annum | Owner |
|---|---|---|---|---|---|
| E. pt. NE¼NE¼ | 1 | 1 | 2.70 | 1.0 | Higinio Martinez |
| W. pt. NE¼NE¼ | 2 | 1 | 1.40 | 1.5 | Fernando Torrez |
| S. pt. NE¼NE¼ | 7 | 1 | 2.77 | 1.5 | Higinio Martinez |
| SW pt. NW¼NE¼ | 1 | 1-A | 0.12 | 1.0 | K. A. Heron |
| S. pt. NE¼NW¼ | 1 | 2 | 12.77 | 1.5 | John C. Woolley |
| W. pt. NW¼NW¼ | 1 | 3 | 7.02 | 1.5 | Juan Mares |
| E. pt. NW¼NW¼ | 2 | 3 | 3.00 | 1.5 | John C. Woolley |
| SE pt. NW¼NW¼ | 3 | 3 | 5.00 | 1.5 | John C. Woolley |
| W. pt. SE¼NE¼ | 1 | 11 | 16.04 | 1.5 | Fernando Torrez |

**Exhibit A**

| Subdivision | Parcel No. | Tract No. | Acres | Water Duty Ac.Ft. per Ac.per Annum | Owner |
|---|---|---|---|---|---|
| NE pt. SE¼NE¼ | 2 | 11 | 0.90 | 1.0 | Higinio Martinez |
| SE pt. SE¼NE¼ | 3 | 11 | 1.38 | 1.5 | Juan Rael |
| E. pt. SE¼NE¼ | 6 | 11 | 11.87 | 1.5 | Higinio Martinez |
| W. pt. SW¼NE¼ | 2 | 12 | 7.30 | 1.5 | John C. Woolley |
| SW pt. SW¼NE¼ | 3 | 12 | 1.70 | 1.5 | K. A. Heron |
| E. pt. SW¼NE¼ | 5 | 12 | 9.00 | 1.5 | Higinio Martinez |
| SE¼NW¼ | 1 | 13 | 31.70 | 1.5 | John C. Woolley |
| SW pt. SE¼NW¼ | 2 | 13 | 0.80 | 1.5 | K. A. Heron |
| NE pt. SW¼NW¼ | 1 | 14 | 11.10 | 1.5 | John C. Woolley |
| NW pt. SW¼NW¼ | 2 | 14 | 13.02 | 1.5 | Juan Mares |
| SW pt. SW¼NW¼ | 3 | 14 | 1.63 | 1.5 | Ruth Overly |
| SE pt. SW¼NW¼ | 4 | 14 | 2.00 | 1.5 | K. A. Heron |
| S. pt. SW¼NW¼ | 5 | 14 | 4.20 | 1.5 | K. A. Heron |
| S. pt. NE¼SE¼ | 1 | 18 | 16.20 | 1.5 | John C. Woolley |
| NE pt. NE¼SE¼ | 2 | 18 | 4.13 | 1.5 | Juan Real |
| NW pt. NE¼SE¼ | 3 | 18 | 2.66 | 1.5 | Juan Real |
| SW. pt. NW¼SE¼ | 2 | 19 | 1.80 | 1.5 | K. A. Heron |
| S. pt. NW¼SE¼ | 3 | 19 | 7.57 | 1.5 | Robert F. Brashar |
| NE pt. NW¼SE¼ | 4 | 19 | 2.29 | 1.5 | Higinio Martinez |
| SE pt. NW¼SE¼ | 5 | 19 | 5.30 | 1.0 | Robert F. Brashar |
| E. pt. NW¼SE¼ | 6 | 19 | 2.90 | 1.5 | K. A. Heron |
| NW pt. NW¼SE¼ | 7 | 19 | 1.50 | 1.5 | K. A. Heron |
| W. pt. NE¼SW¼ | 1 | 20 | 5.00 | 1.5 | Billy Cheatham |
| E. pt. NE¼SW¼ | 2 | 20 | 10.90 | 1.5 | K. A. Heron |
| NE pt. NE¼SW¼ | 3 | 20 | 0.70 | 1.5 | John C. Woolley |
| SW pt. NE¼SW¼ | 4 | 20 | 2.09 | 1.5 | Florian and Juan Gonzales |
| SE pt. NE¼SW¼ | 5 | 20 | 1.75 | 1.5 | Florian and Juan Gonzales |
| N. pt. NE¼SW¼ | 7 | 20 | 0.80 | 1.0 | K. A. Heron |
| NE pt. NW¼SW¼ | 1 | 21 | 9.06 | 1.5 | Neil Cross |
| W. pt. NW¼SW¼ | 1-A | 21 | 8.75 | 1.5 | Ruth Overly |
| S. pt. NW¼SW¼ | 2 | 21 | 12.94 | 1.5 | Neil Cross |
| W. pt. SE¼SE¼ | 1 | 24 | 28.40 | 1.5 | John C. Woolley |
| E. pt. SW¼SE¼ | 1 | 25 | 11.00 | 1.5 | Robert F. Brashar |
| NW pt. SW¼SE¼ | 2 | 25 | 3.56 | 1.5 | Robert F. Brashar |
| SW pt. SW¼SE¼ | 3 | 25 | 4.18 | 1.5 | Florian and Juan Gonzales |
| W. pt. SE¼SW¼ | 2 | 26 | 4.29 | 1.5 | Billy Cheatham |
| E. pt. SE¼SW¼ | 2-A | 26 | 26.25 | 1.5 | Florian and Juan Gonzales |
| SW¼SW¼ | 3 | 27 | 30.08 | 1.5 | Billy Cheatham |
| | | | 351.52 | | |

Section 2, Township 1 South, Range 2 East, Martin and Borders Subdivision

| Subdivision | Parcel No. | Tract No. | Acres | Water Duty Ac.Ft. per Ac.per Annum | Owner |
|---|---|---|---|---|---|
| E. pt. NE¼NE¼ | 3 | 4 | 4.46 | 1.5 | Juan Mares |
| S. pt. NE¼NE¼ | 4 | 4 | 4.20 | 1.5 | K. A. Heron |
| W. pt. NE¼NE¼ | 5 | 4 | 7.54 | 1.5 | Wayne Williams |
| W. pt. NW¼NE¼ | 2 | 5 | 4.40 | 1.5 | K. A. Heron |

**Exhibit A**

Section 14, Township 1 South, Range 2 East, Martin and Borders Subdivision

| Subdivision | Parcel No. | Tract No. | Acres | Water Duty Ac.Ft. per Ac.per Annum | Owner |
|---|---|---|---|---|---|
| W. pt. NW¼NW¼ | 1 | 58 | 16.60 | 1.5 | L.R. & Alice J. Wood |
| NE pt. NW¼NW¼ | 2 | 58 | 3.44 | 1.5 | L.R. & Alice J. Wood |
| W. pt. SW¼NW¼ | 1 | 61 | 19.40 | 1.5 | L.R. & Alice J. Wood |
| | | | 39.44 | | |

the same to be used as above stated, and can be changed only as provided by law, and provided that the total amount of water from all combined sources shall not exceed 1 or 1½ acre feet per acre per annum delivered upon said land described hereinbefore, and further provided that this license be not exercised to the detriment of any other persons having prior, valid and existing rights to the use of the waters of this stream system.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal this _17th_ day of _July_, 1970.

S. E. Reynolds
State Engineer

By: _D. E. Gray_
D. E. Gray
Chief
Water Rights Division

**Exhibit A**



# New Mexico Office of the State Engineer
# Water Right Summary


get image list

WR File Number:  SP 01974
Primary Purpose:  IRR      IRRIGATION
Primary Status:  ADJ      ADJUDICATED
Total Acres:  0
Total Diversion:  0
Owner:  M-B DITCH

EXHIBIT
2

## Documents on File

| | Doc | File/Act | Status 1 | 2 | 3 | Transaction Desc. | From/To | Acres | Diversion | Consumptive |
|---|---|---|---|---|---|---|---|---|---|---|
| get images | ORDER | 2003-07-31 | ADJ | PRC | ABS | SP 01974 | T | 0 | 0 | |
| get images | COWNF | 2001-05-07 | CHG | PRC | ABS | SP 01974 | T | 0 | 0 | |
| get images | COWNF | 2001-04-01 | CHG | PRC | ABS | SP 01974 | T | 0 | 0 | |
| get images | COWNF | 2000-12-11 | CHG | PRC | ABS | SP 01974 | T | 0 | 0 | |
| get images | COWNF | 2000-10-17 | CHG | PRC | ABS | SP 01974 | T | 0 | 0 | |
| get images | COWNF | 2000-10-12 | CHG | PRC | ABS | SP 01974 | T | 0 | 0 | |
| get images | COWNF | 2000-10-12 | CHG | PRC | ABS | SP 01974 | T | 0 | 0 | |
| get images | COWNF | 2000-04-12 | CHG | PRC | ABS | SP 01974 | T | 0 | 0 | |
| get images | COWNF | 1995-08-17 | CHG | PRC | ABS | SP 01974 | T | 0 | 0 | |
| get images | COWNF | 1992-11-18 | CHG | PRC | ABS | SP 01974 | T | 0 | 0 | |
| get images | COWNF | 1987-07-16 | CHG | PRC | ABS | SP 01974 | T | 0 | 0 | |
| get images | COWNF | 1985-01-22 | CHG | PRC | ABS | SP 01974 | T | 0 | 0 | |
| get images | COWNF | 1984-11-14 | CHG | PRC | ABS | SP 01974 | T | 0 | 0 | |
| get images | COWNF | 1984-09-24 | CHG | PRC | ABS | SP 01974 | T | 0 | 0 | |
| get images | COWNF | 1983-12-21 | CHG | PRC | ABS | SP 01974 | T | 0 | 0 | |
| get images | COWNF | 1983-12-21 | CHG | PRC | ABS | SP 01974 | T | 0 | 0 | |
| get images | COWNF | 1982-01-12 | CHG | PRC | ABS | SP 01974 | T | 0 | 0 | |
| get images | COWNF | 1982-01-12 | CHG | PRC | ABS | SP 01974 | T | 0 | 0 | |
| get images | COWNF | 1980-06-26 | CHG | PRC | ABS | SP 01974 | T | 0 | 0 | |
| get images | COWNF | 1978-10-26 | CHG | PRC | ABS | SP 01974 | T | 0 | 0 | |
| get images | COWNF | 1978-02-20 | CHG | PRC | ABS | SP 01974 | T | 0 | 0 | |
| get images | COWNF | 1977-02-01 | CHG | PRC | ABS | SP 01974 | T | 0 | 0 | |
| get images | COWNF | 1976-07-14 | CHG | PRC | ABS | SP 01974 | T | 0 | 0 | |
| get images | COWNF | 1976-06-04 | CHG | PRC | ABS | SP 01974 | T | 0 | 0 | |
| get images | COWNF | 1976-04-29 | CHG | PRC | ABS | SP 01974 | T | 0 | 0 | |
| get images | COWNF | 1974-04-17 | CHG | PRC | ABS | SP 01974 | T | 0 | 0 | |

**Exhibit A**

## Documents on File

| Doc | File/Act | Status 1 | 2 | 3 | Transaction Desc. | From/To | Acres | Diversion | Consumptive |
|---|---|---|---|---|---|---|---|---|---|
| get images COWNF | 1974-01-07 | CHG | PRC | ABS | SP 01974 | T | 0 | 0 | |
| get images COWNF | 1972-05-25 | CHG | PRC | ABS | SP 01974 | T | 0 | 0 | |
| get images COWNF | 1970-11-05 | CHG | PRC | ABS | SP 01974 | T | 0 | 0 | |
| get images COWNF | 1970-09-11 | CHG | PRC | ABS | SP 01974 | T | 0 | 0 | |
| get images LIC | 1970-07-17 | LIC | CRT | ABS | SP 01974 | T | 1286.05 | 1896.735 | |
| get images COWNF | 1969-02-14 | CHG | PRC | ABS | SP 01974 | T | 0 | 0 | |
| get images COWNF | 1969-02-14 | CHG | PRC | ABS | SP 01974 | T | 0 | 0 | |
| get images COWNF | 1963-11-14 | CHG | PRC | ABS | SP 01974 | T | 0 | 0 | |
| get images COWNF | 1962-12-10 | CHG | PRC | ABS | SP 01974 | T | 0 | 0 | |
| get images COWNF | 1959-07-22 | CHG | PRC | ABS | SP 01974 | T | 0 | 0 | |
| get images APPRO | 1932-02-27 | PMT | PBU | ABS | SP 01974 | T | 1949 | 2924 | |

## Current Points of Diversion

(NAD83 UTM in meters)

| POD Number | Source | Q Q Q 64 16 4 Sec Tws Rng | X | Y | Other Location Desc |
|---|---|---|---|---|---|
| SP 01974 | | | 358284 | 4085641 | |

## Priority Summary

| Priority | Status | Acres | Diversion | Pod Number | Source |
|---|---|---|---|---|---|
| 11/27/1931 | ADM | 0 | 0 | SP 01974 | |

## Place of Use

| Q 256 | Q 64 | Q 16 | Q 4 | Sec Tws Rng | Acres | Diversion | CU | Use | Priority | Status | Other Location Desc |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | 0 | 0 | | IRR | | ADJ | SEE SP-1974-1 THRU SP-1974-49 FOR INDIVIDUAL WATER RIGHTS |
| | 1 | 1 | 01 | 01S 02E | 0 | 0 | | NRT | | ADJ | SEE SP-1974-1 THRU SP-1974-49 |
| | 1 | 1 | 01 | 01S 02E | 0 | 0 | | NRT | | ADJ | SEE SP-1974-1 THRU SP-1974-49 |
| | 1 | 1 | 01 | 01S 02E | 0 | 0 | | NRT | | ADJ | SEE SP-1974-1 THRU SP-1974-49 |
| | 1 | 1 | 02 | 01S 02E | 0 | 0 | | NRT | | ADJ | SEE SP-1974-1 THRU SP-1974-49 |
| | 1 | 1 | 11 | 01S 02E | 0 | 0 | | NRT | | ADJ | SEE SP-1974-1 THRU SP-1974-49 |
| | 1 | 1 | 12 | 01S 02E | 0 | 0 | | NRT | | ADJ | SEE SP-1974-1 THRU SP-1974-49 |
| | 1 | 1 | 14 | 01S 02E | 0 | 0 | | NRT | | ADJ | SEE SP-1974-1 THRU SP-1974-49 |
| | 1 | 1 | 14 | 01S 02E | 0 | 0 | | NRT | | ADJ | SEE SP-1974-1 THRU SP-1974-49 |
| | 1 | 2 | 01 | 01S 02E | 0 | 0 | | NRT | | ADJ | SEE SP-1974-1 THRU SP-1974-49 |
| | 1 | 2 | 02 | 01S 02E | 0 | 0 | | NRT | | ADJ | SEE SP-1974-1 THRU SP-1974-49 |
| | 1 | 2 | 02 | 01S 02E | 0 | 0 | | NRT | | ADJ | SEE SP-1974-1 THRU SP-1974-49 |

# Exhibit A

 

**M-B DITCH GUIDE**
**FILE SP-1974**
**Sorted by File Number/Subfile**

The following guide lists the Water Right File Number assigned to each subfile on the M-B Ditch. This is the owner and acreage provided by the Legal Service Division (Adjudicated Order or the Hydrographic Survey Report). Changes of ownership, splits, etc. will need to be researched under the suffix shown with the possible addition of an A, B, C, etc. For example, if water File Number SP-1974-2 is split between four owners, it will become SP-1974-2, SP-1974-2A, SP-1974-2B, and SP-1974-2C.
TBD (to be determined).

| WR FILE N( | Subfile | Defendant Name | Map.Tract | Priority | Acre | Duty | Diversion |
|---|---|---|---|---|---|---|---|
| SP-1974 | Order | | | | | | |
| SP-1974-1 | CHCV-003-0001-A | Porter Family Trust | CHCV-003-0001-A | 11/27/1931 | 1 | 2.18 | 2.18 |
| SP-1974-2 | CHCV-003-0002-A | Boyd Family Revocable Trust | CHCV-003-0002-A | 11/27/1931 | 24.4 | 2.18 | 53.192 |
| SP-1974-3 | CHCV-003-0002-B | Boyd Family Revocable Trust | CHCV-003-0002-B | 11/27/1931 | 11 | 2.18 | 23.98 |
| SP-1974-4 | CHCV-003-0003-A | Rennee Martinez | CHCV-003-0003-A | 11/27/1931 | 23.2 | 2.18 | 50.576 |
| SP-1974-5 | CHCV-003-0003-B | Rennee Martinez | CHCV-003-0003-B | No Right | 5.4 | 0.00 | 0 |
| SP-1974-6 | CHCV-003-0003-C | Rennee Martinez | CHCV-003-0003-C | 11/27/1931 | 3.2 | 2.18 | 6.976 |
| SP-1974-7 | CHCV-003-0004-A | Yvonne Torrez | CHCV-003-0004-A | 11/27/1931 | 26.7 | 2.18 | 58.206 |
| SP-1974-8 | CHCV-003-0004-B | Yvonne Torrez | CHCV-003-0004-B | 11/27/1931 | 0.1 | 2.18 | 0.218 |
| SP-1974-9 | CHCV-003-0005-B | Dr. Pat Hale | CHCV-003-0005-A | No Right | 7.1 | 0.00 | 0 |
| SP-1974-10 | CHCV-003-0006-A | Johnny Rael | CHCV-003-0006-A | 11/27/1931 | 4 | 2.18 | 8.72 |
| SP-1974-11 | CHCV-003-0007-A | Jeff. M. Daggett & Maxine Daggett | CHCV-003-0007-A | 11/27/1931 | 1.9 | 2.18 | 4.142 |
| SP-1974-12 | CHCV-003-0008-A | Pedro & Rose Torrez Trust | CHCV-003-0008-A | 11/27/1931 | 1 | 2.18 | 2.18 |
| SP-1974-13 | CHCV-003-0008-B | Pedro & Rose Torrez Trust | CHCV-003-0008-B | 11/27/1931 | 2.7 | 2.18 | 5.886 |
| SP-1974-14 | CHCV-003-0009-A | Los Campos De Chama, LLC | CHCV-003-0009-A | 11/27/1931 | 258.6 | 2.18 | 563.748 |
| SP-1974-15 | CHCV-003-0010-A | Vigil Family Trust | CHCV-003-0010-A | 11/27/1931 | 29.4 | 2.18 | 64.092 |
| SP-1974-16 | CHCV-003-0011-A | Lydia J. Garcia & Napeoleon R. Garcia | CHCV-003-0011-A | 11/27/1931 | 0.7 | 2.18 | 1.526 |
| SP-1974-17 | CHCV-003-0012-A | Betty M. Martin | CHCV-003-0012-A | 11/27/1931 | 0.7 | 2.18 | 1.526 |
| SP-1974-18 | CHCV-003-0013-A | Charles C. Hobbs | CHCV-003-0013-A | 11/27/1931 | 19.9 | 2.18 | 43.382 |
| SP-1974-19 | CHCV-003-0014-A | Celine M. Brown & Orrin G. Brown | CHCV-003-0014-A | 11/27/1931 | 43.7 | 2.18 | 95.266 |
| SP-1974-20 | CHCV-003-0015-A | Angie Valdez & Don Valdez | CHCV-003-0015-A | 11/27/1931 | 4.8 | 2.18 | 10.464 |
| SP-1974-21 | CHCV-003-0016-A | Julia A. Meston & Russel D. Meston | CHCV-003-0016-A | 11/27/1931 | 2.8 | 2.18 | 6.104 |
| SP-1974-22 | CHCV-003-0017-A | Robert Gallegos Jr. & Maria Martinez Mathews | CHCV-003-0017-A | 11/27/1931 | 0.5 | 2.18 | 1.09 |
| SP-1974-23 | CHCV-003-0018-A | Marvin R. Crane & Sandra A. Crane | CHCV-003-0018-A | 11/27/1931 | 6.4 | 2.18 | 13.952 |

# Exhibit A

| | | | | | | |
|---|---|---|---|---|---|---|
| SP-1974-24 CHCV-003-0019-A | Cannon Gonzales & Florian Gonzales | CHCV-003-0019-A | 11/27/1931 | 21.5 | 2.18 | 46.87 |
| SP-1974-25 CHCV-003-0020-A | June J. Overley Living Trust | CHCV-003-0020-A | 11/27/1931 | 106.8 | 2.18 | 232.824 |
| SP-1974-26 CHCV-003-0021-A | Robert R. Kissam | CHCV-003-0021-A | 11/27/1931 | 2.5 | 2.18 | 5.45 |
| SP-1974-27 CHCV-003-0022-A | Mundy & Mundy ,INC | CHCV-003-0022-A | 11/27/1931 | 1.9 | 2.18 | 4.142 |
| SP-1974-28 CHCV-003-0023-A | James W. Mcelhaney & Maxine Mcelhaney | CHCV-003-0023-A | 11/27/1931 | 16.3 | 2.18 | 35.534 |
| SP-1974-29 CHCV-003-0024-A | Andrew Conder Jr., Cheryl Conder, Kenneth Conder, Peter J. Conder & Russell Fink | CHCV-003-0024-A | 11/27/1931 | 3.2 | 2.18 | 6.976 |
| SP-1974-30 CHCV-003-0024-B | Andrew Conder Jr., Cheryl Conder, Kenneth Conder, Peter J. Conder & Russell Fink | CHCV-003-0024-B | 11/27/1931 | 63.6 | 2.18 | 138.648 |
| SP-1974-31 CHCV-003-0025-A | Elizabeth Ann Harris & Floyd Harris | CHCV-003-0025-A | 11/27/1931 | 0.2 | 2.18 | 0.436 |
| SP-1974-32 CHCV-003-0025-B | Elizabeth Ann Harris & Floyd Harris | CHCV-003-0025-B | No Right | 0.5 | 0.00 | 0 |
| SP-1974-33 CHCV-003-0026-A | Carlotta Valdez & Maximilo Valdez | CHCV-003-0026-A | 11/27/1931 | 0.2 | 2.18 | 0.436 |
| SP-1974-34 CHCV-003-0027-A | Michael Montano, Peggy Montano, Steve Montano & Steven Montano | CHCV-003-0027-A | 11/27/1931 | 0.2 | 2.18 | 0.436 |
| SP-1974-35 CHCV-003-0027-B | Michael Montano, Peggy Montano, Steve Montano & Steven Montano | CHCV-003-0027-B | No Right | 0.1 | 0.00 | 0 |
| SP-1974-36 CHCV-003-0028-A | Victoria L. Skrondahl | CHCV-003-0028-A | 11/27/1931 | 0.3 | 2.18 | 0.654 |
| SP-1974-37 CHCV-003-0029A-A | Dan Russom & Mary Russom | CHCV-003-0029A-A | 11/27/1931 | 3.7 | 2.18 | 8.066 |
| SP-1974-38 CHCV-003-0029B-A | Andrew Hurd & Daniel Hurd | CHCV-003-0029B-A | 11/27/1931 11/27/1931 | 21.5 | 2.18 | 46.87 |
| SP-1974-39 CHCV-003-0030-A | Randy Pettingill | CHCV-003-0030-A | 11/27/1931 | 35.4 | 2.18 | 77.172 |
| SP-1974-40 CHCV-003-0030-B | Randy Pettingill | CHCV-003-0030-B | No Right | 2 | 0.00 | 0 |
| SP-1974-41 CHCV-003-0031-A | Rosalie Ann Gonzales | CHCV-003-0031-A | 11/27/1931 | 39.3 | 2.18 | 85.674 |
| SP-1974-42 CHCV-003-0031-B | Rosalie Ann Gonzales | CHCV-003-0031-B | 11/27/1931 | 4 | 2.18 | 8.72 |
| SP-1974-43 CHCV-003-0032-A | Estate of Juan Gonzales | CHCV-003-0032-A | 11/27/1931 | 3.4 | 2.18 | 7.412 |
| SP-1974-44 CHCV-003-0033-A | Estate of Juan Gonzales | CHCV-003-0033-A | 11/27/1931 | 33.3 | 2.18 | 72.594 |
| SP-1974-45 CHCV-003-0034-A | E.T Reilly Sr. Trustee | CHCV-003-0034-A | 11/27/1931 | 13.1 | 2.18 | 28.558 |
| SP-1974-46 CHCV-003-0034-B | E.T Reilly Sr. Trustee | CHCV-003-0034-B | 11/27/1931 | 7.2 | 2.18 | 15.696 |
| SP-1974-47 CHCV-003-0034-C | E.T Reilly Sr. Trustee | CHCV-003-0034-C | 11/27/1931 | 2.8 | 2.18 | 6.104 |
| SP-1974-48 CHCV-003-0035-A | Jose G. Salazar | CHCV-003-0035-A | 11/27/1931 | 21.5 | 2.18 | 46.87 |
| SP-1974-49 CHCV-004-0001-A | H&H Minerals, Inc Plan Employees' Pension & Trust | CHCV-004-0001-A | 11/27/1931 | 11.6 | 2.18 | 25.288 |

**Exhibit A**

 

| | | | | | | |
|---|---|---|---|---|---|---|
| SP-1974-50 CHCV-004-0001-B | H&H Minerals, Inc Employees' Pension Plan & Trust | CHCV-004-0001-B | 11/27/1931 | 20.9 | 2.18 | 45.562 |
| SP-1974-51 CHCV-004-0001-C | H&H Minerals, Inc Employees' Pension Plan & Trust | CHCV-004-0001-C | No Right | 188.7 | 0.00 | 0 |
| SP-1974-52 CHCV-004-0001-D | H&H Minerals, Inc Employees' Pension Plan & Trust | CHCV-004-0001-D | No Right | 7.7 | 0.00 | 0 |
| SP-1974-53 CHCV-004-0002-A | Los Campos De Chama, LLC | CHCV-004-0002-A | 11/27/1931 | 167.6 | 2.18 | 365.368 |
| SP-1974-54 CHCV-004-0002-B | Los Campos De Chama, LLC | CHCV-004-0002-B | 11/27/1931 | 3.2 | 2.18 | 6.976 |
| SP-1974-55 CHCV-004-0003-A | John Hiler | CHCV-004-0003-A | 11/27/1931 | 3.2 | 2.18 | 6.976 |
| SP-1974-56 CHCV-004-0004-A | Chama Investments, Co | CHCV-004-0004-A | No Right | 30.3 | 0.00 | 0 |

# Exhibit A



DAY FILE   Verde

JAN 0 2 2006

LAW & RESOURCE
PLANNING ASSOCIATES, P.C.

## State of New Mexico
## Third Judicial District Court

201 W. PICACHO, SUITE A
LAS CRUCES, NM 88005
CHAMBERS: (505) 523-8235
FAX: (505) 526-8330

HONORABLE JERALD A. VALENTINE
DISTRICT JUDGE, DIVISION IV

LINDA BROWN
TRIAL COURT ADMINISTRATIVE ASSISTANT

December 22, 2006

R. Lee Leininger, Esq.
U.S. Department of Justice
1961 Stout St., Ste. 800
Denver, CO 80294

Christopher Rich, Esq.
U.S. Department of Interior
125 South State Street, Rm. 6201
Salt Lake City, UT 84138

Stephen Hubert, Esq.
Steven L. Hernandez, Esq.
P.O. Box 2857
Las Cruces, NM 88004-2857

Joel Newton, Esq.
P.O. Box 16169
Las Cruces, NM 88004-6169

Ralph W. Richards, Esq.
Attorney at Law
P.O. Box 137
Fairacres, NM 88033-0137

Jay Stein, Esq.
Stein & Brockman, P.A.
P.O. Box 5250
Santa Fe, NM 87502-5250

James M. Speer, Jr., Esq.
300 E. Main St., Ste. 1440
El Paso, TX 79901

Benjamin Phillips, Esq.
White, Koch, Kelly & McCarthy, P.A.
P.O. Box 787
Santa Fe, NM 87504-0787

John W. Utton, Esq.
Sheehan, Sheehan & Stelzner, P.A.
P.O. Box 271
Albuquerque, NM 87103-0271

Charles T. Dumars, Esq.
Law & Resource Planning Assoc. P.C.
201 3rd St. Nw, Suite 1370
Albuquerque, NM 87102-3368

Tim De Young, Esq.
Maria O'Brien, Esq.
Modrall Sperling
P.O. Box 2168
Albuquerque, NM 87103-2168

Glenn Hall, Esq.
Sandenaw, Piazza, Anderson, P.C.
2951 Roadrunner Pkwy.
Las Cruces, NM 88011



EXHIBIT
3

**Exhibit A**

Counsel Opinion Letter
State, et al v. EBID, et al
December 22, 2006
Page 2

Kenneth L. Beal, Esq.
P.O. Box 725
Las Cruces, NM 88004-0725

Willaim R Babbington
Holt & Babbington, P.c.
P.O. Box 2699
Las Cruces, NM 88004

Stephen E. Hosford, Esq.
Martin, Lutz, Roggow, Hosford, P.C.
P.O. Box 1837
Las Cruces, NM 88004-1837

Herman E Ortiz, Esq.
P.O. Box 75
Garfield, NM 87936

Gary Risley, Esq.
Seth V. Bingham
P.O. Box 869
Farmington, NM 87499

James Scott Boyd
Box 162
4400 N. Scottsdale Road #9
Scottsdale, AZ 85250

Rosanne Camunez, Esq.
833 N. Alameda Blvd.
Las Cruces, NM 88001

Armando Torres, Esq.
P.O. Box 1420
Los Lunas, NM 87031

Anthony F. Avallone, Esq.
P.O. Box 6155
Las Cruces, NM 88006-6155

Tessa T. Davidson, Esq.
Davidson Law Firm, LLC.
P.O. Box 2240
Corrales, NM 87048

Jolene McCaleb, Esq.
Wolf, Taylor & Mccaleb
P.O. Box 30428
Albuquerque, NM 87190-0428

Michael Thomas, Esq.
Stephen Hughes, Esq.
P.O. Box 1148
Santa Fe, NM 87504-1148

Thomas R. Figart, Esq.
Assistant County Attorney
180 W. Amador
Las Cruces, NM 88001

John Danfelser, Esq.
P.O. Box 986
Elephant Butte, NM 87935

Joe Durant
P.O. Box 316
Estancia, NM 87016-0316

Kyle W. Gesswein, Esq.
P.O. Box 367
Las Cruces, NM 88004

Bruce Findlay, Esq.
Kirton & McConkie
60 East S. Temple, Ste. 1800
Salt Lake City, UT 84145

Jesse Williams
106 Harman
Hatch, NM 87937

# Exhibit A



Counsel Opinion Letter
State, et al v. EBID, et al
December 22, 2006
Page 3

Stacey J. Goodwin, Esq.
Randall W. Childress, Esq.
300 Galisteo Street, Ste. 205
Santa Fe, NM 87501

Francis L. Reckard
Office of the State Engineer
P.O. Box 25102
Santa Fe, NM 87504-5102

Ken Swain
Office of the State Engineer
P.O. Box 25102
Santa Fe, NM 87504-5102

Doug G Caroom, Esq.
816 Congress Avenue, Ste. 1700
Austin, TX 78701-244

Kenneth L. Beal, Esq.
P.O. Box 725
Las Cruces, NM 88004-0725

Randall L. Thompson, Esq.
Thompson, Kushner & Rhoades
6400 Uptown Blvd. N.E., Ste. 550-E
Albuquerque, NM 87110

Bob Andron, Esq.
Michael Spurlock, Esq.
1154 Hawkins Blvd., 4th Floor
El Paso, TX 79925

Re:   *State ex rel., Office of the State Engineer v. Elephant Butte Irrigation District et
al.,* Doña Ana County District Court
Cause No.: CV 96-888

Dear Counsel:

EBID and Salopek 6U Farms, Inc. moved to set aside the State Engineer's metering order filed February 20, 2006. The parties stipulated to a bifurcation of issues and the Court was requested to address only the question of jurisdiction in the hearing of December 14, 2006.

The Court, sitting as a Water Court concludes it has jurisdiction and will hear the merits of the motion at the hearing scheduled in January.

Movants contend that the State Engineer entered its Metering Order "without statutory or other authority and is instead within the jurisdiction and authority of this Water Court under this water rights adjudication."

The State of New Mexico filed a motion to strike the motion to set aside the metering order. The State contends, "The State Engineer's actions, including the issuance of these Metering Orders,

**Exhibit A**

Counsel Opinion Letter
State, et al v. EBID, et al
December 22, 2006
Page 4

can be reviewed by a district court. However, under the Water Code adopted by the legislature, this review can be accomplished only through the exercise of a district court's appellate jurisdiction, properly invoked. . . ."

The State also contends, "Within the Water Code, district courts are vested with original jurisdiction over the adjudication of water rights. (Citations omitted). These statutes also provide that a district's jurisdiction to adjudicate water rights is exclusive against other district courts having judicial district boundaries within the stream system. In other words, once a district court has assumed jurisdiction to adjudicate a stream system, no other district court can assert jurisdiction within that same stream system."

The State contends that judicial review of the metering order is limited to appellate review jurisdiction, or jurisdiction to consider a Petition for Writ of Certiorari under Rule 1-075 NMRA.

Most of the arguments in the briefs and a substantial portion of the oral arguments relate to the merits of the motion and not to the jurisdiction. Much of the argument is centered on procedure, not jurisdiction. Can EBID and Salopek 6U Farms, Inc. bring this issue to the Adjudication Court by motions practice, or must movants invoke the appellate jurisdiction of the district court or file a separate declaratory judgment action?

NMSA 1978, §72-7-1 prescribes the only statutory procedure for appealing any "decision, act, or refusal to act" of the State Engineer to the District Court. A dissatisfied party takes his appeal by filing a notice of appeal within thirty days after receipt of notice of the decision, act or refusal to act.

The statutory appellate procedure, however, cannot be the sole means of review. The movants here maintain that the State Engineer's metering order is void either 1) because it is by nature a regulation, and therefore cannot be adopted without prior publication and a period for public comment or 2) because it effectively adjudicates a water right, a function reserved to the District Court. State ex rel. Reynolds v. Lewis, 84 N.M. 768 (1973).

The State agrees the District Court has jurisdiction to hear the primary issue raised in the motion, the authority of the State Engineer to issue the metering order, although it contends that movants may invoke only the district court's appellate jurisdiction. This Court may exercise both its appellate jurisdiction and its original jurisdiction simultaneously in the same case. See e.g. Town of Silver City v. Scartaccini, 2006-NMCA-009.

The State tries to distinguish the jurisdiction of the district court from the jurisdiction of a designated water judge sitting as a water court. The contest regarding the authority of the State Engineer to issue a metering order relates to the beneficial use that is the basis of a water right and

**Exhibit A**

Counsel Opinion Letter
State, et al v. EBID, et al
December 22, 2006
Page 5

is clearly a matter within the exclusive jurisdiction of the Water Court regardless of whether the appropriate procedure to invoke its jurisdiction by motions practice or otherwise.

The Court, sitting as a Water Court, concludes that it has jurisdiction to decide whether the State Engineer had the authority to enter a metering order in the manner it did. Whether the jurisdiction to hear this issue can be invoked by motions practice or must be invoked by some other procedure is more appropriately considered at the next hearing. Mr. Peters shall prepare the Court's order and submit to opposing counsel within five days and to the Court within ten days.

Sincerely,

Jerald A. Valentine
District Judge

**Exhibit A**