IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| STATE OF NEW MEXICO, *ex rel.* ) <br> State Engineer ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ROMAN ARAGON, *et al.*, ) <br> ) <br> Defendants. ) <br> ) | 69cv07941-MV/LFG <br> RIO CHAMA STREAM SYSTEM <br><br> Section 3, Rio Cebolla <br><br> Subfile Nos. CHCB-001-0007, <br> CHCB-002- 0001B, CHCB-002-0002C, <br> CHCB-002-0009 |

### REVISED PRETRIAL ORDER

This Order is entered pursuant to F.R.Civ.P. 16 and D.N.M.LR-Civ. 26 and 30 to guide the trial and pretrial proceedings of the disputed water rights claims of Charlie and Geralda M. Chacon and Delfin O. and Frances S. Quintana Trust ("Defendants"). Defendants dispute certain elements of their rights to divert and use the public waters of the Rio Chama stream system as described in Subfile Nos. CHCB-001-0007, CHCB-002-0001B, CHCB-002-0002C, and CHCB-002-0009 in the Rio Cebolla subsection of the general stream adjudication of the Rio Chama. Specifically, Defendants dispute the location and amount of irrigated acreage on lands owned by Defendants and identified by the State of New Mexico *ex rel.* State Engineer ("State"). The Court enters this order to guide the pretrial and trial proceedings in this matter. The failure to comply with these and any other pretrial provisions may result in the entry of a default order that incorporates the location and amount of irrigated acreage proposed by the State.

**I.   SCOPE OF PROCEEDING**

This is an individual limited subfile proceeding to determine the surface water rights to the Rio Cebolla appurtenant to lands owned by Defendants. The State and Defendants are the only

parties to this action, and are the only parties that may participate at a hearing to determine their water rights.  In this limited subfile proceeding, the Defendants may only contest the location and amount of irrigated acreage to be recognized for the specific tracts described in the subfiles.  The State is represented by Special Assistant Attorneys General Ed Newville and Misty Braswell.  The Defendants are represented by Law Offices of Ted J. Trujillo.

## II.     BURDEN OF PROOF

Defendants have the burden of proving their claims as to the location and amount of irrigated acreage to be recognized.  If Defendants fail to meet or carry their burden of proof, the Court shall enter an order recognizing the location and amount of irrigated acreage for the disputed tracts as proposed by the State.

## III.    STIPULATIONS AND CONTENTIONS

The parties stipulate and agree that venue is properly laid in this District, and that the United States District Court for the District of New Mexico has jurisdiction of the parties and the subject matter.

The parties stipulate to the following facts:

> The Rio Cebolla is a tributary to the Rio Chama and is formed by the convergence of four smaller streams:  the Rito del Tanque, the Rito de la Piedra, the Rito en Medio, and the Rito de la Cienega Redonda.
>
> The ditches identified in the *Rio Chama Stream System Section 3 Rio Cebolla Hydrographic Survey* (2000) prepared by the New Mexico Office of the State Engineer as the Old Valdez ditch and the Alfalfita ditch and mapped by the State as two separate ditches are presently connected as one ditch which is capable of conveying water from the Rito del Tanque to tracts of land owned by the Defendants in subfiles CHCB-002-0001B, CHCB-002-0002C, and CHCB-002-

0009.

A. **CHCB-01-0007**

   1. **PLAINTIFF'S CONTENTIONS:**

   Charlie and Geralda M. Chacon own the land in this subfile. The Chacons claim irrigation water rights for approximately 22 acres of land in this subfile from the Sanchez ditch, which receives water from the Rito de la Piedra, a tributary of the Rito del Tanque. The State will stipulate that 1.0 acre of land in this subfile has valid pre-1907 irrigation water rights from the Sanchez ditch. These lands are located along the crest of a sloping hillside (called the "alto" area) where a small sawmill was constructed in 1905. The State contends that the Sanchez ditch was extended to bring water to the steam-powered sawmill in 1905, and a small amount of acreage was possibly put under irrigation at that time. The Chacons claim irrigation water rights for approximately 10 acres of land in the "alto" area. The State contends that there is no history of pre-1907 irrigation on more than 1.0 acre of land in the "alto" area, and that the small laterals constructed in this area to distribute water were only recently constructed. Aerial photographs of the "alto" area show about 1.0 acre of irrigation in 1995 and thereafter, but not in earlier years (1935, 1958, 1963, 1975, 1981). The declaration of water rights filed with the Office of the State Engineer in 1949 for the Sanchez ditch (OSE No. 0636) does not declare irrigation water rights on any lands in the "alto" area owned by the Chacons in this subfile. The only irrigated lands described in the declaration of water rights in connection with the Sanchez ditch were owned by Jose A. Sanchez (7.0 acres), who was the adjoining landowner to the north.

   The Chacons also claim irrigation water rights from the Sanchez ditch for

approximately 12 acres of land along the base of the "alto" area. The 2000 hydrographic survey report for the Rio Cebolla classified this portion of the Chacon lands as a "seeped" area, that is, a boggy area where there is a naturally occurring high water table. Whether or not the Chacons have actually irrigated this area as claimed, the State contends that any irrigation of the natural vegetation in this area is unnecessary and cannot form the basis for a right to divert surface water for irrigation purposes.

2. **DEFENDANTS' CONTENTIONS:**

Charlie and Geralda M. Chacon own the land in this subfile. The Chacons claim irrigation water rights for approximately 22 acres of land in this subfile from a ditch system off the Sanchez ditch, which receives water from the Rito de la Piedra, a tributary of the Rito del Tanque. The Chacons contend that all 22 acres of land in this subfile have valid pre-1907 irrigation water rights from the Sanchez ditch. These lands are located along the crest of a sloping hillside (called the "alto" area) where a small sawmill was constructed in 1905. The State contends that the Sanchez ditch was extended to bring water to the steam-powered sawmill in 1905, and a small amount of acreage was possibly put under irrigation at that time. The Chacons contend the opposite is true – that the saw mill on the "alto" area was located there because water was already available there. The Chacons claim irrigation water rights for approximately 10 acres of land in the "alto" area. The State contends that there is no history of pre-1907 irrigation on more than 1.0 acre of land in the "alto" area, and that the small laterals constructed in this area to distribute water were only recently constructed. The Chacons contend that the small lateral ditches on the "alto" have been re-opened and moved slightly many times over the years in response to changing conditions. The Chacons contend

4

that the small lateral ditches on the "alto" all feed into the "ancient" ditch at the base of the "alto" and from there the "ancient" ditch overbanks and irrigates the permanent irrigated pasture land.  The Chacons dispute the State's contention that the aerial photographs of the "alto" area only show about 1.0 acre of irrigation in 1995 and thereafter, but not in earlier years (1935, 1958, 1963, 1975, 1981), and further state that the aerial photographs are not conclusive evidence of the extent of irrigation practices during the entire year of the times of the flights.   The Chacons also dispute the State's reliance on the declaration of water rights filed with the Office of the State Engineer in 1949 for the Sanchez ditch (OSE No. 0636) which does not declare irrigation water rights on any lands in the "alto" area owned by the Chacons in this subfile.  The State contends that the only irrigated lands described in the declaration of water rights in connection with the Sanchez ditch were owned by Jose A. Sanchez (7.0 acres), who was the adjoining landowner to the north.  The Chacons dispute the reliability of the 1949 declaration as evidence of irrigation in this particular area by the many adjoining property owners since the 1949 survey for the declaration was riddled with omissions and errors in its rush to be finalized in anticipation of litigation and new claims by other downstream irrigators.

The Chacons also dispute the State's unfounded conclusions opposing their claim of irrigation water rights from the Sanchez ditch for approximately 12 acres of land along the base of the "alto" area, as based upon the State's reliance on its own  erroneous 2000 hydrographic survey report for the Rio Cebolla classification of this portion of the Chacon lands as a "seeped" area, that is, a boggy area where there is a naturally occurring high water table.  The State

contends that whether or not the Chacons have actually irrigated this area as claimed, that any irrigation of the natural vegetation in this area is unnecessary and cannot form the basis for a right to divert surface water for irrigation purposes.  The Chacons contend that there is documentary evidence back to the 1880s of the irrigation of this permanent pasture and the harvest of hay through the present.  The Chacons contend that there is undisputable evidence of the continued diversion of water into this permanent pasture from the Rio de la Piedra into the Sanchez Ditch, then into the smaller lateral ditches on the "alto" and from there into the "ancient" ditch at its base and finally into the twelve acre permanent pasture.  The Chacons dispute that this permanent pasture is a seeped area and will present evidence that this area will often dry out completely.

B. <u>CHCB-02-0002C</u>

   1. **PLAINTIFF'S CONTENTIONS:**

   The land in this subfile is owned by the Delfin O. and Frances S. Quintana Trust ("the Trust").  The Trust claims irrigation water rights for approximately 2.0 acres of land in this subfile from the Old Valdez ditch, which diverts water from the Rito del Tanque.  The State contends that these lands were not historically irrigated from the Old Valdez ditch.  The State contends that these lands were at one time irrigated from a ditch that diverted water from the Rito del Medio (now called the Canuto Valdez ditch), but any right to irrigate these lands from that source was precluded by the judgment in 1965 of the New Mexico District Court in Rio Arriba County Civil Case No. 8650.  The State contends that the Old Valdez ditch was extended at some point in time to bring water to irrigate the acreage now claimed by the Trust, possibly as a replacement source when those

same lands could no longer be legally irrigated from the Rito del Medio. The declaration of water rights filed with the Office of the State Engineer in 1949 for the Old Valdez ditch (OSE No. 0636) does not declare irrigation water rights for the acreage owned by the Trust in this subfile.

The State Engineer has mapped the ditch that would serve the acreage claimed by the Trust as the "Alfalfita ditch," which would represent a portion of the original ditch that was at one time used to bring water to this and several other tracts from the Rito del Medio. The Alfalfita ditch still receives tail water or runoff from a 3.0 acre irrigated tract located to the east that does have a legal right to irrigate using the waters of the Rito del Medio, but the Alfalfita ditch has also been connected to the Old Valdez ditch and receives surface water from this other source as well.

2. **DEFENDANTS' CONTENTIONS:**

The land in this subfile is owned by the Delfin O. and Frances S. Quintana Trust ("the Trust"). The Trust claims irrigation water rights for approximately 2.0 acres of land in this subfile from the Old Valdez ditch, which diverts water from the Rito del Tanque. The Trust contends the State is in error when it concludes that these lands were not historically irrigated from the Old Valdez ditch. The State contends that these lands were at one time irrigated from a ditch that diverted water from the Rito del Medio (now called the Canuto Valdez ditch), but any right to irrigate these lands from that source was precluded by the judgment in 1965 of the New Mexico District Court in Rio Arriba County Civil Case No. 8650. The Trust disputes that the 1965 judgment involved the source of water from the Old Valdez Ditch. The State speculates that the Old Valdez ditch was

7

extended at some point in time to bring water to irrigate the acreage now claimed by the Trust, possibly as a replacement source when those same lands could no longer be legally irrigated from the Rito del Medio.  The Trust states that this is not true.  The Old Valdez ditch was always the source of water for these parcels.  Again, the Trust asserts that the State's reliance on the declaration of water rights filed with the Office of the State Engineer in 1949 for the Old Valdez ditch (OSE No. 0636) as evidence that this subfile has no water rights is misplaced, as discussed herein.

The Trust and the Chacons contend that the State Engineer is in error to conclude that the original source of water for the "Alfalfita ditch," was the Rito del Medio, since the source has always been the Old Valdez ditch off the Rito d which would represent a portion of the original ditch that was at one time used to bring water to this and several other tracts from the Rito del Medio.  The Alfalfita ditch still receives tail water or runoff from a 3.0 acre irrigated tract located to the east that does have a legal right to irrigate using the waters of the Rito del Medio, but the Alfalfita ditch has also been connected to the Old Valdez ditch and receives surface water from this other source as well.

### C. CHCB-002-0009

**1. PLAINTIFF'S CONTENTIONS:**

Charlie and Geralda M. Chacon own the land in this subfile.  The Chacons claim irrigation water rights for approximately 5.8 acres of land in this subfile from the Old Valdez ditch.  The State contends that these lands were not historically irrigated from the Old Valdez ditch.  As described above in State's contentions

with respect to subfile CHCB-002-0002C, the State contends that these lands were historically irrigated, if at all, from the Alfalfita ditch, which was not a part of the original Old Valdez ditch. The State contends that the lands in this subfile were placed under irrigation about the time these lands were purchased from the United States in 1951. The report filed in 1947 by the field inspector for the Bureau of Land Management in connection with the sale of these lands to Patricio Chacon classified the tract as "raw land" "chiefly valuable for stock grazing purposes." The declaration of water rights filed with the Office of the State Engineer in 1949 for the Old Valdez ditch (OSE No. 0636) does not declare irrigation water rights for the acreage owned by the Chacons in this subfile.

2. **DEFENDANTS' CONTENTIONS:**

Charlie and Geralda M. Chacon own the land in this subfile. The Chacons object to the State's change of nomenclature of the last portion of the Old Valdez Ditch to the "Alfalfita" Ditch. The "Alfalfita" is the subfile of 5.8 acres of land and is not a separate ditch. The State contends that these lands were not historically irrigated from the Old Valdez ditch is incorrect. The Chacons contend that there is abundant documentary evidence of the multiple uses of water from the Old Valdez Ditch on the "Alfalfita" field. The State contends that the lands in this subfile were placed under irrigation about the time these lands were purchased from the United States in 1951. The report filed in 1947 by the field inspector for the Bureau of Land Management in connection with the sale of these lands to Patricio Chacon classified the tract as "raw land" "chiefly valuable for stock grazing purposes." The Chacons contend that the 1947 report was incomplete, failing to even mention the live stream within its northerly boundary and is not therefore reliable evidence. Similarly, the Chacons contend that the State's

9

reliance on the declaration of water rights filed with the Office of the State Engineer in 1949 is misplaced as support that there was no declared irrigation water rights for the acreage owned by the Chacons in this subfile.

D. **CHCB-002-0001B**

1. **PLAINTIFF'S CONTENTIONS:**

   Charlie and Geralda M. Chacon own the lands in this subfile. The Chacons claim irrigation water rights from the Old Valdez ditch for two tracts of land in this subfile. The tracts are approximately 4.2 and 5.0 acres in size. The 4.2 acre tract is located in the northeast corner of the subfile mapping and the 5.0 acre tract (the so called "Alfalfita field") is located in the southwest corner of the subfile mapping. The State contends that these lands were not historically irrigated from the Old Valdez ditch. As described above in State's contentions with respect to subfile CHCB-002-0002C, the State contends that these lands were historically irrigated, if at all, from the Alfalfita ditch, which was a separate ditch from the Old Valdez ditch. The State contends that the Alfalfita ditch was used in 1923 to bring water from the Rito del Medio to a steam-powered sawmill located on the lands in this subfile, and the nearby Alfalfita field was possibly put under irrigation at that time. Patricio Chacon purchased the lands in this subfile from another local resident in 1919. The declaration of water rights filed with the Office of the State Engineer in 1949 for the Old Valdez ditch (OSE No. 0636) does not declare irrigation water rights for the acreage owned by the Chacons in this subfile.

   Between the 4.2 and 5.0 acre tracts described above, there is an area irrigated by the Chacon ditch which diverts water from the Rito del Tanque under a permit

issued by the State Engineer. The lands under the Chacon ditch were the subject of a transfer of irrigation water rights on 30 acres of land under the Acequia de Pinavetal to lands owned by Charlie Chacon in this subfile. The application for the transfer was approved by the State Engineer in 1973. Based upon the approved transfer, the State will stipulate to the recognition of valid pre-1907 irrigation water rights for 30 acres of land in this subfile, but would require that the 30 acres be irrigated solely from the Chacon ditch. The water rights claimed by the Chacons from the Old Valdez ditch for the irrigation of the 4.2 and 5.0 tracts described above are in addition to the water rights claimed for the irrigation of a 30 acre tract irrigated from the Chacon ditch in this subfile. The parties have not agreed on the specific location of the 30 acre tract, and the boundaries of that tract could be mapped to include any lands owned by the Chacons in this subfile that could indeed be irrigated from the Chacon ditch, including the so-called Alfalfita field.

2. **DEFENDANTS' CONTENTIONS:**

Charlie and Geralda M. Chacon own the lands in this subfile. The Chacons claim irrigation water rights from the Old Valdez ditch for two tracts of land in this subfile. The tracts are approximately 4.2 and 5.0 acres in size. The 4.2 acre tract is located in the northeast corner of the subfile mapping and the 5.0 acre tract (the so called "Alfalfita field") is located in the southwest corner of the subfile mapping. The State's contention that these lands were not historically irrigated from the Old Valdez ditch is erroneous. As described above, in the State's contentions with respect to subfile CHCB-002-0002C, the State is in error to conclude that these lands were historically irrigated, if at all, from the Alfalfita

11

ditch, which was a separate ditch from the Old Valdez ditch. As discussed above, the Chacons contend that the State is confusing the nomenclature of the ditches, when in fact there is only one source of water for the Alfalfita field and that is the Old Valdez ditch. The State's contention that the "Alfalfita ditch" was used in 1923 to bring water from the Rito del Medio to a steam-powered sawmill located on the lands in this subfile, and the nearby Alfalfita field was possibly put under irrigation at that time, is purely speculative. The Chacons contend that the sawmills in this area were located off existing ditches, rather having ditches built to carry water to the sawmill location. The Chacons contend that Patricio Chacon purchased the lands in this subfile from another local resident in 1919 and that local resident had already been irrigating the lands in this subfile. Again, the Chacons contend that the 1949 declaration of water rights filed with the Office of the State Engineer in 1949 for the Old Valdez ditch (OSE No. 0636) is not reliable evidence of there was no historic irrigation of the acreage owned by the Chacons in this subfile, for the reasons discussed herein.

The Chacons will stipulate that between the 4.2 and 5.0 acre tracts described above, there is an area irrigated by the Chacon ditch which diverts water from the Rito del Tanque under a permit issued by the State Engineer. The lands under the Chacon ditch were the subject of a transfer of irrigation water rights on 30 acres of land under the Acequia de Pinavetal to lands owned by Charlie Chacon in this subfile. The application for the transfer was approved by the State Engineer in 1973. Based upon the approved transfer, the Chacons will stipulate to the recognition of valid pre-1907 irrigation water rights for 30 acres of land in this subfile, but would require that the 30 acres be irrigated solely from the Chacon

12

ditch. The water rights claimed by the Chacons from the Old Valdez ditch for the irrigation of the 4.2 and 5.0 tracts described above are in addition to the water rights claimed for the irrigation of a 30 acre tract irrigated from the Chacon ditch in this subfile. Although the Chacons have proposed the specific location of the 30 acre tract of the 1973 application, the parties have not yet agreed on the specific location of the 30 acre tract. The Chacons contend that the boundaries of that 30 acre tract to be irrigated from the Chacon ditch, should not include any lands owned by the Chacons in this subfile, including the so-called Alfalfita field.

**IV.    DISCOVERY**

Discovery begins immediately. All parties are expected to adhere to the F.R.Civ.P. 26 requirements of liberal, continuing and voluntary disclosure. No later than March 15, 2015, the parties shall provide to the opposing party:

(A)    the name, and if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses.

(B)    a copy of, or a description by category and location or, all documents, data compilations and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses.

The parties shall supplement and correct disclosures in accordance with F.R.Civ.P. 26(e).

**V.    PRETRIAL DISCLOSURES**

Each party shall disclose the identity of any person who may be used at trial to present expert witness testimony by March 15, 2015. This disclosure shall be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefore; the date or other information

considered by the witness in forming the opinions; and exhibits to be used as a summary of or support for the opinions; and the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a list of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Discovery shall be completed no later than June 15, 2015. Service of interrogatories, requests for admission, or requests for production shall be considered timely only if the responses are due prior to that date. A notice of deposition shall be considered timely only if the deposition occurs prior to that date. Motions for extensions or changes to discovery deadlines are necessary only where the parties cannot agree, or where such changes will of necessity delay scheduled hearings. Agreements shall be memorialized by letter to the parties and to the Court.

## VI.     MOTIONS

The deadline for filing any dispositive motion or a written objection to a proposed exhibit is July 15, 2015.

## VII.    ANTICIPATED WITNESSES

**A.**     Plaintiff's Witnesses:

      1.     Dr. John O. Baxter

      2.     James Aguirre

      3.     Mike Recker

      4.     Frank Craig

**B.**     Defendants' Witnesses:

      1.     Charlie Chacon

      2.     Gerald Chacon

      3.     Delfin Quintana

## VII. TRIAL PREPARATION

### A. Exhibits.

The parties must confer regarding all trial exhibits other than rebuttal exhibits that cannot be anticipated before trial. The parties must file a "consolidated exhibit list identifying all exhibits that the parties have stipulated are admissible" and a "consolidated exhibit list identifying all exhibits to which there are objections" no later than 30 calendar days before trial. The list of exhibits to which there are objections shall briefly state the nature of the objections. Objections to proposed exhibits must include a brief statement of the grounds therefore. Objections not so disclosed, other than objections under Rule 402 and 403 of the Federal Rules of Evidence, are waived unless such failure to object is excused by the Court for good cause. Two courtesy copies of the uncontested and contested exhibits lists must be delivered to the judge's chambers.

The parties will also deliver to the judge's chambers two (2) sets of each party's proposed trial exhibits in a tabbed binder, together with an index, no later than 15 calendar days before trial.

All exhibits must be marked before trial. The State's exhibits shall be marked and tabbed numerically. Defendants' exhibits shall be marked and tabbed alphabetically. The identification number or letter will remain the same whether the exhibit is admitted or not.

### B. Witness Lists.

Each party's witness list must be filed with the Clerk and served on all parties no later than 30 calendar days before trial.

### C. Submissions for Bench Trials.

The parties must each submit to the judge's chambers proposed findings of fact and conclusions of law no later than 15 calendar days before trial.

If requested, the parties shall submit the findings of fact and conclusions of law in a format compatible with Word Perfect or Word as directed.

## VII.   OTHER MATTERS

### A.   Settlement Possibilities.

The possibility of settlement in this matter is considered poor by State and average by Defendants.

### B.   Length of Trial and Trial Setting.

1. This action is a bench trial.

2. The parties estimate that they will be ready for trial by August 15, 2015.

3. The estimated length of trial is 5 days.

## VIII.   MODIFICATIONS-INTERPRETATION

This Pretrial Order when entered controls the course of trial and may only be amended *sua sponte* by the Court or by consent of the parties and Court approval.  The pleadings will be deemed merged herein.

The forgoing proposed Pretrial Order (prior to execution by the Court) is hereby approved this ___ day of _____ 2014.

    /s/ Misty Braswell
Misty M. Braswell
Ed Newville
Special Assistants Attorney General
New Mexico Office of the State Engineer
P. O. Box 25102
Santa Fe, NM 87504-5102
Telephone:  (505) 827-3989
Fax:  (505) 827-3887
misty.braswell@state.nm.us
*Attorneys for Plaintiff State of New Mexico*

*Electronically approved*
Ted J. Trujillo
Law Offices of Ted J. Trujillo

PO Box 2185
Espanola, NM 87532-2185
Telephone: (505) 753-5150
Fax: (505) 753-5150
tedjtrujillo@gmail.com
*Attorney for Defendants*

Dated:  December 15, 2014

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge