IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| STATE OF NEW MEXICO, *ex rel.* ) | | |
| State Engineer ) | 69cv07941 – MV / KK | |
| ) | RIO CHAMA STREAM SYSTEM | |
| Plaintiff, ) | | |
| ) | Section 3, Rio Cebolla | |
| vs. ) | Subfile Nos. CHCB-001-0007, | |
| ) | CHCB-002-0001B, CHCB-002-0002C, | |
| ) | CHCB-002-0009 | |
| ROMAN ARAGON, *et al.*, ) | | |
| Defendants. ) | | |
| _____ ) | | |

**DEFENDANTS' RESPONSE TO STATE OF NEW MEXICO'S MOTION TO STRIKE DEFENDANTS' EXPERT REPORTS AND EXCLUDE TESTIMONY OF STEPHEN D. HARDIN, SAM SMALLEGE, CHARLIE HIBNER, AND MALCOLM EBRIGHT**

Defendants Chacon and Quintana respond to the State's Motion to Strike as follows:

I. Plaintiff's Introduction is Misleading as to the Causes of Delay in this Case.

Plaintiff's introduction entitled "Background" gives the impression that somehow Defendants have caused the delay in the trial of this matter, when as a matter of fact, it is the State that has caused the delay in this matter through its implementation of questionable procedural adventures, including the OSE's internal mediation program. In 2010 the Defendants accepted the State's offer to mediate in good faith and expected an objective third party mediator to lead the process and the discussions between the parties. Over the course of the four year plus "mediation" process, Defendants learned that the attorney / mediator was employed by OSE and effectively had his hands tied from promoting genuine compromise by the parties. This is not a reflection on the professional skills of the mediator but an observation that the State's mediation

1

program is so tightly controlled by the State in favor of its own internal goals that Defendants' objectives are given short shrift. The State or this Court should eliminate this program in favor of a true mediation program, one wherein the mediator is a professional for hire and is unattached to any of the parties. In this regard, however, Defendants reject any responsibility for the failure of the futile and costly four, almost five years, lost in the mediation process.[1]

Plaintiff's introduction also states, *"Defendants did not agree to the proposed consent orders, objecting to the amount of irrigated acreage to be recognized as having valid water rights and in some instances to the source of water."* [See State's Motion to Strike at Page 1, ¶ 2, Doc No. 11080]. Is the State suggesting that the Defendants should not be able to claim and defend what they believe are their rights or that our failure to agree to the proposed consent orders is dilatory on our parts? That appears to be the message and the impetus for the State's seeking the drastic and questionable remedy of striking all of Defendants' preliminary expert witnesses, possibly as a punishment for Defendants' failure to accede to the State's proposals?

Unfortunately, this long history of failed agreements between the parties is also reflected in the Revised Pre-Trial Order filed December 5, 2014, [Doc No. 11061], where a mere two facts are stipulated after several years of communications. These are: 1) the four names of the four streams forming the Rio Cebolla tributary to the Rio Chama, and 2) the fact that the Defendant Chacons' Old Valdez ditch and their "Alfalfita" ditch are separately mapped as two ditches by the State but are connected as one ditch which is capable of conveying water from Rito del Tanque to tracts of land in three subfiles. [See Revised Pre-Trial Order at ¶ 4, Page 2, Doc No.

---

[1] The Plaintiffs and Defendants accompanied the Honorable Vickie L. Gabin on two site visits to the subject sub-file parcels in July 27, 2009, and if memory serves the undersigned counsel, a second one in Spring, 2010, to review the features of the Defendants' sub-file parcels. Defendants appreciate the value of site visits to the Court, and recommend this Court to do so again, given Ms. Gabin's retirement from the bench.

2

11061]. In this light, the Court should be apprised that there are still many other basic "facts" on the ground that remain in controversy and will likely cause delay at trial. These are fundamental "facts" that should have already been resolved by the parties, at least in part.

One such fact goes to the true source of the Pinabetal Ditch, which is the "Rito de la Cesion" and which is not at all connected to the Rito de la Piedra / Rito del Tanque tributary to the Rio Cebolla as erroneously depicted in one of the State's Exhibits, the 1949 Walter Turley survey. The Rito de la Cesion is the major source of water for the Defendants' subfiles supplied by the Pinabetal Ditch. On several occasions Defendants have offered to guide the Plaintiffs to the true and only source of the Pinabetal Ditch and to a smaller un-named intermittent source of the Rito de la Piedra so that Plaintiffs' hydrographic maps could be corrected. Plaintiffs ignored Defendants' offer to guide them to the true sources of the ditches involved in this case, and went up into the watershed on their own to look for it. Suffice it to say, the Plaintiffs have failed to locate and identify all the true sources from live streams and the errors in the hydrographic map have still not been corrected. This omission of the State is now working to the disadvantage of the Defendants since identifying the correct natural water sources is fundamental to recognizing the various reliable supplies of water for the ditches and subfiles in this matter. These are facts on the ground that should no longer be in dispute or doubt and which should have been addressed before trial.

Another of the factual issues in dispute involves the State's doubt that the "Old Valdez Ditch" is even capable of transporting water by gravity flow through its entire length. Even after several site visits, the State was still convinced that the lower section of the ditch had the wrong grade to transport water to lower fields, while the Defendants knew that the ditch grade could and did transport water by gravity flow throughout its length and had done so for time

3

immemorial. Even though the State has been provided with an open ended opportunity to convince itself that Defendants are right in this most basic of physical forces, the State has yet to admit to the fact. Instead, the State now claims that the Old Valdez ditch is receiving its water from tail water coming from Defendant Quintana's irrigated lands, upgrade to the south of the ditch. Defendants state that that on occasion, tail water and even flood water will run perpendicular into the Old Valdez Ditch, clogging up the culvert that exists at that point. However, this tail water is only an incidental supply to the main and true source of water for the Old Valdez Ditch which comes from the "Rito de la Piedra" or the "Rito del Tanque", as it is called in its lower reaches. The Old Valdez Ditch then connects to and irrigates the "Alfalfita" field at a point further west.

## II. The State's Motion to Strike is Premature and Should be Denied.

The State's citations to the sub-parts of the Federal Rule of Civil Procedure 26 to support its Motion to Strike are premature and misplaced, since this matter is still in discovery, which is open until June 15, 2015. [See Revised Pre-Trial Order at "V. Pretrial Disclosures", Page 14, Doc No. 11061-1].  A Motion to Strike should be viewed as inappropriate in *Initial* Disclosures, given the other rules that would apply first.  For example, without specifying the subpart, the State relies on Rule 37 to support its Motion to Strike and exclude the Defendants' expert witness disclosures and testimony. [See State's Motion to Strike, Page 4, ¶ B, Doc No. 11080]. However, before even considering a Motion to Strike, the State could have and should have conferred with Defendants to request that its Initial Disclosures be supplemented and corrected under FR.Civ.P, Rule 26 (e), which requires, *"The parties shall supplement and correct disclosures in accordance with FR.Civ.P 26 (e)."*

4

The Revised Pre-Trial Order requires as much,

"*Discovery begins immediately. All parties are expected to adhere to the F.R.Civ.P. 26 requirements of <u>liberal, continuing and voluntary</u> disclosure. No later than March 15, 2015, the parties shall provide to the opposing party:*

*(A) the name, <u>and if known</u>, the address and telephone number of each individual likely to have discoverable information that the disclosing party <u>may</u> use to support its claims or defenses.*

*(B) a copy of, or a description by category and location or, all documents, data compilations and tangible things that are in the possession, custody, or control of the party and that the disclosing party <u>may</u> use to support its claims or defenses.*

<u>*The parties shall supplement and correct disclosures in accordance with F.R.Civ.P. 26(e).*</u>

[Underlining for emphasis by Defendants]. [See Revised Pre-Trial Order at "IV Discovery, Pages 13-14, Doc No. 11061-1].

In effect, the Motion to Strike by the State is a drastic remedy that is not justified in this instance, especially when Defendants have time to supplement and correct its initial disclosures before the June 15, 2015 deadline. If the Defendants fail to timely supplement and correct its expert witness disclosures, then the State could file, a Motion to Compel Disclosure under FR.Civ.P, Rule 37.(3)(A). In this instance, it is concerning the State would choose to file a Motion to Strike first, when a Motion to Compel Disclosure was more appropriate. This may be due to the fact that a Motion to Compel Disclosure has a pre-condition whereas the Motion to

Strike does not. The Motion to Compel Disclosure *"must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."* The State, as movant, made no attempt, good faith or otherwise, to confer with Defendants in order to obtain the disclosure or discovery without the necessity of court action. Certainly this could have occurred under the "liberal, continuing and voluntary disclosure" requirement of Rule 26. The State did request, by email, Defendants' position on the proposed Motion to Strike, and Defendants noted by email their objection to the Motion in its response. This hardly equates to conferring in good faith.

At the time that Defendants filed their Initial Disclosures, the information provided on the four expert witnesses the State seeks to strike, was all the information that was available to Defendants. Fed.R.Civ.P. 26(a)(1)(E) also anticipates this situation, *"A party must make its initial disclosures based on the information then reasonably available to it."* In Defendants' instance, it was only on March 27, 2015 that Defendants' Attorney met for the first and only time with the prospective expert witness, Charlie Hibner, a retired NRCS Soil Specialist from Cebolla and full arrangements were not yet finalized with him, as to his resume, possible publications, fee arrangement and previous expert witness testimony, if any. Defendants' Attorney decided to include Mr. Hibner's name to give the State notice that he "may" be called. Thus, Defendants preliminary disclosure of expert witnesses was tentative and consistent with the Revised PreTrial Order.

On March 24, 2015 Defendants filed a Motion for Leave to File Defendants' Initial Disclosures Out-of-Time [Doc No. 11073] due to the undersigned Attorney's illness, which the State did not oppose. It was not until April 14, 2015 that Defendants' Attorney received the

6

Court's Order granting leave to file Defendants' Initial Disclosures, [Doc. No. 11075], which disclosures were then served on the State the very next day, April 15, 2015, as shown in its Certificate of Service. [Doc. No. 11078]. Defendants acknowledge that they fell behind the development of their expert witnesses for trial but also are confident that they will be able to fully supplement the required information before the discovery deadline of June 15, 2015.

### III. Defendants will Correct and Supplement its Initial Disclosures under the Rules.

Defendants know they have a duty to supplement and correct its disclosures under FR.Civ.P, Rule 26 (e), again which reads, *"The parties shall supplement and correct disclosures in accordance with FR.Civ.P 26 (e)."* Before the State's Motion to Strike was filed, Defendants had then and have now every intention to supplement and correct disclosures as to its expert witnesses as well as to any other required discovery. Defendants state that if any of its expert witnesses do not materialize, Defendants will supplement and correct the Initial Disclosure on a timely basis by noting the omission of an expert witness. Finally, it was for that reason the four "expert" witnesses are also listed in Defendants Initial Disclosures as "lay" witnesses, subject to present evidence under Federal Rule of Evidence 701, in case their "expert" testimony cannot be fully developed.

Defendants read FR.Civ.P, Rule 26 (e) as a mandate, together with the authority, to supplement and correct the disclosures made with regard to the four expert witnesses as well as the other disclosures. [*"The parties shall supplement and correct disclosures in accordance with FR.Civ.P 26 (e)."*] Certainly, the Plaintiff could have used this Rule to contact and move the Defendants to "supplement and correct" the disclosures, rather than file a Motion to Strike . In

7

any event, Defendants intend to supplement and correct the disclosures under this rule, without the prompting of the Plaintiff.

## IV. Conclusion

The State's Motion to Strike Defendants' Expert Reports and Exclude Testimony of Stephen D. Hardin, Sam Smallege, Charlie Hibner and Malcolm Ebright is premature, ill-advised and not in accordance with a reading of the Federal Rules of Civil Procedure that would preserve the goal of "substantial justice" in this case. The Court should acknowledge that the very long process of adjudication favors a party of perpetual existence, the State, over the parties of mere mortal lives, the Defendants. The resource balance is also weighted overwhelmingly in favor of the State. In this particular Motion, the State has foregone all the intermediate rules of liberal, continuing voluntary and consultative compliance in favor of the ultimate sanction of striking Defendants' expert witnesses before the discovery end date of June 15, 2015 has been reached. The State's Motion to Strike must be denied. Defendants pray for this relief and any other relief which this Court deems proper in the premises.

LAW OFFICES OF TED J. TRUJILLO

/s/ Ted J. Trujillo
By: _____

Ted J. Trujillo
Adan E. Trujillo
Attorneys for Defendants
P.O. Box 2185
Espanola, N.M. 87532
(505) 351-1632
Fax: (505) 351-4287
E-mail: tedjtrujillo@yahoo.com
tedjtrujillo@gmail.com
adantrujillo@gmail.com

8

CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of May, 2015, I filed the foregoing Response to Motion to Strike Expert Witnesss, electronically through the CM?ECF system which caused the parties listed on the electronic service list to be served by electronic mail.

/s/ Ted J. Trujillo