IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| STATE OF NEW MEXICO, *ex rel.* | ) | |
| State Engineer | ) | 69cv07941 – MV / KK |
| | ) | RIO CHAMA STREAM SYSTEM |
| Plaintiff, | ) | |
| | ) | Section 3, Rio Cebolla |
| vs. | ) | Subfile Nos. CHCB-001-0007, |
| | ) | CHCB-002-0001B, CHCB-002-0002C, |
| | ) | CHCB-002-0009 |
| ROMAN ARAGON, *et al.*, | ) | |
| Defendants. | ) | |
| _____ | ) | |

## **DEFENDANTS' RESPONSE AND MEMORANDUM IN OPPOSITION TO STATE OF NEW MEXICO'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING WATER RIGHTS TO THE OLD VALDEZ DITCH**

### I. PRELIMINARY STATEMENT

Defendants Chacon and Quintana respond in opposition to the State Engineer's Motion for Partial Summary Judgment regarding Water Rights to the Old Valdez Ditch, stating that genuine issues of material fact abound in the Defendants' documents and exhibits, identified and produced to the State before and after this lawsuit was filed, including Defendants' Initial Disclosures filed and delivered to the State on April 15, 2015 and Defendants' Supplement to Initial Disclosures delivered to the State on June 12, 2015. In addition, many of the documents produced by the State, contained relevant evidence in favor of Defendants' pre-1907 water rights claims, the factual contexts of which are discussed below.

### II. STANDARD OF REVIEW

The standards of review for a Rule 56 motion for summary judgment are as follows: "Summary judgment is appropriate where there are no genuine issues of material fact and the

1

movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "Where reasonable minds will not differ as to an issue of material fact, the court may properly grant summary judgment." *Martinez v. Metzgar*, 97 N.M. 173, 174, 697 N.M. 173, 174, 637 P.2d 1228, 1229 (1981). "All reasonable inferences are construed in favor of the non-moving party." *Portales Nat'l Bank v. Ribble*, 2003-NMCA-093, ¶ 3, 134 N.M. 238, 75 P.3d 838; *see also Gormley v. Coca-Cola Enters.*, 2005-NMSC-003, ¶ 8, 137 N.M. 192, 109 P.3d 280. "Appeal from the grant of a motion for summary judgment presents a question of law and is reviewed de novo." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582.

Once a prima facie is showing of entitlement to summary judgment is made, the burden shifts to the party opposing the motion to show at least a <u>reasonable doubt</u> as to whether a genuine issue for trial exists. *Koenig v. Perez,* 104 N.M. 664, 726 P.2d 341 (1986); *Requarth v. Brophy*, 111 N.M. 51, 801 P.2d 121 (Ct. App. 1990).

## III. DEFENDANTS CHACON AND QUINTANA RESPONSES IN OPPOSITION TO STATE'S PROPOSED UNDISPUTED MATERIAL FACTS

The State's <u>Memorandum in Support of Motion for Partial Summary Judgment Regarding Defendants' Rights to Water Under the Old Valdez Ditch</u>, on pages 3-10, lists forty-one (41) facts which the State claims are "material" and "undisputed". On their face many of these facts are not material, whether they are undisputed or disputed by Defendants Chacon and Quintana. There are also several State facts that the Defendants do not dispute and are thus, stipulated to by the Defendants. However, in the interest of conciseness, the following Defendants' responses to Plaintiffs' list of forty-one undisputed material facts, do not duplicate the entire text of the State's 41 facts. The numbers below, 1 to 41, do correspond to the State's numbers, 1 to 41 for its proposed undisputed facts. It is in the Defendants' Argument section, that citations to the record are fully provided that support Defendants' claims, including the basis for their disputes of the State's facts.

### A. Defendants' Responses to Plaintiff's Proposed Facts

1. Defendants dispute that the "Old Valdez" ditch ends at the southern boundary of a tract of land, known as the 1878 homestead of Juan Desiderio Valdez. Documentation shows that irrigation water from the Old Valdez ditch reaches to the southern boundary of the Jose Leandro Montoya homestead of 1886 and beyond to the property of Venceslao Martinez.

2. Defendants Chacon stipulate they are the owners of a portion of the Juan Desiderio Valdez tract.

3. Defendants Chacon stipulate they were adjudicated 16.9 acres in consent order for subfile No. CHCB 02-0001A.

4. Defendants Chacon and Quintana dispute that there is a 200 yard gap between the terminus of the Old Valdez ditch and the Alfalfita field, stating that the Old Valdez ditch has always reached the end of the Chacon property identified as the Jose Leandro Montoya homestead of 1886. See C Chacon Affidavit, ¶s 8, 9 and G Chacon Affidavit, ¶ 18 . Defendants Chacon dispute the omission by the State of its major source of water for its Alfalfita field, which is the Rito de la Piedra. Defendants stipulate the remainder of the State's facts in its paragraph 4.

5. Defendants Chacon and Quintana stipulate that the course of the "ditch" called "Alfalfita" by the State is more or less correct as described in its paragraph 5, but dispute that the name of the ditch "Alfalfita" is accurate or is a material fact to Defendants' outstanding water rights claims.

6. Defendants stipulate that Patricio Chacon is father of Charlie Chacon.

7. Defendants Chacon and Quintana stipulate that the Rito del Tanque infrequently supplements the Old Valdez ditch and Alfalfita ditch water from other sources. Defendants state that the primary source for the ditch into the Alfalfita field is the Rito de la Piedra. See G Chacon Affidavit, ¶ 19.

8. Defendants Chacon and Quintana stipulate the State's description of the 1932 declaration.

3

9. Defendants Chacon stipulate that in 1937 Patricio Chacon purchased the south half of Juan Desiderio Valdez' homestead claim.

10. Defendants Chacon and Quintana dispute that the information provided in the 1949 declaration to the State Engineer was complete. Defendants stipulate that the 1932 Declaration failed to indicate the individual tracts held by each parciante.

11. Defendants Chacon stipulate that Patricio Chacon filed a declaration for water rights from the Old Valdez ditch to irrigate seven acres on the portion of the former Juan Desiderio Valdez homestead that he then owned.

12. Defendants Chacon and Quintana dispute that Turley's 1949 plat shows the full length of the Old Valdez ditch or that the 1949 Declaration was accurately supported by a plat drawn by Walter G. Turley, a professional surveyor.

13. Defendants Chacon and Quintana dispute the validity and accuracy of the three depictions on the 2000 map of the State Engineer: one, showing a gap between the two ditches; two, showing an origination point of the so-called "Alfalfita ditch" and three, the conclusion that the Old Valdez ditch ended where it is shown on the 1949 Declaration.

14. Defendants Chacon and Quintana dispute the accuracy of the 1949 plat even with the apparent endorsement of it by the five commissioners of the Acequia Pinabetal ditch. Defendants state that soon after, the Chairman of the Commission, Medardo Sanchez, disputed its accuracy an attachment addressed to State Engineer John H. Bliss in a Declaration of Ownership of Water Right Perfected Prior to March 19, 1907, dated February 28, 1949. Medardo had been authorized to make a list of 10 representations known to the State Engineer. Medardo Sanchez stated that even though they had paid for the survey and map, *"it now appears not be accurate in some particulars,"* and that *"the [irrigated] lands are there, just as they were at the time said map was made"*; and that while the ownership of the lands under the Acequia had changed, *"the waters are being used upon the same lands as they have been for a great many years";* and that they were now informed that *"our map is not in accordance with your regulations, - as we had supposed it to be.* Finally Medardo requests *"before any division or adjudication of the waters of the Rio Cebolla is made, we respectfully request that we be given an opportunity to employ a competent engineer in order to have a survey made together with a*

4

*map for recording in your office; so that you may have the full facts before you.* See C Chacon Affidavit, ¶ 18 and Exhibit 4:  Medardo Sanchez Declaration 0636.

15. Defendants Chacon stipulate that Patricio Chacon owned lands in 1949 on the north end of the former Jose Leandro Montoya homestead.  Defendants dispute the inference that the lands *now* traversed by the Alfalfita ditch occurred after 1907.  Defendants state that Patricio's failure to declare any water rights for the subject lands on the 1949 Declaration is not material or dispositive of Defendants' claim of old water rights on the subject Jose Leandro Montoya homestead.  Defendants state that the same five commissioners, including Patricio Chacon, had disputed the accuracy of the 1949 declaration in writing in the February 28, 1949 document.

16. Defendants Chacon and Quintana dispute that the ditch traversing lands owned by Luis Quintana and the U.S. government in 1949 was ever named the "Alfalfita ditch". Defendants dispute the materiality of the failure by Luis Quintana or the U.S. government to declare any water rights for their respective subject lands on the 1949 Declaration. See C Chacon Affidavit, ¶ 18 and Exhibit 4:  Medardo Sanchez Declaration 0636.

17. Defendants Chacon stipulate that Patricio was the only landowner who claimed irrigation rights from the Old Valdez ditch in the 1949 Declaration, for seven acres located on the former Juan Desiderio Valdez homestead.

18. Defendants Chacon and Quintana dispute the State's claims based on the incompleteness of the Proof of Completion of Works: first, there is no indication on the face of the document that in fact the Proof followed *"an inspection by Walter G. Turley"*, as claimed by the State;  second, there are no entries that in fact *"the application, maps, plans, and specifications were approved by the State Engineer";* third, none of the cited supporting documents are provided with this Proof of Completion of Works; and fourth, Defendants dispute the State's conclusion or inference that the entire length of the Old Valdez ditch was limited to 1,580 feet when the Proof of Completion of Works is clear that the 1,580 feet was that length of the ditch that was subject to the Works, there being no express identification of the terminus of the ditch in the document. See State's Exhibit No. 30 to Memorandum.

19. Defendants Chacon and Quintana stipulate that the total length of the Old Valdez ditch, together with the last portion of the ditch, regardless of the name, is about a mile and

5

whether there are one or two ditches is not material in this matter but that in fact, there has only been one ditch.

20. Defendants Chacon and Quintana stipulate to the first two sentences, that *"Juan Desiderio Valdez claimed his homestead in 1878...,"* and that *"In 1884, Gabriel Valdez claimed a 160-acre homestead to the west of Juan Desiderio Valdez's homestead.*

Defendants dispute that the Gabriel Valdez homestead was *only presently* traversed at the SE quarter by the Alfalfita ditch, when the weight of the evidence is that this property has been served by a ditch or ditches, however named, well before 1907. See G Chacon Affidavit, ¶s 7,8,9.

21. Defendants Quintana stipulate to the chain of title of the south half of Juan Desiderio Valdez' homestead claim to Josefa Valdez de Garcia.

22. Defendants Chacon and Quintana stipulate to the chain of title and division of Gabriel Valdez's homestead into four 40-acre parcels in 1926 to Eufemia Valdez de Benavides, Josefa Valdez de Garcia, Canuto Valdez and Patricio Chacon.

23. Defendants Chacon and Quintana stipulate to the conveyance by Josefa Valdez de Garcia to Luis and Dulcinea Quintana of Josefa's 40-acre parcel on June 3, 1926. Defendants dispute the materiality or admissibility of the second sentence that implies the silence of a deed to have conveyed irrigation rights is evidence that there were no water rights on the land. Defendants dispute the further reference to the present "Alfalfita ditch" as the name of the ditch to a land transaction in 1926.

24. Defendants Chacon and Quintana stipulate that on October 12, 1944, Canuto Valdez conveyed the 40 acres share of Eufemia to Luis and Dulcinea Quintana and that the deed specifically included "all rights to water belonging to said land."

25. Defendants Chacon and Quintana stipulate that on November 20, 1944 Canuto Valdez conveyed his 40 acre share to his son, Gabriel Valdez and that the deed noted that irrigation rights were included.

26. Defendants Chacon and Quintana stipulate that on February 19, 1949, Canuto Valdez conveyed his own homestead to Gabriel Valdez.

27. Defendants Chacon and Quintana stipulate that in 1956 Gabriel Valdez exchanged the west half of the Canuto Valdez homestead for Luis Quintana's portion of the original Gabriel Valdez homestead, that Gabriel Valdez's deed from Quintana stated he received water rights to irrigate lands on both sides of the Rito del Tanque: on the west, through the Pinavetal, on the east, from the Rito del Medio acequia, and that Gabriel Valdez's deed to the Quintanas likewise gave them a water right from the Rito del Medio acequia.

28. Defendants Chacon and Quintana stipulate that the subject tracts are both traversed by a "ditch" but not a ditch named "Alfalfita". Defendants stipulate that the deeds do not mention water rights from the Old Valdez ditch, but state that the lack of mention is not dispositive proof of the non-existence of water rights on the property.

29. Defendants Chacon and Quintana stipulate that on January 25, 1960, Luis Quintana and his wife conveyed their tract acquired from Gabriel Valdez to their son, Delfin Quintana and that all rights from the Rito de Medio were included. Defendants stipulate that the deed does not mention a water right from the Old Valdez ditch but state the lack of mention is not dispositive proof of the existence or non-existence of water rights on the property, supplied by the Old Valdez ditch.

30. Defendants Chacon stipulate that in 1946, federal officials received a request from Patricio Chacon to buy a 40-acre tract of land which joined his property on the east and south and that in 1951, his offer was accepted and he received a patent for the land from the General Land Office. .

31. Defendants Chacon stipulate that this land is traversed by a ditch but dispute that it is the "Alfalfita" ditch, rather it is the Old Valdez ditch. <u>See C Chacon Affidavit, ¶ 19</u>.

32. Defendants Chacon stipulate that Patricio Chacon applied to purchase the subject property and that the BLM field examiner reported that property was bordered by a brook on one boundary but that there was no water of any kind on the tract and agreed that Chacon's offer of $3.00 per acre was a fair price. Further Defendants Chacon stipulate that the tract is best suited

7

for grazing livestock but that "grazing livestock" on this tract, under the occupation of Pedro Y. Martinez, involved irrigation of pasture and other crops in the area close to the "brook".  <u>See Affidavit of Stephen D. Hardin, Exhibit A, Survey Map, revised July 26, 2015.</u>

33. Defendants question the adequacy of the State's documentation supporting the going rate of this tract as non-irrigated land versus irrigated land, as presented in the State's No. 33.

34. Defendants Chacon and Quintana stipulate that in 1926 Canuto Valdez filed a declaration with the State Engineer claiming water rights for the irrigation of three acres within his homestead, located just south of the Juan Desiderio Valdez homestead and that the water came from the Rito del Medio.

35. Defendants Chacon and Quintana stipulate that in 1944 Canuto Valdez sold 40 acres, part of the original Gabriel Valdez homestead to Luis and Dulcinea Quintana.

36. Defendants Chacon and Quintana stipulate that in 1954 Gabriel Valdez and Luis Quintana built a new diversion at the headgate of the Canuto Valdez ditch and that this new diversion diverted almost all of the flow of the Rito del Medio into the Canuto Valdez ditch.

37. Defendants Chacon and Quintana stipulate that in September, 1962 Jose G. Cordova filed a lawsuit in NM District Court against Quintana and Valdez over the new diversion and that Cordova conceded that Canuto Valdez had a historic right to irrigate about three acres from the Rito del Medio.  Defendants dispute, however, that sometime after 1923, a sawmill operator obtained authorization to divert water through Canuto's ditch to provide steam for the mill. Defendants dispute that the land owners continued to use the water to irrigate additional farm lands after the mill ceased operations.

38. Defendants Chacon and Quintana stipulate that in 1967 the Special Master found that defendants Valdez and Quintana had water rights from the Rito del Medio on about three acres of land and that Cordova had water rights from the Rito del Medio for 104 acres of land and that this decision was ultimately accepted by the New Mexico Supreme Court.

Defendants Chacon and Quintana stipulate that under the court's decision the Quintana and Valdez lands formerly watered by the Canuto Valdez ditch no longer had rights to water from the Rito del Medio, except for the three acres.  Defendants Chacon and Quintana state that

8

the Quintana and Valdez owners have irrigated portions of their respective properties from the Old Valdez ditch but never from a ditch called "Alfalfita".

Defendants Chacon dispute that *"under the court's decision the lands now watered by the Alfalfita ditch had no rights to water from the Rito del Medio."* Defendants Chacon dispute that no water from the Rito del Medio, except for occasional tail water, has ever irrigated any part of the Alfalfita and adjoining fields from any of the appurtenant ditches, however named. The Defendants Chacon were not a party in the subject Cordova v. Quintana lawsuit and there is no part of the Judgment that pertains to any of their properties, back at the time of the judgment or in the present time.

39. Defendants Chacon and Quintana stipulate that the water rights awarded to Jose G. Cordova to the Rito del Medio in the *Cordova v. Quintana* litigation have since been recognized by this Court in a consent order entered in CHCB-002-0011.

40. Defendants Chacon stipulate that in 1969 Charlie Chacon purchased water rights from 30 acres west of the Rito del Tanque from Gabriel Valdez and that in 1973 he applied and received a permit from the State Engineer to change the point of diversion of the water rights to the other side of the Rito del Tanque where he established a diversion for a new acequia known as the "Chacon" ditch.

41. Defendants Chacon dispute that an overlap exists of the 1973 30 acres of water rights transferred by Chacon and irrigated from the Chacon ditch and the lands that are traversed by the Alfalita ditch and dispute the materiality of the State's fact. See SD Hardin Affidavit, ¶ 7.

### B. The Chain of Title for Chacon and Quintana

Defendants Chacon and Quintana state that their stipulations of the State's factual land transactions serve -- together with evidence of the Homestead and other government records discussed hereunder -- to establish their respective chains of title for the irrigated properties which the State's seeks to disallow and the Defendants seek to retain. The specific stipulated facts which support the Chacons' chain of title are numbers 2, 6, 9, 15, 20, 22, 23, 24, 25, 26 and 29. For the support of the Quintanas' chain of title the numbers are 20, 21, 22, 23, 24, 25, 26, 29, 30, 35 and 36.

## IV. ARGUMENT IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

### A. The State's Factual Predicates

The State Engineer has presented forty-one paragraphs of facts that it claims are undisputed in this matter and form the basis for its Motion for Partial Summary Judgment. Of the forty-one paragraphs of undisputed facts, the Defendants have stipulated that about twenty-four of the forty-one fact paragraphs are not disputed, mostly those facts having to do with the respective chains of title of Chacon and Quintana. Defendants have disputed about twenty of the individual material facts. The State appears to distill the forty-one paragraphs of proposed facts into three facts and one conclusion of law in further support of its Motion for Partial Summary Judgment. The three facts are:

*1. The Old Valdez ditch and the Alfalfita ditch were originally constructed as two separate ditches;*

*2. The Alfalfita ditch was constructed at some unknown time after 1907;*

*3. The Old Valdez ditch and Alfalfita ditch were connected at some unknown time after 1907;*

While the conclusion or judgment as a matter of law which the State seeks is:

*4. Defendants have no rights to irrigate the claimed tracts under the Old Valdez ditch from the Rio Cebolla.* See State's Motion Partial SJ, at page 14-15.

The parties obviously agree that the pivotal date for the proof of water rights in this case is 1907, specifically the date is March 19, 1907 under NMSA 1978 § 72-9-3 which reads in pertinent part:

> Nothing contained in this article shall be construed to impair existing vested rights or the rights and priority ... prior to March 19, 1907; provided, however, that all ... rights of the owners thereof shall be subject to regulation, adjudication and forfeiture for nonuse as provided in this article.

10

and NMSA 1978 § 72-1-3 which reads in part:

> Any person, firm or corporation claiming to be an owner of a water right which was vested prior to the passage of Chapter 49, Laws 1907, from any surface water source by the applications of water therefrom to beneficial use, may make and file in the office of the state engineer a declaration…setting forth the beneficial use to which said water has been applied….Such records or copies thereof officially certified shall be prima facie evidence of the truth of their contents.

### B. Defendants' Counter-Issues with the Evidence in this Case

While the State Engineer contends that the Alfalfita ditch was constructed *"at some unknown time after 1907"* and that *"Old Valdez ditch and Alfalfita ditch were connected at some unknown time after 1907"*, the State Engineer further states that in this matter, *"… there is a total absence of evidence to support Defendants' case."* See ¶ 2, page 11, State's Memorandum. Defendants affirmatively state that instead of a "total absence of evidence", there is actually "an abundance of evidence" that Defendants own water rights that were vested in almost all their irrigated properties prior to March 19, 1907. While some of the Defendants' evidence is found in the 24 stipulations made by them, there is significant testimonial, documentary and even physical evidence of old ditches, houses, corrals, saw mills in this case which both parties have discovered and exchanged since the early 2000's. The following issues can be resolved by this evidence:

> 1. Whether the Alfalfita field can be irrigated by the Old Valdez ditch or other ditches, named or un-named from the diversion at El Rito de la Pierda about a mile upstream from the field;

There is no question that at the present the Alfalfita field can be irrigated from the Old Valdez ditch that diverts water from El Rito de la Piedra. Here we have ample evidence, including eye witness reports, that such irrigation is occurring and that it has occurred for several decades. See C Chacon Affidavit ¶s 15,16,17. The question arises, how far back is there evidence of irrigation of the Alfalfita field by a ditch system diverting from El Rito de la Piedra? Does it pre-date 1907? Thus, we must ask:

11

2. Whether the irrigation of the Alfalfita field occurred from this ditch system diverting off El Rito de la Pierda before 1907.

There is historical or reputational evidence from defendant Charlie Chacon, age 95+, born on October 20, 1920 -- a mere 14 years after 1906 -- that the Alfalfita has been irrigated through a ditch diverting from El Rito de la Piedra since the "1880s". See C Chacon Affidavit ¶ 15. There is ample testimony in the form of two depositions from Charlie Chacon and his sister, Mary C. Martinez and a sworn statement from his brother Gilbert Chacon, that irrigation and ample harvests of crops were occurring in the 1920's and later on the Alfalfita field. See C Chacon Affidavit ¶ 11 and Exhibit 2: Deposition Excerpt of Mary Chacon Martinez. There are also other sworn statements from individuals who had direct knowledge that irrigation and other uses of water were taking place on the Alfalfita for a significant part of the 20th century. See C Chacon Affidavit ¶ 12 and Exhibit 3: Affidavits of Feliberto Ulibarri, Cristobal Archuleta, Ubaldo Valdez, Gilbert A. Chacon, Delfin Quintana and Gabriel L. Valdez.

There is ample documentation from government sources that irrigation from the Old Valdez or other ditches diverting from El Rito de la Piedra was taking place in the location of the Alfalfita property, as well as in the Delfin Quintana pasture, upstream from the Alfalfita before 1907. Two documents from the State Engineer's Office expressly support a pre-1907 date for irrigation from the Old Valdez ditch. The first is a "Certificate of Construction", signed by then assistant State Engineer, Artthur F. Brown on November 20, 1953 that states, *"This is to certify that the works known as Acequia Pinavetal, Valdez Ditch, and Sanchez Ditch **all constructed prior to 1907**, were inspected in the year of 1953, by Walter G. Turley..."* See Defendants Exhibit I, ¶ 1.

There is also Declaration No. 0579, filed by Venceslao Martinez, with the Office State Engineer on October 20, 1927, which states as follows:

> *Venceslao Martinez, a resident of Cebolla, Rio Arriba County, New Mexico, being first duly sworn on his oath makes this declaration and statement of his rights to appropriate and use for the purpose of irrigation and domestic use the waters of those natural streams or water courses known as El Rito en Medio and El Rito de la Piedra, both of which streams are fed by springs owned by affiant; that for more than forty years the*

12

> *waters of the said streams have been continuously used by this affiant and his predecessor, to-wit, his father, Donaciano Martinez, the same having been used to irrigate the private lands of affiant and his said father and for domestic use…"*

See G Chacon Affidavit, ¶ 19 and Exhibit 5.

The location of the Donaciano and Venceslao Martinez' property is just south of the Alfalfita field, which is the Chacon's farthest downstream irrigated property. Gerald Chacon states in his Affidavit, as follows:

> *… Historian John Baxter's report at pages 13-14 refers to documentation that "Rito de la Piedra" water reached down to the neighboring property of Venceslao Martinez. The Venceslao Martinez property is located southwest or downstream from our "Alfalfita" field, which is on our southwestern-most boundary. The only possible way water from El Rito de la Piedra could come down that far is through a ditch – in this instance the Old Valdez ditch.* See G Chacon Affidavit ¶ 19.

Of equal importance, this documentation places irrigation use off the El Rito de la Piedra in the vicinity of the "Alfalfita" property back to 1887 or so, well before 1907. Other written documentation in the form of pre-1907 Homestead records and survey and are consistent with the 1953 Certificate of Construction and the 1927 sworn Declaration of Venceslado Martinez. Consider the following documentation from the various homestead documents, much of which is cited to or attached to the two Affidavits by Defendant Charlie Chacon and Affiant Gerald Chacon and Surveyor, Stephen D. Hardin.

### C. The Defendants Delfin and Francis Quintana Water Rights Pre-1907

Defendants Delfin and Frances Quintana have pre-1907 water rights for their irrigated properties that derived from two homestead patents, the Canuto Valdez and the Gabriel Valdez, both of whom were family members to the Defendants Chacon and Quintana. Gerald Chacon's Affidavit, with five documents as Exhibits, attached to Defendants' Response in Opposition, notes the following:

> 8. Regarding the Quintana property, The Homestead Proof – Testimony of Claimant, Gabriel Valdez, dated August 9, 1890, states he used the land *"partly timber & partly*

13

*farming, most valuable for farming"*; that he *"made a ditch", "plowed land 100 yards wide & 200 yards long"*, and raised *"1 season, oats"* on the *"piece of land 100 x 200 yards, 38 bushell (sic).* Gabriel stated, *"I have the land in crop. All of it"* in answer to the question, *"How much of the land is so cropped or prepared?"*
See G Chacon Affidavit ¶ 8 and Exhibit 1.

9. Regarding the Quintana property, The Homestead Proof – Testimony of Claimant, Canuto Valdez, and Testimony of Witness, state that Canuto occupied the land on March 1, 1897 and that he built a *"dam and ditches and improved land"*, and *"cultivated"*- *"about two or three acres"* over *" about 3 or 4 years"* and stated that the land's purpose was most valuable for *"grazing and farming", "Most valuable for farming"*.
See G Chacon Affidavit ¶ 9 Exhibit 2.

The amount of irrigated acreage belonging to the Delfin and Francis Quintana Trust that is the subject of the State's Motion for Partial Summary Judgment is about 7 to 8 acres. This irrigated acreage, located between the Old Valdez ditch and the Rito del Tanque, is highlighted in yellow, based on the Stephen Hardin Map Exhibit A, dated July 14, 2008. See Defendants Exhibit II.

### D. The Defendants Charlie and Geralda Chacon Water Rights Pre-1907

Defendants Charlie and Geralda Chacon have pre-1907 water rights for their irrigated properties that were devolved in part from two homestead patents to Jose Leandro Montoya and Pedro Y. Martinez. Gerald Chacon's Affidavit notes the following:

11. Regarding the Chacon property, the underlying U.S. Patent came from Jose Leandro Montoya who received the patent in 1892 after his occupation of the land in April, 1886. The Homestead Proof – Testimony of Claimant, and Testimony of two Witnesses, dated November 2, 1891, states that he had *"cultivated"* for *"five years", "about eleven acres"* and that the *"character of the land"* was *"agricultural land and pasture land"*. The testimonies identify that crops on 11 or 9 acres of land were raised for the preceding five years, which were 1886, 1887, 1888, 1889 and 1890. See G Chacon Affidavit ¶ 11 and Exhibit 3.

13. Our property from the Pedro Y. Martinez Patent property is an unusual situation because on December 15, 1915 Pedro Y. Martinez occupied and settled on the wrong 40 acre property at <u>SE</u> ¼ NW¼ of Section 25, Township 27 N., Range 4 E. NMPM, instead of the correct 40 acre parcel, contiguous to the south, at <u>NE</u> ¼ NW ¼ of Section 25.  At any rate, his Homestead Entry / Final Proof of May 9, 1921 states that he had a *"wife"* and *"four children"*, built a *"house of two rooms, stables, corrals, fence"*, planted and cultivated about *"6 acres, more or less"*, raising *"wheat, potatoes, oats, beans, corn, peas"* in quantities of *"about 1000 lbs Wheat, about 900 lbs peas in 1916; about* 900 lbs *wheat,* 800 lbs *peas in 1917; 700 lbs of peas, 1,000 lbs of potatoes in 1918; 1200 lbs of wheat in 1919 and 700 lbs of peas in 1920"*.  Traces of his house and structures still remain, including the fields that we have continued to cultivate and irrigate. <u>See G Chacon Affidavit ¶ 13 and Exhibit 4.   See also C Chacon Affidavit ¶ 19.</u>

Although Pedro Y. Martinez' occupation in December, 1915 was post-1907, there is documentary evidence that the homestead had been entered by either or both Mrs. Antonio Gabin or Mr. Antonio Gavin and family at an earlier date, sometime before December 15, 1913, but this homestead application appears to have failed and no additional documentation on an earlier entry has not been located.  <u>See Defendants Exhibit III.</u>

The amount of irrigated acreage belonging to the Charlie and Geralda Chacon that is the subject of the State's Motion for Partial Summary Judgment is about 15 acres.  This irrigated acreage, located between the tail end of the Old Valdez ditch and the Rito del Tanque is highlighted in two parcels: first, the "Alfalfita field" of 5.0 acres in the purple legend and second, the 10.0 acres of the "Old Tank field", hatched in black as shown in the Stephen Hardin Map Exhibit A, dated July 14, 2008. <u>See Defendants Exhibit II.</u>

### E. The 1884 Surveyor General Atkinson Survey and Depiction of the Subject Area

The 1884 survey certified by Surveyor General Henry M. Atkinson was performed by Moore & Fisher, beginning December 6, 1883 and was completed by February, 1884. This survey is significant evidence of the pre-1907 water rights claims of Defendants Chacon and Quintana because of the documentation of the existence of irrigated land in two primary areas of Cebolla. The first area begins in Section 1, (at the top of the survey) and continues at the

15

boundary with the Tierra Amarilla Grant through Sections 2, 11, 10, 9, 16, 17 and 18. In this top part of the survey, the name *"Perfecto Esquibel"*, who contributed money for the survey, is shown and then several features are depicted for *"fences", "bridge", "Road", "Cult Land", "Mill"* and symbols for houses at two locations. There is considerable cultivated or irrigated land in Section 1 and 2. See Stephen D. Hardin Affidavit, Exhibit B, the 1884 Atkinson Survey.

In the second area (at the bottom of the survey) the same features are depicted in Sections 24, 25 and 26, where Defendants Chacon and Quintana and their predecessors in interest, have their homestead properties and irrigated lands. See Stephen D. Hardin Affidavit, ¶s 4,5,6 and Exhibit A, Survey Map, revised July 26, 2015. There are depictions in these sections of an *"Arroyo"*, a *"road", "Cult. Land", "corral", "house"* and the *"Cebolla River"* is identified, along with its course, and depicted is an *"Acequia"* with a course running roughly parallel with the Cebolla River. The Acequia is running on the southwesterly side of the Cebolla River. See Stephen D. Hardin Affidavit and Exhibit B, the 1884 Atkinson Survey.

The 1884 Atkinson Survey presents compelling evidence of irrigation in the very areas where Defendants Chacon and Quintana are claiming their irrigated lands have pre-1907 water rights. For Chacon, those water rights are the 5.0 acres of the "Alfalfita" field, the 10.0 acres of the "Old Tank field" and for Quintana those water rights are the pasture field of 7.0 to 8.0 acres, lying between the Old Valdez ditch and the Rito del Tanque. Affiant, Stephen D. Hardin, states that the Chacon and Quintana fields lie within the portions of their respective patents where the 1884 Atkinson Survey and surveying notes identify and depict the presence of cultivation. See Stephen D. Hardin Affidavit ¶s 4,5,6 and Exhibit B.

Surveyor Hardin also presents evidence disputing the States' material fact, No. 41 which states, "The lands to which the water rights were transferred and which are irrigated from the Chacon ditch overlap the lands that are traversed by the Alfalfita ditch." Hardin states, that there is no overlap of lands. See Stephen D. Hardin Affidavit ¶ 7 and Exhibit A.

## V. LEGAL AUTHORITY

The standard of review for a Rule 56 motion is as follows: *"Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. See also, *Roybal v. Lujan de la Fuente,* 2009-NMSC-114, ¶ 29 citing generally *Garcia-Montoya, 2001-NMSC-003,* ¶ 7, *"if there is the slightest doubt as to the existence of material factual issues, summary judgment should be denied."* In this case, there is much more than the "slightest doubt" regarding the State's claims of post-1907 development of the subject ditches. There is positive proof of the pre-1907 existence of water rights on the Chacon and Quintana subject fields, irrigated by the ditches in question. This pre-1907 proof is sufficient to defeat the State's Motion for Partial Summary Judgment.

The State Engineer's three factual predicates of the post-1907 origin of one or two ditches, howsoever named, cannot stand in the light of the prima facie case Defendants Chacon and Quintana have made that the subject water rights of this case are pre-1907 and were therefore vested before March 19, 1907. This is consistent with <u>NM Const., Art. XVI, Sec. 2,</u> providing that *"the unappropriated water ...within the state of New Mexico ...belong(s) to the public ...subject to appropriation for beneficial use..."* <u>NMSA 1978 § 72-9-1</u> states, *"Nothing contained in this article shall be construed to impair existing vested rights or the rights and priority ... prior to March 19, 1907; provided, however, that all ... rights of the owners thereof shall be subject to regulation, adjudication and forfeiture for nonuse as provided in this article." State ex rel. Reynolds v. South Springs Co.,* 1969-NMSC-023, 80 N.M. 144, 452 P.2d 478 (S. Ct. 1969), was a case where vested water rights were found to have been forfeited by nonuse. In this case, there is no "clear and convincing evidence" of non-use that would meet the standards of *South Springs C.,* nor was any "non-use" alleged in this case by the State under <u>NMSA 1978 § 72-9-1</u>.

By itself, the documentary evidence in the form of homestead documents, general surveyor notes and State Engineer files has dated the inception of irrigation on the Chacon and Quintana fields back before 1907. In addition, Chacon and Quintana have presented evidence through three Affidavits with Exhibits of the location and approximate configurations of the subject irrigated fields, along with detailed sworn statements and deposition testimony about the

17

history of irrigation of these properties. *State ex rel, Reynolds v. Holguin,* 1980-NMSC-110, 95 N.M. 15, 618 P.2d 359 (S.Ct. 1980), held that Holguin, a farmer off the Rio Grande in Sierra County had obtained a vested right prior to 1907, which water right had never been terminated by non-use. Holguin's evidence consisted of one witness *"who testified from personal knowledge that the property had been irrigated for farming since 1900."* In addition to the documentary and other evidence in this case there is also Charlie Chacon's personal testimony of the reputation of pre-1907 water rights for the "Alfalfita" field to support the conclusion that the subject water rights of Chacon and Quintana had vested before 1907. See C Chacon Affidavit, ¶ 15.

Through depositions, affidavits and other sworn statements Defendants Chacon and Quintana have complied with NMSA 1978 § 72-1-2, requirement that, *"Beneficial use shall be the basis, the measure and the limit of the right to the use of water, and all waters appropriated for irrigation purposes..."* The Defendants have provided ample evidence of their beneficial use of water in the subject fields of this case and in their diligence in keeping the water flowing in their ditches. See *State ex rel. Erickson v. McLean,* 62 N.M. 264, 273, 308 P.2d 983, 988 (1957) defining beneficial use as *"the use of such water as may be necessary for some useful and beneficial purpose in connection with the land from which it is taken."*

WHEREFORE, Defendants Chacon and Quintana through their undersigned Attorney respectfully request this Court to deny the State's Motion for Partial Summary Judgment and enter an Order concluding that a prima facie case of pre-1907 water rights in this matter has been made for the subject properties of Defendants Charlie and Geralda Chacon and Delfin and Francis Quintana.

Respectfully submitted,

/s/ Ted J. Trujillo
───────────────────
Law Offices of Ted J. Trujillo
P.O. Box 2185
Espanola, NM 87532
Telephone: (505) 351-1632
Email: tedjtrujillo@gmail.com

18