IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| STATE OF NEW MEXICO, *ex rel.* ) | | |
| State Engineer ) | 69cv07941 – MV / KK | |
| ) | RIO CHAMA STREAM SYSTEM | |
| Plaintiff, ) | | |
| ) | Section 3, Rio Cebolla | |
| vs. ) | Subfile Nos. CHCB-001-0007, | |
| ) | CHCB-002-0001B, CHCB-002-0002C, | |
| ) | CHCB-002-0009 | |
| ROMAN ARAGON, *et al.,* ) | | |
| Defendants. ) | | |
| _____ ) | | |

## AFFIDAVIT OF GERALD L. CHACON

I, Gerald L. Chacon, being duly sworn, state as follows:

1. I was born on May 25, 1953 in Espanola, New Mexico to Charlie and Geralda Chacon, the Defendants in this lawsuit.

2. From early childhood I have been very involved in the family's ranching business in Cebolla, New Mexico.

3. I am a retired agricultural extension service Professor from New Mexico State University and I am now the ranch manager for the Chacon Family LLC.

4. The Chacon family have raised livestock for several generations going back into the 1700s and have a long tradition of knowledge of the land, the customs, the events and personal histories of the extended families in Cebolla.

5. I have continued this ranching tradition with my children and grandchildren and I have personal knowledge of the matters which I address in this Affidavit.

6. I am fluent and literate in Spanish, having read numerous old documents written in Spanish over the years.

7. I have also read documents on the U.S. Patents to Juan Desiderio Valdez, Canuto Valdez, Gabriel Valdez, Jose Leandro Montoya and Pedro Y. Martinez, including those exhibits, 2, 3 and 4, which the State Engineer provided with its Motion and Memorandum for Partial Summary Judgment. The State's Exhibits 2 and 4 are the two patents and first deeds in the

1

chain of title for the subject Delfin and Francis Quintana property. Exhibit 3 is the patent and first deed for the Charlie and Geralda Chacon property.

8. Regarding the Quintana property, The Homestead Proof – Testimony of Claimant, Gabriel Valdez, dated August 9, 1890, states he used the land *"partly timber & partly farming, most valuable for farming"*; that he *"made a ditch"*, *"plowed land 100 yards wide & 200 yards long"*, and raised *"1 season, oats"* on the *"piece of land 100 x 200 yards, 38 bushell (sic).* Gabriel stated, *"I have the land in crop. All of it"* in answer to the question, *"How much of the land is so cropped or prepared?"* See Gerald Chacon Exhibit 1.

9. Regarding the Quintana property, The Homestead Proof – Testimony of Claimant, Canuto Valdez, and Testimony of Witness, state that Canuto occupied the land on March 1, 1897 and that he built a *"dam and ditches and improved land"*, and *"cultivated"*- *"about two or three acres"* over *" about 3 or 4 years"* and stated that the land's purpose was most valuable for *"grazing and farming"* *"Most valuable for farming"*. See Gerald Chacon Exhibit 2.

10. As long as I can recall I have seen that the Quintana property between the Old Valdez Ditch and the Rito del Tanque has been irrigated and cultivated for crops, mainly pasture. From there, as long as I can recall, the Old Valdez ditch has continued and connected to the Chacon property containing the field near the Old Tank and the Alfalfita field, among other fields, all of which have been irrigated for pasture to feed our livestock.

11. Regarding the Chacon property, the underlying U.S. Patent came from Jose Leandro Montoya who received the patent in 1892 after his occupation of the land in April,1886. The Homestead Proof – Testimony of Claimant, and Testimony of two Witnesses, dated November 2, 1891, states that he had *"cultivated"* for *"five years"* *"about eleven acres"* and that the *"character of the land"* was *"agricultural land and pasture land"*. The testimonies identify that crops on 11 or 9 acres of land were raised for the preceding five years, which were 1886, 1887, 1888, 1889 and 1890. See Gerald Chacon Exhibit 3.

12. The Jose Leandro Montoya Patent property contains a field, long referred to by our family and neighbors as the "Alfalfita." This field is the most level, rock free and fertile property of our Cebolla properties. This field has the reputation, as I have long heard from my father, aunt and uncle, of providing all the crops and produce necessary to sustain the Chacon family in the first half of the 1900s. Since I have been involved with this field it has been used primarily for growing pasture for our livestock.

13. Our property from the Pedro Y. Martinez Patent property is an unusual situation because on December 15, 1915 Pedro Y. Martinez occupied and settled on the wrong 40 acre property at *SE* ¼ NW¼ of Section 25, Township 27 N., Range 4 E. NMPM, instead of the correct 40 acre parcel, contiguous to the south, at *NE* ¼ NW ¼ of Section 25. At any rate, his Homestead Entry / Final Proof of May 9, 1921 states that he had a *wife* and *four children*, built a *house of two rooms, stables, corrals, fence,* planted and cultivated about *6 acres, more of less,*

2

raising *wheat, potatoes, oats, beans, corn, peas* in quantities of *about 1000 lbs Wheat, about 900 lbs peas in 1916; about* 900 lbs *wheat,* 800 lbs *peas in 1917; 700 lbs of peas, 1,000 lbs of potatoes in 1918; 1200 lbs of wheat in 1919 and 700 lbs of peas in 1920.* Traces of his house and structures still remain, including the fields that we have continued to cultivate and irrigate. See Gerald Chacon Exhibit 4.

14. The Homestead documents for the present day Chacon and Quintana properties establish, along with the U.S. Surveyor General Atchinson's Survey in 1884, that "cultivation" was taking place all along the south side of the Cebolla stream from an unnamed depicted "Acequia" that ends in the present day Chacon property, near the "Alfalfita" field.  (See also the Stephen d. Hardin Affidavit).

15. As long as I can remember I have seen and participated in the irrigation and cultivation of pasture on the Alfalfita land. The source of water has been the Old Valdez ditch. This property is at the lowest elevation of all our properties and thus it is well suited to receive water from all available sources, in addition to the Rito de la Piedra. Water from Rito de la Piedra reaches this property from the Old Valdez ditch. On occasion this property receives tail water from the old Canuto Valdez ditch, which comes from the Rito del Medio, as well as a spring close to the Old Valdez ditch and can also be irrigated from the Rito del Tanque.

16. Regarding the Old Valdez ditch I have tended this ditch with my father Charlie Chacon, virtually my entire life, beginning with the Spring cleaning, done by hand or machine. During the irrigation season, when the ditch channel is breached it is repaired, when it silts, we dig it out, when it overbanks, we restore or build up the banks.

17. The only times that the flow of water in the Old Valdez ditch has been interrupted is during heavy spring run-off or summer monsoon rains when the heavy flows wash out portions of the Old Valdez ditch channel, requiring us to dig out and restore the banks.

18. I dispute the State Engineer's that the Old Valdez ditch and the so-called "Alfalfita ditch" are two separate ditches built and connected at two different times. In my life time the Old Valdez ditch has always reached the boundaries of the Alfalfita field. The August, 2000 Hydrographic Survey, prepared by the State Engineer, is incorrect in showing, for the first time in any document, a gap of about 200 yards between the Old Valdez and Alfalfita field and that the terminus of the Old Valdez ditch stops short of reaching the Chacon property. The so-called "gap" is in a trouble area where an old logging road crosses the ditch and where the ditch is prone to silting and washing out. This fact has been pointed out to the State on their site visits.

19. The primary source of water for the Old Valdez ditch has always been the Rito de la Piedra. This source, while not large has always been the most reliable supply during drought years and it has been sufficient to irrigate the farthest reaches of the Chacon properties. For example, Historian John Baxter's report at pages 13-14 refers to documentation that "Rito de la Piedra" water reached down to the neighboring property of Venceslao Martinez. The Venceslao

3

Martinez property is located southwest or downstream from our "Alfalfita" field, which is on our southwestern-most boundary. The only possible way water from El Rito de la Piedra could come down that far is through a ditch – in this instance the Old Valdez ditch. This is directly supported by the Venceslao Martinez Declaration, No. 0579, October 20, 1927, which states *"...being first duly sworn on his oath makes this declaration and statement of his rights to appropriate and use the purpose of irrigation and domestic use the waters of those natural streams or water courses known as El Rito en Medio and <u>El Rito de La Piedra</u>, both of which streams are fed by springs owned by affiant; that for <u>more than forty years the waters of the said steams have been continuously used</u> by this affiant and his predecessor, to-wit, his father Donaciano Martinez..."* (Underlining for emphasis by Affiant.) Forty years of continuous use from El Rito de La Piedra puts the use of water rights on adjoining irrigated properties of the Old Valdez ditch back to 1877. See Gerald Chacon Exhibit 5.

20. Finally, it is important to note that the State Engineer is in error in its insistence that there is one common interconnected source of water for all the ditches in this upper stretch of the Cebolla stream. In addition to the various springs in this stretch, there are actually two streams, El Rito de la Sesion and El Rito de la Piedra. El Rito de la Sesion supplies the Acequia Pinabetal and the Chacon ditch while El Rito de la Piedra supplies the Sanchez ditch, the Old Valdez ditch and the Chacon ditch. They are not interconnected but start as separate supplies of irrigation water before they comingle in the Cebolla creek.

FURTHER AFFIANT SAYETH NAUGHT

*/s/ Gerald L. Chacon*

Gerald L. Chacon

SUBSCRIBED AND SWORN to before me this 29th day of July, 2015.

_/s/ Ted J. Trujillo_ Notary Public

OFFICIAL SEAL
TED J. TRUJILLO
NOTARY PUBLIC – NEW MEXICO
Notary Bond Filed With Secretary of State
My Commission Expires:

My Commission Expires: 11-30-2016

# HOMESTEAD, PRE-EMPTION, [...] PROOF.

## TESTIMONY OF CLAIMANT.

REPRODUCED AT THE NATIONAL ARCHIVES

Full and Specific Answers must be given to each Question.   Evasive Answers will be Fatal to the Proof.

_____Gabriel Valdez_____, claimant, being first duly sworn, testifies as follows:

Ques. 1.—What is your correct name, your age, and occupation? If employed by any person, state by whom.

Ans. Gabriel Valdez, aged 54 years, laborer & Farmer for myself

Ques. 2.—What is your post-office address?

Ans. Tierra Amarilla, Rio Arriba Co, N.M.

Ques. 3.—Are you the identical person who made pre-emption filing No. _____ (or homestead entry No. 2531) at the Santa Fe, N.M. land office on the 8 day of March, 1886 and what is the true description of the land now claimed by you?

Ans. Yes I am. The SE¼ NW¼, N½ SW¼, SW¼ SW¼, Sec. 24 Tp 27 N, R 4 E

Ques. 4.—Where did you live before settling upon this land, and what was your occupation?

Ans. Cebolla, Rio Arriba Co, N.M. Laborer

Ques. 5.—Are you a citizen of the United States, or have you declared your intention to become such?

Ans. I am a native-born citizen of the United States

(In case the party is of foreign birth, a copy of his declaration of intention to become a citizen or full naturalization certificate, officially certified, must be filed with the case. The latter is only required in final homestead entries.)

Ques. 6.—Are you interested in any other entry or filing than the one upon which you now seek to make proof?

Ans. No Sir

Ques. 7.—Have you ever made a pre-emption filing for any other tract of land, or made any other homestead entry or filing or entry of any kind? (Answer each question separately, describe the land, and state what disposition you made of your claim.)

Ans. No    No    No    No

Ques. 8.—Is your present claim within the limits of an incorporated town or selected site of a city or town, or used in any way for trade and business?

Ans. No    No    No

Ques. 9.—What is the character of the land? Is it timber, mountainous, prairie, grazing, or ordinary agricultural land? State its kind and quality, and for what purpose it is most valuable.

Ans. Partly timber & partly farming. Most valuable for farming

Ques. 10.—Is the land valuable for coal, iron, stone, or minerals of any kind? Has any coal or other minerals been discovered thereon, or if any coal or mineral known to be contained therein? Are there any indications of coal, salines, or minerals of any kind on the land? If so, describe what they are.

Ans. No    No    No    No

Exhibit 1(1)

Ques. 12.—If the land is used for grazing purposes, state how and by whom it is so used, and whether it is within any stock range or fence or other inclosure, and who owns or controls the range or inclosure.

Ans. Not used for grazing, no fence but my own

Ques. 13.—When did you first make an actual personal settlement on this land? State what you did to make such settlement, and the character and value of the improvements you then placed upon the land.

Ans. In May 1884 Myself & son built a house & a corral value $50.00

Ques. 14.—Was the land occupied by any other person when you made such settlement? If so, state who lived there, and how you obtained possession.

Ans. No Sir, it was not

Ques. 15.—When did you actually move on this land and commence living permanently thereon?

Ans. In May 1884

Ques. 16.—Where has been your actual personal residence and home during the whole time since the date of this filing or entry?

Ans. On this land

Ques. 17.—Has your residence on the land now claimed been actual or constructive, continuous or at intervals? Explain what you mean by actual continuous residence.

Ans. It has been actual & continuous

It means to have lived there at all times

Ques. 18.—Have you resided or boarded elsewhere than on this land since commencing your residence thereon? If so, state when and where, how often, and for how long?

Ans. No, I have not except in winter when I go to Cebolla

Ques. 19.—Where have you voted since establishing residence on this land, and where did you last vote, and how long have you voted there?

Ans. In Cebolla, Cebolla, Voted there 13 years

Ques. 20.—How many times have you been absent from said tract since you commenced actual residence thereon? Give the dates when each absence commenced and terminated, and the cause therefor.

Ans. I have not been absent

Ques. 21.—Have you a family, and of whom does your family consist?

Ans. I have, Wife & four children

Ques. 22.—Has your family resided with you on this claim? If so, state when they moved on the land

Exhibit 1 (2)

REPRODUCED AT THE NATIONAL ARCHIVES

Ques. 25.—Did you and your family live in said house during all of [...] your filing or entry? If [...] to the duration and causes of each absence.

Ans. No, neither myself or family on account of the snow that falls there leave in Nov. & return in Apr.

Ques. 26.—If your family has not lived with you on this claim since the date of your filing or entry, state the causes thereof, where [...] reside, and where they are now living.

Ans. Up to 1½ years ago, my house was not large enough my family & they lived in Cebolla, they are now up there on the land, Cebolla is less than a mile from the land.

Ques. 27.—Do you own any other residence house than the one now on your claim? If so, state where, and who occupies the same.

Ans. Yes I own a house in Cebolla. My family in winter.

Ques. 28.—Describe fully the house on this claim, giving value thereof; also describe fully all other improvements thereon of every kind, giving the value of each and total value of all improvements.

Ans. The house is 38 x 16 x 9, made of logs, 1 room very large, value $75.00, 1 corral $30.00, commenced to build a[nother?] house $60.00, made a ditch $10.00, plowed land 100 yards wide & 200 yards long $20.00 & various other improvements. Total value $600.00

Ques. 29.—What farm implements do you own and use on this claim? State kind and number, and how long you have owned the [same].

Ans. 2 plows, 3 hoes, 1 pick, 2 harrows, 1 horse-rake, 2 scythes, 1 hand seeder

Ques. 30.—What domestic animals and live stock do you own and keep on this claim? State kind and number of each kind.

Ans. 15 horses & mares, no cows, 6 chickens

Ques. 31.—State what articles of furniture of every kind you keep and use in your residence on this claim, and how long you have had them there.

Ans. 1 Bed & bedstead, 8 mattresses, 4 chairs, 2 tables, cooking-outfit, 1 carpet, & various small things

Ques. 32.—Have you any personal property or live stock of any kind elsewhere than on this claim? If so, describe the same, and state where the same is kept.

Ans. No personal property except the house in Cebolla. No stock.

Ques. 33.—How many seasons have you raised crops on this land, and what kind of crops have you raised each season?

Ans. 1 season, oats

Ques. 34.—How many acres have you put in crops each year, and how much did you raise? State the amount in bushels of each kind.

Ans. piece of land 100 x 200 yards, 38 bushell

Ques. 35.—Have you the land in crop this year, or is it prepared for cropping the coming season? How much of the land is so cropped or prepared?

I have the land in crop. All of it

Exhibit 1 (3)

Ques. 38.—Where are you assessed for taxes, personal, real estate, or license, and when and where have you paid taxes since claiming this land?

Ans. _I have never been assessed._

Ques. 39.—Are the improvements on this land assessed for taxes; if so, at what valuation? Have such taxes been paid; if so, when and by whom?

Ans. _No_  _No_

Ques. 40.—What use is made of this land, and who, besides yourself and family, uses it or causes it to be used?

Ans. _Used for farming_  _No sir_

Ques. 41.—Have you sold, transferred, or mortgaged this land, or offered or agreed to sell or dispose of it, and at what price?

Ans. _No  No  No  No  No_

Ques. 42.—Do you make this entry in the interest or for the benefit of any one else, or has any person other than yourself and family any interest, immediate or prospective, in this entry? If so, state for whom the entry is made.

Ans. _No I do not I make it for myself & family_

Ques. 43.—Has any person paid your expenses for making this entry, or paid you wages or a salary on condition that you make said entry, or agreed to do either, or agreed to pay the entry money for you, or to pay the fees or commissions, with the agreement or understanding that you will deed the land after entry is made?

Ans. _No  No  No  No  No  No_

Ques. 44.—Do you make this entry in good faith, for the exclusive purpose of a home and farm for yourself and family?

Ans. _Yes I do._

_Attest:_
_Augt. Morris_ [Signature of claimant.] _Gabriel X Valdez_
_Marcos Castillo_ his mark  _Gabriel_

I hereby certify that each question in the foregoing deposition was orally propounded to the said _Gabriel Valdez_, and the foregoing answers severally given by him thereto before he signed the same and after being sworn according to law; that the said _Gabriel Valdez_ is to me personally known (or satisfactorily identified by _Marcos Castillo_) as the person he represents himself to be in making this proof; that I have called his attention to the laws and penalties against false swearing, and that the foregoing deposition was sworn to and subscribed before me this _9_ day of _August_, A. D. 18_90_.

_J. L. Thomson_
_Register L.O._

Territory of New Mexico
County of Rio Arriba

I certify that Gabriel Valdez well known to me personally appeared & sworn that he signed the foregoing Homestead — Subscribed & sworn to before me this 7th day of April 1891

_P. P. Lehaney_
_H. Clk_

Exhibit 1(4)

# HOMESTEAD PROOF—TESTIMONY OF CLAIMANT.

Canuto Valdez , being called as a witness in his own behalf in support of homestead entry, No. 4636 , for S½ SE¼ Sec 24 T.27 N R.4 E. SE¼ SW¼ Lot 4 Sec 1 testifies as follows:

Ques. 1.—What is your name, age, and post-office address?
Ans. Canuto Valdez, 38 years, Tierra Amarilla, N. M.

Ques. 2.—Are you a *native-born* citizen of the United States, and if so, in what State or Territory were you born?*
Ans. Yes, Native-born citizen of the U.S., Ty of New Mex.

Ques. 3.—Are you the identical person who made homestead entry, No. 4636 , at the Santa Fe land office on the 22 day of October , 189 7 and what is the true description of the land now claimed by you?
Ans. Yes, S½ SE¼ Sec 24 T 27 N R 4 E, SE¼ SW¼ Lot 4 Sec 19 T.27 N. R.5 E.; Farming and Grazing Chiefly.

Ques. 4.—When was your house built on the land and when did you establish actual residence therein? (Describe said house and other improvements which you have placed on the land, giving total value thereof.)
Ans. About the first of March of following year 1897 at same time; One log Cabin, Stables, fence, dam and ditches and improved land; About $200.⁰⁰

Ques. 5.—Of whom does your family consist; and have you and your family resided continuously on the land since first establishing residence thereon? (If unmarried, state the fact.)
Ans. Self and wife, Yes, Married.

Ques. 6.—For what period or periods have you been absent from the homestead since making settlement, and for what purpose; and if temporarily absent, did your family reside upon and cultivate the land during such absence?
Ans. For short periods to obtain necessaries and pasture and roundup cattle; yes.

Ques. 7.—How much of the land have you cultivated each season, and for how many seasons have you raised crops thereon?
Ans. About two or three acres About 3 or 4 years

Ques. 8.—Is your present claim within the limits of an incorporated town or selected site of a city or town, or used in any way for trade and business?
Ans. No.

Ques. 9.—What is the character of the land? Is it timber, mountainous, prairie, grazing, or ordinary agricultural land? State its kind and quality, and for what purpose it is most valuable.
Ans. Grazing and farming Most Valuable for farming

Ques. 10.—Are there any indications of coal, salines, or minerals of any kind on the land? (If so, describe what they are, and state whether the land is more valuable for agricultural than for mineral purposes.)
Ans. Not to my Knowledge, Agricultural.

Ques. 11.—Have you ever made any other homestead entry? (If so, describe the same.)
Ans. No.

Ques. 12.—Have you sold, conveyed, or mortgaged any portion of the land; and if so, to whom and for what purpose?
Ans. No.

Ques. 13.—Have you any personal property of any kind elsewhere than on this claim? (If so, describe the same, and state where the same is kept.)
Ans. No.

Ques. 14.—Describe by legal subdivisions, or by number, kind of entry, and office where made, any other entry or filing (not mineral), made by you since August 30, 1890.
Ans. X no.

(Sign plainly with full christian name.) Canuto Valdez

*(In case the party is of foreign birth a certified transcript from the court records of his declaration of intention to become a citizen, or of his naturalization, or a copy thereof, certified by the officer taking this proof, must be filed with the case. Evidence of *naturalization* is only required in final (*five-year*) homestead cases.)

6-677

Exhibit 2 (1)

REPRODUCED AT THE NATIONAL ARCHIVES

4—309.

# HOMESTEAD PROOF—TESTIMONY OF WITNESS.

Epimenio Chacon, being called as witness in support of the Homestead entry of Canuto Valdez, for S½ SE¼ Sec 24, T 27 N R 4 E, SE¼ SW¼ S¼ Sec 19 T. 2, testifies as follows:

Ques. 1.—What is your name, age, and post-office address?
Ans. Epimenio Chacon 38 years Tierra Amarilla N. Mex

Ques. 2.—Are you well acquainted with the claimant in this case and the land embraced in his claim?
Ans. Yes, Yes,

Ques. 3.—Is said tract within the limits of an incorporated town or selected site of a city or town, or used in any way for trade or business?
Ans. No

Ques. 4.—State specifically the character of this land—whether it is timber, prairie, grazing, farming, coal, or mineral land.
Ans. Grazing and farming

Ques. 5.—When did claimant settle upon the homestead, and at what date did he establish actual residence thereon?
Ans. About the first March 1897 at same time.

Ques. 6.—Have claimant and family resided continuously on the homestead since first establishing residence thereon? (If settler is unmarried, state the fact.)
Ans. Yes

Ques. 7.—For what period or periods has the settler been absent from the land since making settlement, and for what purpose; and if temporarily absent, did claimant's family reside upon and cultivate the land during such absence?
Ans. For short periods to get necessaries and to pasture and roundup cattle, yes

Ques. 8.—How much of the homestead has the settler cultivated, and for how many seasons did he raise crops thereon?
Ans. About 3 acres; 3 or 4 seasons

Ques. 9.—What improvements are on the land, and what is their value?
Ans. One Log Cabin; Stables fences dam and ditches and improved land; Valued at about $200.00

Ques. 10.—Are there any indications of coal, salines, or minerals of any kind on the homestead? (If so, describe what they are, and state whether the land is more valuable for agricultural than for mineral purposes.)
Ans. Not to my knowledge Agricultural

Ques. 11.—Has the claimant mortgaged, sold, or contracted to sell, any portion of said homestead?
Ans. Not to my knowledge

Ques. 12.—Are you interested in this claim; and do you think the settler has acted in entire good faith in perfecting this entry?
Ans. No Yes

(Sign plainly with full christian name.) Epimenio Chacon

I HEREBY CERTIFY that the foregoing testimony was read to the witness before being subscribed and was sworn to before me this 10th day of March, 1902, at my office at Tierra Amarilla in Rio Arriba County, New Mex.

B. Hernandez
Probate Clerk

[SEE NOTE ON FOURTH PAGE.]

(The testimony of witnesses must be taken at the same time and place and before the same officer as claimant's final affidavit. The answers must be full and complete to each and every question asked, and officers taking testimony will be expected to make no mistakes in dates, description of land, or otherwise.)

6—677

Exhibit 2 (2)

(4—369.)

# HOMESTEAD PROOF—TESTIMONY OF CLAIMANT.

Jose Leandro Montoya, being called as a witness in his own behalf in support of homestead entry, No. 3598, for W½ NW¼ N½ SW¼ sec 25 Tp 27 N R 4 E, testifies as follows:

Ques. 1.—What is your name, age, and post office address?
Ans. Jose Leandro Montoya 38 years. Puerto Amarillo, N.M.

Ques. 2.—Are you a *native born* citizen of the United States, and if so, in what State or Territory were you born?*
Ans. Yes I am. Territory of New Mexico

Ques. 3.—Are you the identical person who made homestead entry, No. 3598, at the SANTA FE, N.M. land office on the 30 day of September, 1890 and what is the true description of the land now claimed by you?
Ans. W½ NW¼, N½ SW¼ sec 25 Tp 27 N R 4 E

Ques. 4.—When was your house built on the land and when did you establish actual residence therein? (Describe said house and other improvements which you have placed on the land, giving total value thereof.)
Ans. In 1886.
in April 1882

Ques. 5.—Of whom does your family consist; and have you and your family resided continuously on the land since first establishing residence thereon? (If unmarried, state the fact.)
Ans. of 4. wife and 2 children
No. in winter went away

Ques. 6.—For what period or periods have you been absent from the homestead since making settlement, and for what purpose; and if temporarily absent, did your family reside upon and cultivate the land during such absence?
Ans. in winters about 4 months on account of heavy snows and severity of weather not during winters

Ques. 7.—How much of the land have you cultivated each season and for how many seasons have you raised crops thereon?
Ans. about 11 acres    5 years

Ques. 8.—Is your present claim within the limits of an incorporated town or selected site of a city or town, or used in any way for trade and business.
Ans. No it is not

Ques. 9.—What is the character of the land? Is it timber, mountainous, prairie, grazing, or ordinary agricultural land? State its kind and quality, and for what purpose it is most valuable.
Ans. Agricultural land and pasture land

Ques. 10.—Are there any indications of coal, salines, or minerals of any kind on the land? (If so, describe what they are, and state whether the land is more valuable for agricultural than for mineral purposes.)
Ans. Not to my knowledge

Ques. 11.—Have you ever made any other homestead entry? (If so, describe the same.)
Ans. Never.

Ques. 12.—Have you sold, conveyed, or mortgaged any portion of the land; and if so, to whom and for what purpose?
Ans. No sir

Ques. 13.—Have you any personal property of any kind elsewhere than on this claim? (If so, describe the same, and state where the same is kept.)
Ans. Yes. household goods, about 1½ miles from my claim

Jose Leandro Montoya.

I HEREBY CERTIFY that the foregoing testimony was read to the claimant before being subscribed, and was sworn to before me this 2 day of November, 189_.

[SEE NOTE ON FOURTH PAGE.]

*(In case the party is of foreign birth a certified transcript from the court records of his declaration of intention to become a citizen, or of his naturalization, or a copy thereof, certified by the officer taking this proof, must be filed with the case. Evidence of naturalization is only required in final (*five year*) homestead cases.)

6—577

Exhibit 3 (1)

(4—309.)

# HOMESTEAD PROOF—TESTIMONY OF WITNESS.

Ramuan Montano, being called as witness in support of the Homestead
entry of _Jose Leandro Montoya_ for W½ NW¼ N½ SW¼ Sec 15 Tp 27 R 4 E, testifies as follows:

Ques. 1.—What is your name, age, and post office address?
Ans. Ramuan Montano, 35 years, Sierra Amarilla, N.M.

Ques. 2.—Are you well acquainted with the claimant in this case and the land embraced in his claim?
Ans. Yes sir   Yes sir

Ques. 3.—Is said tract within the limits of an incorporated town or selected site of a city or town, or used in any way for trade or business?
Ans. No

Ques. 4.—State specifically the character of this land—whether it is timber, prairie, grazing, farming, coal, or mineral land.
Ans. Agricultural land

Ques. 5.—When did claimant settle upon the homestead and at what date did he establish actual residence thereon?
Ans. in April–1886
       at the same time

Ques. 6.—Have claimant and family resided continuously on the homestead since first establishing residence thereon? (If settler is unmarried, state the fact.)
Ans. he has been absent in the winters for 3 or 4 months at a time cause severity of winter

Ques. 7.—For what period or periods has the settler been absent from the land since making settlement, and for what purpose; and if temporarily absent, did claimant's family reside upon and cultivate the land during such absence?
Ans. For 3 or 4 months during the winters on account of snows and severity of weather. No.

Ques. 8.—How much of the homestead has the settler cultivated and for how many seasons did he raise crops thereon?
Ans. About 9 acres.   5 seasons

Ques. 9.—What improvements are on the land and what is their value?
Ans. Fence, houses, corrals, 9 acres land broken, about $500 or $600

Ques. 10.—Are there any indications of coal, salines, or minerals of any kind on the homestead? (If so, describe what they are, and state whether the land is more valuable for agricultural than for mineral purposes.)
Ans. No

Ques. 11.—Has the claimant mortgaged, sold, or contracted to sell, any portion of said homestead?
Ans. No, he has not

Ques. 12.—Are you interested in this claim; and do you think the settler has acted in entire good faith in perfecting this entry?
Ans. No   Yes I do.

Ramuan Montano

I HEREBY CERTIFY that the foregoing testimony was read to the witness before being subscribed and was sworn to before me this ____2____ day of _November_, 189 1.

[SEE NOTE ON FOURTH PAGE.]

(The testimony of witnesses must be taken at the same time and place and before the same officer as claimant's final affidavit. The answers must be full and complete to each and every question asked, and officers taking testimony will be expected to make no mistakes in dates, description of land, or otherwise.)

(407—50,000.) 0—577

Exhibit 3 (2)

(4—360.)

# HOMESTEAD PROOF—TESTIMONY OF WITNESS.

Navor Chavez, being called as witness in support of the homestead entry of Jose Leandro Montoya for W½ NW¼ N½ SW¼ Sec 25 TP 27 N R 4 E, testifies as follows:

Ques. 1.—What is your name, age, and post office address?
Ans. Navor Chavez, 36 years, Tierra Amarilla, N.M.

Ques. 2.—Are you well acquainted with the claimant in this case and the land embraced in his claim?
Ans. Yes.     Yes

Ques. 3.—Is said tract within the limits of an incorporated town or selected site of a city or town, or used in any way for trade or business?
Ans. No sir

Ques. 4.—State specifically the character of this land—whether it is timber, prairie, grazing, farming, coal, or mineral land.
Ans. Agricultural land

Ques. 5.—When did claimant settle upon the homestead and at what date did he establish actual residence thereon?
Ans. in April -- 1886
     at same time

Ques. 6.—Have claimant and family resided continuously on the homestead since first establishing residence thereon? (If settler is unmarried, state the fact.)
Ans. No - they have been absent a few months in the winter.

Ques. 7.—For what period or periods has the settler been absent from the land since making settlement, and for what purpose; and if temporarily absent, did claimant's family reside upon and cultivate the land during such absence?
Ans. during winter about 4 months to pass the winter. Much snow. No.

Ques. 8.—How much of the homestead has the settler cultivated and for how many seasons did he raise crops thereon?
Ans. about 9 acres   about 5 seasons

Ques. 9.—What improvements are on the land and what is their value?
Ans. fence, houses, corrals, 9 acres cultivated land. $500 value.

Ques. 10.—Are there any indications of coal, salines, or minerals of any kind on the homestead? (If so, describe what they are, and state whether the land is more valuable for agricultural than for mineral purposes.)
Ans. No.

Ques. 11.—Has the claimant mortgaged, sold, or contracted to sell, any portion of said homestead?
Ans. No

Ques. 12.—Are you interested in this claim; and do you think the settler has acted in entire good faith in perfecting this entry?
Ans. No.    Yes sir

Nabor Chavez

I HEREBY CERTIFY that the foregoing testimony was read to the witness before being subscribed and was sworn to before me this _____ day of November, 189_.

[SEE NOTE ON FOURTH PAGE.]

_____ Receiver

(The testimony of witnesses must be taken at the same time and place and before the same officer as claimant's final affidavit. The answers must be full and complete to each and every question asked, and officers taking testimony will be expected to make no mistakes in dates, description of land, or otherwise.)

6—577

Exhibit 3 (3)

# The United States of America,

To all to whom these Presents shall come, Greeting:

Homestead Certificate No. 1757
Application 3598.

**Whereas,** There has been deposited in the General Land Office of the United States a Certificate of the Register of the Land Office at **Santa Fe New Mexico Territory**, whereby it appears that, pursuant to the Act of Congress approved 20th May, 1862, "To secure Homesteads to actual Settlers on the Public Domain," and the acts supplemental thereto, the claim of **Jose Leandro Montoya** has been established and duly consummated, in conformity to law, for the **West half of the North West quarter, and the North half of the South West quarter of section twenty-five in Township twenty-seven North of Range four East of New Mexico Meridian in New Mexico Territory containing one hundred and fifty-five acres and five hundredths of an acre**

according to the Official Plat of the survey of said Land, returned to the General Land Office by the Surveyor General.

**Now know ye,** that there is, therefore, granted by the United States unto the said **Jose Leandro Montoya** the tract of Land above described: To have and to hold the said tract of Land, with the appurtenances thereof, unto the said **Jose Leandro Montoya** and to **his** heirs and assigns forever; subject to any vested and accrued water rights for mining, agriculture, manufacturing, or other purposes, and rights to ditches and reservoirs used in connection with such water rights as may be recognized and acknowledged by the local customs, laws, and decisions of courts, and also subject to the right of the proprietor of a vein or lode to extract and remove his ore therefrom, should the same be found to penetrate or intersect the premises hereby granted, as provided by law.

**In testimony whereof,** I, **Benjamin Harrison**, PRESIDENT OF THE UNITED STATES OF AMERICA, have caused these letters to be made Patent, and the Seal of the General Land Office to be hereunto affixed.

**Given** under my hand, at the City of Washington, the **first** day of **March** in the year of our Lord one thousand eight hundred and **ninety-two** and of the Independence of the United States the one hundred and **sixteenth**.

By the President: **Benjamin Harrison**
By **M McKean**, Secretary.
**J C Cromwell**, Recorder of the General Land Office.

ad interim

Exhibit 3 (4)

For use in
HOMESTEAD,
DESERT LAND, and
TIMBER or STONE
Entries.

4—348a

# NOTICE FOR PUBLICATION.
(REGISTER.)

DEPARTMENT OF THE INTERIOR,

U. S. LAND OFFICE at ........................................................

February 2nd........., 1921..

NOTICE is hereby given that ......Pedro Y. Martinez................., of

......Cebolla, New Mexico........., who, on ......December 2nd........., 1915..., made

......Homestead Entry.........................., No. ..025322..........., for
(Kind of application or entry.)

......S.E. 1/4 N.W.1/4.................................., Section ....25........,

Township ..27 N........, Range ..4 E........, ......N. M. P.......... Meridian,

has filed notice of intention to make ..Homestead five years Final.........
(If homestead, insert "five year," "three year," or "commutation," as case may be.)

Proof, to establish claim to the land above described, before

..........Probate Clerk.................................................., at
(Name of officer.)

........Tierra Amarilla, New Mexico........, on the ........MAY............ day of

.................................., 19........

Claimant names as witnesses:

......Canuto Valdez.............., of ......Cebolla N.M...........

......Patricio Chacon.............., of ......Cebolla N.M...........

......Vicente F. Valdez.............., of ......Cebolla N.M...........

......Jose Dolores Chacon.............., of ......Cebolla N.M...........

.................................................. Register.

---

## CERTIFICATE AS TO POSTING OF NOTICE.

.................5-9-................, 1921

I HEREBY CERTIFY that the above notice, or copy thereof, was by me posted in a conspicuous place in my office for a period of ........................ days, I having first posted said notice on the ....MAR 12 1921........ day of

.................................., 19........

Francisco Delgado
Register.

G—1714

Exhibit 4 (1)

4—369 a
Form approved by the Secretary of the Interior November 14, 1914.

# DEPARTMENT OF THE INTERIOR.

# HOMESTEAD ENTRY.

U. S. LAND OFFICE _____, No. _____

## FINAL PROOF.

### TESTIMONY OF WITNESS.

QUESTION 1. What is your full name, age, and post-office address?

ANSWER. Canuto Valdez    54 years    Cebolla, N. M.

QUESTION 2. Was your name correctly given in the published notice?

ANSWER. Yes

QUESTION 3. How long have you known the claimant in this case and the S.E.¼ N.W.¼ _____ Section 25, Township 27 N., Range 4 E., _____ Meridian, the land embraced in Homestead Entry, No. 025322, made at the Santa Fe Land Office?

ANSWER. 6 years

QUESTION 4. Is entryman married?   ANSWER. Married

QUESTION 5. Is said tract within the limits of an incorporated town, or used in any way for trade or business?

ANSWER. No

QUESTION 6. When did entryman settle upon the homestead?

ANSWER. Dec 1915

QUESTION 7. At what date did entryman establish actual residence thereon?

ANSWER. In March 1916

QUESTION 8. Have entryman and family resided continuously on the homestead since thus establishing residence thereon?

ANSWER. Yes

QUESTION 9. Have entryman and family ever been absent from the homestead since thus establishing residence thereon?

ANSWER. Yes, for short periods, to get neccessaries of life

QUESTION 10. If there have been any such absences, give the dates covered by such absences, stating who was absent and for what reason.

ANSWER. I do not know the dates of the Claimant absence but during his absence his family remains on the land


Exhibit 4 (2)

QUESTION 11. Describe the land embraced in above entry by legal subdivisions, showing fully the character of same, and kind and amount of timber, if any.

ANSWER.   No Timber

| Subdivision. | Acres cultivable. | Acres timbered. | Feet timber. |
|---|---|---|---|
| | 20 acres | None | None |
| | | | |
| | | | |

QUESTION 12. State the number of acres cultivated and kind of crop planted, each year.

ANSWER. 19..., ..about 6 acres more or less.............................

19..., ...Wheat Potatoes Pea Corn...................................

19..., ........about 900 lbs of Wheat and 500 lbs of Potatoes each Year

19..., ....in average.................................................

19..., ..........................................................

19..., ..........................................................

19..., ..........................................................

QUESTION 13. Describe fully and in detail the amount and kind of improvements and number of acres under cultivation on each subdivision. State total value of improvements on the claim.

ANSWER.

| Subdivision. | Character of improvements. |
|---|---|
| | One House Two Rooms Stables Corrals |
| | and Fence and Cultivated Land |
| | Value about $300.00 |
| | |
| | |
| | |

QUESTION 14. Are there any indications of coal, salines, or minerals of any kind on the land? If so, describe what they are.

ANSWER.   Not that I know of.................................................

..........................................................

..........................................................

QUESTION 15. Have you any knowledge or information that claimant has sold or contracted to sell, optioned, mortgaged, or agreed to option or mortgage this land? If so, give full details as to whom, for what purpose and in what amount.

ANSWER.   Not to my knowledge.................................................

..........................................................

..........................................................

Exhibit 4 (3)

QUESTION 16. Have you personal knowledge, from your own observation, that claimant and his family (if any) actually resided upon and cultivated this land each year in accordance with your above testimony?

ANSWER. Yes he is living on the land since he established his residence thereon to to the present date. I know from my own observation

QUESTION 17. How many times each year have you seen this land, and the claimant and his family residing thereon; and what other personal knowledge have you upon which your answers are based?

ANSWER. Very often. I would say every day

QUESTION 18. Are you interested in this claim, or related to the claimant? If so, how?

ANSWER. No

_Canuto Valdez_
(Sign plainly, with full Christian name.)

☞ NOTE 1.—The officer before whom the proof is made will see that all answers are complete and responsive to the questions.

☞ NOTE 2.—The officer before whom the deposition is taken should call the attention of the witness to section 125 of the U. S. Criminal Code (below), and state to him that it is the purpose of the Government, if it be ascertained that he testifies falsely, to prosecute him to the full extent of the law.

I HEREBY CERTIFY that the deponent was examined separately and apart from the other witnesses in the case; that the foregoing deposition was read to or by deponent in my presence before deponent affixed signature thereto; that I verily believe deponent to be the identical person hereinbefore described, and that said deposition was duly subscribed and sworn to before me at my office, in Tierra-Amarilla N.M.
(Town, county, and State.)
within the Santa Fe land district, this 5th day of May, 1921.

_Manuel Garcia_
Probate Clerk
(Official designation of officer.)

---

**UNITED STATES CRIMINAL CODE.**

SEC. 125. Whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, shall willfully and contrary to such oath state or subscribe any material matter which he does not believe to be true, is guilty of perjury, and shall be fined not more than two thousand dollars and imprisoned not more than five years.

Exhibit 4 (4)

277927

**FILED**

OCT 20 1927

OFFICE STATE ENGINEER,
SANTA FE, N. M.

Original
DECLARATION No. 0579
For map see Appl 1704

STATE OF NEW MEXICO ) ss.
County of Santa Fe )

Venceslao Martinez, a resident of Cebolla, Rio Arriba County, New Mexico, being first duly sworn on his oath makes this declaration and statement of his rights to appropriate and use for the purpose of irrigation and domestic use the waters of those natural streams or water courses known as El Rito del Medio and El Rito de la Piedra, both of which streams are fed by springs owned by affiant; that for more than forty years the waters of the said streams have been continuously used by this affiant and his predecessor, to-wit, his father, Donaciano Martinez, the same having been used to irrigate the private lands of affiant and his said father and for domestic use; that attached hereto and submitted herewith is a map or plat showing the relative location of the said springs and the said streams and the land which has been so irrigated by the waters of the said streams, and a description of the said lands of affiant, together with point of diversion.

That this declaration is made for the purpose of having his claim and right to the exclusive use and enjoyment of the said waters made of record in the office of the State Engineer of the State of New Mexico.

That affiant has made application to appropriate waters of the said stream, El Rito de la Piedra, as it is his intention and desire to bring under cultivation an additional tract of land, which is designated on the map this day filed by him in the office of the State Engineer, and to consequently make further beneficial use of the said water.

Signed this 19th day of October, A.D. 1927.

*Venceslao Martinez*

Subscribed and sworn to before me this 19th day of October, 1927.

My Commission Expires April 27, 1930

*Leonard O. Deeres*
Notary Public

Exhibit 5