IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO, *ex rel.*  )
State Engineer                          )                  69cv07941-MV/KK
                                              )                  RIO CHAMA STREAM SYSTEM
              Plaintiff,                   )
                                              )                  Section 3, Rio Cebolla
vs.                                         )
                                              )                  Subfile Nos. CHCB-001-0007,
  ROMAN ARAGON, *et al.*,        )                  CHCB-002-0001B, CHCB-002-0002C,
                                              )                  CHCB-002-0009
              Defendants.               )
                                              )
_____ )

**STATE OF NEW MEXICO'S REPLY TO DEFENDANTS' RESPONSE AND
MEMORANDUM IN OPPOSITION TO STATE OF NEW MEXICO'S
MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
DEFENDANTS' RIGHTS TO WATER UNDER THE OLD VALDEZ DITCH**

The State of New Mexico ("State") hereby submits this reply to *Defendants' Response*

*and Memorandum in Opposition to the State of New Mexico's Motion for Partial Summary*

*Judgment Regarding Defendants' Rights to Water Under the Old Valdez Ditch* (Doc. 11091,

filed July 31, 2015) ("Response").  The State seeks summary judgment against Defendants

Charlie and Geralda M. Chacon and Delfin O. and Francis S. Quintana Trust ("Defendants")

regarding Defendants' rights to water from the Rio Cebolla, a tributary of the Rio Chama, under

the Old Valdez ditch.

Defendants have responded to the *State of New Mexico's Motion for Partial Summary*

*Judgment Regarding Defendants' Rights to Water Under the Old Valdez Ditch* ("State's

Motion") arguing that the State's Motion should not be granted because "genuine issues of

material fact abound".  Response at p. 1.  Defendants ask the Court to find that they have made a

prima facie case of pre-1907 water rights for the lands in question.  Response at p. 18.  However,

the "proof" offered by Defendants consists of inadmissible opinion testimony from non-experts,

affidavits containing statements not based on the affiant's personal knowledge, and documents

1

that not only fail to establish Defendants' claims, but in most cases support the State's position. Therefore, none of the evidence offered by Defendants represents a genuine dispute of the State's material facts or proves pre-1907 water use on the tracts at issue from the Old Valdez ditch. Defendants have thus failed to meet their burden to demonstrate that a genuine issue of material fact exists, and the Court can decide this issue as a matter of law.

## Argument

In summary judgment, the movant bears the initial burden of showing "there is an absence of evidence to support the non-moving parties' case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once a moving party has met its initial responsibility of demonstrating that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law, the burden shifts to the nonmoving party to demonstrate a genuine issue. *Id.* Here, Defendants have not met their burden to demonstrate a genuine issue of fact which would require trial on the merits because they have not come forward with admissible evidence making such a demonstration.

Defendants' primary evidence consists of the affidavits of Charlie Chacon, Gerald Chacon, and Stephen D. Hardin. Under Federal Rule of Civil Procedure 56, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(a)(4). Under Federal Rule of Evidence 701, lay witnesses may only offer opinions based on their own perceptions and may not offer opinions based on scientific, technical or other specialized knowledge. Fed. R. Evid. 701. As set forth below, Defendants' "evidence" is based on inadmissible opinion testimony from lay witnesses and statements that are not made on the affiant's personal knowledge. Moreover, even viewed in

the light most favorable to Defendants, the documentary evidence provided by Defendants

utterly fails to establish a prima facie case for their claim of pre-1907 water use on the tracts at

issue. Therefore, Defendants have failed to demonstrate the existence of a genuine dispute of

material fact.

        1.   The Affidavits of Charlie Chacon and Gerald Chacon Are Not Based on Their Personal Knowledge and Are Inadmissible Opinion Testimony.

        A.   Affidavit of Charlie Chacon.

The affidavit of Charlie Chacon is admissible only to the extent that is based upon his

personal knowledge. As Charlie Chacon was born in 1920 (Affidavit of Charlie Chacon ("C.

Chacon Aff.") at ¶1), he has no personal knowledge of events occurring prior to 1907.

Therefore, any statements concerning events prior to 1907 are based on inferences from the

historical record and are not admissible in evidence. Opinion testimony of this type is limited to

individuals such as historians who may be qualified to testify as an expert by knowledge, skill,

experience, training or education. See Fed R. Evid. 702. Charlie Chacon has not been qualified

as an expert witness in this matter. Therefore, his opinions regarding pre-1907 water use are

inadmissible. Specifically, paragraphs 15, 16, 17, and 18 of Charlie Chacon's affidavit contain

inadmissible opinion testimony.

The remainder of Charlie Chacon's affidavit consists of statements regarding post-1907

use of water, and thus is not relevant to establishing pre-1907 use of water, or is based on

statements made to him by others and not on his personal knowledge. Therefore, Charlie

Chacon's affidavit fails to establish a genuine issue of material fact regarding pre-1907 use of

water on the claimed tracts.

B.  Affidavit of Gerald Chacon

The affidavit of Gerald Chacon is admissible only to the extent that is based upon his personal knowledge.  As Gerald Chacon was born in 1953 (Affidavit of Gerald Chacon ("G. Chacon Aff.") at ¶1), he has no personal knowledge of events occurring prior to 1907. Therefore, any statements concerning events prior to 1907 are based on inferences from the historical record and are not admissible in evidence.  Gerald Chacon has not been qualified as an expert witness in this matter.  Therefore, his opinions regarding pre-1907 water use are inadmissible.  Specifically, paragraphs 11, 13, 14, 19, and 20 of Gerald Chacon's affidavit contain inadmissible opinion testimony.  The remainder of Gerald Chacon's affidavit consists of statements regarding post-1907 use of water, and thus is not relevant to establishing pre-1907 use of water.

Likewise, the depositions of Charlie Chacon (Exhibit ("Ex.") 1) to C. Chacon Aff.) and Mary C. Martinez (Ex. 2 to C. Chacon Aff.) as well as the sworn statements of six other individuals offered by Defendants (Ex. 3 to C. Chacon Aff.) only address water use after 1907 and thus are not relevant to establishing pre-1907 water use.

To the extent they relate to historical events that pre-date their personal knowledge, the affidavits and sworn statements offered by Defendants to dispute the State's facts cannot be presented in a form that would be admissible in evidence.  See Fed. R. Civ. P. 56(2).  Therefore, Defendants cannot meet their burden to establish a genuine dispute of material fact that would require a trial on the merits and summary judgment in favor of the State is appropriate.

2.   The Documentary Evidence Presented by Defendants Fails to Establish a Prima Facie
Case for Pre-1907 Water Use From the Old Valdez Ditch.

Defendants claim "there is ample documentation from government sources that irrigation
from the Old Valdez or other ditches diverting from the El Rito de la Piedra[1] was taking place
[on the disputed tracts]."  Response at p. 12.  However, even viewed in the light most favorable
to Defendants, as set forth below the evidence provided by Defendants fails entirely to support
their claims.

A.   Defendants Have Failed to Rebut the Prima Facie Evidence Presented by the 1949
Declaration.

Under New Mexico law, a declaration of water rights is prima facie evidence of the truth
of its contents.  NMSA 1978, § 72-1-3.  Defendants have failed to rebut the prima facie evidence
presented by the 1949 amendment to the declaration of water rights submitted by the parciantes
of the Acequia Pinevetal declaring water rights to the Rio del Tanque ("1949 Declaration").  The
1949 Declaration included a plat ("Turley plat") (Ex. 16 to the State's Motion) that shows the
full length of the Old Valdez ditch and shows the ditch returning into the river just below
Patricio Chacon's field, at his property boundary.  Defendants now dispute the accuracy of the
Turley plat even though its accuracy was attested to by the signatures of the five commissioners,
including Patricio Chacon.  Defendants rely on two documents to support their position.  The
first document is a February 28, 1949 letter from Medardo Sanchez, commissioner of the
Acequia Pinevetal, to State Engineer John H. Bliss.  See Response at p. 4; Defendants' Ex. 4 to
C. Chacon Aff.  Defendants claim that this letter represents a dispute by the ditch commissioners
regarding the accuracy of the Turley plat.  See Response at p. 5.  However, the Turley plat was

---

[1] Although Defendants refer to the source of water for the Old Valdez and Alfalfita ditches as the "Rito de la
Piedra", in the State's view the Rito de la Piedra is a tributary to the Rio del Tanque.  However, this is a
nomenclature or mapping dispute with the Office of the State Engineer that is not relevant to the matters at issue in
these subfiles.

filed with the Office of the State Engineer on June 10, 1949, nearly <u>four months after</u> the submission of the Medardo Sanchez letter.

The Medardo Sanchez letter states that the commissioners of the Acequia del Pinevetal had previously filed a map as part the registration of water rights for the Acequia, and that the Acequia had "paid for the survey and map, and that it now appears not to be accurate in some particulars". The commissioners then requested leave to "employ a competent engineer in order to have a survey made together with a map for recording in your office, so that you may have the full facts before you." The only reasonable conclusion that can be drawn is that Walter G. Turley is the "competent engineer" engaged by the commissioners to correct errors in the original 1932 Declaration of water rights and that the Turley plat is accurate, as attested to by the signatures of the five commissioners, including Patricio Chacon. The Medardo Sanchez letter, rather than supporting Defendants' claim that the Turley plat is inaccurate, in actuality supports the validity and accuracy of the Turley plat.

Defendants also point to a July 19, 1951 letter from H.J. Guthmann to Medardo Sanchez (Defendants Ex. 5(3) to C. Chacon Aff.) as evidence that the commissioners disputed the accuracy of the Turley plat. This letter apparently accompanied a permit application submitted by the commissioners for the appropriation of waters under the Acequia Pinevetal. The Guthmann letter addresses corrections to the original declaration and specifically mentions the seven acre tract belonging to Patricio Chacon, but does not make any mention of any other lands irrigated by the Old Valdez ditch. Thus, the Guthmann letter does not establish that there was any dispute with the Turley plat regarding the Old Valdez ditch. Moreover, as part of this permit application, Patricio Chacon submitted an affidavit to the Office of the State Engineer (attached hereto as Ex. A). This affidavit likewise did not contain any corrections to the amount or

6

location of irrigated acreage under the Old Valdez ditch and made no mention of any omission or made any claim that the Old Valdez ditch as depicted on the Turley plat was incorrect.

Further weakening Defendants' claim that the 1949 Declaration is in error regarding the Old Valdez ditch is the fact that the original 1932 Declaration of water rights to the Acequia Pinevetal was amended a total of three times:  on March 1, 1949 (OSE File No. 0636 Amended (attached as Ex. 15 to the State's Motion, on June 10, 1949 (OSE File No. 0636B Amended, the Turley plat, attached as Ex. 16 to the State's Motion), and on December 14, 1949 (OSE File No. 0636 Amended and OSE File No. 0636 Amended C (attached hereto as Ex. B).  None of the three amendments made any corrections to the amount of irrigated acreage under the Old Valdez ditch or made any claim that such acreage had been omitted.  Thus, in spite of multiple opportunities to correct the declaration for rights under the Old Valdez ditch if errors in fact existed, no such correction or claim was ever made.  In short, there is simply no documentary evidence to support Defendants' theory that the Turley plat is not an accurate depiction of the Old Valdez ditch and Defendants have failed to overcome the presumption of truth of the contents of the 1949 Declaration.

B.  Defendants Have Failed to Establish a Prima Facie Case That Irrigation Occurred On These Lands From the Old Valdez Ditch Prior to 1907.

Defendants present a number of documents in an attempt to prove pre-1907 use of water on the tracts at issue.  Defendants Exhibit 1 is a "Certificate of Construction" issued for OSE File Nos. 0636/Permit No. 2738.  Defendants claim that the statement in this document that the Old Valdez ditch was constructed prior to 1907 proves irrigation on these tracts prior to 1907.  See Response at p. 12.  However, the Certificate of Construction does not contain any information regarding which tracts are irrigated from the Old Valdez ditch.  The State does not dispute that the Old Valdez ditch was constructed prior to 1907.  The State does dispute, based on

7

documentary evidence in the record, that the Old Valdez ditch as originally constructed prior to

1907 did not continue beyond the southern boundary of the Juan Desiderio Valdez homestead.

Defendants Exhibit 1, like the "Proof of Completion of Works" submitted for the Old Valdez

ditch (OSE File No. 0636/Permit No. 2738, Exhibit 30 the *State of New Mexico's Memorandum*

*in Support of Motion for Partial Summary Judgment Regarding Defendants' Rights to Water*

*Under the Old Valdez Ditch* ("State's Memorandum"), describes the length of the Old Valdez

ditch as 1,580 feet.  This description is entirely inconsistent with the current combined length of

the Old Valdez and Alfalfita ditches, measured to be 5,804.8 feet.  See Affidavit of Michael

Recker, attached to the State's Motion, at ¶3.  Defendants' argument that there was "no express

identification of the terminus of the ditch in the document" (Response at p. 5) is flatly

contradicted by the documents themselves:  "the Old Valdez ditch is 1,580 feet long" (State's

Ex. 30); "the ditch is open earthen type, 1580 feet in length" (Defendants' Ex. I(2)).  Moreover,

Defendants attack the validity of the Proof of Completion of Works, arguing that "there is no

indication on the face of the document that in fact the Proof followed 'an inspection by Walter G.

Turley'".  Response at p. 5.  In fact, this statement is made in the Certificate of Construction

issued for these works and submitted as Defendants' Exhibit 1(1).  Thus, these documents

directly contradict Defendants position and support the State's position that the Old Valdez ditch

as originally constructed did not continue beyond the southern boundary of the Juan Desiderio

Valdez homestead.

Defendants next rely on the 1927 water rights declaration of Venceslao Martinez, Jose

Leandro Montoya's successor in interest, to support Defendants' claim to water rights from the

"Rito de la Piedra[2]".  Response at pp. 12-13.  In his declaration, Venceslao Martinez claimed

---

[2] Defendants further cite to a report by John Baxter to support a statement that water from the Rito de la Piedra
reached down to the property of Venceslao Martinez.  See Response at p. 13.  It is unclear what report this statement

rights to the Rito de la Piedra for the Jose Leandro Montoya homestead that is now part of the

lands claimed by Defendants.  However, in 1956, Montoya's successors in interest, Rosenaldo

Martinez and Jose G. Cordova, filed a declaration of water rights for the former Montoya

homestead.  This declaration indicated the "Rita en Media" (Rito del Medio) as the sole source

of water.  See OSE File No. 1413-14 (attached hereto as Ex. C).  Martinez and Cordova did not

claim any rights to the Rito de la Piedra in their declaration.  Moreover, Patricio Chacon did not

declare any water rights for the portion of the Montoya homestead now claimed to be irrigated

from the Old Valdez ditch on the 1949 declaration of water rights submitted to the Office of the

State Engineer.  (Attached as Exhibit 16 to the State's Memorandum).  Thus, these documents do

not "place irrigation use off the El Rito de la Piedra in the vicinity of the 'Alfalfita' property

back to 1887" as claimed by Defendants.  See Response at p. 13.  These documents actually

support the State's position that these lands were not considered to have valid water rights under

the Old Valdez ditch.

For specific evidence of pre-1907 use of water from the Old Valdez ditch on lands owned

by Defendants Delfin O. and Francis S. Quintana Trust, Defendants rely on the homestead patent

documents of Gabriel Valdez.  See Response at pp. 13-14.  However, the homestead documents

do not specify where on the claim the land was used for farming crops or what the source of

water was.  While only a small portion of the Gabriel Valdez homestead is susceptible to

irrigation from the Alfalfita ditch (see Defendants' Ex. II), the entire property is traversed by the

Pinavetal ditch, which was constructed prior to 1907.  See Defendants' Ex. 1.  Moreover, Luis

Quintana, Defendants Delfin O. and Francis S. Quintana Trust's predecessor in interest, did not

claim water rights for this tract from the Old Valdez ditch in the 1949 Declaration, and with the

---

refers to and counsel for the State was unable to locate this reference in a review of relevant documents in the record.

exception of the Quintana's, none of the present owners of the other tracts that are part of the

original Gabriel Valdez claimed rights to the Old Valdez or Alfalfita ditch during the

adjudication of their water rights.  See State's Memorandum at pp. 13-14.  Thus, the

documentary evidence simply does not support Defendants' claim of pre-1907 use of water from

the Old Valdez ditch on the lands owned by Defendants Delfin O. and Francis S. Quintana Trust.

For specific evidence of pre-1907 use of water from the Old Valdez ditch on lands owned

by Defendants Charlie and Geralda Chacon, Defendants rely on the homestead patent documents

of Canuto Valdez.  Like Gabriel Valdez's homestead claim, the documents do not specify the

location of ditches or indicate where on the claim the land was used for farming crops or what

the source of water was.  However, in 1926, Canuto Valdez filed a declaration with the Office of

the State Engineer claiming rights to water for the irrigation of three acres within his homestead

from the Rito del Medio.  See State's Memorandum at p. 8.  This declaration later formed the

basis for the decision in *Cordova v. Quintana* awarding the rights to irrigate three acres from the

Rito del Medio – not the Old Valdez ditch – to Gabriel Valdez and Luis Quintana.  Thus, the

documentary evidence simply does not support Defendants' claim of pre-1907 use of water from

the Old Valdez ditch on the lands owned by Defendants Charlie and Geralda Chacon.

Likewise, Defendants' attempt to rely on the Pedro Y. Martinez homestead documents to

establish pre-1907 use of water on the lands acquired by Patricio Chacon in 1951 from the

Department of Interior is not supported by the evidence.  Defendants offer no documentary

support for their claim that Pedro Y. Martinez occupied the "wrong" 40 acre parcel.  See

Response at pp. 14-15.  In fact, the 1951 DOI inspection report (Ex. 25 to the State's

Memorandum) found that there was "no water of any kind" on the tract.  This is squarely at odds

with Defendants' claim that is this tract that Pedro Y. Martinez erroneously occupied and

10

cultivated.  Furthermore, the earlier attempted homestead of Mrs. Antonio Gabin or Mr. Antonio Gavin of the SE ¼ NW ¼ of Section 25 is entirely irrelevant to establishing pre-1907 use of water on the NE ¼ NW ¼ of Section 25.

Defendants also attempt to rely on the 1884 Atkinson Survey (Defendants' Ex. B(1) to the affidavit of Stephen D. Hardin) to establish evidence of pre-1907 water use on these tracts. Response at p. 16.  The affidavit of Stephen D. Hardin states that the Quintana fields located between the Old Valdez ditch and the Rito del Tanque are depicted on the 1884 Atkinson Survey as "cultivated".  Hardin Aff. at ¶6.  In fact, the Atkinson Survey appears to depict the presence of cultivated lands in the NW ¼ of the NW ¼ of Section 25, T 27 N, R4E, on the <u>north</u> side of the Rio Cebolla, and not on the lands claimed by Defendants as having water rights from the Old Valdez ditch, which are located on the <u>south</u> side of the Rio Cebolla.  See attached Affidavit of Michael Recker ("Recker Aff"). at ¶3.

Defendants next dispute the State's material fact that "under the Cordova v. Quintana decision 'the lands now watered by the Alfalfita ditch had no rights to water from the Rito del Medio.'"  Defendants' Disputed Fact No. 38; C. Chacon Aff. at ¶24.  Defendants note that they are not claiming rights to the Alfalfita ditch from the Rito del Medio.  However, the State's purpose in bringing the *Cordova v. Quintana* litigation to the Court's attention is not to prove that Defendants have no rights to water from the Rito del Medio.  Rather, the history of that water rights dispute supports the State's position that after Patricio Chacon acquired the DOI tract in 1951, he began irrigating those lands from the Alfalfita ditch with the overflow or tailwater from the illegal diversion by the Quintana's of the Rito del Medio.  Under the Court's decision, the Quintana's were no longer able to divert the same large quantity of water from the Rito del Medio, and as a result, there was no longer any overflow or tailwater available to supply

the Alfalfita ditch and irrigate Chacon's lands.  The Court's decision in turn likely prompted

Patricio Chacon's purchase in 1971 of the 30 acres of water rights, as he sought another,

legitimate source of water for these lands.

    Defendants have offered the homestead proof of Jose Leandro Montoya to support their

claim that the lands at issue were irrigated prior to 1907.  See Response at p. 14.  However, the

Montoya homestead consisted of over 150 acres.  See Defendants' Ex. 3(4).  The Montoya

homestead proof does not state where on the 150 acre claim cultivation occurred.  Therefore, the

homestead proof does not establish that the lands claimed by Defendants were irrigated prior to

1907, as the cultivation could have occurred anywhere on the 150 acre tract and there is

absolutely no indication that it occurred on the tracts now claimed by Defendants Charlie and

Geralda Chacon.  In fact, the Jose Leandro Montoya homestead was ultimately adjudicated

significant water rights from the Rito del Medio in the *Cordova v. Quintana* litigation, indicating

that this earlier cultivation likely occurred on lands irrigated from that source.

Defendants also dispute the State's assertion that the lands to which water rights were

transferred overlap the lands that are traversed by the Alfalfita ditch.  See Defendants' Response

at p. 16.  The affidavit of Stephen D. Hardin states that "neither the "Alfalfita" field of 5.0

acres…nor the field of 5.0 acres, more or less at the Old Tank location, overlap with any of the

30 acre parcel irrigated by the transfer of water rights in 1973 by Charlie Chacon."  Hardin Aff.

at ¶7.  This statement is not accurate.  There is in fact an overlap of .75 acre of the "Alfalfita"

field and the transfer-to area.  Affidavit of Michael Recker at ¶5.

Finally, Defendants cite to *State ex rel. Reynolds v. Holguin*, 1980-NMSC-110, 95 N.M.

15, as support for their claim that Charlie Chacon's personal testimony of the "reputation" of

pre-1907 water rights is sufficient evidence for the Court to conclude that the water rights of

Defendants vested before 1907.  See Response at p. 18.  However, the evidence of pre-1907 water use in *Holguin* was based on the <u>personal knowledge</u> of a witness.  The *Holguin* court apparently disregarded the testimony of three other witnesses offered by the defendant, noting that those witnesses "admitted they had no personal knowledge of the property prior to 1907." 1980-NMSC-110, ¶7, 95 N.M. 15, 17.  Here, Charlie Chacon has no personal knowledge of pre-1907 water use and his testimony regarding events prior to 1907 should be disregarded.

### Conclusion

Plaintiffs attempt to create an issue of material fact through affidavits not based on personal knowledge of the affiant, inadmissible lay opinion testimony, and reliance on historical documents that, upon close examination, simply fail to establish Defendants' claims. Defendants "proof" fails to rebut the overwhelming documentary evidence and the opinions of a qualified expert historian presented by the State.  Therefore, Defendants' have not met their burden to produce any admissible evidence to dispute the State's position, there is no genuine dispute of material fact, and the State is entitled to judgment as a matter of law as to the water rights of Defendants to the Rio Cebolla under the Old Valdez ditch.

Respectfully submitted,

/s/ Misty Braswell
Misty M. Braswell
Ed Newville
Special Assistants Attorney General
New Mexico Office of the State Engineer
P. O. Box 25102
Santa Fe, NM 87504-5102
Telephone:  (505) 827-3989
Fax:  (505) 827-3887
misty.braswell@state.nm.us
*Attorneys for Plaintiff State of New Mexico*

13

**CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of August, 2015 I filed the foregoing electronically through the CM/ECF system which caused the parties listed on the electronic service list to be served via electronic mail.


/s/ Misty M. Braswell