IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF NEW MEXICO

STATE OF NEW MEXICO *ex rel.*
State Engineer, *et al.,*

                Plaintiffs,

                v.

RAMON ARAGON, *et al*.,

                Defendants.

69cv07941-MV/KK

RIO CHAMA ADJUDICATION

Section 3, Rio Cebolla

Subfile Nos. CHCB-001-0007,
CHCB-002-0001B, CHCB-002-0002C,
CHCB-002-0009

## STATE'S OBJECTIONS TO DEFENDANTS' PROPOSED EXHIBITS IN RIO CHAMA, SECTION 3, RIO CEBOLLA SUBFILES

The State of New Mexico ("the State") objects to the admission at trial of the following Defendants' exhibits. The State refers to the exhibit numbers found on the Defendants' Trial Exhibit List.

### A.2 – The Stephen D. Hardin Map

In April of 2015, the State filed a Motion to Strike Defendants' Expert Reports and Exclude the Testimony of Stephen D. Hardin, Sam Smallege, Charles Hibner, and Malcolm Ebright (Doc. 11080, filed April 27, 2015). That motion was granted by the Court earlier this year (Doc. 11108, filed February 17, 2016). In September of 2015, the State filed a Motion to Strike the Affidavit of Stephen D. Hardin (Doc. 11096, filed September 3, 2015) and a Motion in Limine to Prohibit Opinion Testimony by Lay Witnesses (Doc. 11097, filed September 4, 2015). Those motions were also granted by the Court (Doc. 11109, filed March 22, 2016). Accordingly, the Court has already found that the Hardin map is not admissible at trial. It is an expert report that was excluded under Doc. 11108, created by an expert whom the Court has already ruled may

not testify at trial as an expert. Under Federal Rule of Evidence Rule 701, and this Court's ruling in Doc. 11109, lay witnesses may not give opinion testimony. Thus, even if the Court were to admit this map as evidence at trial, the defendants have no witness who may give an opinion as to what the map shows, what it means, or what conclusions may be drawn from it. Furthermore, the State believes that the map is inaccurate, but because the State does not know the source(s) of information used to create the map, the State has no way to refute the accuracy of its conclusions. Additionally, the Court has no way of knowing whether the facts or data relied on to create this map are of the kind upon which an expert in the field would reasonably rely, as required under Fed.R.Evid. 703.

**A.3 – Township Map**

The State is not sure what this exhibit number refers to. Included in the papers given to the State by defense counsel on October 17, 2016, was a black and white Xerox copy of an old map or survey. This item was not marked in any way that would identify it as a defense exhibit. The State did its best to decipher the map in order to understand if it was the document referred to on the Defendants' Trial Exhibit List as Exhibit A.3, but the date read by the State was not the date listed in the defendants' exhibit list. When the State asked for clarification, Defense Counsel responded "[t]he date I see is February 8, 1884. It would appear that we are looking at different documents." The date listed on the Defendants' Trial Exhibit List is December 6, 1883. Accordingly, the State still does not understand what Defense Exhibit A.3 is, or whether the State is currently in possession of Defense Exhibit A.3.

Even if the Court were to find that the State should have realized which unmarked piece of paper the defendants intended to use at trial as Exhibit A.3, the State contends that any Surveyor General's Township map may not be used by the defendants at trial because the

defendants have no witness who can authenticate the map (if necessary under Fed.R.Evid. 901 and 902) or testify to what it shows, what it means, or what conclusions may be drawn from it.

### A.4 – Dills Map

The State submits that this exhibit should not be admitted at trial because the defendants have no witness who can testify as to what the exhibit shows, what its notations mean, or what conclusions may be drawn from it. The State must confess to not understanding what is depicted on the map. Because the State does not understand the map, the State is at a loss to say whether it is relevant under Fed.R.Evid. 401. Even if it were relevant, the State contends that its probative value is substantially outweighed by its danger of confusion and delay (*see* Fed.R.Evid. 403).

### B.1 – Excerpt from Malcolm Ebright Report

Again, this Court has already ruled that Mr. Ebright may not testify as an expert at trial, that any report created by Mr. Ebright is not admissible, and that, as a lay witness, Mr. Ebright may not give opinion testimony (Doc.s 11108, 11109).

The State notes further that, unlike Dr. Baxter's report, which indicates the source of every fact relied on by Dr. Baxter, the Ebright report gives very little indication of the source of its facts and data. Accordingly, there is no way to tell whether the excerpt in particular, or the report in general, is based on facts or data that would be reasonably relied on by other experts in the field, as required by Fed.R.Evid. 703.

Finally, even if the Ebright report were admissible, which the Court has already ruled that it is not, at no point does the excerpt mention the Sanchez ditch, the Old Valdez ditch, the Alfalfita ditch, the seeped area at the base of the Alto, the history of irrigation at the site of the saw mill on the Alto, or how much acreage may or may not be under irrigation in the disputed subfiles. Accordingly, the excerpt has no tendency to make a fact regarding the issues before the

Court more or less probable than it would be without the inclusion of the excerpt. The excerpt does not meet the relevancy test of Fed.R.Evid. 401.

### B.2 – Cebolla Vegetation Comparison

Once again, this Court has already ruled that the Defendants' "expert reports" are inadmissible (Doc. 11080). Furthermore, the State genuinely does not understand this report, the bases of its findings, or the conclusions that may be drawn from it. And, because the Court has ruled that the defendants' experts may not testify as experts, and that the defendants' lay witnesses may not give opinion testimony, the State is at a loss to understand how a defense witness could say anything about this exhibit. Additionally, the Court has no way to know whether the facts and data relied on in making this report are the kind that experts in the field would reasonably rely on (*see* Fed.R.Evid. 703).

Finally, the report is entirely irrelevant under Fed.R.Evid. 401 because it makes no reference to the Sanchez ditch, the Old Valdez ditch, the Alfalfita ditch, or the seeped area at the base of the Alto. While the report does seem to make some distinction between irrigated and non-irrigated land, it does not indicate that the writer made any attempt to measure how much land is irrigated or non-irrigated, nor does it address the history of the irrigation on the property. Accordingly, this report can in no way help the Court to determine the amount of land belonging to Defendants Chacon that is under irrigation now or was under irrigation prior to 1907. Nor can it enlighten the Court as to the history of the Old Valdez, Alfalfita, or Sanchez ditches. Thus, it is irrelevant under Fed.R.Evid. 401.

### C.1 – Aerial Photograph

The State does not object to the defendants' use of aerial photography in general. However, this particular exhibit gives no indication of when the photograph was taken or by

whom it was superimposed with Section numbers. The State contends that unless one of the defense witnesses created the map, the defendants have no witness who can testify as to how the map was made, whether it is accurate, or what conclusions may be drawn from it.

**C.2 – CHCB 001-0007 Subfile Maps**

The defendants have included two subfile maps in Exhibit C.2. The first of them is the map that attended the State's original proposal of No Right for one acre on the Sanchez ditch (see The Rio Chama Stream System, Section 3, Rio Cebolla Hydrographic Survey prepared by the New Mexico Office of the State Engineer in August, 2000). The State has also included this one-acre No Right subfile map in its proposed exhibits and stipulates to its admissibility at trial.

The second map included in Defense Exhibit C.2 is an amended version of the first map, which was created on June 10, 2008. This second map shows a water right of 6.0 acres from the Sanchez ditch. The State objects to the admission of this second subfile map as it represents an offer made in the course of negotiations to settle the claim. Thus its admission is a clear violation of Fed.R.Evid. 408. The State later reevaluated the basis for this offer and concluded that the offer was unwarranted. In addition, the offer was rejected by the defendants. The State objects to the admission of this second subfile map.

**D.1 – About 200 Photographs of Claimed Irrigated Acreage**

The State objects to this exhibit on multiple grounds. First, instead of providing the State with actual photographs (or print outs), the defendants have provided the State with four Compact Discs ("CD's"). Two of the CD's contain a large number of unidentified digital still images. One of the CD's is blank. The fourth CD, marked as D.3 but presumably meant to be marked as D.2, identified on the Defendants' Trial Exhibit List as "Video of Old Valdez Ditch

running down to Alfalfita field," contains a video which appears to show water running through a ditch.

The Defendants' Trial Exhibit List identifies D.1, the CD's containing digital still images, as "about 200 photographs of claimed irrigated acreage." The State contends that the defendants may not submit such a large grouping of photographs without any indication of which, if any, of the particular photographs the defendants intend to rely on at trial.

When the State asked Defense Counsel to identify which particular photos the defendants planned to use at trial, and whether the State had ever been provided with copies of these images, Defense Counsel responded, "[i]t has been some time since I've reviewed all these photos, so I haven't narrowed down the photos I want to use. … I understand some of the photos had been provided to OSE staff at different times. … It may be that I can reduce the photos from this large number for trial.  However, I couldn't begin to do that until we get into November."

The State objects to the admission of these still photographs. Defense Counsel has indicated that he does not know which, if any, of the still photos the defendants plan to actually use at trial. Nor does he does know which, if any, of the photographs have been disclosed to the State previously. Under Federal Rule of Civil Procedure Rule 26(a)(1)ii, the defendants were required to include these photographs as part of their initial disclosures. Under Fed.R.Civ.P. 26(e)(1), the defendants had a continuing duty to supplement their initial disclosures if they found that those disclosures were incomplete. Under Fed.R.Civ.P. 37(c), where a party fails to disclose information under Fed.R.Civ.P. 26(a) or (e), "the party is not allowed to use that information … at a trial …unless the failure was substantially justified or is harmless." In the instant case, the failure was neither justified nor harmless. The defendants have provided no justification for failing to disclose these photographs, and the State is prejudiced by only now

6

being supplied with them. The State's expert witnesses have not had, and will not have, an opportunity before October 26, 2016 (the deadline for objections) to thoroughly review these still images.

**D.2 – Video of Old Valdez Ditch Running Down to Alfalfita Field (marked as D.3)**

First of all, the exhibit provided to the State marked as D.2 is not a video, but rather five sheets of paper containing print outs of fifteen photographs, some in color and some and black and white. The envelope containing the CD's mentioned above is marked D.1 and D.3. The State does not object to the admission of the photographs marked D.2. Presumably the defendants meant to mark the photo print outs as D.3 and the video as D.2. Mis-marking aside, the State objects to the admission of the video marked as D.3.

According to Defense Counsel, the State has never been provided with a copy of this video until now. Under Federal Rule of Civil Procedure Rule 26(a)(1)ii, the defendants were required to include this video as part of their initial disclosures. They failed to do so. Under Fed.R.Civ.P. 26(e)(1), the defendants had a continuing duty to supplement their initial disclosures if they found that those disclosures were incomplete. The defendants failed to do so. Under Fed.R.Civ.P. 37(c), where a party fails to disclose information under Fed.R.Civ.P. 26(a) or (e), "the party is not allowed to use that information … at a trial …unless the failure was substantially justified or is harmless." In the instant case, the failure was neither justified nor harmless. The defendants have provided no justification for failing to disclose the video, and the State is prejudiced by only now being supplied with it. The State's expert witnesses have not had, and will not have, an opportunity before October 26, 2016 (the deadline for objections) to thoroughly review this video so that Undersigned Counsel can make an informed decision as to

whether to stipulate to or object to its admission at trial. Accordingly, the State objects to the admission of this video.

Finally, regarding the video, the State submits that its admission is wholly unnecessary. Presumably it is being offered to show that it is possible for water to flow from the Old Valdez to the Alfalfita ditch. But that fact is not at issue in this case. The State acknowledges that the two ditches are now connected and that it is possible for water to flow from one ditch into the next. However, a video shot (presumably) some time since the hydrographic survey was completed in 2000 provides no information to the Court regarding whether the ditches were connected and capable of carrying water prior to 1907. Thus the video is irrelevant under Fed.R.Evid. 401.

**E.1 – Deeds**

The State objects to this entire exhibit because the State cannot match up the stapled-together documents marked as E.1 with the list provided by the defendants. The State can identify the first deed in the stack and its translation. The next deed is in Spanish, with no translation attached. The third deed is accompanied by a translation, but does not fit the description given of E.1.c) in that the date on the deed is June 3, 1926, but the description cites a date of May 8, 1937. The next deed is dated May 8, 1937, but it is in Spanish and not accompanied by a translation. The next deed is in English and relatively accurately described, except that the date listed in the defendants' description is different than the date on the deed. The next deed is a repeat of the first (this particular deed includes two transactions). The next deed – which is identified under the same exhibit letter as the previous deed - is accompanied by a translation that indicates the deed was executed on November 20, 1944, not January 4, 1945, as described in the defendants' exhibit list. The final deed is in English, but, again, the date on the document is entirely different than the date included in the description.

Additionally, there is a document in Spanish, unaccompanied by a translation, and not included in the list provided to the State, dated (if Undersigned Counsel's Spanish is correct), February 4, 1915. The State is not sure whether this document is meant to be included under E.1 or under one of the homestead document collections.

### E.2 – "Statement of Old Water Rights filed June 27, 1932 by Cebolla property owners"

The State objects to this exhibit on several grounds. First, the document provided to the State marked E.2 is not dated June 27, 1932 as indicated in the Defendants' Trial Exhibit List, but rather July 16, 1929. Second, this document is a Statement of Old Water Rights filed under OSE No. 0604 – the OSE number associated with the Acequia Madre de Cebolla. The defendants have never referenced OSE No. 0604 in any previous disclosures. Furthermore, while the Statement does mention the "Acequia Pinabetal," it gives no information regarding the Pinavetal that would assist this Court in determining the facts at issue. The information included in the Statement regards the length, width, and priority date of the Pinavetal. No facts regarding the length, width, or priority date of the Pinavetal are at issue in the instant case. Accordingly, this document is irrelevant under Fed.R.Evid. 401.

### E.3 – Venceslao Martinez Ditch Declaration

This is a Declaration for the Venceslao Martinez ditch, which is not at issue in the instant case. The ditch was neither created, nor owned, by any of the defendants or their predecessors in interest, and it does not provide water to land currently or previously owned by any of the defendants. The OSE number on the document is 0579. That OSE number is not associated with this case, as is evidence by the fact that in the defendants' Initial Disclosures (Doc. 11078, filed

April 15, 2015) under "Section E. Water Rights Files," the number 0579 is not listed. This exhibit does not meet the Test for Relevant Evidence under Fed.R.Civ.P. 401.

### F.1.a) through F.1.d) – Depositions

These depositions are inadmissible hearsay under FRE Rule 801. They should not be admitted as a substitute for in-court testimony. There has never been any agreement between the defendants and the State that these depositions would be allowed to be used for such a purpose. Additionally, under Fed.R.Civ.P. 32(a), a deposition may be used at trial "against a party" only under certain conditions. One of those conditions is where the witness has been found by the Court to be unavailable. To the State's knowledge, this Court has never made a determination that Charlie Chacon, Ernesto Sanchez, or Mary Martinez is unavailable. To the State's knowledge, the defendants have never asked the Court for such a determination. Because the conditions of Fed.R.Civ.P. 32 have not been met, the State objects to the admission of these depositions.

### F.2.a) – "History" by Charlie Chacon and Attached Affidavits

Charlie Chacon's "history" includes such language as the following: "I am very concerned that the state engineer refuses to recognize steeped areas as having a valid water right," and "I know that the Alfalfita field was irrigated before my birth."

The first statement is a mischaracterization of the law from a lay witness. It is not the State Engineer who "refuses" to recognize seeped areas as having a valid water right, it is the New Mexico legislature that created the law and the New Mexico courts that have confirmed it. Under New Mexico statutes and case law, where the source of seepage is unknown and the water is put to use without the aid of man-made diversions, said water is not considered "public" and the State Engineer does not have the authority to recognize a right for the use of it. *See* NMSA

1978, Sections 72-1-1 and 72-5-27; *see also Vanderwork v. Hewes et al.*, 15 N.M. 439 (1910) (Territorial Engineer's jurisdiction did not extend to seepage water from unknown sources); *Yeo v. Tweedy*, 34 N.M. 611, 624 (1929); *Burgett v. Calentine*, 56 N.M. 194, 196 (1951) (holding that the law appropriating water did not apply to small springs that had no well-defined channel through which the water could flow and that did not rise to the surface and thereafter flow into a stream); *Town of Silver City, et al. v. Scartaccini*, 138 N.M. 813, 819-822 (acknowledging that *Vanderwork* had not been overruled by subsequent case law).

The second statement quoted above from Mr. Chacon's "History" – that Mr. Chacon knows that the Alfalfita field was irrigated before his birth - would not be admissible at trial. Because Charlie Chacon is a lay witness, he may not give his opinion, but can only testify to first-hand knowledge. It would be impossible for Mr. Chacon to have first-hand knowledge of the state of affairs that existed before he was born. Having Mr. Chacon write down his assertions is no substitute for his testimony at Court, where he will be subject to cross-examination.

These are just two examples of the statements contained in Mr. Chacon's history. They highlight the confusion and waste of time that the introduction of this document would cause at trial, where the State would be required to refute every inaccurate and/or inadmissible statement contained in this exhibit. This "history" should be excluded under Fed.R.Evid. 403.

The attached affidavits are equally inadmissible. They are hearsay under Fed.R.Evid. 801. If the affiants have information that would be useful to the Court, the State asks that they come to Court and testify. But it is simply not fair to the State to admit hearsay evidence from non-witnesses whom the State has not been given an opportunity to question about the statements in open court.

**F.2.b) – Affidavits**

These affidavits are inadmissible hearsay, sworn by people who may or may not be called by the defendants as witnesses at trial. For instance, this exhibit includes affidavits from Pedro Trujillo y Chacon and Leo Tafoya, neither of whom has ever been included in any defense witness list. The State objects to this entire exhibit.

### F.3 through F.9 – Homestead Documents

The State does not object to the defendants' use of homestead documents in general, and, in fact, has included many of the same documents in its exhibits. However, the documents that were provided to the State include Spanish deeds that unaccompanied by any translation. When Undersigned Counsel asked Defense Counsel about one of these documents, he responded, "There is no official translation of the deed that I know of, but I am relying on my clients to translate, if need be, since they are fluent and literate in Spanish." This is totally unacceptable.

The State objects to the admission of this exhibit.

### F.10 – Letters from H.J. Guthmann and Medardo Sanchez

The first letter in this exhibit is from H.J. Guthmann to Patricio Chacon, dated April 3, 1951. The State submits that this letter is not relevant evidence under Fed.R.Evid. 401. This letter does not mention any of the ditches at issue. Nor does it help to establish how much land the defendants have under irrigation, how much land they have historically had under irrigation, whether the Old Valdez and Alfalfita ditches have been connected and in use since before 1907, or any other fact at issue in this case. Additionally, the letter refers to an affidavit and a map, but the defendants have provided no information regarding the affidavit or the map. In short, this letter confuses the issue without having any tendency to make any fact at issue more or less probable than it would be without the letter.

The second letter in the exhibit is in Spanish and no translation has been provided.

12

The defendants contend that the third letter in the exhibit, from H.J. Guthmann to Medardo Sanchez shows that the Turley map is inaccurate. The State contends that the letter shows just the opposite, but that its probative value is substantially outweighed by a danger of confusing the issues.  The letter begins by referring to an application for appropriation of water. Based on the dates involved, the State presumes this is a reference to the July 25, 1951 Application for Permit that was filed with the OSE on August 3, 1951 (Defense Exhibit F.13). The letter goes on to say that in preparing the application, Mr. Guthmann learned that the original declaration (presumably either the Statement of Old Water Rights dated June 21, 1932 and filed with the OSE on June 27, 1932 or the Declaration of water rights dated February 28, 1949 and filed with the OSE on March 1, 1949) had been amended three times and that the amended declaration Mr. Guthmann had in his possession did not include two tracts of land belonging to Mr. Jose Sanchez or the seven acre tract belonging to Patricio Chacon. Mr. Guthmann goes on to say that he has included these tracts in the 1951 Application.

The defendants contend that this letter shows that the June 10, 1949 Turley map was inaccurate. The State contends that this letter shows that, as late as 1951, Patricio Chacon claimed only a seven-acre tract of irrigation from the Old Valdez ditch. While the State feels that this letter is actually supportive of the State's case, the State is concerned that the letter's probative value is substantially outweighed by a danger of confusing the issues. The letter does not specify which application for appropriation it refers to. The letter states that Mr. Guthmann's amended declaration was not the final declaration, but we have no way of knowing which amended declaration Mr. Guthmann had in his possession. This letter should be excluded under Fed.R.Evid. 403.

**F.11 – Letter to State Engineer from Jose I. Maes, dated April 12, 1972 irrigation on the Pinabetal**

This letter is irrelevant under Fed.R.Evid. 401. First, the notation in the top left corner indicates that this letter was a part of OSE File Nos. 2686 and 0604, neither of which OSE File number is at issue in the instant case. While the letter does mention the "Asequia del Pinabetal," it gives no information about the Pinavetal ditch that has a tendency to make any of the facts at issue more or less probable than they would be without this letter.

**Unmarked Exhibit – Receipts from the U.S. National Archives & Records Administration**

Also included in the papers tendered to the State by the defendants is an unmarked and unidentified stack of receipts from the U.S. National archives & Records Administration. When the State asked Defense Counsel for clarification on whether the receipts were intended as an exhibit for use at trial, Defense Counsel responded, "I will not make them a part of an exhibit but [may] need to use them to authenticate the documents referenced therein." The State objects to the admission of these unmarked, unnamed exhibits.

Respectfully submitted,

/s/ Felicity Strachan
Felicity Strachan
Special Assistant Attorney General
Office of the State Engineer
P.O. Box 25102
Santa Fe, NM  87504-5102
Telephone:  (505) 827-3889
Fax:  (505) 827-3887
felicity.strachan@state.nm.us

Attorney for the State of New Mexico *ex rel.*
New Mexico State Engineer

14

## <u>Certificate of Service</u>

I certify that on October 26, 2016, I filed the foregoing electronically through the CM/ECF system which caused the parties on the electronic service list, as more fully set forth in the Notice of Electronic Filing, to be served via electronic mail.

<u>/s/ Felicity Strachan</u>
Felicity Strachan