IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF NEW MEXICO

STATE OF NEW MEXICO *ex rel.*  )
State Engineer, *et al.,*                      )                69cv07941-MV/KK
                                                        )
                        Plaintiffs,           )                RIO CHAMA ADJUDICATION
                                                        )
                        v.                        )                Section 3, Rio Cebolla
                                                        )
RAMON ARAGON, *et al*.,                 )                Subfile Nos. CHCB-001-0007,
                                                        )                CHCB-002-0001B, CHCB-002-0002C,
                        Defendants.            )                CHCB-002-0009
_____)


**STATE OF NEW MEXICO'S REQUESTED FINDINGS OF FACT
AND CONCLUSIONS OF LAW
IN RIO CHAMA, SECTION 3, RIO CEBOLLA SUBFILES**


**INTRODUCTION**

Defendants dispute the State of New Mexico's assessment of their rights to divert and use the public waters of the Rio Chama stream system in Subfile Nos. CHCB-001-0007, CHCB-002-0001B, CHCB-002-0002C, and CHCB 002-0009, in the Rio Cebolla subsection of the general stream adjudication.

The most factually complex dispute concerns a ditch known as the "Old Valdez" ditch. The State of New Mexico ("the State") contends that the Old Valdez ditch was constructed by Juan Desiderio Valdez prior to 1907 as a private ditch to irrigate approximately seven acres of land on the Valdez homestead, and that the ditch originally terminated at the southern boundary of the Valdez homestead. Defendants contend that the Old Valdez ditch never terminated at the boundary of the Valdez homestead, but always continued a considerable distance south of the Valdez homestead to irrigate additional lands not actually owned by Juan Valdez, but now

owned by the defendants and others. The State considers the extension of the Old Valdez ditch (known as the "Alfalfita" ditch) to be a separate ditch without associated valid irrigation water rights.

In the State's view, the Alfalfita ditch was actually constructed much later than the Old Valdez ditch, and well after 1907. Additionally, at some point since the creation of the Alfalfita dicth, an unauthorized extension of about 200 yards in length was constructed to connect the Old Valdez ditch to the Alfalfita ditch, creating one long ditch as it exists today. In the absence of a valid permit from the Office of the State Engineer, evidence of pre-1907 water use is required to establish a water right under New Mexico law[1].  Defendants do not have a valid permit to irrigate from the Alfalfita ditch.

Additionally, this case concerns claims made by Defendants Chacon to water rights associated with the "Alto" area (CHCB-001-0007). The State has found some evidence that water was diverted from the "Sanchez" ditch and used on the Alto at the site of a pre-1907 saw mill. Additionally, 1995 aerial photography indicates that there may have been a small amount of land under irrigation at that time. No earlier aerial photographs indicate irrigation at the site.

Finally, there is the question of whether Defendants Chacon are entitled to a water right for the seeped area at the base of the Alto (CHCB-001-0007). The State does not acknowledge such a water right. Under New Mexico law, where the source of seepage is unknown and the water is put to use without the aid of man-made diversions, said water is not considered "public" and the State Engineer does not have the authority to recognize a right for the use of it. *Vanderwork v. Hewes et al.*, 15 N.M. 439 (1910) (Territorial Engineer's jurisdiction did not extend to seepage water from unknown sources); *Yeo v. Tweedy*, 34 N.M. 611, 624 (1929);

---

[1] **NMSA 1978 - 19.26.2.8 DECLARATION OF A WATER RIGHT DEVELOPED PRIOR TO MARCH 19, 1907:** All water rights established by beneficial use in New Mexico prior to March 19, 1907, were recognized and confirmed by the state constitution at the time of its adoption.

*Burgett v. Calentine*, 56 N.M. 194, 196 (1951) (holding that the law appropriating water did not apply to small springs that had no well-defined channel through which the water could flow and that did not rise to the surface and thereafter flow into a stream); *Town of Silver City, et al. v. Scartaccini*, 138 N.M. 813, 819-822 (acknowledging that *Vanderwork* had not been overruled by subsequent case law); *see also* NMSA 1978, Sections 72-1-1 (definition of public waters subject to appropriation for beneficial use) and 72-5-27.

In a water rights adjudication, the burden of proof is on the defendants to prove all elements of their water rights including, in this case, beneficial use of water for irrigation purposes prior to March 19, 1907, and continuous use of water for those purposes since that time. "The burden of proof with respect to quantifying a water right in a stream system adjudication falls squarely on a defendant, or the user of the water right." *State v. Aamodt*, No. Civ. 66-6639 MV/WPL, Subfile PM-67833, Doc. 8119 at 6 (D.N.M. Feb. 24, 2014) (unpublished) (citing *Pecos Valley Artesian Conservancy Dist. v. Peters*, 193 P.2d 418, 421-22 (N.M. 1948)). *See also* Revised Pretrial Order, Doc. 11064, filed December 16, 2014.

## REQUESTED FINDINGS OF FACT:

1.      Patricio Chacon is Defendant Charlie Chacon's father and the predecessor in interest of Defendants Charlie and Geralda Chacon.

2.      Luis Quintana is the father of Delfin Quintana and the predecessor in interest of Delfin Quintana and of Defendant Delfin O. and Frances S. Quintana Trust ("Quintana Trust").

3.      The Rio Chama Stream System, Section 3, Rio Cebolla Hydrographic Survey ("hydrographic survey"), prepared by the New Mexico Office of the State Engineer ("OSE") in August, 2000 includes a ditch known as the "Old Valdez" ditch. As mapped in the hydrographic

survey, the Old Valdez ditch diverts water from the Rito del Tanque, a tributary of the Rio Cebolla, and terminates at the southern boundary of a tract of land originally occupied as a homestead by Juan Desiderio Valdez in 1878.

4.     The portion of the Juan Desiderio Valdez homestead bisected by the Old Valdez ditch is now owned by Defendants Charlie and Geralda M. Chacon.

5.     The hydrographic survey also includes a ditch known as the "Alfalfita" ditch. Beginning in the western portion of the Canuto Valdez homestead, on property now owned by Edna and Guillermo Cova (who are the daughter and son-in-law of Delfin and Frances Quintana), the Alfalfita ditch runs southwest along the base of the slope below lands irrigated by the "Canuto Valdez" ditch, then traverses the southeast corner of the Gabriel Valdez homestead on lands now owned by Defendant Quintana Trust (CHCB-002-0002C). The Alfalfita ditch then continues on to lands acquired by Patricio Chacon from the U.S. government in 1951, and now owned by Defendants Charlie and Geralda Chacon (CHCB-002-0009), before crossing the north end of the former Jose Leandro Montoya homestead, acquired by Patricio Chacon in 1919 and now owned by Defendants Charlie and Geralda Chacon (CHCB-002-0001B). The Alfalfita ditch terminates at the site of a former alfalfa field located within the Montoya homestead (CHCB-002-0001B).

6.     The Alfalfita ditch historically received water, not from the Old Valdez ditch, but from springs located on the Canuto Valdez homestead and from the Canuto Valdez ditch, which diverts water from the Rito del Medio, another tributary of the Rio Cebolla.

7.     The Canuto Valdez ditch was constructed by Canuto Valdez to irrigate lands on his homestead, located just south of the Juan Desiderio Valdez homestead. In 1926, Canuto Valdez filed a declaration with the State Engineer claiming rights to water for the irrigation of

three acres within his homestead from the Rito del Medio. The point of diversion ("POD") for Canuto's ditch is to the east of Canuto's property. The Canuto Valdez ditch flows west from the POD onto Canuto's land, and then southwest across Canuto's property until it eventually drains into the Alfalfita Ditch.

8.      At the present time, the Old Valdez ditch and the Alfalfita ditch are physically connected.

9.      The 2000 hydrographic survey map shows a gap of about 200 yards between the end of the Old Valdez ditch and the origination point of the Alfalfita ditch because the OSE considers them to be two separate ditches, with different points of diversion and sources of water.

10.     The 2000 hydrographic survey map comports with the June 10, 1949 Walter G. Turley plat, which shows the Old Valdez ditch returning to the Rito del Tanque at the southwestern corner of a 7-acre field owned by Patricio Chacon.

11.     As measured by Patricio Chacon in 1953, the length of the Old Valdez ditch was 1,580 feet.

12.     As measured by the OSE, the current length of the combined Old Valdez and Alfalfita ditch is approximately 5,800 feet.


Land Development in the Old Valdez / Alfalfita Ditch Area

13.     Juan Desiderio Valdez claimed a homestead in 1878 in Section 24, Township 27 North, Range 4 East.

14.     In 1884, Juan Desiderio Valdez's brother, Gabriel Valdez, claimed a 160-acre homestead in the Southwest Quarter (SW1/4) of Section 24, just west of Juan Desiderio.

15.     Two years later, in 1886, Jose Leandro Montoya claimed a 160-acre tract of land in Section 25, just south of Gabriel Valdez's homestead.

16.     Gabriel Valdez's son, Canuto, later established a claim that included the South Half (S1/2) of the Southeast Quarter (SE1/4) of Section 24, lands directly to the south of Juan Desiderio's homestead. Canuto's claim also extended to the east of Juan Desiderio's claim, into the South Half (S1/2) of the Southwest Quarter (SW1/4) of Section 19, Township 27 North, Range 5 East.

17.     After Juan Desiderio Valdez's death, his heirs conveyed title to the south half of his claim – that part bisected by the Old Valdez ditch – to his niece, Josefa Valdez de Garcia ("Tia Josefa").

18.     In 1919, Patricio Chacon purchased approximately 70 acres at the north end of the Jose Leandro Montoya claim.

19.     On June 3, 1926, Gabriel Valdez's heirs (Eufemia Valdez de Benavides, Josefa Valdez de Garcia, Canuto Valdez, and Patricio Chacon) divided his homestead into four 40-acre parcels. Patricio Chacon, Gabriel's grandson, received the westernmost parcel as his deceased mother's heir. Patricio Chacon's 40-acre parcel was located just north of the 70 acres he bought in 1919. Thus, by 1926, Patricio Chacon owned two contiguous parcels of land totaling 110 acres.

20.     In the same June 3, 1926 deed that transferred Gabriel Valdez's homestead to his heirs, Josefa Valdez de Garcia conveyed her 40-acre share of the Gabriel Valdez homestead to Luis and Dulcinea Quintana. The deed made no mention of irrigation rights, although the southeast portion of the tract is currently crossed by the Alfalfita ditch. (This deed was not recorded until June 27, 1949).

6

21.     In 1937, Patricio Chacon became the largest landowner in the neighborhood when he bought the south half of Juan Desiderio's original homestead from Josefa Valdez de Garcia – 80 acres known as the "Tia Josefa Ranch."

22.     In October of 1944, Luis and Dulcinea Quintana bought 40 acres from Canuto Valdez in the East Half (E1/2) of the East Half (E1/2) of the Southwest Quarter (SW1/4) of Section 24, (title to which Canuto appears to have obtained from his sister, Eufemia). The deed transferring the property from Canuto to the Quintanas specified that it included, "all rights to water belonging to said land." While these 40 acres are traversed by the Alfalfita ditch, no mention was made in the deed of a right to irrigate from the Old Valdez ditch.

23.     In November of 1944, Canuto Valdez conveyed 40 acres, his share of the Gabriel Valdez homestead, to his son, Gabriel Valdez (who was named after his grandfather). The deed noted that irrigation rights were included.

24.     On February 19, 1949, Canuto Valdez conveyed his original homestead to his son, Gabriel Valdez.

25.     In 1956, Gabriel Valdez exchanged the west half of the original Canuto Valdez homestead for Luis Quintana's portion (the eastern half) of the original Gabriel Valdez homestead. Gabriel Valdez's deed from Luis Quintana and his wife stated that Gabriel received water rights to irrigate lands on both sides of the Rito del Tanque: on the west, through the "Pinabetal" (alternate spelling of Pinavetal) ditch, on the east, from "la asequia de el Rito de el Medio," another name for the Canuto Valdez ditch. This is the ditch constructed by Canuto Valdez to irrigate his lands from the Rito en Medio. This ditch eventually spills into the Alfalfita ditch, which traverses the property transferred from Luis Quintana and his wife to Gabriel Valdez. Likewise, Gabriel Valdez's deed to Luis Quintana and his wife gave them a water right

from "la asequia de el Rio de el Medio" (aka the Canuto Valdez ditch). Although these tracts are both traversed by the Alfalfita ditch, the deeds did not mention any water rights from the Old Valdez ditch.

26.     On January 25, 1960, Luis Quintana and his wife conveyed their tract acquired from Gabriel Valdez to their son Delfin Quintana. All rights to water from the Rito del Medio were included.  While this property is traversed by the connection between the Old Valdez and the Alfalfita, the deed does not mention a water right from the Old Valdez ditch.


Declarations of Water Rights on the Pinavetal, Old Valdez, and Sanchez Ditches

27.     In 1932, fifteen parciantes submitted a Statement of Old Water Rights to the Office of the State Engineer for rights to water for "domestic, stock watering and irrigation purposes" from the Acequia Pinavetal. The Pinavetal diverts water from the Rio del Tanque upstream from the Old Valdez ditch, and irrigates lands on the west side of the Rio del Tanque. The named parciantes included Canuto Valdez, Luis Quintana, and Patricio Chacon.

28.     This 1932 Statement failed to indicate the individual tracts held by each parciante, but that information was provided in 1949 by an Amendment filed with the Office of the State Engineer.

29.     In 1937, Patricio Chacon purchased the south half of Juan Desiderio Valdez's homestead claim, the portion where the Old Valdez ditch is located.

30.     On March 1, 1949, Medardo Sanchez, Chairman of the Commission of the Acequia Pinavetal (the "Pinavetal" ditch), filed a Declaration of Ownership of Water Rights, amending the 1932 Statement of Old Water Rights. A letter written by Medardo Sanchez to the State Engineer accompanied the Amended Declaration, explaining that the Pinavetal parciantes

had commissioned a survey map of the Pinavetal ditch, but were not satisfied with the map. Accordingly, Mr. Sanchez requested that the parciantes "be given an opportunity to employ a competent engineer in order to have a survey made together with a map for recording in your office; so that you may have the full facts before you."

31.     Thereafter, the Pinavetal parciantes hired Walter G. Turley, a professional surveyor, to make a survey and map to accurately depict the water rights of the Pinavetal.

32.     On June 10, 1949, the Pinavetal parciantes filed a second Amended Declaration of Ownership of Water rights for the Pinavetal under OSE File 0636. This June 10 Declaration amended the 1932 Statement of Old Water Rights as well as the March 1, 1949 Amended Declaration.

33.     The June 10, 1949 Declaration was supported by a plat created by Walter G. Turley, also filed with the OSE on June 10, 1949 ("the Turley map").

34.     The June 10, 1949 Declaration addressed rights to the use of water from the Pinavetal, but did not include the water rights associated with the Old Valdez and Sanchez ditches. However, the Turley map itself included a description of lands irrigated by these other two ditches.

35.     The Turley map included a 7-acre area of irrigation on the Tia Josefa Ranch, owned by Patricio Chacon, and irrigated from the Old Valdez ditch. This Old Valdez ditch water right was identified as 0636-B. The Turley map showed the Old Valdez ditch not continuing southwest, parallel to the Rito del Tanque, as it exists today, but rather returning to the Rito Del Tanque near the southwestern corner of Patricio's seven irrigated acres.

36.     The Turley map also included a 5-acre tract in Section 19, identified as 0636-C, owned at the time by Jose A. Sanchez, and irrigated by the Sanchez ditch. Those water rights

were included in the Consent Order filed in Subfile No. CHCB-001-0002 (Doc. 6644, filed April 10, 2002).

37.    The State Engineer treated the inclusion of the lands irrigated from the Old Valdez and Sanchez ditches (seven acres and five acres respectively) on the Turley map as a declaration of water rights for those lands under OSE File Nos. 0636-B and 0636-C.

38.    As filed with the Office of the State Engineer, the Turley map carried an endorsement to its accuracy signed by five commissioners of the Pinavetal ditch, including Patricio Chacon.

39.    In 1949, Patricio Chacon owned lands located on the north end of the former Jose Leandro Montoya homestead, lands that are currently traversed by the Alfalfita ditch.   However, the Alfalfita ditch does not appear on the Turley map. Nor is there any mention of the Alfalfita ditch in either the 1932 Statement of Old Water Rights; the March 1, 1949 Declaration; or the June 10, 1949 Amended Declaration.

40.    Although the Alfalfita ditch now traverses lands owned in 1949 by Luis Quintana and the United States Department of Interior, neither of these property owners claimed irrigation rights from the Old Valdez ditch on the June 10, 1949 Amended Declaration.

41.    A final Amended Declaration for the Pinavetal ditch was filed with the OSE on December 19, 1949. This final amendment addressed water rights for the Pinavetal ditch only, and did not contain any reference to rights to use water from the Old Valdez or the Sanchez ditches. Nor did it contain any reference to the Alfalfita ditch.

42.    In 1951, Medardo Sanchez, still the Chairman of the "Pinabetal" (alternate spelling of Pinavetal) ditch, filed an Application for Permit to Appropriate Surface Waters of the Pinavetal under OSE No. 2738. This 1951 Permit Application included the right of Patricio

Chacon to use water from the Pinavetal to irrigate a 10-acre tract in Section 25 and a 12-acre tract in Section 24. It also included Patricio Chacon's application for a permit to irrigate the 7-acre tract in Section 24 from the Old Valdez ditch (0636-B), as well as Jose A. Sanchez's application to irrigate a 5-acre tract, located in Section 19 and irrigated from the Sanchez ditch (0636-C). The 1951 permit application referred specifically to, and relied upon, the June 10, 1949 Turley map. The stated purpose of the Application for the appropriation of water for use on these lands (0636; 0636-B; 0636-C) was to ensure that the owners of the lands would have a legal right to the use of water for irrigation in the event that any of the lands described in the earlier declarations were later found not have been irrigated prior to 1907.

43.     On October 10, 1953, following an inspection by Walter G. Turley, the commissioners of the Acequia Pinevetal executed two documents under OSE No. 2738 (the Permit Application): 1) a Proof of Completion of Works, and 2) a Proof of Application of Water to Beneficial Use.

44.     The 1953 Proof of Completion of Works includes a sworn statement as to the truth of its contents signed by several of the ditch commissioners, including Patricio Chacon. The Proof of Completion of Works states, "the Old Valdez ditch is 1,580 feet long."

45.     The November 20, 1953 Certificate of Construction states that the Old Valdez ditch is "1580 feet in length."

46.     The 1953 Proof of Application of Water to Beneficial Use was also signed by Patricio Chacon, and indicates that in 1953, he claimed beneficial use of water from the Old Valdez ditch only on a 7-acre tract in Section 24.

47.     The State Engineer approved the permit application and issued a License to Appropriate Water for all of the lands described in the application on November 20, 1953.

48.     In neither the Application for Permit, the Proof of Completion of Works, the Proof of Application of Beneficial Use, nor in the License issued by the State Engineer was there any mention of the Alfalfita ditch, or mention of the use of water for irrigation purposes on any lands under the Old Valdez ditch other than those located on the Old Valdez homestead.

49.     The various documents filed with the State Engineer in the 1940's and 1950's in connection with the Old Valdez ditch (OSE Nos. 0636, 0636-C, and 2738), documents signed and approved by numerous members of the community, including Patricio Chacon, show that the reputation in the Cebolla community was that the Old Valdez ditch did not extend beyond the boundaries of the Juan Valdez homestead, or irrigate lands beyond that boundary prior to 1907.


1951 Patricio Chacon Land Purchase from Department of Interior

50.     In 1946, federal officials received a request from Patricio Chacon to buy a 40-acre tract of land to the east of Patricio Chacon's 70-acre Jose Leandro Montoya parcel and to the south of the eastern half of the original Gabriel Valdez homestead. In 1951, his offer was accepted and he received a patent for the land from the General Land Office. This land is traversed by the Alfalfita ditch.

51.     In his original application, Patricio Chacon declared that he intended to use the land for grazing purposes. Before the sale, a field examiner from the Bureau of Land Management made an inspection of the tract. In his report, the examiner said that the 40 acres could best be used for livestock grazing. The examiner noted that the tract was bordered by a brook on one boundary, but further noted that there was no water of any kind on the tract, and agreed that Patricio Chacon's offer of $3.00 per acre was a fair price for such land. These

12

statements demonstrate that there was no irrigation on this tract at the time it was purchased by Patricio Chacon.

52.    $3.00 per acre was far below the going rate for irrigated land at that time. The price paid for Patricio Chacon's 40 acres was comparable to the sales of two other parcels made at the same time in Section 26, a short distance to the west. Eight acres identified by the same inspector as grazing land brought $2.50 per acre. Another lot of four acres declared unsuitable for agriculture to be used as a building site in the village of Cebolla sold for $10 per acre.


*Jose G. Cordova v. Luis Quintana, Gabriel Valdez, and Delfin Quintana*

53.    In 1926, Canuto Valdez filed a declaration with the Office of the State Engineer claiming rights to water for the irrigation of three acres within his homestead, located just south of Juan Desiderio Valdez's homestead. The source of the water was the Rito del Medio.

54.    In 1944, Canuto Valdez sold 40 acres, part of the original Gabriel Valdez homestead, to Luis and Dulcinea Quintana.

55.    In 1954, Gabriel Valdez and Luis Quintana built a new diversion from the Rito del Medio at the headgate of the Canuto Valdez ditch. This new diversion diverted almost all of the flow of the Rito del Medio into the Canuto Valdez ditch.

56.    In September 1962, Jose G. Cordova, owner of a large property downstream, filed a lawsuit in New Mexico District Court against Quintana and Valdez over this diversion (*Cordova v. Quintana, et al*., Rio Arriba District Court No. 8650). In his complaint, Cordova conceded that Canuto Valdez, Quintana's predecessor in interest, had a historic right to irrigate about three acres from the Rito del Medio. Some time after 1923, a saw mill operator obtained authorization to divert water through Canuto's ditch to provide steam for the mill. Later, after the

mill ceased operations, landowners continued to use the mill water to irrigate additional farmlands. According to Cordova, Canuto's successors had failed to get more water rights "either by purchase or gift." Instead, they had attempted to acquire rights from the Rio del Medio through adverse possession for irrigation on 100 acres of new lands.

57.     A report prepared by a special master in 1967 found that Defendants Valdez and Quintana had water rights to irrigate about three acres of land from the Rito del Medio and that Jose G. Cordova (the plaintiff) had the right to use water from the Rito del Medio to irrigate 104 acres of land. The report identified no other water users with rights to the use of water from the Rito del Medio. The special master's report was ultimately accepted by the New Mexico Supreme Court.

58.     The three acres of land described in the special master's report have been recognized in the consent order entered for Subfile No. CHCB-002-0008 (Edna and Guillermo Cova). No irrigation rights under the Old Valdez / Alfalfita ditch were claimed by the defendants or were recognized by the consent order.

59.     Under the court's decision the lands now watered by the Alfalfita ditch had no rights to water from the Rito del Medio. Thus, by the late 1960's the users of the Alfalfita ditch were aware of the fact that they possessed no water right associated with the water that flowed from the Canuto Valdez ditch into the Alfalfita.

60.     In 1969, Charlie Chacon purchased from Gabriel Valdez the right to irrigate 30 acres of land. Charlie Chacon then applied for and received a permit from the Office of the State Engineer to change the point of diversion of the rights from the west side of the Rito del Tanque, where Gabriel's lands under the Pinavetal ditch were located, to Charlie Chacon's property on

the east side. In 1973, Charlie Chacon established a diversion for a new acequia, known as the "Chacon" ditch.

61.     The lands to which the purchased water rights were transferred, and which can be irrigated from the Chacon ditch, significantly overlap the lands that can be irrigated by the Alfalfita ditch.

62.     According to Dr. Baxter (in his Report Concerning the Old Valdez Ditch and the Alfalfita Ditch), Charlie Chacon's decision to acquire additional water rights for the lands that were previously irrigated from the Canuto Valdez ditch resulted from the ruling handed down in *Cordova v. Quintana et al.,* which prohibited further use of water from the Rito en Medio. As Dr. Baxter pointed out in his Report, "[i]f this part of the Montoya claim was already irrigated from the Old Valdez / Alfalfita ditch, as Mr. Chacon has stated, there would have been no need for such a large transfer."

63.     The water rights awarded to Jose G. Cordova to the Rito del Medio in the *Cordova v. Quintana, et al.* litigation have since been recognized by this Court in the consent order entered for Subfile No. CHCB-002-0011.


The Alto (CHCB-001-0007)

64.     There is some evidence that water was diverted from the Sanchez ditch and used on the Alto at the site of a pre-1907 saw mill.

65.     The 1995 aerial photography indicates that there may have been some irrigation at that time.

66.     Aside from the 1995 aerial photography, no aerial photographs indicate irrigation at the site. Evidence of irrigation does not appear in the aerial photographs from 1958, 1963, 1975, or 1981.

Seepage (CHCB-001-0007)

67.     The water that is found in puddles or areas of standing water at the base of the Alto is seepage. It is a boggy area, which is the result of a naturally high water table. The source of the water that percolates up out of the ground is unknown.

68.     This seepage water is utilized without the aid of manmade diversions, and there is no evidence that Defendants Chacon have ever diverted water to irrigate the seeped area.

Adjudicated Subfiles

69.     Defendants Charlie and Geralda M. Chacon have been adjudicated rights to the use of water from the Old Valdez ditch to irrigate 16.9 acres of the former Valdez homestead in a Consent Order entered in Subfile No. CHCB-002-0001A (Doc. 9916, filed July 23, 2010).

70.     Defendants Charlie and Geralda M. Chacon have been adjudicated rights to the use of water from the Pinavetal ditch to irrigate 23.6 acres of land in a Consent Order filed under Subfile No. CHCB-002-0001A (Doc. 9916, filed July 23, 2010).

71.     Defendant Quintana Trust has adjudicated rights to the use of water from the "Quinana" ditch to irrigate a 12.0 acres of land, from the "Unnamed Ditch No. 1" to irrigate 13.1 acres of land, and from the "Acequia Madre de Cebolla" to irrigate 2.5 acres of land in a Consent Order filed under Subfile No. CHCB-002-0002A (Doc. 6571, filed January 26, 2002).

72.     Defendant Quintana Trust has adjudicated rights to the use of water from the Pinavetal ditch to irrigate 2.0 acres of land in a Consent Order filed under Subfile No. CHCB-002-0002B (Doc. 7027, filed January 22, 2003).

## REQUESTED CONCLUSIONS OF LAW:

1.  The defendants have not met their burden of proving that the Alfalfita ditch was in existence and use before 1907.

2.  The defendants have not their burden of proving that the Alfalfita ditch was connected to the Old Valdez ditch prior to 1907.

3.  Because the Alfalfita ditch was constructed after 1907, and the defendants do not have a permit from the Office of the State Engineer to use the waters of the Rio Cebolla via the Alfalfita ditch for irrigation purposes, the defendants have no right to use the waters from the Rio Cebolla via the Alfalfita ditch for irrigation purposes.

4.  Other than the State's stipulation to recognize the right of Defendants Chacon to the use of water from the Sanchez ditch to irrigate up to one acre at the site of the old saw mill on the Alto, Defendants Chacon have no right to irrigate from the Sanchez ditch.

5.  Because the water found at the base of the Alto is "seepage," it does not fall within the definition of natural, public waters under NMSA 1978 Section 72-1-1, and the State Engineer does not have the authority to recognize a water right for the use of that water. Accordingly, Defendants Chacon have no water right associated with the seeped area at the base of the Alto.

6.  The use of water to irrigate a seeped area is not a beneficial use of water, but a waste of water, for which there can be no associated valid water right.

Respectfully submitted,

/s/ Felicity Strachan
Felicity Strachan
Special Assistant Attorney General
Office of the State Engineer
P.O. Box 25102
Santa Fe, NM  87504-5102
Telephone:  (505) 827-3889
Fax:  (505) 827-3887
felicity.strachan@state.nm.us

Attorney for the State of New Mexico *ex rel.*
New Mexico State Engineer

## Certificate of Service

I certify that on October 26, 2016, I filed the foregoing electronically through the CM/ECF system which caused the parties on the electronic service list, as more fully set forth in the Notice of Electronic Filing, to be served via electronic mail.

/s/ Felicity Strachan
Felicity Strachan