IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO, *ex rel.*
State Engineer

      Plaintiff,

 v.

ROMAN ARAGON, *et al.,*

      Defendants.

69cv07941-MV/KK

RIO CHAMA STREAM SYSTEM

Section 1: Rio del Oso & Rito Vallecitos,
Subfile Nos.   CHRO-002-0003
                    CHRO-004-0001
                    CHRO-003-0001

## STATE OF NEW MEXICO'S RESPONSE TO DEFENDANT'S MOTION TO VACATE CONSENT ORDERS

Plaintiff State of New Mexico, *ex rel.* State Engineer ("the State") hereby responds to Defendant La Merced Del Pueblo Abiquiu's Motion to Vacate Consent Orders (Doc. 11291, filed 10/20/2017) ("Defendant's Motion"). The State respectfully requests this Court DENY the Defendant's Motion for the reasons set forth below.

Because Defendant fails to state with particularity the grounds for its Motion, in violation of D.N.M.LR-Civ. 7.1, the State is required to surmise Defendant's authority for requesting the Court vacate the three Consent Orders filed May 18, 2017. (Docs. 11258, 11259, 11260, filed 5/18/17) ("Consent Orders"). Defendant's argument is that David Archuleta, in his role as President of the Board of Trustees of the Merced del Pueblo Abiquiu ("the Merced") did not have the authority to execute the Consent Orders, and that therefore this Court should vacate them. Defendant does not

disagree with any element of the water rights set forth in the Consent Orders or allege that it is somehow harmed by their entry. Because David Archuleta had actual authority under the Merced Bylaws to enter into the Consent Orders, and apparent authority under New Mexico law, there is no basis in fact or law to set aside the Consent Orders.

If Defendant is seeking to vacate the judgment for under FRCP Rule 60(b)(1) or (2), it must demonstrate exceptional circumstances relating to "mistake, inadvertence, surprise, or excusable neglect;" or "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial" within 28 days after the entry of judgment." FRCP Rule 60(b)(1) and (2). However, the only fact Defendant raises is a claimed inability on the part of the President of the Board of Trustees to bind the Merced to the Consent Orders. Defendant presents no facts or law supporting the necessary elements: relief under this standard is discretionary and warranted only in exceptional circumstances. *Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co.*, 909 F.2d 1437, 1440 (10th Cir. 1990).

Alternatively, if Defendant is seeking a reconsideration of the entry of the Consent Orders, it must show extraordinary circumstances, which are likewise not present here. While a district court has considerable discretion to revisit its prior decisions, "as a rule [a court] should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (citations omitted). To establish such "extraordinary circumstances", a movant must show in its motion either "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (the *Paraclete*

factors"). The Tenth Circuit has looked to FRCP Rule 59(e) and the *Paraclete* factors for guidance in addressing such motions. *Ankeney v. Zavaras*, 524 Fed.Appx. 454, 458 (10th Cir. 2013).

Because Defendant does not recite any exceptional circumstances nor present any facts supporting any of the *Paraclete* factors, its Motion should be denied.

### A. DEFENDANT DID NOT DEMONSTRATE EXCEPTIONAL CIRCUMSTANCES, CLEAR ERROR, OR MANIFEST INJUSTICE AS TO THE EXECUTION OF THE CONSENT ORDERS.

Defendant concedes that David Archuleta, in his position as President of the Board of Trustees of the Merced del Pueblo Abiquiu, executed the subject Consent Orders on October 12, 2016. *See generally* Motion to Vacate (Doc. 11291). Defendant argues, however, that for two reasons Mr. Archuleta did not have authority to bind the Merced, namely:

1. The Board of Trustees of the Merced did not **specifically** authorize Mr. Archuleta to sign the Consent Order, and Mr. Archuleta may not bind the Merced to the Consent Order absent specific authorization from the Board. *See* Affidavit of David Archuleta (Doc. 11291-1), ¶¶ 4 and 7.

2. The Open Meetings Act, NMSA 1978, Section 10-15-1 to 10-15-4, requires that a public meeting be convened prior to Mr. Archuleta agreeing to the Consent Order, which apparently did not happen. Motion (Doc. 11291), ¶ 6.

Neither of these contentions have merit and they fail to support a request to vacate the Consent Orders.

1. <u>The President of the Merced had Actual Authority to Execute the Consent Orders on Behalf of the Merced.</u>

Critically absent from Defendant's Motion is any reference to the Bylaws of the Merced,

attached hereto as Exhibit A ("Merced Bylaws"). Pursuant to the New Mexico Land Grants statute,[1] the Merced Bylaws govern the conduct and authority of members of the Board, including the President: "All land grants-mercedes in the state or land grants-mercedes described in Section 49-1-2 NMSA 1978 shall be managed, controlled and governed by their bylaws, by the Treaty of Guadalupe Hidalgo and as provided in §§ 49-1-1 through 49-1-18 NMSA 1978 as political subdivisions of the state." NMSA 1978 § 49-1-1 (2004).

The New Mexico Land Grants statute does not address the authority of the president of a merced. *See generally* NMSA 1978 §§ 49-1-1 through 49-1-23 (2004). Neither is the State aware of any guidance provided to any boards of trustees contained in the Treaty of Guadalupe Hidalgo. However, the Merced Bylaws do define the role and responsibilities of the President of the Board of Trustees. The Merced Bylaws require that the President "shall sign all membership certificates, notes, bonds, mortgages, contracts and other instruments on behalf of the Merced." Exh. A, Merced Bylaws, Article XI, § 1. In only one instance within the Bylaws are the President's powers or authority limited: the leasing of the common Merced lands is required to be by "the majority vote of a quorum of the qualified voting members of the land grant …" Exh. A, Merced Bylaws, Article VII, § 3. Accordingly, the President's powers and authority in all other areas of Merced business is governed by the broad grant of powers in Article XI.

Given the facts above, Defendant has no basis to claim exceptional circumstances, clear error, or manifest injustice to warrant the Court vacating the Consent Orders. The Tenth Circuit has defined "clear error" as "an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *Wright ex rel. Trust Co. of Kansas v. Abbott Laboratories, Inc,* 299 F.3d 1226, 1236-37 (10th Cir. 2001), cited by *CalMat Co. v. Oldcastle Precast, Inc,* 2017 WL 3225473, at *2

---

[1] For purposes of this briefing, the State assumes but does not confirm that the Land Grants statute, Chapter 49 NMSA 1978, governs the Merced as set forth in Defendant's Motion, ¶ 1.

(D.N.M. May 8, 2017) as the definition for "clear error" in an analysis of the *Paraclete* factors. Pursuant to the Merced Bylaws, Mr. Archuleta had express authority to act for the Merced, and there is no clear error in recognizing Mr. Archuleta's authority to execute the Consent Orders. Moreover, Defendant has not alleged that any manifest injustice will inure to the Merced by binding it to actions undertaken by their official representative. Even if it had alleged manifest injustice, the Merced's objection to the process in the execution of the Consent Orders does not rise to the level of "manifest injustice":

> Although the Tenth Circuit has not specifically defined manifest injustice … other courts have defined manifest injustice as "more than just a clear and certain prejudice to the moving party, but also a result that is fundamentally unfair in light of governing law." … In order for a court to reconsider a decision due to 'manifest injustice,' the record presented must be so patently unfair and tainted that the error is manifestly clear to all who view it.

*Diaz v. King*, 2016 WL 8924933 at *2 (D.N.M. April 22, 2016) (citations omitted) (discussing "manifest injustice" in the context of FRCP Rule 59(e)). To the contrary, setting aside the Consent Orders would be more likely to visit injustice on the State through delay and by requiring it to reallocate resources to investigate claims long put to bed.

   2.   <u>The President of the Merced had Apparent Authority to Execute the Consent Order.</u>

Even assuming, *arguendo,* that Mr. Archuleta did not have express authority to bind the Merced in his role as President of the Board, he had apparent authority upon which the State reasonably relied. Acting in his capacity as President of the Board of Trustees of the Merced, Mr. Archuleta executed the Consent Order in October 2016. *See* representative Consent Order (Doc. 11260), attached as Exh. B, page 4. New Mexico recognizes the doctrine of apparent authority. "[W]hen agency is admitted by words or acts, the real authority of such agent is immaterial; the principal is bound by such apparent authority as his words and acts would indicate to a reasonably prudent man

that the agent possessed … It is therefore the rule of the law that the rights of third parties, who have reasonably and in good faith relied upon the apparent authority of the agent … cannot be prejudiced by secret limitations or restrictions upon it of which they had no notice." *Douglass v. Mutual Ben. Health & Accident Ass'n,* 42 N.M. 190, 76 P.2d 453, 456 (N.M. 1937) (citations omitted). *See also Vickers v. North American Land Developments, Inc.*, 94 N.M. 65, 607 P.2d 603, 605 (N.M. 1980) (although he lacked actual authority to execute contract for sale and trade agreement, sales manager's conduct and position bound his company).

    Mr. Archuleta's apparent authority is based on the Board of Trustee's placement of him in a position that would lead a reasonably prudent third party – in this case, the State – to believe Mr. Archuleta possessed the authority to bind the Merced. *Romero v. Mervyn's,* 109 N.M. 249, 784 P.2d 992, 996-97 (N.M. 1989) (finding binding apparent authority when a store manager told an injured shopper that the store would pay her medical expenses). Apparent authority "can be created by appointing a person to a position that carries with it generally recognized duties." *Id.* (Citation omitted.) In addition, Mr. Archuleta's conduct in negotiating with the State in his position as the representative / president of the Merced conferred apparent authority upon him.

    In a similar situation, the Navajo Tribe sued to set aside a settlement agreement claiming that its attorney did not have actual authority to settle its claim. *Navajo Tribe of Indians v. Hanosh Chevrolet-Buick, Inc., et al*., 106 N.M. 705, 749 P.2d 90 (N.M. 1988). The New Mexico Supreme Court held that even assuming the Tribe's attorney did not have express authority to settle the Tribe's claims, the Tribe was bound to the settlement under the doctrine of apparent authority. *Id.* at 92. "Apparent authority to settle a case can be inferred if the principal knowingly permits its agent to exercise such authority." *Id.* at 93 (citation omitted). In this case, the ratification of the Board to

the settlement of the Consent Order by Mr. Archuleta is reasonably inferred by the fact that the Board remained silent on this issue for more than one year from the time the Consent Orders were executed on October 12, 2016.

The Merced Bylaws require the "Board of Directors shall meet at least once every month on the second Tuesday of each month …" Exh. A, Merced Bylaws, Article X, § 6. The Merced Bylaws also require the Board to hold an Annual Meeting each June. *Id.*, Article XI, § 1. Presumably, then, the Board of Directors has met at least eleven times and had one Annual Meeting since Mr. Archuleta signed the Consent Order on behalf of the Merced in October 2016. Yet no action was taken against the Consent Order for more than one year after the action by the President. This delay in complaining about the process for executing the Consent Orders – which is the only complaint raised in Defendant's Motion – abrogates any argument that there is any clear error, new evidence, or that Defendant is prejudiced by the adjudication of the water rights in the Consent Order.

Defendant Merced claims only that the procedure by which Mr. Archuleta executed the Consent Orders was flawed; as demonstrated in this brief, it was not. However, if the Board feels the procedure was flawed, this is an internal issue that the Merced can remedy internally.[2] New Mexico law recognizes acceptance by silence. *See, e.g., Shively v Santa Fe Preparatory School, Inc*., 21 Fed.Appx. 875, 877 (10th Cir. 2001) (contract counter-offer deemed accepted by silence). The President of the Merced agreed to and executed the Consent Order over one year ago and fully seven (7) months before the entry of judgment; the Merced remained silent on the issue for over one year and thereby acquiesced in the Consent Order, sanctioning Mr. Archuleta's authority to execute

---

[2] Should the Merced have substantive issues with the elements described in the Consent Order, it could have approached the State at any time to discuss them. The Merced has not advised the State, nor the Court in its Motion, as to any substantive problems with the Consent Orders, but merely claims the process of entering into the Consent Orders was flawed.

the Consent Order on behalf of the Merced. Accordingly, the Merced ratified Mr. Archuleta's apparent as well as actual authority to execute the Consent Orders.

3. <u>The Consent Order is Not Invalidated by Failure to Meet Open Meetings Act Requirements.</u>

Defendant seems to claim his failure to hold an open meeting on the issue of the Consent Order invalidates his execution of the Consent Order. Defendant's Motion (Doc. 11291), ¶ 5. This argument fails because as to this specific issue, the statute explicitly exempts meetings relating to water rights from the requirements of the Open Meetings Act:

> H. The provisions of Subsections A, B and G of this section do not apply to:
> . . .
> (8) meetings for the discussion of the purchase, acquisition or disposal of real property or water rights by the public body …

NMSA 1978 Section 10-15-1 (H)(8)(2013). Thus, there is no requirement that the approval of the Consent Order, dealing with the determination of water rights, should have been subject to an open or public meeting, and Defendant's argument on this point also fails.

Given that Mr. Archuleta had both actual and apparent authority to bind the Merced through his execution of the Consent Order, Defendant cannot prove any exceptional circumstances, clear error or manifest injustice in the entry of the Consent Orders.

**B. THERE IS NO NEW EVIDENCE PREVIOUSLY UNAVAILABLE, AND DEFENDANT'S MOTION FAILS ON THIS POINT.**

Defendant does not present any new evidence to support a motion to vacate the Consent Orders. The only evidence discussed in its Motion relates to Mr. Archuleta's authority to execute the Consent Order on behalf of the Merced. For newly discovered evidence to justify reopening an order, a movant must satisfy the Court that it was diligent in discovering new evidence: "Motions to reopen for newly discovered evidence are not favored and [defendant] was required to base its

motion "on matter which could not reasonably have been previously adduced." *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716,728 (10th Cir. 1993) (citation omitted) (discussing "newly discovered evidence" in the context of FRCP Rule 60).

As set forth above, any such argument fails because there is no new evidence. Even assuming, *arguendo*, that the Board's purported realizations in the last several weeks or so comprise new evidence, Defendant's argument fails for lack of diligence. The Merced has had over one year and eleven Board meetings since Mr. Archuleta executed the Consent Orders, and seven months and at least five Board meetings since the final order was entered in May 2017, to have discovered any objections to the procedure followed with respect to the Consent Orders. "[E]vidence cannot be "newly discovered" under Rule 60 if it is in the possession of the moving party or that party's attorney prior to the entry of judgment." *Taylor v. Texgas Corp.,* 831 F.2d 255, 259 (11th Cir. 1987) (discussing "newly discovered evidence" in the context of FRCP Rule 60). Accordingly, any request for relief fails for lack of diligence.

## CONCLUSION

For reasons set forth above, the State respectfully urges the Court to deny Defendant's Motion to Vacate Consent Orders.

Respectfully submitted,

/s/   Kelly Brooks Smith
KELLY BROOKS SMITH

Special Assistant Attorney General
Office of the State Engineer
P.O. Box 25102
Santa Fe, NM 87504-5102
(505) 827-3989
Kelly.smith@state.nm.us
*Attorney for Plaintiff State of New Mexico*

## Certificate of Service

I certify that on November 3, 2017, I filed the State's Response to the Defendant's Motion to Vacate Consent Orders electronically through the CM/ECF system which caused the parties on the electronic service list, as more fully set forth in the Notice of Electronic Filing, to be served via electronic mail.

/s/ Kelly Brooks Smith
Kelly Brooks Smith
