**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

STATE OF NEW MEXICO ex rel.
State Engineer,

               Plaintiff,

     v.

ROMAN ARAGON, et al.,

               Defendants,

_____

NO.  69cv07941 MV/KK

RIO CHAMA STREAM SYSTEM

Section 1: Rio del Oso & Rito Vallecitos

Subfile Nos. CHRO-002-0003
                  CHRO-004-0001
                  CHRO-003-0001

## LA MERCED DEL PUEBLO ABIQUIU'S REPLY TO STATE'S RESPONSE IN OPPOSITION TO MOTION TO VACATE CONSENT ORDERS

Defendant Merced del Pueblo Abiquiu ("the Merced" or "the Land Grant") replies to the State of New Mexico's Response to Defendant's Motion to Vacate Consent Orders ("Response")(Doc. 11296, filed 11/3/2017).

### A.  Two Independent Grounds Exist For Vacating The Consent Orders

In its Response, the State first disputes that sufficient grounds exist to vacate the Consent Orders.  Yet the very cases cited by the Merced in La Merced del Pueblo Abiquiu's Motion to Vacate Consent Orders ("Motion")(Doc. 11291, filed 10/20/2017), are examples where consent orders were vacated solely and precisely because the person signing a settlement document did not have authority to do so.  In *Kelly v. Belcher*, 155 W. Va. 757, 187 S.E.2d 617 (1972), which is quoted at length in the Merced's Motion, the Court reversed the lower court, holding that it was an abuse of discretion to fail to grant a motion to vacate the consent order where the attorney did not have the authority to accept a compromise settling the case.  The Federal District Court likewise set aside the consent order for the same reason in *515 Associates v. Newark*, 424 F. Supp. 984 (D.N.J. 1977).  In both cases the Court had no

hesitation granting relief under the state and federal versions of Rule 60 (b) respectively and finding that the necessary standards and circumstances had been met.

The New Mexico Office of the State Engineer (OSE) in October of this year vacated an Order entered in an administrative proceeding under circumstances that were even more on point with this case in that they involved a public entity like the Merced. *Order Granting Motion for Reconsideration of Order Dismissing Protestant San Miguel County*, Office of the State Engineer Hearing No. 16-020, entered Oct. 3, 2017, attached hereto as Exhibit A.  The OSE Hearing Examiner found that the former San Miguel County attorney recommended in executive session that the County withdraw from the administrative proceeding, and then mistakenly filed the withdrawal without action being taken by the County Commission in a public meeting.  The new county attorney provided an affidavit from the county clerk verifying that the minutes of the meetings of the County Commission failed to indicate that the matter of withdrawing was voted on. Affidavit of Geraldine Gutierrez, San Miguel County Clerk, attached to *Motion to Set Aside and Vacate the Order Approving Dismissal of San Miguel County and Their Status as Protestor*, Office of the State Engineer hearing No. 16-020, attached hereto as Exhibit B.   The Hearing Examiner correctly held that "Formal action of a government body must occur in a public meeting before the legal status can be changed." Exhibit A, at ¶ 3. The Hearing Examiner reinstated the County as a party to the proceeding because the former attorney's filing of the withdrawal was without prior vote or direction by his client, i.e., the County Commission, in a public hearing. Exhibit A.

Although the Hearing Examiner did not cite to the New Mexico Open Meetings Act, NMSA 1978, §§ 10-15-1 to 10-15-4 ("OMA"), her analysis was based upon the OMA's requirements, including the provision that actions on behalf of a public body in violation of

public meeting requirements are invalid. *See*, *id*, at § 10-15-3 (A). Under the OMA, a governing body may go into closed session, but only under limited circumstances specified in the OMA, and then only to hold a closed discussion on the matter during which the public may be excluded. However no formal action, such as a vote, may be taken in closed session. Any action on the matter must be taken in a meeting at which the public is not excluded, e.g., when the body reconvenes in an open session. *New Mexico Open Meetings Act Compliance Guide*, Office of the New Mexico Attorney General, Eighth Edition (2015), pp 6, 19-30, also found at http://www.nmag.gov/uploads/files/Publications/ComplianceGuides/Open%20Meetings%20A ct%20Compliance%20Guide%202015.pdf. Any action taken by the body in violation of the OMA is invalid. § 10-15-3 (A).

Thus there are two separate bases, any one of which would be an independent basis for vacating an order, and both of which are present in this situation. There is the general admonition that a consent order must be vacated if the person signing off on the order does not have authorization to do so, *supra*, at 1-2. And, where the party is a public entity, there is the invalidity of any individual action taken that would purport to legally bind the public body where the body did not authorize or direct such action in a public meeting. The State does not dispute Mr. Archuleta's affidavit that no meeting of the Merced's Board of Directors considered or decided the matter of the proposed Consent Orders. Motion, Exh. 1, §§ 2-4. Thus there is both the legal basis and the evidence to support both grounds for vacating the Consent Orders, contrary to the State's assertion.

The State misconstrues the OMA with an alarmingly misleading analysis in its Response. The State asserts that "the statute explicitly exempts meetings relating to water rights from the requirements of the Open Meetings Act". Response at 8. Nothing could be

further from the truth.  All decisions of a public body are subject to the OMA.  *If* there is a basis for going into closed session, which is regulated by the OMA and allowed only with prior public notice, NMSA 1978, § 10-15-1 (I), it is for *discussion* purposes only.  The provisions on closed sessions either indicate that the closed session is for "discussion" of the matter or explicitly states that formal action on the matter shall be taken in an open meeting. NMSA 1978, §§ 10-15-1 (H)(1) through (H)(6) and (H)(8) through (H)(9); *New Mexico Open Meetings Act Compliance Guide* at 19-30.  This is true of the provision cited by the State on page 8 of its Response pertaining to property and water rights; it is only "discussion" of the "purchase, acquisition or disposal of property or water rights by the public body" that can take place in closed session. NMSA 1978, §§ 10-15-1 (H)(8); *New Mexico Open Meetings Act Compliance Guide* at 30.  Even if the signing of a Consent Order in a stream adjudication constituted "purchase, acquisition or disposal" of water rights, that only means the body may *discuss* it in closed session, but must take formal action in an open session. *Id.  In this case, neither occurred.*  The State does not dispute Mr. Archuleta's affidavit that he signed and returned the Consent Orders without the question even being considered at a Board meeting, open or closed.  Motion, Exh. 1, §§ 2-4.  The State's suggestion that the OMA allows a binding decision to legally be made on the Consent Orders by one or two out of five Board members outside of an open session of an actual Board meeting – because it is a water rights matter -- is the complete opposite of what the OMA provides.  NMSA 1978, §§ 10-15-1 (H)(8); *New Mexico Open Meetings Act Compliance Guide* at 30.

**B. The Merced's Bylaws Vest Control of Its Affairs in a Board of Directors and Do Not Allow Unilateral Decision-Making by any Officer.**

The State in its Response also badly misconstrues the Merced's Bylaws, erroneously concluding that the Bylaws give "express authority" to the President of the Merced to decide

unilaterally on a matter such as this.  Response at 5 ("Pursuant to the Merced's Bylaws, Mr.

Archuleta had express authority to act for the Merced . . .") In fact the Bylaws do no such

thing.  The Bylaws actually vest control of the Merced's property in a Board of Directors and

in the membership of the Merced.  *See* Response, Exh. A, the Merced Bylaws, Art. VII

(*Control Care and Management of the Common Lands and Common Waters*; Article VIII

(*Planning and Zoning Authority Over Common Lands*; Art. X, Sec. 1 (*Board of Directors*;

"Management and Powers").

   The error by the State is vividly explained in the attached affidavit. Affidavit of Ted J.

Trujillo, attached hereto as Exhibit C.  The State focused on a provision in Article XI of the

Merced's 2009 Bylaws, pertaining to duties of the President:

>  Section 1. Duties of the President. The President shall preside over all
> meetings of the Merced and the Board of Directors, shall call special meetings of the
> Board of Directors and perform all acts and duties usually performed by an
> executive and presiding officer.  *He shall sign all membership certificates, notes,
> bonds, mortgages, contracts and other instruments on behalf of the Merced.*  He
> shall be an ex-officio member of all standing committees and shall have such powers
> and shall perform such other duties as may be properly required of him by the Board
> of Directors."  (emphasis added)

Response, Exh. A, the Merced Bylaws, Art. XI, Sec.1.

   This language was originally authored by attorney Ted J. Trujillo in 2007 as part of a

set of model bylaws designed for New Mexico land grants.  Exhibit C, §§ 2-3.  As indicated in

the attached affidavit of Ted J. Trujillo, Exh. C: (1) The language in the model bylaws

pertaining to the duties of the land grant President -- and adopted almost verbatim by the

Merced -- in no way authorizes unilateral decision-making by the President with respect to

legally binding documents; (2) rather, that language is a fairly typical bylaws provision for an

executive officer of a public body, and presupposes that any document-signing by the

President would be preceded by a decision made by the body in compliance with the OMA; (3)

this would include that at least a quorum of the governing board be present and vote on the matter in an open session meeting of the governing body; and (4) the bylaws provision quoted above does not confer authority for the President of the Merced to legally bind the Merced by signing a water rights Consent Order absent an authorizing vote by the Board of Directors or the membership.  *Id* at §§ 5-9.

Mr. Trujillo's affidavit thus illustrates that there is a critical distinction between who makes a *decision* whether or not to legally bind the land grant through some sort of document (must be the body itself, no officer can unilaterally do so), and who *signs* the document, which can be done by the bylaws-authorized officer after the body makes a decision in a public meeting in compliance with the OMA.  The State mistakenly conflates the two, erroneously conjecturing that if the Bylaws allow for the latter, the President must therefore have the former power individually.  Not only is that not what the Bylaws provide, such reasoning gives the absurd result that the President can sign off on innumerable mortgages, contracts, deeds, etc., without ever once bringing such questions before the Board or the membership.  We know that that is not the case because, for example, NMSA 1978 § 49-1-11 provides that a conveyance of the common lands of a land grant is not effective until the Board of Trustees has approved a resolution at a duly called meeting and the district court has issued an order affirming the resolution.  Clearly, Art. XI, Sec. 1 of the Bylaws does not confer unilateral decision-making power on the President.

### C. The Facts of this Case and Statutory Imperatives Nullify Any Inferred or Apparent Authority Theory.

The State argues incorrectly that Mr. Archuleta can be inferred to have had "apparent authority" to bind the Merced through his signature on the Consent Orders.  Of the cases cited by the State for this proposition, only one, *Navajo Tribe of Indians v. Hanosh Chevrolet-Buick,*

*Inc., et al.*, 1988-NMSC-010, 106 N.M. 705, 794 P.2d 90 (N.M. 1988), involves a governmental entity.  However this case is weak authority for this proposition, especially in the context of the OMA.

First, Navajo Tribe falls squarely within the *Kelly v. Belcher, supra*, line of cases that recognizes that "mere employment of an attorney" does not give him or her the authority to compromise the client's case. *Navajo Tribe* at 749 P.2d 92.  Similarly, where the evidence shows that a person in fact did not have authority to settle a claim for another person or entity, that evidence can be dispositive against any assumption to the contrary.  *Id*.  In *Kelly v. Belcher, supra*, the decisive evidence was the admission by the attorney that he did not have authority from his client to settle the matter; and in this case, Mr. Archuleta similarly conceded in his affidavit that he mistakenly signed the Consent Orders without authority from the Merced. Motion, Exh. 1, at ¶¶ 2-4.  In *Navajo Tribe*, no such evidence was introduced. 749 P.2d at 92. This fact alone makes *Navajo Tribe* utterly inapplicable to the instant case.  In no sense did the Board "knowingly permit" Mr. Archuleta to have individual decision-making power over the water rights of the Merced.

Weighing heavily against any unjustified inferences of authority are a whole host of factors, chief among them being the OMA.  The statutory mandate that public bodies must follow certain decision-making procedures or else their actions are deemed to be invalid must overrule any doctrine that would operate to validate an otherwise unlawful or invalid action.

Moreover, persons and entities transacting with land grants are charged with being familiar with laws, such as the OMA, prescribing additional requirements relating to such transactions.  Property transactions in particular are highly regulated by statute.  *See e.g.*, NMSA 1978, § 49-1-11 (providing that a conveyance of the common lands of a land grant is

not effective until the Board of Trustees has approved a resolution at a duly called meeting and the district court has issued an order affirming the resolution). Thus the mere signature of a president of a land grant on a deed or similar legal document, without more, could never be inferred to be binding, since to do so would completely frustrate clear, applicable statutory requirements and objectives. The fact that a second or third party may not be familiar with such statutory requirements does not lessen in any way the mandatory nature of such requirements. For this reason, the cases cited by the State on the question of apparent authority are of little relevance to this situation where there is a statutory overlay to the analysis and where the evidence is clear that expressed authority was lacking.

### D.  Equitable factors and conclusion.

The Merced acted more responsibly and expeditiously than the State gives it credit for. Within five weeks of entry of the Consent Orders on May 18, 2017, the Board had obtained counsel and counsel had contacted the State.[1]

The Merced is overwhelmingly more at risk of unfair prejudice than is the State. For the State, it is a matter of beginning again on the claim of one claimant. No resources were spent litigating the claim previously. The subfile phase in this section of the adjudication is still pending as it was when the Consent Orders were previously served. The Merced, in contrast, would lose its one window in the nearly 50-year history of this case to participate as a party in

---

[1]  Counsel for the Merced affirms the statement made in the Merced's Motion, as required by D.N.M.LR-Civ. 7.1, that when he contacted the State about the motion counsel for the State indicated that the State takes no position on the motion.  Motion at ¶ 4.  Specifically, the attorney handling the case and whom counsel for the Merced had been in contact with, e-mailed counsel for the Merced on June 26, 2017, stating that if the Merced sought to vacate the Consent Orders based upon Mr. Archuleta's lack of authority to sign on behalf of the Merced the State takes no position on the motion.  Counsel for the Merced clarifies this point because the State's Response filed in opposition implicitly calls into question the veracity of the D.N.M.LR-Civ. 7.1 statement made by Counsel for the Merced in the Motion, or at least could be a source of confusion for the Court.  The D.N.M.LR-Civ. 7.1 statement in ¶ 4 of the Motion was in fact accurate. It was after the Motion was filed that counsel for the State contacted counsel for the Merced indicating the State would oppose the Motion, this notwithstanding that the nature of the Motion conformed to the criteria indicated by the State.

the establishment of its water rights – permanently – on the same basis as every other party has had the opportunity to do.

For the foregoing reasons, the Merced's Motion should be granted.

Respectfully submitted,

NEW MEXICO LEGAL AID, INC.

*/s/ David Benavides*

_____
David Benavides
P.O. Box 32197
Santa Fe, NM
87594-2197
Telephone:  (505) 982-9886
Facsimile: (505) 216-2997
davidb@nmlegalaid.org
*Attorney for Defendant Merced del*
*Pueblo Abiquiu-Limited Entry of*
*Appearance*

Defendant Merced del Pueblo Abiquiu
P.O. Box 179, Abiquiu, NM 87510

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 1, 2017, I filed the foregoing electronically through the CM/ECF system, which caused the parties or counsel reflected on the Notice of Electronic Filing to be served by electronic means.

*/s/ David Benavides*
David Benavides